Timothy J. Fransen, OSB No. 073938
tfransen@cosgravelaw.com
**COSGRAVE VERGEER KESTER LLP**
900 SW Fifth Avenue, 24th Floor
Portland, Oregon 97204
Telephone: (503) 323-9000
Facsimile: (503) 323-9019

Ryan D. Watstein (*Pro Hac Vice*)
ryan@wtlaw.com
James M. Ruley (*Pro Hac Vice*)
jruley@wtlaw.com
**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 783-0695

*Attorneys for Defendant*
*Freeway Insurance Services of America, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>    v.<br><br>FREEWAY INSURANCE SERVICES OF AMERICA, LLC,<br><br>       Defendant. | Case No. 6:25-cv-1869-MC<br><br>**DEFENDANT'S RESPONSE AND OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS AND MOTION TO STAY**<br><br>**ORAL ARGUMENT REQUESTED** |

Page i – **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS AND MOTION TO STAY**

## TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   LEGAL STANDARD ..........................................................................................3

III.  ARGUMENT ......................................................................................................4

      A.    The Court Should Resolve Freeway's Motion
           to Deny Certification Before Granting Plaintiff's
           Strategic Motion to Dismiss His Own Claims ................................................4

      B.    The Court Should Permit Freeway to Complete
           Already-Served Discovery Because It Bears Directly
           on Whether Plaintiff is Defrauding the Court ...............................................11

      C.    If the Court Grants Dismissal, It Should
           Impose Appropriate Conditions .....................................................................15

      D.    Plaintiff's Brief Opposition to Freeway's Motion
           to Deny Certification Does Not Withstand Scrutiny .....................................16

IV.   CONCLUSION .................................................................................................20

**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 783-0695

## I.    INTRODUCTION

Plaintiff Chet Wilson moved to dismiss his own case with prejudice within hours of learning the degree to which Freeway's then-imminent motion to deny certification (ECF No. 19) would expose his inadequacy to represent any putative class—and the suspected fraud behind some of his claims. As Freeway explains in that motion, Wilson and his lawyers have abused the class action mechanism by filing nearly 100 putative class actions, with hundreds more threatened, to extract individual settlements far greater than the statute permits. And unlike an ordinary contingency arrangement, most of the money goes to his counsel and the undisclosed law firm that originates the claims and has rights to a piece of every Wilson case: the Heidarpour Law Firm.

And that is no longer just an argument. Days ago, the Heidarpour Law Firm's white collar defense counsel provided a scant, redacted, and cherry-picked subpoena response. Suppl. Watstein Decl. ¶ 13, Ex. A. The financial terms of the engagement letter are redacted,[1] preventing the Court from scrutinizing the economic incentives, but what the unredacted portion confirms is extraordinary: the firm has "power of attorney" to select, pursue, and settle "any and all" of Wilson's TCPA claims, and to execute settlement documents, checks, and deposit money in connection with them. It also imposes severe economic penalties for termination of that ongoing arrangement. Specifically: repayment of all costs incurred in any outstanding claim—here potentially hundreds given the number of unfiled claims that just the undersigned has received—even though it is titled a "CONTINGENT FEE AGREEMENT." Suppl. Watstein Decl. ¶ 14. These are extraordinary provisions in any engagement agreement, but particularly for a class

---

[1] The Heidarpour Law Firm designated the engagement letter highly confidential, even though there's no operative Protective Ordere in this case permitting that designation. Suppl. Watstein Decl. ¶ 15. Out of an abundance of caution the undersigned hasn't attached the letter to this filing, but may do so after conferring about this issue with the Heidarpour Law Firm.

Page 1 – **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS AND MOTION TO STAY**

**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 783-0695

representative, who is supposed to police class counsel, not relinquish all control to a non-appearing law firm that habitually fails to disclose its financial interests.

To make matters worse, Wilson has repeatedly and publicly directed violent racist, anti-LGBTQ+, antisemitic, and otherwise hateful rhetoric at members of the classes he purports to represent. On top of that, Freeway's motion detailed substantial and growing evidence that some of his claims—and hundreds like them clogging this Court's docket and others' across the country—are being manufactured by the Heidarpour Law Firm and a rotating cast of litigation counsel: a lawyer-driven fraud on the federal courts. *See generally* ECF No. 19.

Plaintiff's response to that motion was not to defend his adequacy or rebut the evidence. It was to run, but only after forcing Freeway to incur the enormous expense of investigating and bringing a motion that most other victims of this scheme do not have the resources to pursue—particularly when taking an extortionate individual settlement is cheaper. That is the same thing Plaintiff's counsel did just last week in another case where the undersigned indicated his intention to bring a similar motion to deny certification and served a subpoena on the Heidarpour Law Firm. Suppl. Watstein Decl. ¶¶ 10–12, Ex. B. That's what has kept the wheels of this scheme turning across nearly 100 cases filed by Chet Wilson and hundreds more filed in the name of other serial TCPA litigants originated by the Heidarpour Law Firm and prosecuted by a small group of co-counsel.

The Court should not permit Plaintiff and his counsel to avoid accountability for their conduct after Freeway made this investment in exposing and stopping it. It should not dismiss this case until it has ruled on Freeway's motion. Plaintiff's Rule 41(a)(2) motion is not a routine voluntary dismissal. It is an escape hatch—pulled the moment Freeway was poised to bring the evidence to the Court—designed to moot the pending motion and keep the operation intact.

Plaintiff wants to walk away from the one defendant prepared to expose the scheme—while leaving dozens of other cases undisturbed so the operation can continue against everyone else.

Rule 41(a)(2) does not entitle him to that outcome. An action may be dismissed at the plaintiff's request "only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Here, Freeway does not ultimately oppose dismissal; it opposes Plaintiff's requested timing. Before entering Plaintiff's dismissal, the Court should resolve Freeway's motion and allow it to complete discovery targeted at uncovering the extent of the scheme, consistent with the Court's inherent authority to investigate abuse of its own processes. Or, if the Court grants dismissal sooner, it should impose proper terms under Rule 41(a)(2)—including completion of the discovery Freeway has already served and preservation of the record for any post-dismissal sanctions proceedings, over which this Court would retain jurisdiction. The Court should also deny Plaintiff's stay and extension requests because they serve only one purpose: to shield Plaintiff and the Heidarpour Law Firm from discovery into a systemic abuse of the class action mechanism and a suspected fraud on the Court.

## II.    LEGAL STANDARD

Once a defendant has answered, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The decision is committed to the district court's sound discretion. *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001); *see also* 9 Wright & Miller, Fed. Prac. & Proc. § 2364 (4th ed.) ("The judicial precedents have made it perfectly clear that the grant or denial of a Rule 41(a)(2) dismissal motion, with or without prejudice, is a matter addressed to the trial court's sound discretion.").

Where a defendant opposes dismissal outright, it must show that it will suffer "plain legal prejudice." *Kamal v. Eden Creamery*, 88 F.4th 1268, 1280 (9th Cir. 2023). But Freeway does not

oppose dismissal of Plaintiff's individual claims—only the sequence in which the Court takes up the pending motions and the terms on which it grants dismissal. Rule 41(a)(2) expressly conditions dismissal "on terms that the court considers proper," and nothing dictates the order in which the Court must decide motions pending on its own docket. On the contrary, every federal court has "broad discretion 'to manage [its] own affairs so as to achieve the orderly expeditious disposition of cases.'" *City of W. Sacramento v. R & L Bus. Mgmt.*, 2020 WL 7360583, at *2 (E.D. Cal. Dec. 15, 2020) (quoting *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016)). In short, Rule 41(a)(2) confers discretion on whether to grant dismissal, when to take the question up, and on what terms.

## III.    ARGUMENT

### A.    The Court Should Resolve Freeway's Motion to Deny Certification Before Granting Plaintiff's Strategic Motion to Dismiss His Own Claims

#### 1.    Permitting Plaintiff to Dismiss Would Reward Gamesmanship, Violation of the Court's Conferral Rules, and Permit Continued Abuse of the Class Action Mechanism

Freeway's motion established—with evidence—that this case cannot proceed as a class action. Plaintiff has filed nearly 100 putative class actions in under two years, settled at least 43 of them individually, never moved to certify a class, and testified that he does not know what certification means. ECF No. 19-1, Watstein Decl. ¶¶ 4–6 & Ex. A; *id.*, Ex. B, Wilson Dep. 59:16–20, 61:10–11. His recently produced but redacted engagement letter with the Heidarpour Law Firm significantly worsens these problems, providing that he has relinquished his representative role to an undisclosed law firm that profits in perpetuity via a "power of attorney" that permits it to do everything on his behalf, including deciding when to settle claims and execute settlement documents. CITE. His violent public rhetoric toward Jewish people, Black people, and the LGBTQ+ community also independently disqualifies him from serving as a fiduciary for any class. *Id.*, Watstein Decl. ¶ 15 & Exs. E–I. And substantial and growing evidence suggests the

Page 4 – **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS AND MOTION TO STAY**

**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 783-0695

Heidarpour Law Firm and/or Plaintiff are manufacturing some of these claims, while routinely violating court rules by failing to disclose the shadow firm's financial interests. *Id.* at 13–16.

Plaintiff's motion tries to sidestep all of that. Rather than defend adequacy or contest the evidence, he asks the Court to dismiss his claims before Freeway's motion can be decided— leaving him and his counsel free to run the same playbook in his dozens of other still-pending cases and the hundreds that sit in the demand letter stage. He offers two reasons the Court should dismiss now: that he is not seeking to evade an adverse ruling, and that Freeway's motion is premature. Each fails, as does his fallback that Freeway cannot show "plain legal prejudice."

Plaintiff contends (at 6–7) that he doesn't seek dismissal to avoid an adverse ruling, but that's precisely what he's doing. Freeway advised Plaintiff for more than a month that it would move to deny certification, and it explained the grounds on a conferral call, including his inadequacy as a class representative. Plaintiff's counsel did not then abandon the case. He instead flippantly dismissed Freeway's points out of hand, falsely stated that this Court had already approved Wilson's adequacy, and pushed forward with the case. ECF No. 19-1, Watstein Decl. ¶ 55. In mid-May, he requested that the parties meet and confer regarding his forthcoming motion for leave to amend his complaint to *further* expand the case, adding more claims and more defendants. *Id.* ¶ 56. During the May 15 meet-and-confer, Freeway pressed Mr. Perrong on his client's violent, racist rants. His reaction? Anger at Freeway's counsel for daring to raise the issue, and no interest in reconsidering his position. *Id.*

Freeway then contacted Mr. Perrong's co-counsel, Mr. Paronich, and explained it was moving forward with its motion and would address the Heidarpour Law Firm's undisclosed role in originating these claims, along with the broader scheme of using the class action mechanism as an extortion tactic. *Id.* ¶ 57. Within hours, Plaintiff sought to dismiss his own claims with prejudice

Page 5 – **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS AND MOTION TO STAY**

**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 783-0695

to preserve the same strategy in every other case. *Id.* ¶¶ 58–59. He withdrew that motion hours later, after Freeway pointed out that he had failed to adequately confer and had misstated Freeway's position in his haste to avoid accountability. *Id.* ¶ 59; Suppl. Watstein Decl. ¶ 4. He then renewed the motion, after Freeway served additional third-party discovery directed at the suspected fraud and abuse. Suppl. Watstein Decl. ¶ 4. A plaintiff with meritorious claims does not flee a case he has invested resources in the moment a defendant seeks to look behind the curtain.

Plaintiff also claims that he can't be attempting to evade an adverse ruling because Freeway's Motion to Deny Certification is premature. But the Ninth Circuit has explicitly held that "Rule 23 does not preclude a defendant from bringing a 'preemptive' motion to deny certification." *Vinole v. Countrywide Home Loans*, 571 F.3d 935, 939–40 (9th Cir. 2009) (collecting cases); *see also, e.g.*, *Payne v. Sieva Networks*, 347 F.R.D. 224, 228 (N.D. Cal. 2024) (denying class certification without discovery because of individualized issues that couldn't be cured by discovery); *May v. Gladstone*, 562 F. Supp. 3d 709, 713–14 (C.D. Cal. 2021) (denying class certification before discovery because plaintiff and class counsel were inadequate). And how could a non-dispositive motion be premature when it proved so persuasive that Plaintiff moved to dismiss his own case with prejudice rather than let the Court rule on it?

Plaintiff's own authorities confirm the point. The defendant in *Granados v. OnPoint Community Credit Union* didn't file a motion to deny certification. It filed a pleadings challenge—a motion to strike class allegations—which is "generally disfavored" and is not granted unless the class definitions are "obviously defective in some way." 2023 WL 3570039, at *8 (D. Or. May 18, 2023) (quoting *Ott v. Mortg. Invs. Corp. of Ohio*, 65 F. Supp. 3d 1046, 1062 (D. Or. 2014)). But affirmative motions to deny certification under Rule 23 are different, especially where, as here, the motion is grounded in evidence, not just "allegations appear[ing] suspicious at the pleading stage."

**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 783-0695

Pl.'s Mot. at 6 (quoting *Updike v. Clackamas Cnty.*, 2015 WL 7722410, at *11 (D. Or. Nov. 30, 2015)). Freeway's motion does not seek to strike class allegations as defective. It seeks an evidentiary ruling under Rule 23 that Plaintiff is inadequate to serve as a class representative.

*Updike* fares no better. There, in a Rule 12(b)(6) motion, the defendant asked the Court to "dismiss or deny Updike's request for class action status," citing no "authority allowing an attack on the suitability of class certification through a [12(b)(6)] motion." *Updike*, 2015 WL 7722410, at *10. Freeway's standalone motion, filed under Rule 23 after months of investigation and backed by evidentiary proof that has since grown more substantial, is not subject to Rule 12's materially different standards. *Compare Victorino v. FCA US*, 322 F.R.D. 403, 405–06 (S.D. Cal. 2017) (plaintiffs "have the burden to establish that" Rule 23's requirements are satisfied on a motion to deny certification), *with Updike*, 2015 WL 7722410, at *1 (on a 12(b)(6) motion, "the court must accept as true all well-pleaded material facts" and "construe them in the light most favorable" to the plaintiff) (citing *Wilson v. HP*, 668 F.3d 1136, 1140 (9th Cir. 2012)).

Finally, Plaintiff argues that, because he seeks dismissal with prejudice—"the most adverse merits posture a plaintiff can voluntarily accept"—and because no summary judgment motion is pending, Freeway cannot show "plain legal prejudice." Pl.'s Mot. at 4–7 (citing *Smith*, 263 F.3d at 975–76; *Kamal*, 88 F.4th at 1280). That misses the point twice over.

First, *Smith* and *Kamal* address whether a district court abuses its discretion in granting or denying a voluntary dismissal. Neither holds—or even suggests—that a plaintiff may dictate the order in which the Court decides the motions pending before it. Freeway is the defendant in a lawsuit. Of course it agrees that Plaintiff's individual claims should ultimately be dismissed with prejudice. Freeway takes issue with the *order* in which Plaintiff asks the Court to act—and on that question, Plaintiff's "plain legal prejudice" authority has nothing to say. A developed record—that

Page 7 – **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS AND MOTION TO STAY**

**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 783-0695

is developing more by the day, despite Plaintiff's and the Heidarpour Law Firm's obstructionism—supports Freeway's first-filed motion. It will be ready for decision on an ordinary briefing schedule. And every federal court retains inherent power "to control the disposition of the causes on its docket." *Landis v. N. Am.*, 299 U.S. 248, 254 (1936). The Court may resolve Freeway's motion before granting Plaintiff's dismissal request.

Second, Freeway's pending motion is not just about Plaintiff's individual claim. It seeks to prevent his continued abuse of Rule 23 and protect all stakeholders: Freeway; this Court and the integrity of its proceedings; other defendants abused by the scheme; putative classes left behind; and the public, which ultimately foots the bill for the immense resources this operation consumes. When Freeway submitted evidence exposing that operation—millions in individual settlements, nothing for any class—Plaintiff sought to dismiss only this case. Not his others.[2] That is a selective retreat from the one case in which he must defend his use of Rule 23. The Court should not allow him to use Rule 41(a)(2) to facilitate that maneuver.

### 2. Permitting Plaintiff to Dismiss Would Undermine the Integrity of the Judicial Process

Courts are not "mute and helpless victims of deception and fraud." *Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir. 1989) (quotation omitted). They have "not merely the authority, but also the duty, to protect the integrity of the judicial process." *Coleman v. Brown*, 2018 WL 5921365, at \*2 (E.D. Cal. Nov. 13, 2018). That duty flows from powers that "must necessarily result to our Courts of justice from the nature of their institution," *Chambers v. NASCO*, 501 U.S.

---

[2] He has since dismissed several others in the aftermath of Freeway's motion, presumably in response to threats by defendants to bring similar motions, but dozens remain pending. Suppl. Watstein Decl. ¶¶ 5–6. This further proves Freeway's point: if the Court lets him dismiss here without a decision, the abuse of the class action mechanism and fraud on the Court will continue unchecked, given the resources it takes to investigate and file such a motion.

Page 8 – **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS AND MOTION TO STAY**

**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 783-0695

32, 43 (1991), including "to conduct an independent investigation to determine whether [the court] has been the victim of a fraud," *Munnings v. Nevada*, 173 F.R.D. 258, 260 (D. Nev. 1996).

To be clear, Freeway does not ask the Court to resolve the merits of its allegations about Plaintiff and his scheme here. It asks only that the Court not close this case without even considering the evidence. A court cannot protect the integrity of its proceedings if the price of raising the question is immediate dismissal. But that's what Plaintiff proposes: dismiss now so the record Freeway assembled—evidence of manufactured claims, undisclosed financial interests, and a pattern of exploiting the class mechanism to line pockets at the class's expense, then abandoning cases the moment scrutiny arrives—goes unexamined. *See* ECF No. 19 at 13–17.

Plaintiff's passing suggestion (at 9) that Freeway lacks "standing" to raise these issues misunderstands the doctrine he invokes. Article III standing limits who may invoke federal jurisdiction. It says nothing about what a defendant, already haled into court, may bring to the Court's attention—or what the Court may consider in managing its own docket. And in any event, the relevant inquiry where fraud on the court is concerned "is not whether fraudulent conduct prejudiced the opposing party, but whether it harmed the integrity of the judicial process." *United States v. Est. of Stonehill*, 660 F.3d 415, 444 (9th Cir. 2011) (cleaned up). Such fraud "is a wrong against the institutions set up to protect and safeguard the public." *Chambers*, 501 U.S. at 43. The question is not just whether Freeway has been wronged. It is whether the Court has.

The Court's interest is at its apex where, as here, a plaintiff seeks to abandon a putative class action before certification. In all of Plaintiff's cases, absent class members supplied the settlement leverage but received nothing. Indeed, although Plaintiff's counsel previously indicated that one of Wilson's cases resulted in certification, Wilson's minimal discovery responses, served at 11:29 pm ET on the day this opposition was due, confirm he has never obtained certification in

any of the putative class actions he has filed. Suppl. Watstein Decl. ¶¶ 16, 18 & Ex. C, Resp. to Interrogatory No. 6. He refused to answer how many times he used the *threat* of a class action to extract individual settlements, a practice the undersigned knows to be numerous given the dozen or so Wilson class action demands the undersigned's clients have received that have not yet matured into filed class actions. *Id.*, Ex. C, Resp. to Interrogatory Nos. 7, 12.

Moreover, courts in this District have not hesitated to resolve certification questions early where the record permits. *See* ECF No. 19 at 19–21 (collecting cases). Plaintiff even underscores the point himself: he asks that the putative class claims be dismissed without prejudice, ensuring that the claims survive for redeployment even as the case examining their origin disappears. The Court cannot evaluate those circumstances with its eyes closed to the record Freeway has assembled. Ruling on Freeway's motion is not a detour from the Court's task on Plaintiff's motion—it is how the Court discharges it.

### 3. Permitting Plaintiff to Dismiss Before a Ruling on Freeway's Motion Wastes the Court's Scarce Resources

Plaintiff asserts (at 9) that this Court's "resources are conserved, not expended, by dismissing the only case actually before it." He has it backwards. Plaintiff has filed 27 cases in this District alone, with 15 still pending as of this filing, and dozens more pending or threatened elsewhere. *See* ECF No. 19-1, Watstein Decl. ¶¶ 4–6, 34 & Ex. A. A ruling on the more-than-sufficiently developed adequacy record in this case—a ruling Freeway's first-filed motion already requires—would inform every one of them. The point is not hypothetical: since Freeway filed its motion, Plaintiff has dismissed or settled seven of his cases. Suppl. Watstein Decl. ¶ 5. Dismissal without a ruling guarantees the same pattern repeats: the same record must be rebuilt—defendant by defendant, court by court, at a cost so prohibitive no one has borne it to date—while the

Page 10 – **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS AND MOTION TO STAY**

operation continues. The private and judicial costs of that operation are already documented at length in Freeway's motion (at 16–17), and they will continue compounding.

Permitting dismissal without a ruling would not only waste the resources already expended—it would incentivize future filings. If another defendant dares invest in a similar motion, those actors will cite this Court's order as precedent when they seek to dismiss. The Court should decide Plaintiff's adequacy now. The alternative is to let the operation continue—on this Court's docket, and on the dockets of the courts where Plaintiff's next hundred cases will be filed.

**B.      The Court Should Permit Freeway to Complete Already-Served Discovery Because It Bears Directly on Whether Plaintiff is Defrauding the Court**

Plaintiff asks the Court to stay discovery while his dismissal motion is pending; in other words, to freeze the investigation that prompted the motion. The request should be denied, particularly in light of the events that occurred since Freeway filed its motion to deny certification: Plaintiff and the Heidarpour Law Firm have refused to produce the most relevant information, telling in and of itself, but what they did produce makes Freeway's motion even stronger. *See* Suppl. Watstein Decl. ¶¶ 13–20. For example, the Heidarpour Law Firm produced an engagement letter that, although redacted, extracts "power of attorney" from Wilson to file, control, settle, and deposit money from his TCPA claims in the future, with severe financial penalties for termination that no ordinary person could afford. *Id.* ¶ 14. So does Plaintiff's counsel's immediate dismissal of another claim it was vigorously prosecuting until the undersigned served the same discovery and Heidarpour Law Firm subpoena that it served here. *Id.* ¶¶ 10–12, Ex. B. In any event, the ongoing discovery in this case bears on every question the Court must answer first, including what terms of dismissal are "proper" under Rule 41(a)(2).

<table>
<tr><td>Page 11 – <strong>DEFENDANT'S OPPOSITION TO<br>PLAINTIFF'S MOTION TO DISMISS<br>AND MOTION TO STAY</strong></td><td><strong>WATSTEIN TEREPKA LLP</strong><br>75 14th Street NE, Suite 2600<br>Atlanta, Georgia 30309<br>Telephone: (404) 783-0695</td></tr>
</table>

### 1.    Plaintiff Seeks to Avoid Discovery Targeted at Fraud, Not Harassment

Plaintiff (at 13) describes Freeway's discovery as "extraordinarily invasive" and "privilege-laden." This is rich coming from a party that, before moving to dismiss his own case to avoid an adverse ruling, served enormously burdensome class discovery to create the same leverage he has used to extort excessive settlements. Setting that aside, Plaintiff ignores what Freeway's discovery actually seeks. First, it seeks evidence of the scheme: how Wilson's claims are identified, referred, and monetized, and how much the Heidarpour Law Firm and Plaintiff have profited from them. That bears directly on adequacy. It requires no inquiry into legal advice.

Second, and relatedly, Freeway seeks evidence of whether Plaintiff or someone on his behalf (namely, the Heidarpour Law Firm) manufactured his claim here or in his other cases—conduct that would independently disqualify him as a class representative forever. Freeway seeks to: depose Plaintiff; inspect the devices he used during the two-week period surrounding the contact-form submission; review his iCloud access history, IP addresses, contact-request history, settlement history, and agreements and communications with the Heidarpour Law Firm; and obtain non-content records from Apple and the Heidarpour Law Firm showing how the latter identified, referred, and monetized Wilson's claims. ECF No. 19-1, Watstein Decl. ¶¶ 52–54.

That is not a "fishing expedition." It is the same investigation that, in *Human v. Fisher Investments*, exposed exactly this kind of scheme. There, forensic discovery established that a serial TCPA plaintiff manufactured his claims by submitting lead forms under other people's names. --- F.R.D. ----, 2026 WL 925576, at *9–11 (E.D. Mo. Mar. 31, 2026). The court struck his pleadings and entered judgment against him on the defendant's fraud claim. *Id.* at 11.

Plaintiff is trying to avoid exactly that kind of scrutiny here. At 11:30 pm EST on the day this opposition was due, Plaintiff refused a similar device inspection and refused to answer any questions at all or produce any documents related to the Heidarpour Law Firm. Suppl. Watstein

Page 12 – **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS AND MOTION TO STAY**

**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 783-0695

Decl. ¶¶ 19–20. And for its part, the Heidarpour Law Firm cherry-picked a few documents it believes are favorable, employed improper relevancy redactions on the few documents it did produce, labeled them "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL" notwithstanding that there is no protective order in this case, and threatened sanctions against Freeway repeatedly. *Id.* ¶¶ 8, 14–15. That bears repeating: the undisclosed law firm that originated this case and hundreds of others with "power of attorney," imposed enormous expense on Freeway, profited from that, and then when their operation was compromised, threatened *Freeway* for attempting to get to the bottom of how deep the misconduct that caused that about-face really goes.

This reaction, and Plaintiff's counsel's decision to dismiss another TCPA class action last week based on the same discovery and subpoena just proves why it should go forward. It will show whether Plaintiff's dismissal request is an ordinary decision to abandon litigation or an effort to cut off the inquiry just as it reached the Heidarpour Law Firm's systematic abuse of the class mechanism for personal profit. It will shed further light on Plaintiff's adequacy and his conflict(s) with absent class members, highlighted already by the power of attorney he gave Heidarpour to act for the classes in his stead. And it supplies the record the Court needs to decide the proper terms of dismissal. The Court should not stay discovery that is likely to illuminate the very reason Plaintiff is asking to dismiss this case.

### 2. A Stay Would Reward the Gamesmanship Freeway's Motion Exposes

Relatedly, a stay would hand Plaintiff exactly what his dismissal motion seeks to achieve: termination of the only active investigation into how his claims are generated, undertaken at great expense to Freeway. That would reward gamesmanship.

Courts confronted with similar efforts have refused to let dismissal moot the inquiry. In *Yu v. ByteDance*, the court rejected the argument that pending dispositive motions cut off a sanctions

**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 783-0695

inquiry because (1) courts have inherent authority to investigate fraud on the court and (2) allowing a party to escape scrutiny through voluntary dismissal or similar maneuvering "would be a further abuse of the judicial process." 759 F. Supp. 3d 992, 1001–02 (N.D. Cal. 2024). That principle controls here. The investigation Freeway's discovery seeks does not evaporate if the Court dismisses Plaintiff's individual claims. The evidence will inform the conditions the Court may impose under Rule 41(a)(2) and any sanctions inquiry that follows. *Supra* § III.A.2.

Nor is this a generalized grievance about other litigation. Plaintiff has filed 27 cases in this District alone—15 of which remain pending. The Heidarpour Law Firm is behind other supposed class actions against Freeway's affiliates, including the *Johnson* case, where the plaintiff *also* moved to dismiss with prejudice under threat of sanctions. Watstein Decl. ¶¶ 47, 51; Suppl. Watstein Decl. ¶ 7; *see also* Mot. to Compel Arbitration & Exhibits, *Johnson v. Medigap Life*, No. 22-cv-81427 (S.D. Fla. Dec. 29, 2022), Dkt. Nos. 34, 34-1 through 34-3, 44 (setting forth evidence of manufactured claim followed by a dismissal with prejudice). The scheme is consuming this District's resources across over a dozen cases. The one case in which an investigation is underway should not end before the record is complete.

### 3. The Pending Dismissal Motion Does Not Warrant a Stay

A dispositive motion does not ordinarily justify staying discovery. "[N]either the Federal Rules of Civil Procedure nor the Ninth Circuit has provided a clear standard for evaluating a motion to stay discovery based on a potentially dispositive motion," *Stauffer v. Matarazzo*, 2023 WL 8096907, at *1 (D. Or. Nov. 21, 2023) (collecting cases). The decision falls "within the court's broad discretion to control discovery." *Precision Conversions v. Mammoth Freighters*, 2026 WL 700049, at *4 (D. Or. Mar. 12, 2026).

Stays make sense where a dispositive motion raises purely legal questions. *See Jarvis v.*

*Regan*, 833 F.2d 149, 155 (9th Cir. 1987). But "the court should deny a motion to stay when discovery is needed to litigate the dispositive motion." *Precision Conversions*, 2026 WL 700049, at *4 (citing *Alaska Cargo Transp. v. Alaska R.R.*, 5 F.3d 378, 383 (9th Cir. 1993); *Kamm v. Cal. City Dev.*, 509 F.2d 205, 210 (9th Cir. 1975)). That is this case. Plaintiff's motion does not present a purely legal question. It requires the Court to determine what terms are "proper" under Rule 41(a)(2). The facts driving Plaintiff's effort to exit will inform that determination. "Staying discovery delays resolution of the case and doing so without sufficient cause erodes the justness of the ultimate result." *Flynn v. Nevada*, 345 F.R.D. 338, 349 (D. Nev. 2024).

It couldn't be more obvious why Plaintiff seeks a stay now. It's not because he changed his mind about the merits of his claims. And it's not because his counsel had a moral quandary about his violent, bigoted rhetoric that had been public for a long time—as they continue to pursue many of his cases in this District and elsewhere. The Court should not blind itself to the true factors motivating Plaintiff's dismissal request by staying the discovery that would bring them to light.

### C.  If the Court Grants Dismissal, It Should Impose Appropriate Conditions

Even if the Court grants dismissal without first resolving Freeway's motion, Rule 41(a)(2) authorizes everything Freeway asks for here. An action may be dismissed "on terms that the court considers proper," Fed. R. Civ. P. 41(a)(2), and "[t]he decision as to the terms and conditions that should be imposed, if any, is within the discretion of the trial court." *Cerciello v. Blackburn Truck Lines*, 1990 WL 161724, at *2 (9th Cir. 1990). Those terms are not limited to the conditions a plaintiff prefers. Courts have, for example, conditioned dismissal on the production of documents. *See In re Wellbutrin XL*, 268 F.R.D. 539, 544 (E.D. Pa. 2010) (requiring production where plaintiff sought voluntary dismissal to avoid an adverse discovery ruling); *Eaddy v. Little*, 234 F. Supp. 377, 380 (E.D.S.C. 1964) (requiring previously noticed discovery to be completed). Courts have

also paired dismissal with a separate investigation into alleged fraud on the court. *See Torres v. Universal Music Grp.*, 2025 WL 2710114, at *8–10 (S.D.N.Y. Sept. 23, 2025).

If the Court dismisses Plaintiff's claims before resolving Freeway's motion, the Court should impose similar terms here: condition dismissal on Plaintiff's completion of already-served discovery. That discovery would support a future sanctions motion, given the enormous cost Freeway incurred after conferring with Plaintiff about its motion.[3] Supra § III.B. *Wellbutrin* is on all fours. There, as here, the timing showed that the plaintiff sought dismissal to avoid revelatory discovery. The court required production anyway. 268 F.R.D. at 544. A plaintiff cannot exploit Rule 41(a)(2) to conceal damaging information, especially after he sought to leverage concededly meritless class discovery to enrich himself and his counsel before he had skin in the game.

Even if the Court allowed voluntary dismissal of Plaintiff's claims, it would retain jurisdiction to determine whether its processes have been abused and to impose sanctions. *Cooter & Gell v. Hartmarx*, 496 U.S. 384, 395–98 (1990); *Waite, Schneider, Bayless & Chesley v. Davis*, 191 F. Supp. 3d 743, 748–49 (S.D. Ohio 2016) (retaining jurisdiction after stipulated dismissal to determine whether fraud on the court occurred). At the appropriate time, Freeway will seek to recover the expenses Plaintiff unnecessarily forced it to incur.

### D.    Plaintiff's Brief Opposition to Freeway's Motion to Deny Certification Does Not Withstand Scrutiny

Plaintiff asks the Court (at 9–13) to defer briefing on Freeway's Motion to Deny Certification, but then previews his opposition in three "points." The preview confirms there is nothing to wait for. Freeway addresses each point briefly—not because they require it, but to show

---

[3] That's particularly appropriate because Plaintiff's counsel has a history of disregarding local rules' meet-and-confer requirements. *See Hudson-Bryant v. OCMBC*, 2026 WL 1509964, at *2–3 (C.D. Cal. May 27, 2026) (ordering Plaintiff's counsel to show cause why he should not be sanctioned for failing—twice—to comply with local rule's meet-and-confer requirement).

the Court that the motion is ripe for decision on the record already before it.

**Plaintiff's hate speech and inadequacy.** Plaintiff contends (at 10) that his violent and hateful public social media posts are mere "trivial credibility problems" irrelevant to adequacy. Setting aside the egregiousness of labeling as "trivial" violent hate speech that threatens to "punch some motherf***ers [parents of transgender kids] in the head" and brazenly states that he's got "holes f***ing dug already" for Jewish people, that misstates Freeway's argument. Freeway does not contend that every offensive statement, prior conviction, or personal shortcoming renders a proposed class representative inadequate. Freeway intentionally *did not raise* Plaintiff's prior convictions because it agrees that cocaine possession does not categorically bar service as a class representative. Freeway's point is narrower and more serious: Rule 23(a)(4) does not permit a plaintiff to act as a fiduciary for absent class members while publicly inciting hateful violence against groups included in any class he seeks to represent. Plaintiff's attempt to dismiss those statements as "trivial" only underscores his inadequacy.

Plaintiff's cases do not hold otherwise. In *Curry v. Kraft Foods Global*, the challenged conduct—drug purchases, false job applications, workplace discipline—was a set of "personal shortcomings" that neither indicated dishonesty in the litigation nor any conflict with class members. 2011 WL 4036129, at *4 (N.D. Ill. Sept. 12, 2011). *Meyer v. Portfolio Recovery Associates* likewise involved prior convictions that posed no conflict with the class. 2011 WL 11712610, at *4 (S.D. Cal. Sept. 14, 2011). And *In re Polaroid ERISA Litigation*—which Plaintiff calls (at 11) "directly on point"—involved offensive, but not threatening, remarks by a plaintiff whose financial interests remained "aligned with the other members of the class in seeking to maximize recovery." 240 F.R.D. 65, 77 (S.D.N.Y. 2006).

**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 783-0695

Neither feature is present here. Wilson's posts are not merely offensive remarks. He publicly referred to Jewish people as "parasites" and stated that he has "holes f***ing dug already" for them, in a video captioned "Got some holes need filled boys & I need to know who's with me on this one." ECF No. 19-1, Watstein Decl. ¶ 15 & Ex. E. He said of parents of transgender children that he "would love to punch some motherf***ers in the head," that he avoids "stupid sh*t with witnesses," but that "the time will come." *Id.*, Ex. I. Those are just some examples of many, and they are not credibility quibbles. They are threats of physical harm and death directed at groups whose members any class would include. And unlike the *Polaroid* plaintiff, Wilson's interests are not aligned with any class. His litigation model depends on absent class members recovering nothing, and the Heidarpour Law Firm has since revealed it has power of attorney to effectively serve as the class representative in all of his cases. ECF No. 19 at 21–24; Suppl. Watstein Decl. ¶ 14. Plaintiff's preview does not address that conflict at all.

Nor could the declaration Plaintiff promises to submit (at 11) cure the problem. A litigant does not undo years of public threats with a litigation-driven declaration drafted by counsel. Rule 23(a)(4) requires confidence that a class representative will protect all absent class members, not just those whom he does not despise and want to see suffer physical harm.

**The Heidarpour Law Firm.** Plaintiff (at 12) dismisses Freeway's Heidarpour-related evidence as "speculation stacked on speculation." But he rebuts none of it: not the manufactured leads in related TCPA matters that the undersigned defended (including against Freeway's affiliate); not the dismissals with prejudice after the undersigned flagged potential fraud; not the parallel *Taylor* litigation pattern; not the routing of both Taylor's and Plaintiff's claims through the same Heidarpour-centered circle of attorneys, ECF No. 19 at 13–16; not these lawyers' habitual failure to disclose Heidarpour's financial interests where court rules required it; and not the

Page 18 – **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS AND MOTION TO STAY**

WATSTEIN TEREPKA LLP
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 783-0695

Heidarpour team member's history of fraud convictions. Labeling evidence "speculation" is not a response to it. And his response—flight to avoid discovery into it—tells its own story.

The Heidarpour Law Firm's response to the subpoena served on it is also revealing. It has not stood on a blanket objection and declined to participate. It has done something more telling: it has produced a narrow slice of material it believes helps Plaintiff—including a handful of text messages between Wilson and his counsel and their retainer agreement—withheld the rest, and redacted even what it did produce on its own unilateral say-so of "relevance." Suppl. Watstein Decl. ¶ 13. But even those materials provide compelling further evidence of the exact scheme Freeway described, as explained above. Apparently without realizing the impact of what it did produce, the firm seeks to have it both ways—offering up the records it likes as though they tell the whole story, while shielding from view the settlement terms, fee splits, and origination records that would show what this operation actually is. *Id.* ¶¶ 13–14. A party confident the full record was innocent would produce it. To the extent Plaintiff relies on any document the Heidarpour Law Firm has produced, the Court should weigh it against everything the firm refused to produce—and redacted—alongside it.

The *Skopos* deposition. Finally, Plaintiff attaches a deposition from another of his cases. He says it shows an innocent third-party explanation for how his number ended up on a lead form. ECF No. 20-1. That is the *exact* pattern Freeway explains in its motion: the Heidarpour Law Firm recruits a client with legitimate claims, contracts for a piece of every recovery, and then begins manufacturing TCPA claims to increase its recovery, either on its own or in coordination with the plaintiffs. Chet Wilson is the perfect candidate, as his 999-9999 number ensures that he gets some legitimately errant calls and that filing dozens of claims under his name would not raise too much scrutiny. The deposition transcript addresses one lead form in just one of hundreds of filed and

Page 19 – **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS AND MOTION TO STAY**

**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 783-0695

threatened cases. It proves nothing Freeway didn't already know and note in its motion.

What it does not explain is the form at issue in this case—submitted under the name of a woman a retired FBI agent could not locate—or the hundreds of others from which Wilson and his lawyers have already benefited or seek to benefit. ECF No. 19 at 17–18. It does not explain the lead form that functioned solely to invite the very text messages Wilson then claimed were unwanted. *Id.* at 14. Nor does it explain why, when Freeway sought the fee terms and recovery figures across Wilson's other settlements—the information that would show what this operation actually earns—both the Heidarpour Law Firm and Plaintiff (through his counsel) refused outright, dismissing the request as a "fishing expedition" and insisting that what it "recovered in unrelated settlements" has "no bearing" on this case. Suppl. Watstein Decl. ¶ 8, Ex. A; *id.* ¶¶ 18, 20 & Ex. C. That information is at the *heart* of the adequacy inquiry, and the firm's refusal to produce it— paired with its threats to seek sanctions—is not the conduct of someone with nothing to hide. *Id.*

Worse for Plaintiff, the deposition undercuts his entire class theory in every case he filed as a "class action." Even on Plaintiff's own account, the deposition describes a single number submitted by a third party in one case—not a defendant blasting unconsenting consumers en masse. That is the antithesis of a class claim. An isolated, individually submitted lead form submitted with a wrong number *that the defendant knows nothing about* supplies neither commonality, predominance, nor the basis for treating Wilson as typical of anyone. Plaintiff's own exhibit thus underscores that these cases do not support class treatment.

## IV.    CONCLUSION

The Court should resolve Freeway's Motion to Deny Class Certification before ruling on Plaintiff's motion to dismiss, and it should permit Freeway to complete the discovery already served.

Dated: June 15, 2026

/s/ Ryan D. Watstein
Ryan D. Watstein (*Pro Hac Vice*)
ryan@wtlaw.com
James M. Ruley (*Pro Hac Vice*)
jruley@wtlaw.com
**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 783-0695

Timothy J. Fransen, OSB No. 073938
tfransen@cosgravelaw.com
**COSGRAVE VERGEER KESTER LLP**
900 SW Fifth Avenue, 24th Floor
Portland, Oregon 97204
Telephone: (503) 323-9000
Facsimile: (503) 323-9019

*Attorneys for Defendant Freeway Insurance*
*Services of America, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on June 15, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Ryan D. Watstein*
Ryan D. Watstein

**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 783-0695