Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
Telephone: 215-225-5529

Attorney for Plaintiff and the Proposed Class

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
### EUGENE DIVISION

| | | |
|---|---|---|
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated, | : : : : | CIVIL ACTION FILE NO. **6:25-cv-1869** |
| Plaintiff, | : : | REPLY IN SUPPORT OF MOTION FOR VOLUNTARY DISMISSAL WITH |
| v. | : : | PREJUDICE |
| FREEWAY INSURANCE SERVICES OF AMERICA, LLC, | : : | TCPA (47 U.S.C. § 227) |
| Defendant. | : : | DEMAND FOR JURY TRIAL |

**REPLY IN SUPPORT OF MOTION FOR**
**VOLUNTARY DISMISSAL WITH PREJUDICE**

**INTRODUCTION**

Defendant's opposition is long on rhetoric and short on facts or law. It accuses Plaintiff and the Heidarpour Law Firm of running an "extortion" scheme, a "fraud on the federal courts," and a coordinated effort to "manufacture" claims. Those accusations are false. But stripped of the hyperbole, Defendant's opposition makes clear that it does not *actually* contest the *only* question this motion presents, whether the Court should grant a Rule 41(a)(2) dismissal *with prejudice* of Plaintiff's individual claims. Defendant concedes that it "does not ultimately oppose dismissal." Oppn., Dkt. No. 23, page 3. It cannot show plain legal prejudice from a dismissal that hands it the full benefit of *res judicata*, and it does not try. What it asks for instead, that the Court keep this case alive so Defendant can litigate a sprawling narrative about *other* cases, *other* plaintiffs, and *other* defendants, is precisely the relief Rule 41(a)(2) does not authorize.

Three points dispose of Defendant's opposition. *First*, the centerpiece of Defendant's opposition, its claim that an engagement letter with a "power of attorney" engagement letter shows Plaintiff has surrendered control of this case to a non-appearing firm, collapses against the actual representation agreement governing *this* case, which Plaintiff produced in full and submits herewith as Exhibit A. Oppn., Dkt. No. 23, page 1. The Heidarpour Law Firm has also filed a motion to quash in the District of Columbia, along with a sworn declaration, attached herein as Exhibit B, underscoring that Defendant's narrative about its engagement letter and supposedly operating as a "shadow firm" is false. Oppn., Dkt. No. 23, page 5.

*Second*, Defendant's theory that an individual settlement of a putative class action is inherently "extortionate" misunderstands the dynamics of Rule 23. Oppn., Dkt. No. 23, page 2. Class actions resolve on an individual basis for many ordinary, legitimate reasons: collectability and the defendant's financial condition, evidentiary obstacles such as the inability to obtain

offshore calling records, litigation risk, and the availability of remedial relief. The Supreme Court has long recognized that a named plaintiff retains a personal economic stake in class treatment and that spreading fees and costs among the beneficiaries of the litigation is one of the practical benefits of the device. Defendant's argument, taken seriously, would indict every putative class action ever filed.

*Third*, Defendant's fraud accusations rest on speculation about *other* clients and *other* cases, not on anything in the record of *this* case. The timeline here refutes the conspiracy theory on its own terms. The lead submission on which this case is based predates any contact whatsoever between Plaintiff and the Heidarpour Law Firm. There can be no "manufactured" claim coordinated with a firm that had no relationship with Plaintiff when the lead was submitted. Oppn., Dkt. No. 23, page 9.  Whatever forum Defendant wishes to use to air its broader grievances, this case and this Court are not it.

The motion should be granted. The Court should dismiss Plaintiff's individual claims with prejudice, dismiss the putative class claims without prejudice and stay discovery pending decision. Consistent with the Court's scheduling order, Plaintiff will address Defendant's motion to deny certification separately. This reply addresses why Defendant has identified no Rule 41(a)(2) prejudice and no proper Rule 41 condition.

**ARGUMENT**

**A.    The Representation Agreement Governing This Case Refutes Defendant's "Power of Attorney" Narrative.**

Defendant's opposition leads with, and returns repeatedly to, an engagement letter the Heidarpour Law Firm voluntarily produced in response to the subpoena Freeway issued it in this action. From that document, Defendant spins its central theme, that Plaintiff handed a firm a "power of attorney" to "select, pursue, and settle 'any and all' of Wilson's TCPA claims,"

Reply Support MTD                                    2

subject to "severe economic penalties for termination," such that Plaintiff cannot police class counsel, and is *per se* inadequate. Oppn., Dkt. No. 23, page 1. The Heidarpour Law Firm has filed a motion to quash directly addressing Defendant's accusations about its role and the engagement letter.[1] Even assuming that this was the only attorney-client agreement in this case (it is not), engagement in litigation and even settlement of litigation pursuant to a power of attorney clause is not improper. *See First Fed. Sav. & Loan Ass'n of Walla Walla v. C.P.R. Constr., Inc.*, 689 P.2d 981, 984-85 (Or. Ct. App. 1984) (enforcing settlement made under engagement letter's express power-of-attorney clause). But Defendant's narrative fails for a more fundamental reason—the engagement letter it relies on is not the one that *actually* governs this case.

Plaintiff has produced, in full and without redaction, the Contingent Fee Agreement for *this* litigation, which is the agreement among Plaintiff, the Heidarpour Law Firm, Paronich Law, P.C., and Perrong Law concerning the claims against *Freeway Insurance Services of America, LLC*. It is attached as Exhibit A. Unlike the document Defendant describes, the Freeway agreement is specific to *this* case and these defendants, not a blanket authorization to file claims, contains no "power of attorney" of any kind, contains no perpetual representation provision, and contains no termination penalty requiring repayment of costs across a portfolio of unfiled claims. Oppn., Dkt. No. 23, page 1. It is a conventional contingent fee agreement that names Freeway, identifies the TCPA claims at issue, advances costs to be recovered only from any recovery, provides that Mr. Wilson will not receive a settlement greater than the statute permits, and

---

[1] Among other things, the Heidarpour Law Firm explained that the firm does not resolve claims without appropriate client authorization. Mot. at 11 (citing cases and Heidarpour Declaration). The motion also explains that the Heidarpour Law Firm does not file cases on behalf of clients. Rather, it refers client cases to other law firms, and those firms are in charge of prosecuting the cases pursuant to engagement letters like the Contingent Fee Agreement discussed below.

divides any fee recovered among the firms party to the agreement, with no part going to Mr. Wilson.

That distinction is dispositive of Defendant's adequacy theory in two ways. *First*, it shows the case was *not* brought pursuant to some blanket authorization to bring cases. The agreement Defendant relies upon is *not* the agreement under which *this* action was filed and prosecuted. Defendant's repeated invocation of "power of attorney" language found nowhere in the operative agreement is argument unmoored from the record of this case. Oppn., Dkt. No. 23, pages 1, 4, 11, 13, 18. *Second*, the operative agreement directly contradicts the claim that Plaintiff "relinquish[ed] all control to a non-appearing law firm." Oppn. at 4. Oppn., Dkt. No. 23, page 2. To the contrary, the agreement outlines that Plaintiff agrees to act as a class representative, to represent the interests of the entire class rather than his own, to cooperate in discovery, and it expressly provides that any potential resolution "is subject to court approval and must be structured in the best interest of the class as a whole." Far from abdicating the representative role, the agreement memorializes it. *See* Contingent Fee Agreement, page 3.

Defendant cannot have it both ways. Having built its inadequacy argument on an agreement that does not govern this case, Defendant cannot complain when Plaintiff shows the agreement that actually controls. The operative agreement limits Plaintiff's recovery to his maximum damages on a per-violation basis, which reinforces, rather than undermines, his stake in the litigation, and allocates any fee among the appearing firms in the ordinary way. There is no "shadow firm" pulling strings in this case. Oppn., Dkt. No. 23, page 5. There are firms operating under a written agreement Plaintiff has now placed before the Court.

**B.      There Is Nothing Improper About Filing a Putative Class Action and Later Resolving the Named Plaintiff's Individual Claims.**

Defendant's broader theory is that filing putative class actions, and resolving some of them on an individual basis, is a "scheme" and an "abuse of the class action mechanism" and a "suspected fraud on the Court." Oppn., Dkt. No. 23, page 3. The argument converts ordinary Rule 23 economics into misconduct. It is wrong as a matter of law, and it proves far too much. A voluntary dismissal "says nothing definitive about [a party's] view of the merits or about its reasons for filing." *Burford v. Acct. Prac. Sales, Inc.*, 786 F.3d 582, 589 (7th Cir. 2015).

Class actions are settled, dismissed, or not carried to certification for many reasons that have nothing to do with bad faith. A defendant's financial condition or the collectability of any classwide judgment may make individual resolution the rational course. Evidentiary obstacles, for example, the practical inability to obtain offshore calling records needed to prove classwide liability, may defeat class treatment, even where an individual claim remains sound, such as where the plaintiff has recorded every call and traced it back to the defendant. Litigation risk, the cost of certification discovery, and the availability of remedial or compliance relief all bear on whether a case can and should proceed on a classwide basis. None of these ordinary considerations is evidence of fraud. That a case was filed as a putative class action and later resolved individually is not, without more, indicative of anything improper. There are numerous legitimate reasons a plaintiff, his counsel, and a defendant might agree to take that course.

The Supreme Court has squarely recognized the legitimacy of the economics Defendant attacks. In *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326 (1980), the Court held that a named plaintiff retains a personal economic stake in class certification even after his individual claim is satisfied, grounded in his "desire to shift part of the costs of litigation to those who will share in its benefits if the class is certified and ultimately prevails." *Id.* at 336. In *Roper*, the defendant bank tendered the maximum individual recovery to each named plaintiff over their

objections. *Id.* at 326. The Supreme Court held that this did not moot the plaintiffs' case, because the named plaintiffs retained a continuing individual interest in their desire to shift part of the costs of litigation to those who would share in its benefits if the class were certified and ultimately prevailed. *Id.* at 327. The Court identified the spreading of litigation fees and costs among the beneficiaries of the litigation as one of the recognized practical advantages of proceeding under Rule 23. *Id.* at 338-39. As the Supreme Court itself explained, this is an appropriate feature of the class action mechanism:

> The use of the class-action procedure for litigation of individual claims may offer substantial advantages for named plaintiffs; it may motivate them to bring cases that for economic reasons might not be brought otherwise. Plainly there has been a growth of litigation stimulated by contingent-fee agreements and an enlargement of the role this type of fee arrangement has played in vindicating the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost. The prospect of such fee arrangements offers advantages for litigation by named plaintiffs in class actions as well as for their attorneys. For better or worse, the financial incentive that class actions offer to the legal profession is a natural outgrowth of the increasing reliance on the "private attorney general" for the vindication of legal rights; obviously this development has been facilitated by Rule 23. . . . Typically, the attorney's fees of a named plaintiff proceeding without reliance on Rule 23 could exceed the value of the individual judgment in favor of any one plaintiff. Here the damages claimed by the two named plaintiffs totaled $1,006.00. Such plaintiffs would be unlikely to obtain legal redress at an acceptable cost, unless counsel were motivated by the fee-spreading incentive and proceeded on a contingent-fee basis. This, of course, is a central concept of Rule 23.

*Id.* at 338 & n.9. The economic interest Defendant casts as sinister is the very interest the Supreme Court has held a named plaintiff is entitled to pursue as a "central concept of Rule 23."

Subsequent amendments to Rule 23 confirm the rule the Supreme Court first outlined in *Roper*. Rule 23(e) states "the claims, issues, or defenses of a certified class—*or a class proposed to be certified for purposes of settlement*—may be settled, voluntarily dismissed, or compromised only with the court's approval." For example, in *Dougan v. Centerplate, Inc.*, the court summarized that "the 2003 amendment to Rule 23(e) was intended to take courts out of the

business of reviewing pre-certification voluntary dismissals." 706 F. Supp. 3d 1025, 1027 (S.D. Cal. 2023) ("the Parties do not "propose" that the Court simultaneously certify a class and approve a class-action settlement; instead, they seek only to dismiss this case and continue their class litigation in state court. . . Nothing in the text or history of Rule 23(e) suggests that its "proposed to be certified" language was intended to preclude such a strategy.") In Defendant's world, courts should evaluate and approve individual settlements in cases filed as class actions, but the Rules contain no provision to that effect.

Courts likewise enforce a negotiated fee component in the individual settlement of a putative class action, particularly where, as Plaintiff proposes here, the putative class claims are dismissed *without* prejudice and no class release is given. In *Hill v. Kaiser Foundation Health Plan*, for example, the named plaintiffs brought individual and class claims, settled their individual claims with a negotiated fee component allocated among them, and dismissed the class claims without prejudice. 2015 WL 5138561, at *11 (N.D. Cal. Sep. 1, 2015), *aff'd sub nom., Berne v. Kaiser Found. Health Plan Inc.*, 719 F. App'x 651 (9th Cir. 2018) ("The court disagrees that Kaiser did anything inappropriate. . . . [T]he settlement agreement explicitly provided for the payment of substantial attorney's fees in a case that did not resolve as a class action and that resulted in a favorable merits settlement to the individual plaintiffs.").

The very fee arrangement that Freeway identifies here as "far greater than the statute permits" and "unlike an ordinary contingency arrangement" is the ordinary architecture of an individual settlement of a putative class case, and it is exactly what Plaintiff's requested disposition preserves. Oppn., Dkt. No. 23, page 1. Indeed, Rule 23 provides for attorneys' fees out of a common fund *precisely because* absent class members still benefit from counsel's work without contributing to its costs. And absent members benefit from this work even before

certification, and even if certification is ultimately not possible for any one of multiple legitimate reasons. Indeed, in most TCPA class actions, class counsel expend thousands of dollars in discovery and expert work before filing a motion for class certification, or before even realizing that the economics would make a certified class infeasible. For example, in *Wakefield v. ViSalus, Inc.*, the Ninth Circuit largely affirmed an almost billion-dollar Oregon TCPA jury verdict, which caused ViSalus to declare bankruptcy. 51 F.4th 1109, 1122 (9th Cir. 2022). Regardless of the economics in other cases, however, here, Plaintiff requests an individual dismissal with prejudice, putative class claims dismissed without prejudice, and no release binding absent class members, and he does so after *having turned down an individual pick-off settlement offer at the inception of this litigation*.[2] There is no evidence that Mr. Wilson has used any of his class action claims "for unfair personal aggrandizement in the settlement, with prejudice to absent putative class members." *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1314 (4th Cir. 1978).

Plaintiff's settlement and contingency agreements, moreover, are explicit, just like the agreements in *Berne*, about how any recovery is allocated, expressly assigning a portion of the consideration to the fees and costs incurred in prosecuting the putative class case. Allocating settlement consideration to fees and costs is permissible. As recognized by both *Roper* and *Berne*, it reflects the opportunity cost and the work undertaken in evaluating class treatment and conducting discovery with an eye toward certification. And, in many such cases, there are state law claims carrying their own statutory fee-shifting provisions that independently support a fee component. A defendant's dislike of the economics of class litigation is not evidence of a scheme. A plaintiff's interest in spreading litigation costs through Rule 23 is a legitimate one that

---

[2] To avoid further allegations of impropriety, Plaintiff does not repeat the amount of the settlement offer here. The letter, however, by Defendant's own admission, states that the offer is "5 times Mr. Wilson's recovery on his best day in court for the three text messages at issue."

a defendant may not extinguish by buying off the statutory value of an individual TCPA claim. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 158 (2016); *see also Roper*, 445 U.S. at 339.

Defendant's theory proves too much because it indicts Rule 23 itself. Rule 23 exists precisely because small individual claims often cannot be litigated economically unless counsel and named plaintiffs can pursue them in a class posture. "That there is a potential for misuse of the class action mechanism is obvious. Its benefits to class members are often nominal and symbolic, with persons other than class members becoming the chief beneficiaries. But the remedy for abuses does not lie in denying the relief sought here, but with re-examination of Rule 23 as to untoward consequences." *Roper*, 445 U.S. at 339. Every class action creates settlement pressure. That is a feature of aggregate litigation, not a vice peculiar to this Plaintiff. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) ("[I]t is not appropriate to use procedural devices to undermine laws of which a judge disapproves."). The legally operative question is whether Rule 23(a) and (b) can be satisfied on the facts, not whether a defendant dislikes the economics of class litigation or would prefer that no one bring these claims at all. There is nothing improper about filing a putative class action where the pleadings and pre-suit investigation support class treatment, litigating it as such, and later resolving the named plaintiff's individual claims when case-specific developments, including collectability, financial condition, litigation risk, the availability of remedial relief, and the absence of any class release, make individual resolution sensible. That is this case here.

**C.    Defendant's Fraud Accusations Concern Other Cases and Other Parties, and the Timeline in This Case Refutes Them.**

Defendant devotes much of its opposition to a theory that the Heidarpour Law Firm "manufacture[s]," Oppn., Dkt. No. 23, pages 2, 12, & 14, TCPA claims, citing other litigants, other matters, and other defendants. As Plaintiff explained in his motion, a defendant's wish to

air generalized grievances about unrelated litigation is not a cognizable interest under Rule 41(a)(2), and it is not the plain legal prejudice contemplated by the applicable precedent. But even on its own terms, Defendant's fraud theory fails as to *this* case, because the chronology forecloses it. This Court can thus readily dispense with any question that the dismissal here was brought about by a desire to hide some suspected fraud. The evidence here makes clear this is plainly not the case.

Defendant's narrative requires the Court to infer that Plaintiff and the Heidarpour Law Firm coordinated to manufacture the lead at issue here. But the lead submission on which this case is based *predates* any contact between Plaintiff and the Heidarpour Law Firm. The lead form underlying this action was created on June 4, 2024, as reflected in Exhibit C. Plaintiff did not reach out to the Heidarpour Law Firm for the first time until October 3, 2024, Exhibit D, nearly four months later, and, because Plaintiff receives a high volume of calls, this case was not even signed until the retainer was executed in 2025, well over a year after the lead, Exhibit A. A firm cannot have coordinated the manufacture of a claim months before it had any relationship, let alone any *contact*, with the plaintiff whose claim it is supposed to have manufactured. Defendant offers no evidence of any communication, relationship, or dealings between Plaintiff and the Heidarpour Law Firm predating the lead, because there was none.

That timeline exposes the speculative core of Defendant's theory. To reach Plaintiff, Defendant must leap from the conduct of *other clients* of the Heidarpour Law Firm, to the firm *itself*, and then to *this* Plaintiff and *this* case, without a single fact connecting the supposed scheme to the lead at issue here. Inferences stacked on inferences are not evidence. Even if some other client of the firm once provided inaccurate information, that would say nothing about the legitimacy of this claim, much less justify denying Rule 41 relief or affirmatively denying

certification. The accusation that this claim was "manufactured" is refuted by the very chronology Defendant declined to confront. Oppn., Dkt. No. 23, page 2.

Defendant's own framing confirms the point. Defendant insists its motion is necessary to expose a scheme spanning "hundreds" of cases across the country. Oppn., Dkt. No. 23, page 1. But this Court is presented with one case, the only one before it, and a dismissal that the Plaintiff seeks. Whatever forum Defendant believes is appropriate to investigate the Heidarpour Law Firm writ large, and whatever issue it suspects exists in some other matter, *this* forum and *this* case are not it. The proper disposition of the only case actually before the Court is dismissal of Plaintiff's individual claims with prejudice, instead of wasting judicial resources on discovery directed toward an issue that clearly does not exist or apply in this case.

Defendant's reliance on the *Skopos* deposition does not change the analysis. Plaintiff submitted that testimony to illustrate a single, innocent, real-world explanation for how a third party may enter a number it believes to be fictitious. Defendant's response, that the deposition concerns only one lead form in one case, cuts against Defendant, not Plaintiff, because it underscores that Defendant's sweeping fraud narrative is built from isolated anecdotes about unrelated matters rather than evidence about this one. The chronology here supplies the innocent explanation directly.

**D.    Defendant's Ever-Shifting Theories Confirm That Dismissal With Prejudice Is the Efficient Course.**

The instant motion practice has transformed a simple request for a dismissal with prejudice, which Defendant does not even dispute is proper, into an invitation for the Court to play a game of whack-a-mole as to any one of Defendant's constantly shifting theories of impropriety. Defendant moved to deny certification on the theory that Plaintiff is inadequate because of offensive statements he made online. When Plaintiff explained that such statements

Reply Support MTD                          11

are not *per se* disqualifying under Rule 23(a)(4), Defendant pivoted to a "fraud on the court" theory. Oppn., Dkt. No. 23, page 3. When the chronology above refuted that theory by showing the lead predates any contact between Plaintiff and the Heidarpour Law Firm by months, Defendant shifted again, recasting the very same facts in its opposition as an "extortion" "scheme." Oppn., Dkt. No. 23, page 5. Each time one theory is answered, a new one takes its place.

That is precisely why dismissal with prejudice is the efficient course. The purpose of a Rule 41(a)(2) dismissal is to *end* the litigation, not to commit the Court to chasing a constantly moving target of conspiracy theories that grow more speculative with each iteration on some unapproved basis to award fees. *Heckethorn v. Sunan Corp.*, 992 F.2d 240, 242 (9th Cir. 1993) (holding Rule 41 does not provide authority for sanctioning attorneys or imposing fees). Keeping this case alive would obligate the parties and the Court to litigate an ever-expanding narrative about other clients, other firms, and other cases, an exercise that conserves no one's resources and resolves nothing about the only claim actually before the Court. Dismissal with prejudice stops the cycle. There is little to be gained, and much to be wasted, in litigating against a theory that reinvents itself each time it is refuted. Civil discovery is not an investigative tool to develop evidence of purported misconduct in other cases. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-52 (1978) (discovery, "like all matters of procedure, has ultimate and necessary boundaries," and is confined to matters relevant to the claims and defenses, not a roving license to investigate) (cleaned up). Discovery exists to prove a claim the party already has a reasonable basis to believe is "viable *without discovery*, not to find out if it has any basis for a claim." *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990).

Reply Support MTD                                    12

The rhetoric deserves a word as well. Defendant's brief is saturated with the vocabulary of organized crime. Yet the only coercive demands in this record are Defendant's own. Defendant refused to sign a stipulation dismissing this case *with prejudice*, a disposition that gives Defendant everything a courtroom victory would and which Defendant now concedes is appropriate (eventually), unless Plaintiff also paid Defendant's attorneys' fees, conceded his own inadequacy, and dismissed unrelated lawsuits against other defendants represented by other counsel. Those are demands to which Defendant has no legal entitlement whatsoever. A litigant that conditions its opponent's exit on a list of extralegal concessions is in no position to cast that opponent as the wrongdoer.

And there is a deeper irony in the accusation. If Plaintiff and the Heidarpour Law Firm truly "manufactured" the lead at issue, Defendant has never explained why *Defendant* is the party that placed calls based on what it now contends is a fraudulent lead generated by a third party, a lead neither Plaintiff nor that firm ever submitted, and a lead created on June 4, 2024, months before Plaintiff and the firm had any dealings at all. *See* Oppn., Dkt. No. 23, page 2. This begs the question: why hasn't Defendant sued EverQuote, the purveyor of the lead that it admits is fabricated? The answer should be obvious to the Court: all Defendant does is attempt to manufacture an attorney contrivance. But whatever fraudulent or erroneous lead data exists in Defendant's ecosystem, it is the data *Defendant* purchased and acted upon, having full knowledge of the same. Having been caught making telemarketing calls on a lead it cannot trace to either Plaintiff or his counsel, Defendant now seeks to recast its own reliance on a bad lead as someone else's conspiracy, instead of pursuing the obvious source of the erroneous data: the lead vendor that sold Defendant (likely hundreds) of bad leads. To the extent Defendant believes it

has actually been wronged, there are avenues to pursue those grievances with the proper parties responsible. This case, this motion, and this Court are not among them.

**E.     Defendant Identifies No Plain Legal Prejudice and No Proper Rule 41(a)(2) Condition.**

Stripped of its rhetoric, Defendant's opposition concedes the governing point. It "does not oppose dismissal of Plaintiff's individual claims—only the sequence in which the Court takes up the pending motions and the terms on which it grants dismissal." Oppn., Dkt. No. 23, page 3-4. That concession is fatal. A Rule 41(a)(2) dismissal should be granted unless the defendant shows "plain legal prejudice," *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001), and a dismissal *with prejudice* "only strengthens" the conclusion that no legal prejudice exists, *id.* at 976. Plain legal prejudice does not arise from the prospect of future litigation or a tactical disadvantage. *See Westlands Water Dist. v. United States*, 100 F.3d 94, 96-97 (9th Cir. 1996). Defendant does not dispute that it receives the full benefit of *res judicata*. Its remaining requests, to extract conditions for litigation that will ultimately be dismissed, are not answers to the prejudice standard, they are attempts to evade it.

This Court has decided today that it will resolve both this motion and the Defendant's motion to deny class certification in tandem. (ECF No. 25). Plaintiff's position, to be developed in his forthcoming opposition, is that a dismissal with prejudice would moot the certification dispute. Whether or not the Court addresses Defendant's certification motion in tandem, Defendant still has not identified plain legal prejudice from the requested dismissal or any proper basis for fees, discovery, or other Rule 41 conditions. With the individual claims extinguished and the putative class claims dismissed without prejudice, there is no class to certify or to refuse to certify. *See Diaz v. Tr. Territory of Pac. Islands*, 876 F.2d 1401, 1407 (9th Cir. 1989). Defendant's desire for a ruling that would (allegedly) "inform every one" of Plaintiff's other

cases is a request for exactly the kind of generalized pronouncement about non-parties that Article III and Rule 41(a)(2) do not contemplate. Oppn., Dkt. No. 23, page 10. That is notwithstanding the fact that every one of Plaintiff's cases must be decided, at class certification, on the individual merits of each.

What's more, an individual plaintiff dismissing their claim does not prejudice the other members of a class. Dismissal of the putative class claims without prejudice and without any class release leaves absent putative class members in the same position they occupied before suit. When an individual settlement of a putative class action dismisses the putative class claims without prejudice, "the putative class members will be in the exact same position upon dismissal of the class claims as when the suit was initially filed" and will not be prejudiced by the dismissal. *Hardman v. Tri-Financial, LLC*, 2010 U.S. Dist. LEXIS 9996, at *5 (S.D. Cal. 2010); *see also Lewis v. Vision Value, LLC*, No. 1:11-CV-01055-LJO, 2012 WL 2930867, at *1 (E.D. Cal. July 18, 2012), *report and recommendation adopted*, No. 111-CV-01055(LJO)(BAM), 2012 WL 13189902 (E.D. Cal. Aug. 6, 2012) (approving individual settlement agreements, dismissing plaintiffs' individual claims with prejudice, and dismissing class action claims without prejudice after finding class members would not be prejudiced).

Defendant's fallback, that the Court should condition dismissal on completion of its "already-served" discovery and preservation of a record for some future sanctions proceeding, fails for the reasons stated in Plaintiff's motion. The discovery[3] Defendant demands is extraordinarily invasive, privilege-laden, and is now the subject of a separate motion to quash.

---

[3] Defendant simultaneously states in its Opposition that class certification should be denied on the basis of a "more-than sufficiently developed adequacy record." Defendant contends that the record is "more-than sufficiently developed" while at the same time contending it needs more discovery. The tension is compounded by Defendant's separate motion to extend discovery.

Oppn., Dkt. No. 23, page 10. The discovery includes device inspections, iCloud information, and a subpoena to the Heidarpour Law Firm. Oppn., Dkt. No. 23, page 12. All this discovery is not directed at any element of the individual TCPA claim or Defendant's already-filed motion to deny certification but at Defendant's unproven fraud theory about other cases. Indeed, the Heidarpour Law Firm has moved to quash the subpoena in the United States District Court for the District of Columbia, and that Court has issued an order, attached herein as Exhibit E, staying all deadlines under the subpoena pending decision on the motion.

Rule 41(a)(2) conditions exist to protect a defendant from prejudice *attributable to the dismissal itself*, not to convert a plaintiff's exit into a vehicle for the discovery the defendant wishes it could take in the litigation. The TCPA has no fee-shifting provision favoring prevailing defendants, and the "expense incurred in defending against a lawsuit does not amount to legal prejudice." *Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1282 (9th Cir. 2023). The cases Defendant cites for conditional discovery involved fundamentally different circumstances and do not authorize conscripting a departing plaintiff into an entirely speculative open-ended fraud conspiracy investigation for other cases.

For the same reasons, and as will be explained in opposition to the Defendant's motion to extend discovery deadlines, the Court should stay discovery pending its decision on this motion. A stay here serves the ordinary purpose of avoiding burdensome, potentially privilege-implicating discovery that the dismissal would moot. Plaintiff's requested deferral imposes no prejudice on Defendant. If the Court grants dismissal, the certification motion, which the Court has indicated it will decide in tandem, will be moot. If dismissal is granted on the terms Plaintiff requests, no further merits, class, or third-party discovery should be required in this action. If the

Reply Support MTD                                16

Court denies dismissal or imposes a different sequencing order, discovery can be addressed then under the ordinary rules.

Plaintiff addressed those arguments briefly in his motion only to show that the certification motion supplies no reason to withhold dismissal. Plaintiff will respond fully to Defendant's motion to deny certification, consistent with this Court's order. Plaintiff responds here solely to the contentions Defendant raised in its opposition, its blanket engagement theory, its improper allegation of a Rule 23 "scheme," and its baseless fraud accusations. Oppn., Dkt. No. 23, page 2.

## CONCLUSION

For the foregoing reasons, and those stated in his motion, Plaintiff respectfully requests that the Court grant the motion and dismiss this action with prejudice as to Plaintiff's individual claims, dismiss the putative class claims without prejudice, decline to impose any award of attorneys' fees, costs, or other conditions on Defendant, and stay all discovery pending decision.

RESPECTFULLY SUBMITTED AND DATED this 29th day of June, 2026.

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
OSB No. 243320
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
Telephone: 215-225-5529
a@perronglaw.com

Lead Attorney for Plaintiff and the Proposed Class

Reply Support MTD                    17

**CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Andrew Roman Perrong
Andrew Roman Perrong

**CERTIFICATE OF PAGE COUNT**

This brief complies with the applicable page-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains exactly 17 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Dated: June 29, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.

Reply Support MTD                     18