Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
1669 Edgewood Road, Suite 218
Yardley, PA 19067
Telephone: 215-225-5529

Attorney for Plaintiff and the Proposed Class

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## EUGENE DIVISION

| | | |
|---|---|---|
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated, | : : : | CIVIL ACTION FILE NO. **6:25-cv-01869-MC** |
| | : | |
| | : | OPPOSITION TO DEFENDANT'S |
| Plaintiff, | : | MOTION TO DENY CLASS |
| | : | CERTIFICATION |
| v. | : | |
| | : | TCPA (47 U.S.C. § 227) |
| FREEWAY INSURANCE SERVICES OF | : | |
| AMERICA, LLC, | : | DEMAND FOR JURY TRIAL |
| | : | |
| Defendant. | : | |

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S
### MOTION TO DENY CLASS CERTIFICATION

**TABLE OF CONTENTS**

I. INTRODUCTION ....................................................................................................................... 1

II. BACKGROUND ....................................................................................................................... 2

III. LEGAL STANDARD ............................................................................................................. 6

IV. ARGUMENT ........................................................................................................................... 8

  A. Freeway Fails to Carry Its Burden of Showing That Plaintiff Is an Inadequate Class
  Representative. ............................................................................................................................ 8

    1. Plaintiff's litigation history does not render him inadequate. ........................................... 9

    2. Plaintiff's offensive online commentary is not a Rule 23(a)(4) conflict of interest. ........ 14

    3. Freeway's "manufactured claim" narrative fails on the record of this case. ................... 17

  B. Freeway Fails to Show That Individualized Issues Defeat Typicality or Predominance. .... 19

    1. Plaintiff's number does not make him atypical. Rather, it actually aids classwide proof.
    ............................................................................................................................................... 19

    2. Freeway has produced no admissible classwide consent evidence, and its single
    exemplar demonstrates a uniform defect. ............................................................................. 22

    3. Freeway's standing and arbitration arguments rest on the same unproduced evidence. .. 25

    4. Residential status does not defeat predominance. ........................................................... 27

    5. A class action is superior. ............................................................................................... 29

  C. At Minimum, the Motion Is Premature. ................................................................................ 29

  D. If the Court Grants the Pending Dismissal, This Motion Is Moot. ....................................... 32

V. CONCLUSION ....................................................................................................................... 33

**TABLE OF AUTHORITIES**

**Cases**

*A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, No. 16 C 2513, 2018 WL 488257
    (N.D. Ill. Jan. 18, 2018) ......................................................................................................22

*Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952 (9th Cir. 2013)...................................................8

*Aley v. Lightfire Partners, LLC*, No. 5:22-CV-00330 (AMN/TWD), 2024 WL 4007345
    (N.D.N.Y. Aug. 30, 2024) ..............................................................................................20, 24

*Ambrosio v. Progressive Preferred Ins. Co.*, 154 F.4th 1107 (9th Cir. 2025)........................ 25-26

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013) .....................................8

*Anthony v. Fed. Sav. Bank*, No. 21 C 2509, 2025 WL 3101827 (N.D. Ill. Nov. 6, 2025)....... 24-25

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010).......................................14, 29

*Bates v. Bankers Life & Cas. Co.*, 993 F. Supp. 2d 1318 (D. Or. 2014), aff'd, 716 F. App'x 729
    (9th Cir. 2018)........................................................................................................................8

*Berman v. Freedom Financial Network, LLC*, 400 F. Supp. 3d 964 (N.D. Cal. 2019).2, 18, 21, 23

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) .................................23, 27

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975)..............................................................................8

*Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119 (6th Cir. 2016)..............................22

*Britton v. ServiceLink Field Servs., LLC*, No. 2:18-CV-0041-TOR, 2018 WL 4259239 (E.D. Wash. Sept. 6, 2018) ............................................................................................7, 29, 31

*Burford v. Acct. Practice Sales, Inc.*, 786 F.3d 582 (7th Cir. 2015)...............................................10

*CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721 (7th Cir. 2011)..........................9

*Chennette v. Porch.com, Inc.*, 50 F.4th 1217 (9th Cir. 2022)....................................................27, 29

*Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187 (M.D. Tenn. 2017) ...................................................................................................................................9

*Curry v. Kraft Foods Glob., Inc.*, No. 10 C 1288, 2011 WL 4036129 (N.D. Ill. Sept. 12, 2011).15

*Davidson v. O'Reilly Auto Enters.*, 968 F.3d 955 (9th Cir. 2020)...............................................7, 29

*Deposit Guar. Nat. Bank v. Roper*, 445 U.S. 326 (1980) ...............................................................10

*Diaz v. Tr. Territory of Pac. Islands*, 876 F.2d 1401 (9th Cir. 1989)............................................32

*Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304 (9th Cir. 1977) ........................................ 7, 29-30

*Dougan v. Centerplate, Inc.*, 706 F. Supp. 3d 1025 (S.D. Cal. 2023) ....................................10, 13

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ....................................................19

*Gaertner v. Commemorative Brands, Inc.*, No. 23-CV-02452-SPM, 2026 WL 248292 (S.D. Ill. Jan. 30, 2026)......................................................................................................................15

*Gene & Gene*, 541 F.3d 318 (5th Cir. 2008) .......................................................................... 24-25

*Goetsch v. Shell Oil Co.*, 197 F.R.D. 574 (W.D.N.C. 2000) ..........................................................13

*Granados v. OnPoint Cmty. Credit Union*, No. 3:21-CV-847-SI, 2023 WL 3570039 (D. Or. May 18, 2023) ................................................................................................................................8

*Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983 (9th Cir. 2023) ..........................................................25

*Hill v. Kaiser Found. Health Plan*, No. 3:10-CV-02833-LB, 2015 WL 5138561 (N.D. Cal. Sept. 1, 2015), aff'd sub nom. *Berne v. Kaiser Found. Health Plan Inc.*, 719 F. App'x 651 (9th Cir. 2018) ......................................................................................................................10, 12

*Hossfeld v. Allstate Ins. Co.*, 726 F. Supp. 3d 852 (N.D. Ill. 2024), rev'd on other grounds, No. 25-1518, 2026 WL 1815908 (7th Cir. June 24, 2026)........................................................23

*Human v. Fisher Investments*, 2026 WL 925576 (E.D. Mo. Mar. 31, 2026) ...............................19

*Hunters Cap. LLC v. City of Seattle*, 499 F. Supp. 3d 888 (W.D. Wash. 2020).........................7, 29

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330 (N.D. Ill. 2010) ............13

*In re Computer Memories Sec. Litig.*, 111 F.R.D. 675 (N.D. Cal. 1986) ......................................15

*In re Polaroid ERISA Litigation*, 240 F.R.D. 65 (S.D.N.Y. 2006)......................................... 15-16

*Jackson v. Athena Bitcoin, Inc.*, No. 4:24CV331-MW/MJF, 2025 WL 2237453 (N.D. Fla. June 18, 2025) ..........................................................................................................................28, 30

*Kamm v. Cal. City Dev. Co.*, 509 F.2d 205 (9th Cir. 1975).......................................................6, 29

*Kim v. Allison*, 87 F.4th 994 (9th Cir. 2023).................................................................................8

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) ..................................24, 29

*Krzesniak v. Cendant Corp.*, No. C 05-05156 MEJ, 2007 WL 1795703 (N.D. Cal. June 20, 2007) ..................................................................................................................................13

*Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718 (9th Cir. 2007) ...........................................27

*Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376 (D. Mass. 2024) .........................................24

*Mantolete v. Bolger*, 767 F.2d 1416 (9th Cir. 1985)................................................................. 30-31

*Mattson v. Rocket Mortg., LLC*, No. 3:18-CV-00989-YY, 2024 WL 4794710 (D. Or. Sept. 16, 2024) ................................................................................................................. 28-29

*McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*, No. 3:18-CV-1921-SI, 2020 WL 1970812 (D. Or. Apr. 24, 2020)....................................................................................................8, 32

*Meyer v. Portfolio Recovery Assocs., LLC*, No. 11CV1008 AJB RBB, 2011 WL 11712610 (S.D. Cal. Sept. 14, 2011)......................................................................................................15

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006)........................................................9

*N.L. v. Credit One Bank, N.A.*, 960 F.3d 1164 (9th Cir. 2020)..................................................4, 21

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022).25

*Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081 (9th Cir. 2011) ..........................................................6

*Sapan v. Yelp, Inc.*, No. 3:17-cv-03240-JD, 2021 WL 5302908 (N.D. Cal. Nov. 15, 2021) ......1, 9

*Shelton v. Pargo, Inc.*, 582 F.2d 1298 (4th Cir. 1978).................................................................10

*Tanne v. Autobytel, Inc.*, 226 F.R.D. 659 (C.D. Cal. 2005)..........................................................11

*Thrower v. Citizens Disability, LLC*, No. 20-10285-GAO, 2022 WL 3754737 (D. Mass. Aug. 30, 2022) ...................................................................................................................................24

*Toney v. Quality Res., Inc.*, 323 F.R.D. 567 (N.D. Ill. 2018) .......................................................22

*True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923 (9th Cir. 2018)........... 22, 26-27

*Updike v. Clackamas Cnty.*, No. 3:15-CV-00723-SI, 2015 WL 7722410 (D. Or. Nov. 30, 2015) ..................................................................................................................................32

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017).................... 4, 22, 25-26

*Victorino v. FCA US LLC*, 322 F.R.D. 403 (S.D. Cal. 2017)...........................................................7

*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) ...........................6, 29, 31

*Wakefield v. ViSalus, Inc.*, 51 F.4th 1109 (9th Cir. 2022) ................................................14, 25, 29

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ....................................................................8

*Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000)....................................22

*Weingrad v. DaBella Exteriors, LLC*, No. 3:25-CV-396-SI, 2026 WL 496609 (D. Or. Feb. 23, 2026) ...................................................................................................................................8

*Williams v. PillPack LLC*, 343 F.R.D. 201 (W.D. Wash. 2022) ............................................20, 24

*Wilson v. PacifiCorp*, No. 6:24-cv-01956-AA, ECF No. 47 (D. Or. June 9, 2026)..........1, 5, 9, 12

*Wilson v. Skopos Fin., LLC*, No. 6:25-CV-00376-MC, 2026 WL 810636 (D. Or. Mar. 24, 2026) (McShane, J.) .......................................................................1, 4-5, 9, 18-19, 21, 25-26

*Wilson v. TPH Paralegal Pro. Corp.*, No. 6:25-CV-01703-MTK, 2026 WL 899930 (D. Or. Apr. 1, 2026) ..................................................................................................20, 28

*Wuest v. My Pillow, Inc.*, No. 18-03658 WHA, 2019 WL 3577176 (N.D. Cal. Aug. 6, 2019) ................................................................................................................. 11-12

**Constitutional Provisions**

U.S. Const. art. III ..................................................................................................33

**Rules**

Fed. R. Civ. P. 12 ....................................................................................................7

Fed. R. Civ. P. 23 .................................................1-2, 5-8, 10-11, 13-14, 16-17, 19, 22, 30-31, 33

Fed. R. Civ. P. 41(a)(2) ..........................................................................................32

U.S. Const. art. III ..................................................................................................34

## I. INTRODUCTION

Pursuant to this Court's order to do so, ECF No. 25, Plaintiff responds to Freeway's Motion to Deny Class Certification. Stripped of its rhetoric, the motion rests on two propositions: that Chet Wilson is categorically inadequate to represent any class, and that individualized issues of consent, standing, arbitration, and residential status would predominate at any trial. Neither proposition withstands scrutiny on the record actually before the Court, and Freeway, as the party affirmatively moving to deny certification, bears the burden of proving both.

On adequacy, Freeway's centerpiece is that Plaintiff is allegedly a "professional" litigant who files many cases and settles most of them individually. This Court has already encountered, and rejected, a version of that attack from a different defendant, observing that while "the record suggests that Plaintiff is an inveterate TCPA litigant," such "professional litigant" criticisms are "not uncommon" and "rarely well taken." *Wilson v. Skopos Fin., LLC*, No. 6:25-CV-00376-MC, 2026 WL 810636, at *2 n.4 (D. Or. Mar. 24, 2026) (McShane, J.) (quoting *Sapan v. Yelp, Inc.*, No. 3:17-cv-03240-JD, 2021 WL 5302908, at *4 (N.D. Cal. Nov. 15, 2021)). And Freeway's assertion that Plaintiff has never pursued relief for a class is simply wrong: a motion for preliminary approval of a classwide settlement in a case in which Mr. Wilson is the proposed class representative is pending in this District right now. *Wilson v. PacifiCorp*, No. 6:24-cv-01956-AA, ECF No. 47 (D. Or. June 9, 2026). Freeway's remaining adequacy attacks, Plaintiff's offensive online commentary and a "manufactured claim" narrative, fail under well-settled Rule 23(a)(4) law and on the chronology of this case, respectively.

On predominance and typicality, Freeway's motion suffers from a defect that is fatal on this procedural posture. It asks the Court to prejudge what the classwide evidence will show without producing any of it. The certification question in this case, as in every case under the

Oppn. Mot. Deny. Class Cert.                    1

TCPA, turns on what Freeway's own calling and lead source data reveal. That data might show that Freeway holds purported "consent" leads spanning the entire 541 exchange, consistent with sequential lead generation. It might show an unusually high rate of wrong-number or fictitious leads across Freeway's vendor pipeline, the very pattern documented in *Berman v. Freedom Financial Network, LLC*, 400 F. Supp. 3d 964 (N.D. Cal. 2019). Or it might show a one-off submission or no consent at all. Freeway has produced none of the underlying class consent or calling data, in discovery or with its motion. What it has produced is a single lead form submitted under the name of a person, "Dorianne Plageman," whom Freeway claims its own retired FBI investigator could not locate or confirm exists. A defendant cannot obtain the affirmative denial of class certification where it bears the burden based on speculation about class data it possesses but has not produced.

Finally, and at minimum, the motion is premature. Before Plaintiff's affirmative certification motion was due, Plaintiff elected to seek dismissal. Had the case continued, certification would have been litigated after class discovery, on a developed record, through the ordinary certification process contemplated by the scheduling order in the way Rule 23 contemplates, after class discovery, on a developed record, through ordinary certification briefing. Freeway filed this motion to short-circuit that process, and its own filings refute its premise that the record is complete. Freeway simultaneously tells the Court that the record is "more-than-sufficiently developed," ECF No. 23 at 12, and that it needs sixty more days of discovery, ECF No. 24. The motion should be denied.

## II. BACKGROUND

Plaintiff's cellular telephone number is registered on the National Do Not Call Registry and has been his personal cell phone number, the only number he has, since he acquired it. Compl. ¶¶ 19-20; Wilson Decl. ¶¶ 3-5, 7. Freeway sent telemarketing text message calls to that

Oppn. Mot. Deny. Class Cert.                    2

number on June 5, 6, and 8, 2024, soliciting the purchase of personal automobile insurance. Compl. ¶¶ 21-24.

Freeway claims to attribute those texts to a lead form submitted on June 4, 2024 through usautoinsurancenow.com, a website operated by a third-party lead generator named EverQuote. Barboza Decl., ECF No. 19-2, ¶ 30. The form was not submitted under Plaintiff's name. It was submitted under the name "Dorianne Plageman," with the email address drp.work21@gmail.com, requesting insurance quotes for a 2019 Mitsubishi Outlander that Plaintiff has never owned. *Id.*; Wilson Decl. ¶¶ 11, 13. Plaintiff did not submit that form and did not authorize anyone to submit it. (Wilson Decl. ¶ 12.) Freeway claims it retained a former FBI agent to locate Ms. Plageman, the investigator could not find her through remote investigation, traveled to Orland and Oroville, California, interviewed multiple people associated with nearby addresses, including the manager of a mobile home park where she reportedly lived, and "still could not locate anyone who had heard of her." Watstein Decl., ECF No. 19-1, ¶ 53.

Freeway claims to contract with over a dozen third-party lead vendors, requires each vendor to certify the "authenticity" of every lead and the consent obtained, requires vendors to supply the IP address and browser used where available, and automatically transmits every lead into a single customer relationship management system "where they are stored along with associated consent data and verification tokens." Barboza Decl. ¶¶ 8, 13-15. For EverQuote leads, Freeway will not accept a lead at all unless it carries a "Lead ID" certificate from Jornaya, a third-party verification company. *Id.* ¶¶ 18-20. Every lead thus flows through the same intake pipeline, is subject to the the same certification requirements, is stored with associated data in the same centralized system, and Freeway claims it can attribute every number it dials to a recorded source. Plaintiff served discovery on Freeway seeking, among other things, this data, including

Oppn. Mot. Deny. Class Cert.                    3

its classwide calling records and lead source and consent data. Freeway has not produced that data, did not submit any of it with this motion, and objected to providing class consent and calling data. (Exhibit A, RFPs 16, 17.)

Freeway itself prevented development of the record on which its motion depends. In response to RFP 16, Freeway refused classwide calling data and limited production to Plaintiff's three text message calls. In response to RFP 17, it refused classwide consent materials and limited production to the single lead attributed to Plaintiff's number. In both responses, Freeway characterized classwide discovery as premature because no class had yet been certified. Freeway cannot withhold the class evidence as premature and simultaneously obtain an affirmative denial of certification because that evidence is absent.

This Court is already familiar with the factual dynamics of Plaintiff's number. In *Wilson v. Skopos Fin., LLC*, this Court addressed text message calls sent to the same number after, like here, a third party, "Brian," entered it into a LendingTree loan form. 2026 WL 810636, at *1. Brian testified that he "purposefully entered [the number] . . . believing it was a fake number that belonged to no one," and "provided this number instead of his own to avoid getting 'spam' calls and text messages." *Id.* This Court held that Plaintiff, whose number was on the Registry, who did not consent, and who received more than one message in a twelve-month period, had standing, *id.* at *2-3 (citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)), and that a third party's opt-in at Plaintiff's number "does not constitute 'express invitation or permission' under the statute because [the third party allegedly providing the opt-in] is not the *recipient*." *Skopos* at *3 (citing *N.L. v. Credit One Bank, N.A.*, 960 F.3d 1164, 1167 (9th Cir. 2020)). The Court noted that "[t]he unique factual situation surrounding the text

messages . . . warrants further discussion if Plaintiff seeks class certification," *Skopos* at *1 n.3, a subject Plaintiff addresses directly in Section IV.B.1 below.

Plaintiff has filed a substantial number of TCPA cases, and he does not shy from that fact. The reason is unremarkable. His number, a memorable repeating exchange in Oregon's 541 area code, is precisely the kind of number persons sometimes use online, believing it to be fake, as the third party testified under oath in *Skopos*, and it accordingly draws a high volume of unlawful telemarketing, including at least 300 voicemails left on Mr. Wilson's voicemail to which he did not consent, prior to June 4, 2024. 2026 WL 810636, at *1; Wilson Decl. ¶¶ 18, 19. Each case Plaintiff files turns on what the defendant's data ultimately shows, and the outcomes have varied accordingly. In *Wilson v. PacifiCorp*, the data supported class treatment, and a motion for preliminary approval of a classwide settlement is now pending before Judge Aiken. No. 6:24-cv-01956-AA, ECF No. 47 (D. Or. June 9, 2026). In other cases, discovery revealed that a defendant or a third party used the number as a one-off placeholder, and those cases were resolved individually, without any class release, leaving absent class members exactly where they started. Wilson Decl. ¶¶ 20-23. That is Rule 23 operating as designed, with certification or settlement decisions following what the evidence shows in each case.

The procedural history of the underlying dispute is set out in Plaintiff's pending dismissal motion and reply, ECF Nos. 20, 26, and is summarized briefly here. On May 15, 2026, Plaintiff, who no longer wishes to pursue this action, offered a stipulation of dismissal *with prejudice*. Freeway refused to agree unless Plaintiff also dismissed all of his other, unrelated cases, "conceded" his own inadequacy, and paid Freeway's fees. ECF No. 20 at 3. Plaintiff moved for voluntary dismissal that day, withdrew it so the parties could continue conferring, and renewed it on June 1, 2026 after those efforts failed. ECF No. 20 at 1. On May 16, 2026, one day after

Oppn. Mot. Deny. Class Cert.                    5

Plaintiff made clear he wished to end this case with prejudice, Freeway filed this motion, before the Plaintiff's deadline to move for class certification had even run (and still has not run). ECF No. 19. Plaintiff thus neither missed nor evaded any certification deadline bur rather elected to end the case at a point when the schedule still contemplated class discovery, and expert discovery, well before any certification motion would come due. Freeway thereafter filed an opposition to Plaintiff's dismissal motion while conceding it "does not ultimately oppose dismissal," ECF No. 23 at 3, moved to extend the discovery period by sixty days, ECF No. 24, and received responses and objections to its sweeping discovery, including demands for forensic inspection of Plaintiff's devices and a subpoena to the non-party Heidarpour Law Firm that the District of Columbia has stayed pending a motion to quash. ECF No. 26, Exs. B, E. The Court has indicated it will resolve the dismissal motion and this motion in tandem. ECF No. 25. This opposition, as ordered by the Court, follows.

### III. LEGAL STANDARD

A defendant may file a "preemptive" motion to deny class certification under Rule 23 prior to the filing of an affirmative motion to grant certification. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939 (9th Cir. 2009). But whether a court may properly *rule* on such a motion, and in the defendant's favor, depends on the state of the record and, critically, on whether the plaintiff has been "provided with adequate time in which to conduct discovery related to the question of class certification." *Id.* at 942. Like the Supreme Court, the Ninth Circuit has long recognized that "the propriety of a class action cannot be determined in some cases without discovery," and that to "deny discovery in [such] case[s] would be an abuse of discretion." *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975); *see also Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1093 (9th Cir. 2011) (court abused discretion when it failed

Oppn. Mot. Deny. Class Cert.                6

to set deadline for motions for class certification); *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) ("the better and more advisable practice" is to afford litigants an opportunity to present evidence on certification, which requires "enough discovery to obtain the material"). Striking or denying plausible class claims on their face before the plaintiff has had the opportunity to present a certification motion on a developed record is an abuse of discretion. *See Davidson v. O'Reilly Auto Enters.*, 968 F.3d 955, 963-64 (9th Cir. 2020).

Consistent with that framework, when a preemptive motion arrives before the close of class discovery, as here, courts apply a standard far more demanding of the movant than the standard governing an ordinary certification motion. Where the record is undeveloped, courts evaluate the class allegations under a Rule 12-like standard, accepting them as true and asking whether certification is plausible; the defendant accordingly "faces a more difficult and nuanced burden of proof than if it ma[de] the motion after the close of discovery." *Britton v. ServiceLink Field Servs., LLC*, No. 2:18-CV-0041-TOR, 2018 WL 4259239, at *3-*4 (E.D. Wash. Sept. 6, 2018) (denying preemptive motion as premature where the court could "only speculate" how many class members the claimed individualized issues would affect). And where it is plausible that the plaintiff, after discovery, could make a *prima facie* showing of Rule 23's prerequisites, the proper course is to deny the motion without prejudice pending discovery. *Hunters Cap. LLC v. City of Seattle*, 499 F. Supp. 3d 888, 907 (W.D. Wash. 2020); *see also Victorino v. FCA US LLC*, 322 F.R.D. 403, 407 (S.D. Cal. 2017) (denying preemptive motion to deny certification based on alleged inadequacy of counsel premised on counsel's failure to tender a settlement offer and deferring full Rule 23 analysis to plaintiff's certification motion).

Courts in this District apply similar principles, holding that a defendant affirmatively moving against certification before the close of class discovery "must bear the burden of proving

that the class is *not* certifiable." *Bates v. Bankers Life & Cas. Co.*, 993 F. Supp. 2d 1318, 1341 (D. Or. 2014), *aff'd*, 716 F. App'x 729 (9th Cir. 2018) (emphasis added); *accord Weingrad v. DaBella Exteriors, LLC*, No. 3:25-CV-396-SI, 2026 WL 496609, at *7 (D. Or. Feb. 23, 2026); *Granados v. OnPoint Cmty. Credit Union*, No. 3:21-CV-847-SI, 2023 WL 3570039, at *2 (D. Or. May 18, 2023). "District courts . . . have greater discretion to certify a class than to deny certification." *McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*, No. 3:18-CV-1921-SI, 2020 WL 1970812, at *1 (D. Or. Apr. 24, 2020) (citing *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956 (9th Cir. 2013)).

Any "rigorous analysis," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011), the Court undertakes, moreover, "grants courts no license to engage in free-ranging merits inquiries at the certification stage," and merits questions may be considered "only to the extent" they bear on the Rule 23 prerequisites. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) (cleaned up). Rule 23 asks whether common questions will generate common answers, not which side those answers will favor. *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975).

## IV. ARGUMENT

**A. Freeway Fails to Carry Its Burden of Showing That Plaintiff Is an Inadequate Class Representative.**

Adequacy under Rule 23(a)(4) asks two questions, whether "the named plaintiffs and their counsel have any conflicts of interest with other class members," and whether they will "prosecute the action vigorously on behalf of the class." *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023). Attacks on a representative's character or credibility defeat adequacy only upon "admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims," and courts must not "derail legitimate class actions by conjuring up trivial credibility problems."

*CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011). Freeway's

adequacy case has three components. None carries its burden.

### 1. Plaintiff's litigation history does not render him inadequate.

Freeway leads with the volume of Plaintiff's filings and the fact that he has resolved

some of his cases individually. This Court has seen this argument before, from a different

defendant attacking the same plaintiff, and observed that although "the record suggests that

Plaintiff is an inveterate TCPA litigant," such "professional litigant" criticisms are "not

uncommon" and "rarely well taken." *Skopos*, 2026 WL 810636, at *2 n.4 (quoting *Sapan*, 2021

WL 5302908, at *4). That observation reflects well-settled law. "[N]othing in the Constitution,

though, requires a plaintiff to be a naïf. Litigation is not college athletics: there is no 'amateurs

only' rule." *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1195

(M.D. Tenn. 2017). No decision supports "the proposition that someone whose rights have been

violated by 50 different persons may sue only a subset of the offenders." *Murray v. GMAC

Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) (Easterbrook, J.). "Professional plaintiff" is not

"a dirty word." *Id.*

Plaintiff is mindful that the number of his cases pending in this District places real

demands on judicial resources, and he does not treat that concern lightly. But the answer to it is

not forcing a certification ruling in a case Plaintiff elected to dismiss before his affirmative

certification motion was due. Defendant's motion and request for a certification ruling are

untethered from the necessary record to even begin to consider the issue. Plaintiff's decision on

how to pursue his cases turns on what a particular defendant's calling and lead data show on a

class basis. Where the data supports class treatment, Plaintiff has pursued it, as evidenced by the

fact that a motion for preliminary approval of a classwide settlement, negotiated for the benefit

of absent class members, is pending in this District now. *PacifiCorp*, ECF No. 47.

Oppn. Mot. Deny. Class Cert.                    9

That fact alone refutes Freeway's charge that Plaintiff files class actions with no intention of ever pursuing class relief. Where, by contrast, discovery reveals, for example, a one-off website submission, class treatment makes no sense, and those cases resolved individually, without any class release, leaving absent class members precisely where they began. A voluntary individual resolution or dismissal "says nothing definitive about [a party's] view of the merits or about its reasons for filing," *Burford v. Acct. Practice Sales, Inc.*, 786 F.3d 582, 589 (7th Cir. 2015), and the Supreme Court has held that a named plaintiff's interest in spreading litigation costs through Rule 23 is not misconduct but "a central concept of Rule 23." *Deposit Guar. Nat. Bank v. Roper*, 445 U.S. 326, 338 n.9 (1980); *see also Dougan v. Centerplate, Inc.*, 706 F. Supp. 3d 1025, 1027 (S.D. Cal. 2023) (the 2003 amendments to Rule 23(e) "take courts out of the business of reviewing pre-certification voluntary dismissals" because, without a class release, they prejudice no absent class member); *Hill v. Kaiser Found. Health Plan*, No. 3:10-CV-02833-LB, 2015 WL 5138561, at *5 (N.D. Cal. Sept. 1, 2015), *aff'd sub nom. Berne v. Kaiser Found. Health Plan Inc.*, 719 F. App'x 651 (9th Cir. 2018). There is no evidence that Plaintiff has ever released or impaired a single absent class member's claim, i.e., that he has used the device "for unfair personal aggrandizement in the settlement, with prejudice to absent putative class members." *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1314 (4th Cir. 1978). Indeed, Plaintiff's request to dismiss preceded any affirmative certification motion or deadline, and as such, there was no impending certification ruling to evade. And Mr. Wilson confirms that he has not done so and has reaffirmed his commitment to representing all potential class members in his cases fairly and equally. (Wilson Decl. ¶¶ 25-33.)

Freeway's related suggestion, that Plaintiff does not grasp what class representation entails, fares no better on this record. Adequacy asks whether the representative understands and

will discharge the role, not whether he can recite Rule 23. *See Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 667 (C.D. Cal. 2005) (a representative's obligation is to be sufficiently interested in the outcome of the case to ensure vigorous advocacy, not to master the governing law). Plaintiff has sworn and affirms in plain terms that he understands his duty as a fiduciary runs to absent class members and not merely to himself, that he may not elevate his own compensation over the class's recovery, which his fee cap makes structurally impossible in any event, and that any class resolution would be subject to court approval and must be structured in the class's best interests. (Wilson Decl. ¶ 31.) That is precisely the understanding Rule 23(a)(4) requires, and it is more than the plaintiffs offered in the cases Freeway cites.

*Wuest v. My Pillow, Inc.*, No. 18-03658 WHA, 2019 WL 3577176 (N.D. Cal. Aug. 6, 2019), the sole decision Freeway offers, does not bridge the gap. *Wuest* was decided at class certification, on a full record, with the burden properly on the plaintiff, and the plaintiff there had *manufactured* his claims by repeatedly placing calls to the defendant's call center in the hope of being recorded in violation of state privacy law. *Id.* at *1. Moreover, the *My Pillow* case was not the first instance in which the plaintiff there had manufactured claims; Mr. Wuest had a history of filing lawsuits for the same thing after he had inflicted his own injury. *Id.* at *3. Thereafter, with full knowledge of his own underlying conduct, Mr. Wuest had his attorneys file those cases as class actions, and then personally recovered, on at least one occasion, a settlement for *double* his statutory maximum amount. *Id.* at *3. By contrast, Mr. Wilson has declared that he has never recovered more than his statutory maximum damages in *any* of his settlements, including class settlements. (Wilson Decl. ¶ 22.)

The attorney's fee discussion in *Wuest* is likewise of no help to Freeway, because the vice the *Wuest* court identified was not that counsel was compensated, but that counsel was

compensated while "a significant benefit . . . conferred on the general public or a large class of persons," was entirely absent, not least of which because the plaintiff there manufactured his claims. *Id.* at *4. Because Mr. Wuest had inflicted his own injury and abandoned a class he never intended to certify, "no significant benefit was ever conferred on the general public," "[t]he only beneficiary was Wuest himself," and "Wuest and his counsel got it all." 2019 WL 3577176, at *3-4. Neither feature of that arrangement is present here. Mr. Wilson has never recovered more than his statutory maximum damages, and his retainer caps him there, so no "premium" for his class claims, *id.* at *4, has ever been diverted to him. And his counsel are compensated because they actually do the work of litigating genuine, unmanufactured claims authorized by Congress and recognized by numerous courts as appropriate for class treatment. Counsel investigate the defendant's lead sources, take discovery that reveals whether the calling conduct is systemic, and litigate the cases through to whatever disposition the evidence supports. Parties are, of course, free to negotiate a fee component as part of an individual resolution. *See Hill*, 2015 WL 5138561, at *5-*7. The *Wuest* order faulted not the existence of a fee but the absence of any benefit to the class or the public that could justify one.

More fundamentally, the "significant benefit" that was missing in Wuest is present in Mr. Wilson's cases, even when no class is ultimately certified. A non-manufactured TCPA suit tests, through discovery of the defendant's own calling records, whether the conduct behind the calls is systemic and lays bare the adequacy of a defendant's TCPA compliance policies and procedures that telemarketers are required to maintain by law. Where the data has shown a case is appropriate for class treatment, Mr. Wilson has pursued class relief, as the pending classwide settlement in PacifiCorp demonstrates. Where the data has shown the case is not appropriate for such treatment, Mr. Wilson has either dismissed it or sought to resolve it individually, without

releasing or compromising any absent class member's claims. Importantly, putative class members still benefit from this arrangement, because a defendant confronted with the deficiencies in its own records typically agrees to change its practices, for example, by agreeing to verify telephone numbers through a two-factor double opt-in process before dialing them. Resolving class cases individually after discovery reveals that class treatment is inappropriate, while leaving absent members unprejudiced and better protected going forward, reflects respect for the Court and its resources and is conduct of a different ilk entirely from that of a plaintiff whose "'representative'" status was a "fictive concept" from the outset. *See In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 343 (N.D. Ill. 2010) ("Although a representative plaintiff need not immerse himself in the case, [he] must have *some* commitment to the case, so that the 'representative' in a class action is not a fictive concept.").

Finally, to the extent Freeway's concern is the calibration of counsel's compensation to the results obtained, that is a matter existing fee jurisprudence already polices, without any need to disqualify the plaintiff. *See Dougan*, 706 F. Supp. 3d at 1027. And to the extent the concern is leverage, the supposition that a representative may use a certified class to leverage a larger settlement of his individual claims, the answer is structural. Rule 23(b)(3) opt-out rights and the court's continuing supervisory and decertification powers protect absent class members against any settlement unfavorable to them. *Krzesniak v. Cendant Corp.*, No. C 05-05156 MEJ, 2007 WL 1795703, at *10 (N.D. Cal. June 20, 2007). *Krzesniak* also confirms what an inadequacy showing in this respect *actually* requires, evidence that the plaintiff "failed to zealously pursue class actions in prior cases," *id.* at *10 (distinguishing *Goetsch v. Shell Oil Co.*, 197 F.R.D. 574, 579 (W.D.N.C. 2000)). The record here is the opposite. Where the evidence supports a class, Mr. Wilson is zealously pursuing a class resolution, as evidenced through his multiple pending cases

Oppn. Mot. Deny. Class Cert.                    13

in this District alone, and as further evidenced through a motion for preliminary approval of the resulting classwide settlement also pending in this District now.

Mr. Wilson is a call recipient. His number is on the Do Not Call Registry, and companies call it anyway, on Freeway's own account, because third parties keep entering it into lead forms. And the operative Fee Agreement in this case, produced in full, expressly caps Plaintiff's recovery at his per-violation statutory damages, obligates him to "represent the interests of all members of the class," and provides that any resolution "is subject to court approval and must be structured in the best interest of the class as a whole." ECF No. 26, Ex. A at 3. More to the point, the undisputed economics of this case defeat Freeway's own argument. Freeway accuses Plaintiff of running a sue-and-settle operation in a case in which Plaintiff *declined* an early individual offer that Freeway itself valued at five times his best-day recovery, ECF No. 26 at 8 n.2, in which the parties never reached any individual resolution, and in which Plaintiff now asks to end his claims with prejudice and receive nothing for them. That conduct is irreconcilable with Freeway's theory that Plaintiff filed this case to receive an individual recovery.

To the extent Freeway's real complaint is that class litigation creates settlement pressure, the Ninth Circuit has rejected that argument: "[t]o limit class availability merely on the basis of 'enormous' potential liability that Congress explicitly provided for would subvert congressional intent." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 723 (9th Cir. 2010); *see Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1119-20 (9th Cir. 2022) (largely affirming nearly billion dollar TCPA class jury verdict).

**2. Plaintiff's offensive online commentary is not a Rule 23(a)(4) conflict of interest.**

Freeway next argues that Plaintiff's social media commentary disqualifies him from serving as a fiduciary for any class. To be clear, neither Plaintiff's counsel nor this brief

Oppn. Mot. Deny. Class Cert.                    14

condones the rhetoric Freeway describes, and Mr. Wilson addresses it directly in his accompanying declaration. (Wilson Decl. ¶¶ 27-33.) But the adequacy inquiry "is not an 'examination into the representatives' moral righteousness." *Curry v. Kraft Foods Glob., Inc.*, No. 10 C 1288, 2011 WL 4036129, at *4 (N.D. Ill. Sept. 12, 2011) (cleaned up). It "relates to any improper or questionable conduct arising out of or touching up on [sic] the very prosecution of the lawsuit." *Id.* at *4; *see also Meyer v. Portfolio Recovery Assocs., LLC*, No. 11CV1008 AJB RBB, 2011 WL 11712610, at *4 (S.D. Cal. Sept. 14, 2011) ("[c]haracter attacks" against proposed class representatives are "generally not . . . sympathetically received" absent "a showing of a conflict of interest") (quoting *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 682 (N.D. Cal. 1986)).

In re Polaroid ERISA Litigation *is directly on point. There, the defendants argued a proposed representative was inadequate because he had made offensive statements about minorities, women, and Jewish people online, and had allegedly deleted them days before his deposition. 240 F.R.D. 65, 77 (S.D.N.Y. 2006). As a result, the defendant argued that the plaintiff could not adequately represent members of these groups. *Id.* The court agreed the remarks were "repugnant" and "bigoted," yet held him adequate, because there was no evidence he had ever acted on those views in his actual dealings and his interests remained "aligned with the other members of the class in seeking to maximize recovery." *Id.*; *see also Gaertner v. Commemorative Brands, Inc.*, No. 23-CV-02452-SPM, 2026 WL 248292, at *12 (S.D. Ill. Jan. 30, 2026) ("Generally, disqualification is only necessary where the proposed representative displayed behavior directly indicative of dishonesty. Disqualification is not triggered by general moral shortcomings."); *Curry*, 2011 WL 4036129, at *4 & n.1 (representatives still adequate

despite purchasing drugs on defendant's property, lying on job applications, or being disciplined for violence at work).

Plaintiff anticipates that Freeway will attempt to escape *Polaroid* by characterizing Plaintiff's statements as not merely offensive but violent. Plaintiff disputes that characterization, Wilson Decl. ¶ 29, but for Rule 23(a)(4) purposes it is a distinction without a difference, because the characterization does not change the question the rule asks, whether *this* plaintiff's views will translate into conduct that disadvantages absent class members in *this* litigation. The answer, on this record, is no, for the same reasons it was no in *Polaroid*. The class is defined by objective facts, registration on the National Do Not Call Registry and receipt of Freeway's telemarketing calls, and every class member's claim rises or falls on the same questions about Freeway's conduct and records. Freeway identifies no litigation decision Plaintiff has made or could make that would treat any class member differently from any other, no divergence between his statutory claim and theirs, and there is no respect in which his recovery could come at their expense, particularly where his retainer expressly limits him to recovering only his statutory damages. As a result, Mr. Wilson's financial interest in maximizing the common recovery is identical to the class's.

To be clear, Plaintiff does not defend the language and understands why the statements are deeply offensive. But the Rule 23 question is not whether the Court approves of his speech. It is whether that speech creates an actual conflict with absent class members or impairs his willingness and ability to prosecute their common claims. And, as Mr. Wilson attests, his online commentary, which he intended to be private and not publicly accessible, reflects his personal political views, views he understands many find deeply offensive, and those views have not

Oppn. Mot. Deny. Class Cert.                    16

factored, and will not factor, into any decision he makes in prosecuting claims for the benefit of a class. (Wilson Decl. ¶¶ 30-32.)

Mr. Wilson has confirmed that he is committed to representing all potential class members in all his class actions fairly and equally, expressly including Jewish class members, Black class members, and LGBT class members. (Wilson Decl. ¶ 32.) Freeway identifies no litigation decision in which Plaintiff treated any class member differently because of race, religion, sexual orientation, or gender identity. What Freeway proposes instead is an ideological audit of a proposed representative's unrelated political internet speech. Rule 23(a)(4) does not conduct such audits, and Freeway cites no case in which a representative's out-of-court commentary, standing alone and untethered to any conduct in the litigation, was held to defeat adequacy.

### 3. Freeway's "manufactured claim" narrative fails on the record of this case.

Freeway's remaining argument is that Plaintiff and/or the referring law firm in this case, the Heidarpour Law Firm, manufacture claims. Whatever may be said of Freeway's suspicions about other plaintiffs and other lawsuits, the record of *this* case answers the accusation, as opposed to the speculative and hearsay-laden declarations adduced by Freeway. The lead on which Freeway sent text message calls to Plaintiff was submitted on June 4, 2024. Barboza Decl. ¶ 30. Plaintiff had no contact of any kind with the Heidarpour Law Firm until October 3, 2024, four months later, and did not retain counsel with respect to this claim until 2025. ECF No. 26, Exs. A, B, D; Wilson Decl. ¶¶ 16-17. A consent submission cannot have been "manufactured" in coordination with a law firm that had no relationship with the plaintiff until months after the submission was made. Freeway identifies no document, communication, or witness connecting Plaintiff or the Heidarpour Law Firm to the June 4, 2024 submission.

What the record does show, on its face, is a certifiable problem with Freeway's lead source. The submission bears the name of a person Freeway's own investigator could not locate or confirm exists, an email address and vehicle with no connection to Plaintiff, and it nevertheless passed EverQuote's intake, Jornaya's "verification," and Freeway's vendor "authenticity" certification before Freeway acted on it. Watstein Decl. ¶ 53; Barboza Decl. ¶¶ 13, 18-20, 30-31. Confronted with a facially unreliable lead, Plaintiff proposed to amend his complaint to add the lead source (which also called Plaintiff) itself as a defendant. Freeway's response during the meet and confer was to oppose that course and bring up the Plaintiff's online postings instead. Watstein Decl. ¶¶ 55-56. Moreover, Freeway has not sued EverQuote.

The most natural explanations for the "consent" Freeway is alleged to possess are the ordinary ones this Court has already seen under oath, such as a third party entering the Plaintiff's number believing it belonged to no one, to *avoid* calls, exactly as Brian testified in *Skopos*, 2026 WL 810636, at *1, or the lead was generated somewhere in the vendor chain without any genuine consumer behind it, exactly as the record showed in *Berman*, where the defendants' databases were riddled with fictitious registrations, including the "evidently fictional" registrant on whose purported consent the defendants had relied to text the plaintiff. 400 F. Supp. 3d at 977-78, 983-84 ("Hundreds of thousands of the entries on the lead lists produced by Fluent and Drips are either missing name and address data altogether or filled with obviously erroneous entries. . . . Plaintiff's expert also identified well over 100,000 duplicate records in which entries created months apart repeated the exact same registration information—including typos, misspellings, nonsense characters and the like—yet indicated they were from a different IP address or different city."). Neither explanation involves Plaintiff or bears on his adequacy.

Freeway's citation to *Human v. Fisher Investments* only highlights the difference between factual findings on a complete discovery record there and the unsupported accusations Freeway makes against the Plaintiff and the Heidarpour Law Firm here. In *Human*, a court made findings of fabrication against a plaintiff after full litigation of the issue, and after the plaintiff, among other things, destroyed his computer two days before his deposition. 2026 WL 925576, at *9 (E.D. Mo. Mar. 31, 2026). Here, the only judicial findings that exist concerning Mr. Wilson or his phone number are this Court's own in *Skopos*, and they describe an erroneous third-party submission, not some fraudulent submission scheme.

**B. Freeway Fails to Show That Individualized Issues Defeat Typicality or Predominance.**

Freeway's Rule 23(b)(3) argument proceeds from the assumption that its consent records are valid and admissible, such that liability would require mini-trials of each class member. Every step of that assumption is unsupported on this record, and the answer to each of Freeway's predominance theories lies in classwide data that Freeway possesses and has not produced.

**1. Plaintiff's number does not make him atypical. Rather, it actually aids classwide proof.**

In *Skopos*, this Court observed that "[t]he unique factual situation surrounding the text messages that Defendant sent to Plaintiff's phone number warrants further discussion if Plaintiff seeks class certification." 2026 WL 810636, at *1 n.3. Plaintiff welcomes that discussion because the premise that his number renders him atypical does not survive analysis.

Start with what typicality requires, "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). Plaintiff's injury is the class injury. His number on the DNC registry received Freeway's telemarketing calls, placed by relying on the

same centralized lead generation, intake, and dialing processes Freeway used for everyone else. Freeway's ability to prove consent will depend on the strength of leads, including the Plaintiff's, that Freeway's own records attribute to someone other than the subscriber. That Plaintiff did not himself submit the lead form is not a "unique defense." Rather, it is the *defining characteristic* of the claim, shared by every class member whose number was entered by a third party, a bot, or no one at all. *See Aley v. Lightfire Partners, LLC*, No. 5:22-CV-00330 (AMN/TWD), 2024 WL 4007345, at *4 (N.D.N.Y. Aug. 30, 2024) (named plaintiff's denial of visiting the consent website did not defeat typicality, in part because it was likely that other class members "may similarly claim they never visited" it); *Williams v. PillPack LLC*, 343 F.R.D. 201, 213 (W.D. Wash. 2022) (certifying where named plaintiff denied submitting the opt-in attributed to him).

Judge Kasubhai recently rejected precisely the argument Freeway makes here, on the same number. In that case, as here, Plaintiff makes no secret that he chose a distinctive number, years before the litigation at issue, Freeway's purported consent, or ever filing a lawsuit under the TCPA. The Court held, "Although Plaintiff may be uniquely situated based on his particular phone number, that does not mean that his claim . . . is not typical of the class," and the Court identified "no case where an individual's number being unique or posted online equated to consent to being called under the TCPA or otherwise created such distinct legal questions that the individual's claims were not typical of a class." *Wilson v. TPH Paralegal Pro. Corp.*, No. 6:25-CV-01703-MTK, 2026 WL 899930, at *7 (D. Or. Apr. 1, 2026). Judge Kasubhai was unable to find any case where an individual's number being unique either equated to consent or destroyed typicality; choosing a memorable number is not consent to be telemarketed any more than registration on the Do Not Call Registry is.

Nor does the presence of a putative opt-in itself distinguish Plaintiff from the class, since this Court has already held, applying *N.L. by Lemos*, that consent given by someone other than the recipient is not the recipient's "express invitation or permission," *Skopos*, 2026 WL 810636, at *2-*3, a legal ruling that applies identically to every class member whose number was submitted by someone else.

Whether Plaintiff's situation is typical of the class Freeway called is, moreover, an empirical question, and the answer lies in Freeway's own data, which is not before this Court. A number of certifiable scenarios are possible, and each would be testable from records Freeway possesses. For example, the data might show that Freeway holds purported "consent" leads for numbers spanning the 541 exchange, consistent with sequential or bulk lead generation, in which case Plaintiff, the last number in the sequence, is not merely typical but emblematic. The data might show an unusually high rate of wrong number complaints, do not call requests, or facially fictitious registrants, the precise pattern the *Berman* record revealed, in which hundreds of thousands of leads were submitted with nonsense names and addresses, duplicate registrations repeating identical typos from supposedly "different" users, bot activity, abnormally high call rates, and high percentages of recipients reporting that the name on the lead did not match the number called. 400 F. Supp. 3d at 977-78, 983-84. Or the data might show a genuine one-off.

Plaintiff does not claim to know which of these the data will reveal, and that is exactly the point: neither does Freeway, or if it does, it has elected not to show the Court and instead elected to rest its entire motion on rank speculation. In fact, Plaintiff's distinctive number *assists* this inquiry rather than complicating it, because problematic calling patterns, sequential dialing, and bulk fictitious leads, surface readily and are easily distinguished from a genuine one-off anomaly around a number that no genuine consumer plausibly holds out. Mr. Wilson's number

makes him *better* positioned than most consumers to detect and police unlawful calling practices at scale because his number allows him to identify problematic patterns in the data. It does not estrange him from the class those practices injure, a class that Freeway has refused to provide consent evidence for.

**2. Freeway has produced no admissible classwide consent evidence, and its single exemplar demonstrates a uniform defect.**

Consent under the TCPA is Freeway's *affirmative defense*, on which Freeway bears the burden of proof. *Van Patten*, 847 F.3d at 1044. A defendant therefore cannot defeat predominance by invoking the *possibility* of consent; it must instead come forward with *actual evidence* and show that individualized issues within that evidence would overwhelm the common ones. *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 932 (9th Cir. 2018)

"The mere mention of a defense is not enough to defeat the predominance requirement of Rule 23(b)(3)," *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016), and a court may not allow "speculation and surmise to tip the decisional scales in a class certification ruling." *True Health*, 896 F.3d at 932 (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000)); *see also Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 587-88 (N.D. Ill. 2018) (rejecting the notion that a speculative consent defense as to any class member is insufficient because it allows litigants improperly "wide latitude to inject frivolous issues to bolster or undermine a finding of predominance"); *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, No. 16 C 2513, 2018 WL 488257, at *4 (N.D. Ill. Jan. 18, 2018) ("the very specter of *possible* consent" does not demand individualized inquiry).

Freeway's showing consists of one lead, for one number, and even that consists of a chain of unauthenticated third-party records consisting of hearsay-within-hearsay: EverQuote's website logs, as vouched for by Jornaya's certificate, as recited by a declarant from Freeway's

corporate parent who witnessed none of it. Neither EverQuote nor Jornaya have provided testimony or authenticated records in this case, and courts have held that a defendant cannot establish consent through third-party lead records for which no evidentiary foundation has been laid. *Hossfeld v. Allstate Ins. Co.*, 726 F. Supp. 3d 852, 873 (N.D. Ill. 2024), *rev'd on other grounds*, No. 25-1518, 2026 WL 1815908 (7th Cir. June 24, 2026). Whether Freeway's vendor records are admissible at all is itself a *common* evidentiary question the Court would resolve once, for the class. For every other class member, Freeway has produced nothing: no leads, no disclosures, no terms, and no data, to allow the Plaintiff to make a fair showing that common issues predominate. A defendant cannot obtain the affirmative denial of certification, where it bears the burden of demonstrating that individualized issues of consent would predominate as to each class member, without evidence for that defense for any class member.

And the one exemplar Freeway did produce cuts against it. The "Dorianne Plageman" lead is attributed to a person Freeway's own investigator could not confirm even exists, yet it sailed through every layer of Freeway's uniform verification architecture. *Berman* is the best illustration of why that matters. There, the defendants likewise insisted their lead records reflected consent, until the lead database was produced and analyzed, revealing systemic unreliability, including registrations attributed to evidently fictional persons, entries which bore indicia they were generated by automated processes rather than human users, hundreds of thousands of nonsense registrations treated as valid, and no identity verification of any kind before dialing. 400 F. Supp. 3d at 977-78, 983-84. The court held that reliance on such records could not carry the defendants' consent burden and that the evidence created triable issues even as to willfulness. *Id.* at 983-84; *see also Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856-58 (9th Cir. 2022) (holding, on the same lead generator's webpages, that the screen designs

failed to create a legally enforceable agreement, a uniform defect across every user of those pages, and thus were insufficient to establish consent to arbitrate).

Whether Freeway's lead generation pipeline exhibits the same systemic defects is a common question *par excellence*, answerable in one stroke from Freeway's centralized databases and putative consent records. Indeed, courts across the country have certified TCPA classes on precisely this posture, where the defendant has claimed leads generated "consent" for everyone and the same uniform legal or evidentiary defect infects that claimed "consent" classwide. *See Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376, 397 (D. Mass. 2024); *Aley*, 2024 WL 4007345, at *4-*5; *Williams*, 343 F.R.D. at 208, 213; *Thrower v. Citizens Disability, LLC*, No. 20-10285-GAO, 2022 WL 3754737, at *5 (D. Mass. Aug. 30, 2022) (despite the presence of "individualized factual determinations" of consent, those determinations "[could] be made through a simple analysis of [defendant's] own internal data"); *Anthony v. Fed. Sav. Bank*, No. 21 C 2509, 2025 WL 3101827, at *8 (N.D. Ill. Nov. 6, 2025) ("Standing, consent, and vicarious liability are all common questions of law or fact."). Because liability is determinable from the defendant's own records, including when cross-referenced with the Registry, such classes are exceptionally well suited and appropriate "for class-wide adjudication." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 655 (4th Cir. 2019).

Freeway's contrary authorities involve what this case does not, genuinely heterogeneous consent pathways with no unifying process to evaluate. Of course, as noted, Freeway has not produced putative class consent data, so denying certification now would be inappropriate since it would be done on an insufficient evidentiary record of what the data purports to show instead of what it actually shows. But even if Freeway did adduce evidence of putative consent, there is no indication that that data would be so heterogeneous as to preclude certification. *Gene & Gene*,

for example, turned on putative consent records accumulated "over time and from a variety of sources" with no record of origin. 541 F.3d 318, 326, 328 (5th Cir. 2008). Freeway, by contrast, describes a single funnel where every lead arrives from a recorded vendor, is tagged with its source, IP address, and verification token, and then loaded into one CRM. Barboza Decl. ¶¶ 13-15. Under Freeway's own account, the origin of every class member's number is recorded and attributable, which is exactly the uniform architecture distinguishing every case Freeway cites.

**3. Freeway's standing and arbitration arguments rest on the same unproduced evidence.**

Freeway's standing and arbitration theories are its consent argument in different clothing, and they fail together. On standing, this Court has already held, on materially identical facts involving the same plaintiff and the same number, that receipt of more than one unconsented text to a DNC-registered number is a concrete injury and that a TCPA plaintiff "need not allege any *additional* harm beyond the one Congress has identified." *Skopos*, 2026 WL 810636, at *2 (quoting *Van Patten*, 847 F.3d at 1043); *see also Wakefield*, 51 F.4th at 1118; *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023). A class defined by Registry status plus receipt of Freeway's texts is comprised of people whose contact was by definition unwanted, *see Anthony*, 2025 WL 3101827, at *10, and Freeway's premise that class members "requested" its texts simply restates a speculative consent defense it has not evidenced. The Eleventh Circuit's decision in *Cordoba* does not displace Ninth Circuit law, under which standing questions bear on certification only through the ordinary predominance analysis. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 680-82 (9th Cir. 2022). The law of the Ninth Circuit is that a single unwanted call is sufficient to create a concrete injury.

*Ambrosio v. Progressive Preferred Ins. Co.*, 154 F.4th 1107 (9th Cir. 2025), on which Freeway leans for a due process right to individualized adjudication, only confirms the defect in

Freeway's motion. Ambrosio arrived in the opposite posture. The plaintiffs there *moved for certification*, bore the burden of proving predominance on a complete class discovery record, and the Ninth Circuit reviewed the resulting denial for abuse of discretion. *Id.* at 1109-10. Importantly, the individualized issues in *Ambrosio* counted against certification only because the defendant had "provide[d] sufficient evidence that the individualized issues bar recovery on at least some claims." *Id.* at 1112.

In *Ambrosio*, Progressive came forward with *actual record evidence* that identified class members had received more than they were owed, and the due process observation Freeway quotes was made only with respect to a defense *supported by that evidence*. *Id.* Ambrosio thus restates the rule of *True Health*: a defendant must provide evidence of its individualized defenses, because "speculation and surmise" cannot tip the certification scales. 896 F.3d at 931-32. Apart from the defective "evidence" Freeway proffers, Freeway has produced no consent record, arbitration agreement, or evidence of business use for a single class member.

And *Ambrosio's* substantive holding cuts against Freeway as well. Individual injury inquiries predominated there because the challenged adjustment was not facially unlawful, so each insured's injury turned on a member-by-member valuation comparison. *Ambrosio*, 154 F.4th at 1111-12. Here, by contrast, the operative legal defect is uniform, since a third party's opt-in does not constitute express invitation or permission as a matter of law, *Skopos*, 2026 WL 810636, at *2-*3, and receipt of more than one unconsented text to a DNC-registered number is itself the concrete injury, *Van Patten*, 847 F.3d at 1043, making this case the other side of the line *Ambrosio* drew, where liability follows classwide from a categorically invalid practice, not where injury requires individualized reconstruction. *See Ambrosio*, 154 F.4th at 1110-11.

On arbitration, Freeway asserts that "most, if not all" of its vendors' terms "contain arbitration provisions." Barboza Decl. ¶¶ 27-29. But Freeway has produced no arbitration agreement executed by any class member, no terms in force on any date, and no evidence that any identifiable person assented to anything. A party invoking arbitration bears the burden of proving an agreement exists, and the possibility that unproduced agreements might bind unidentified people is precisely the "speculation and surmise" that cannot defeat certification. *True Health*, 896 F.3d at 932. The argument is also self-defeating on Freeway's own theory. Freeway admits that the purported contract to arbitrate names someone else entirely, meaning Freeway concedes it cannot compel *him* to arbitrate, and it has moved to compel arbitration against no one. *Lozano* is not to the contrary. There, the defendant held actual, executed subscriber agreements with class members and a demonstrated intent to enforce them. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 723 (9th Cir. 2007). In any event, if Freeway ever produces any evidence of such agreements, their enforceability, like the *Berman* lead generator's screen designs, is likely to present common questions. 30 F.4th at 856-58.

**4. Residential status does not defeat predominance.**

Freeway lastly argues that the "residential" status of each class member's number requires individualized, member-by-member analysis. The argument fails at both the class level and the individual level.

At the class level, the Ninth Circuit has held that cell phone numbers registered on the Do Not Call Registry are *presumptively residential*, with the burden on the defendant to rebut the presumption. *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1224 (9th Cir. 2022). Freeway thus has the default rule backwards. The presumption supplies a classwide answer, and Freeway has produced no evidence displacing it as to a single class member. The rebuttal inquiry, where it

ever arises, is itself amenable to classwide, records-based proof, since telephone carriers record the assignment of numbers to residential or business rate plans in the ordinary course, and Freeway's own dialing data can be analyzed by an expert to "reliably exclude[] business phone numbers." *Jackson v. Athena Bitcoin, Inc.*, No. 4:24CV331-MW/MJF, 2025 WL 2237453, at *6-*7 (N.D. Fla. June 18, 2025).

Context matters here too. Freeway sends calls to these numbers to sell personal automobile insurance to *individual consumers*, through consumer-facing insurance quote websites, and the sole "consent" record it has produced names an individual, not a business. Barboza Decl. ¶¶ 17, 22, 30. There is thus no "reason to think that these questions will overwhelm common ones and render class certification inappropriate," because the nature of Defendant's business, personal automobile insurance, like the nature of a Bitcoin ATM, makes it "unlikely the class includes a significant amount of business numbers." *Jackson*, 2025 WL 2237453 at *6. Freeway's own marketing model is designed to reach consumers on their personal numbers.

At the individual level, Freeway's attack on Plaintiff's own number, assembled from deposition testimony taken in a different case, is a contested merits defense. Plaintiff attests here, as he has attested under oath in this District before, that the number is his personal cell phone, his *only* number, used daily in the manner ordinary consumers use their phones, and that he neither obtained it for business purposes nor holds it out as a business line. Wilson Decl. ¶ 5; *cf. TPH Paralegal*, 2026 WL 899930, at *7 (crediting Plaintiff's sworn declaration to the same effect over the defendant's contrary exhibits at the pre-certification stage). That contested dispute distinguishes the *Mattson* line and *Payne*, in each of which the named plaintiff's own number was so demonstrably a business line, on a developed record, that the individualized fight over

Oppn. Mot. Deny. Class Cert.                    28

that one plaintiff's usage threatened to consume the case. *E.g.*, *Mattson v. Rocket Mortg., LLC*, No. 3:18-CV-00989-YY, 2024 WL 4794710, at *2 (D. Or. Sept. 16, 2024) (parties "hotly contested" the nature of the number that was admittedly a mixed-use number in several cases). Here, the *Chennette* presumption applies, Plaintiff disputes Freeway's characterization under oath, and the question is one for a certification motion in an appropriate case on a developed record, not a preemptive motion where evidentiary disputes are resolved against the movant.

### 5. A class action is superior.

Freeway does not seriously dispute superiority apart from its settlement-pressure refrain, which *Bateman* forecloses. 623 F.3d at 723. Small-dollar statutory claims are the paradigm for class treatment, and DNC classes in particular are administratively straightforward because membership and liability are determinable from the defendant's own records and the Registry. *See also Krakauer*, 925 F.3d at 655; *Wakefield*, 51 F.4th at 1119-20.

### C. At Minimum, the Motion Is Premature.

If the foregoing leaves any doubt, the timing of Freeway's motion resolves it. Under *Vinole* and its progeny, a preemptive motion may properly be granted only where the plaintiff has had an adequate opportunity to develop the certification record. 571 F.3d at 942; *Hunters Cap.*, 499 F. Supp. 3d at 907; *Britton*, 2018 WL 4259239, at *4. No class discovery has occurred here. Freeway has resisted producing calling records, its lead data, or its consent files, the very materials its own declarant says reside in a single CRM and the very materials from which every question Freeway raises, consent, typicality, standing, residential status, would be answered. Barboza Decl. ¶¶ 13-15. Had Plaintiff not elected to end this case, he would have been entitled to that discovery before any certification determination, and denying it would have been an abuse of discretion. *Kamm*, 509 F.2d at 210; *Doninger*, 564 F.2d at 1313; *Davidson*, 968 F.3d at 963.

The motion is thus premature in the most literal sense. Freeway filed it before Plaintiff's affirmative motion for certification was due, and Plaintiff sought dismissal before that deadline as well. Freeway therefore asks the Court to decide certification before the time the Court itself allotted for Plaintiff to brief certification on an affirmative motion and a developed record.

Freeway may respond that a plaintiff resisting a preemptive motion must make a *prima facie* showing that Rule 23 is satisfied *or* that discovery is likely to substantiate the class allegations. *See Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985); *Doninger*, 564 F.2d at 1313. But *Mantolete* is inapposite. That case denied *expanded national class discovery* in a Rehabilitation Act case where certification turned on an irreducibly individualized "qualified handicapped individual" inquiry into each individual's "work history and medical history," and where the plaintiff's entire showing was "two other complaints filed elsewhere." 767 F.2d at 1423-25. Class treatment there failed for reasons *intrinsic to the claim*, not for want of centralized proof.

This is the opposite case, and Plaintiff readily meets *Mantolete*'s disjunctive test in any event, because the showing is satisfied by Freeway's own evidence. Freeway says its centralized CRM records the recipient number, the lead source, the associated consent data, and the verification tokens for each lead. Barboza Decl. ¶¶ 13-15, 18-21. Its calling records would identify the persons contacted, its lead source and consent records would identify the asserted basis for each contact, and its vendor forms and terms, organized by vendor, version, and date, would permit common adjudication of consent and any arbitration defense on legal grounds, and carrier and account data would permit objective, records-based screening of business numbers. *See Jackson*, 2025 WL 2237453, at *6-*7. Those are not speculative categories of evidence. They are records Freeway admits it maintains and has refused to produce. Where the

substantiating proof sits in the defendant's own centralized files, the plaintiff has done far more than point to two complains as in *Mantolete*. Rather, he has identified the *precise discovery* that would resolve every question Freeway raises, which is all *Mantolete* requires.

Freeway filed this motion, one day after Plaintiff first sought to dismiss, to attempt to short-circuit that process on the strength of its adequacy attacks. Freeway filed before Plaintiff's certification motion was due, at a time when Plaintiff was under no obligation to have assembled a certification record, and while the class data he had demanded (Exhibit A, RFPs 16, 17) remained unproduced. While *Vinole* permits the filing of a preemptive motion before a plaintiff's deadline, whether the Court may *grant* such a preemptive motion turns on whether the plaintiff has had an adequate opportunity to develop the record. 571 F.3d at 942. Freeway's decision to race ahead of both the schedule and its own production answers that question.

But adequacy attacks, even colorable ones, do not license a court to resolve the balance of Rule 23 on an empty record, and *Britton* describes this posture exactly: where the court "could only speculate" about how many class members the claimed individualized issues would affect, the motion must be denied as premature. 2018 WL 4259239, at *4.

Freeway's own filings concede this point. Freeway tells the Court that the record is "more-than-sufficiently developed" on the adequacy issue and that "no amount of discovery" could alter the outcome, ECF No. 23 at 12; ECF No. 19 at 4, 18-19, while simultaneously moving for sixty additional days of discovery on the ground that its investigation into the purported fraud surrounding consent remains incomplete. ECF No. 24 at 2-3, 5. Both cannot be true, and either way this motion fails. If the record is complete, it does not remotely carry Freeway's burden for the reasons shown above. If it is incomplete, the motion is premature by its own admission.

One clarification, so that Plaintiff's positions are not mistaken for one another. Plaintiff has asked the Court to stay discovery pending its ruling on the dismissal motion, ECF No. 20; ECF No. 26 at 16-18, and Freeway will no doubt characterize that request as inconsistent with the observation that the certification record is undeveloped. It is not. The requested stay is a consequence of Plaintiff's motion to end this case, which would moot certification and all discovery bearing on it. It is not a concession that the existing record would permit a certification ruling in Plaintiff's favor, after appropriate discovery, if the case were to continue. If the Court denies dismissal and elects to adjudicate certification, the question must be resolved the way this District's precedent requires, on a developed record, through ordinary certification briefing, after class discovery, including production of Freeway's own centralized data. That has not yet occurred. *Updike v. Clackamas Cnty.*, No. 3:15-CV-00723-SI, 2015 WL 7722410, at *11 (D. Or. Nov. 30, 2015) ("[E]ven when a plaintiff's class allegations appear suspicious at the pleading stage, a plaintiff should at least have an opportunity to make the case for class certification following appropriate discovery."). At minimum, the Court should deny the motion without prejudice as premature. What the Court should not do is what Freeway proposes, enter an affirmative denial of certification, on a motion where Freeway bears a burden heavier than the one Plaintiff would bear at certification, *McKenzie*, 2020 WL 1970812, at *1, based on class data Freeway holds and has withheld.

**D. If the Court Grants the Pending Dismissal, This Motion Is Moot.**

Finally, because the Court will decide the two motions in tandem, ECF No. 25, Plaintiff notes that if the Court grants his pending Rule 41(a)(2) motion, dismissing his individual claims with prejudice and the putative class claims without prejudice, *see Diaz v. Tr. Territory of Pac. Islands*, 876 F.2d 1401, 1407 (9th Cir. 1989) (holding pre-certification dismissals of class actions should be without prejudice as to the class claims), there will be no class to certify or to refuse to

certify, and this motion will be moot. Freeway concedes it "does not ultimately oppose dismissal," ECF No. 23 at 3, and its stated desire for a certification ruling that "would inform every one" of Plaintiff's other cases, *id.* at 12, involving other defendants and other records, is not a purpose Rule 23 or Article III serves, and certainly not on the basis of an undeveloped class evidentiary record. Each of those cases will rise or fall on its own data, at certification, as this one would have.

### V. CONCLUSION

The Court should deny Freeway's Motion to Deny Class Certification because Freeway has not carried its burden on any element of Rule 23 and because the motion is, at minimum, premature. Alternatively, if the Court grants Plaintiff's pending motion for voluntary dismissal, it should deny this motion as moot.

RESPECTFULLY SUBMITTED AND DATED this 13th day of July, 2026.

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.
> OSB No. 243320
> Perrong Law LLC
> 1669 Edgewood Road, Suite 218
> Yardley, PA 19067
> Telephone: 215-225-5529
> a@perronglaw.com
> Lead Attorney for Plaintiff and the Proposed
> Class

### CERTIFICATE OF COMPLIANCE

This brief complies with the applicable page-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains fewer than 35 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature

Oppn. Mot. Deny. Class Cert.                    33

block, exhibits, and any certificates of counsel.

Dated: July 13, 2026

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

Dated: July 13, 2026                 */s/ Andrew Roman Perrong*
                                      Andrew Roman Perrong, Esq.