Timothy J. Fransen, OSB No. 073938
tfransen@cosgravelaw.com
**COSGRAVE VERGEER KESTER LLP**
900 SW Fifth Avenue, 24th Floor
Portland, Oregon 97204
Telephone: (503) 323-9000
Facsimile: (503) 323-9019

Ryan D. Watstein (*Pro Hac Vice*)
ryan@wtlaw.com
James M. Ruley (*Pro Hac Vice*)
jruley@wtlaw.com
**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

*Attorneys for Defendant*
*Freeway Insurance Services of America, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**EUGENE DIVISION**

| | |
|---|---|
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>FREEWAY INSURANCE SERVICES OF AMERICA, LLC,<br><br>    Defendant. | Case No. 6:25-cv-1869-MC<br><br>**DEFENDANT FREEWAY INSURANCE SERVICES OF AMERICA, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION** |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION**

**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.   ARGUMENT ............................................................................................................. 4

      A.    The Court Can and Should Decide This Motion Now ............................................ 4

            1.    Freeway Filed a Rule 23 Motion on an Evidentiary
                  Record, Not a Rule 12 Motion on the Pleadings ........................................ 4

            2.    No Amount of Discovery Will Make Plaintiff or His Counsel
                  Adequate or Cure the Other Issues that Preclude Certification .................. 6

            3.    Plaintiff's Accusation that Freeway Has Withheld
                  Class Data Lacks Merit ............................................................................. 8

      B.    The Record Establishes that Neither Plaintiff nor His Counsel
            Can Adequately Represent Any Class ..................................................................... 9

            1.    Plaintiff's Response Ignores the Sue-and-Settle Mill at the
                  Center of His Litigation History ................................................................ 9

            2.    Plaintiff's Continued Hate Speech and Incitement of
                  Violence Confirm He Is Unfit to Serve as a Fiduciary ............................. 20

            3.    Plaintiff Fails to Rebut Freeway's Manufactured-Claim
                  Evidence ................................................................................................. 22

      C.    Plaintiff's Own Claim Proves the Individualized Inquiries That
            Defeat Predominance ........................................................................................... 24

            1.    Freeway Carried Its Consent Burden, and Plaintiff's Own
                  Cases Confirm That Individualized Issues Predominate ......................... 25

            2.    Individualized Issues of Arbitration Preclude Certification .................... 29

            3.    Residential Status Cannot Be Resolved with Common Proof ................. 30

            4.    Plaintiff's Typicality Argument Refutes a Ground Freeway
                  Never Raised and Concedes the One It Did ............................................. 32

III.  CONCLUSION ....................................................................................................... 33

Page ii -   **DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DENY CLASS
CERTIFICATION**

**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

## TABLE OF AUTHORITIES

**Cases**

*Aley v. Lightfire Partners, LLC*,
  2024 WL 4007345 (N.D.N.Y. Aug. 30, 2024) ..................................................... 27, 33

*Ambrosio v. Progressive Preferred Ins. Co.*,
  154 F.4th 1107 (9th Cir. 2025) ........................................................................ 29, 31

*Anthony v. Fed. Sav. Bank*,
  2025 WL 3101827 (N.D. Ill. Nov. 6, 2025) .............................................................. 27

*Bateman v. American Multi-Cinema, Inc.*,
  623 F.3d 708 (9th Cir. 2010) .................................................................................... 25

*Bates v. Bankers Life & Cas. Co.*,
  993 F. Supp. 2d 1318 (D. Or. 2014) ........................................................................... 6

*Berman v. Freedom Fin. Network, LLC*,
  30 F.4th 849 (9th Cir. 2022) .............................................................................. 26, 30

*Berman v. Freedom Fin. Network, LLC*,
  400 F. Supp. 3d 964 (N.D. Cal. 2019) ................................................................... 4, 26

*Bowerman v. Field Asset Servs., Inc.*,
  60 F.4th 459 (9th Cir. 2023) .................................................................................... 25

*Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*,
  843 F.3d 1119 (6th Cir. 2016) .................................................................................... 6

*Britton v. ServiceLink Field Servs., LLC*,
  2018 WL 4259239 (E.D. Wash. Sept. 6, 2018) ........................................................... 5

*Bronstin v. Southern California Edison Co.*,
  No. 8:25-cv-2334 (C.D. Cal.) .................................................................................. 12

*Chennette v. Porch.com, Inc.*,
  50 F.4th 1217 (9th Cir. 2022) .................................................................................. 30

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990) .................................................................................................. 7

*Cunningham v. Rapid Response Monitoring Servs., Inc.*,
  251 F. Supp. 3d 1187 (M.D. Tenn. 2017) ................................................................. 18

*Curry v. Kraft Foods Glob., Inc.*,
 2011 WL 4036129 (N.D. Ill. Sept. 12, 2011) ................................................................ 20

*Davidson v. O'Reilly Auto Enters.*,
 968 F.3d 955 (9th Cir. 2020) ........................................................................................... 6

*Deposit Guar. Nat'l Bank v. Roper*,
 445 U.S. 326 (1980) ....................................................................................................... 16

*Diaz v. Trust Terr. of Pac. Islands*,
 876 F.2d 1401 (9th Cir. 1989) ......................................................................................... 8

*Dougan v. Centerplate, Inc.*,
 706 F. Supp. 3d 1025 (S.D. Cal. 2023) .......................................................................... 19

*Gaertner v. Commemorative Brands, Inc.*,
 2026 WL 248292 (S.D. Ill. Jan. 30, 2026) .................................................................... 21

*Goetsch v. Shell Oil Co.*,
 197 F.R.D. 574 (W.D.N.C. 2000) .................................................................................. 18

*Hanon v. Dataproducts Corp.*,
 976 F.2d 497 (9th Cir. 1992) ......................................................................................... 33

*Hill v. Kaiser Found. Health Plan*,
 2015 WL 5138561 (N.D. Cal. Sept. 1, 2015) ................................................................ 19

*Hossfeld v. Allstate Ins. Co.*,
 2026 WL 1815908 (7th Cir. June 24, 2026) .................................................................. 28

*Hossfeld v. Allstate Ins. Co.*,
 726 F. Supp. 3d 852 (N.D. Ill. 2024) ............................................................................ 28

*Hunters Cap. LLC v. City of Seattle*,
 499 F. Supp. 3d 888 (W.D. Wash. 2020) ........................................................................ 5

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
 270 F.R.D. 330 (N.D. Ill. 2010) .................................................................................... 20

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
 208 F.R.D. 625 (W.D. Wash. 2002) ................................................................................ 7

*In re Polaroid ERISA Litig.*,
 240 F.R.D. 65 (S.D.N.Y. 2006) ..................................................................................... 21

*In re Subpoena to Heidarpour Law Firm, PLLC*,
No. 1:26-mc-99-RJL-ZMF (D.D.C. June 24, 2026) ............................................................ 8, 12

*Jackson v. Athena Bitcoin, Inc.*,
2025 WL 2237453 (N.D. Fla. June 18, 2025) ................................................................... 31

*Jarrett v. Panasonic Corp. of N. Am.*,
8 F. Supp. 3d 1074 (E.D. Ark. 2013) .............................................................................. 7

*Krzesniak v. Cendant Corp.*,
2007 WL 1795703 (N.D. Cal. June 20, 2007) ................................................................. 19

*Maldini v. Marriott Int'l, Inc.*,
140 F.4th 123 (4th Cir. 2025) ........................................................................................ 30

*Mantha v. QuoteWizard.com, LLC*,
347 F.R.D. 376 (D. Mass. 2024) .................................................................................... 27

*Mantolete v. Bolger*,
767 F.2d 1416 (9th Cir. 1985) ....................................................................................... 6

*Mattson v. Rocket Mortg., LLC*,
2024 WL 4794639 (D. Or. Nov. 14, 2024) ...................................................................... 6

*Mattson v. Rocket Mortg., LLC*,
2024 WL 4794710 (D. Or. Sept. 16, 2024) ................................................................... 6, 30

*Mattson v. United Mortg. Corp.*,
2024 WL 4794641 (D. Or. Nov. 14, 2024) ...................................................................... 6

*Mattson v. United Mortg. Corp.*,
2024 WL 4794711 (D. Or. Sept. 16, 2024) ..................................................................... 6

*May v. Gladstone*,
562 F. Supp. 3d 709 (C.D. Cal. 2021) ............................................................................ 6

*Meyer v. Portfolio Recovery Assocs., LLC*,
2011 WL 11712610 (S.D. Cal. Sept. 14, 2011) ............................................................... 21

*Mims v. Arrow Fin. Servs., LLC*,
565 U.S. 368 (2012) ...................................................................................................... 15

*Murray v. GMAC Mortg. Corp.*,
434 F.3d 948 (7th Cir. 2006) ......................................................................................... 18

Page v -  **DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DENY CLASS
CERTIFICATION**

**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) .................................................................................. 27

*Payne v. Sieva Networks, Inc.*,
347 F.R.D. 224 (N.D. Cal. 2024)............................................................................ 6

*Ryan v. Jersey Mike's Franchise Sys.*,
2014 WL 1292930 (S.D. Cal. Mar. 28, 2014) ........................................................ 4

*Sali v. Corona Reg'l Med. Ctr.*,
909 F.3d 996 (9th Cir. 2018) .................................................................................. 28

*Slevin v. AB Hollywood, LLC*,
--- F. Supp. 3d ----, 2026 WL 892186 (D. Or. Mar. 31, 2026) ............................. 2, 7

*Smith v. Bayer Corp.*,
564 U.S. 299 (2011)................................................................................................ 30

*Soutter v. Equifax Info. Servs., LLC*,
498 F. App'x 260 (4th Cir. 2012) ........................................................................... 33

*Tanne v. Autobytel, Inc.*,
226 F.R.D. 659 (C.D. Cal. 2005)............................................................................ 19

*Thrower v. Citizens Disability, LLC*,
2022 WL 3754737 (D. Mass. Aug. 30, 2022) ........................................................ 27

*True Health Chiropractic, Inc. v. McKesson Corp.*,
896 F.3d 923 (9th Cir. 2018) .................................................................................. 26

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)................................................................................................ 27

*United States v. Childs*,
5 F.3d 1328 (9th Cir. 1993) .................................................................................... 28

*Victorino v. FCA US LLC*,
322 F.R.D. 403 (S.D. Cal. 2017) ............................................................................ 5

*Vinole v. Countrywide Home Loans, Inc.*,
571 F.3d 935 (9th Cir. 2009) .................................................................................. 4

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)................................................................................................ 5

**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

*Williams v. PillPack LLC*,
  343 F.R.D. 201 (W.D. Wash. 2022) ................................................................ 28, 33

*Wilson v. PacifiCorp*, No.
  6:24-cv-1956 (D. Or. June 9, 2026) ................................................................. 3, 17

*Wilson v. Skopos Fin., LLC*,
  2026 WL 810636 (D. Or. Mar. 24, 2026) ................................................................ 18

*Wilson v. TPH Paralegal Pro. Corp.*,
  2026 WL 899930 (D. Or. Apr. 1, 2026) .......................................................... 31, 33

*Worsham v. Disc. Power, Inc.*,
  2021 WL 50922 (D. Md. Jan. 6, 2021) ................................................................ 31

*Wuest v. My Pillow, Inc.*,
  2019 WL 3577176 (N.D. Cal. Aug. 6, 2019) ............................................................. 9

**Rules**

Fed. R. Civ. P. 12 .................................................................................... 3, 5, 6, 7

Fed. R. Civ. P. 23 ............................................................................................ 1

Fed. R. Civ. P. 41 ........................................................................................... 22

Page vii - **DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DENY CLASS
CERTIFICATION**

**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

## I.    INTRODUCTION

Freeway's motion established that Plaintiff cannot adequately represent any class for two reasons. First, he and his counsel use Rule 23 to extort *in terrorem* settlements far in excess of what the statute permits. His lawyers had filed nearly 100 putative class actions in Plaintiff's name in under two years, more than half already settled or dismissed individually, with no contested certification ever sought and no class recovery ever obtained. Plaintiff's lawyers pocketed millions and others received nothing. Second, Plaintiff's history of threatening violence against members of the very classes he asks to represent disqualifies him as a fiduciary.

Plaintiff's opposition concedes more than it argues. Plaintiff does not dispute the number of cases he's filed, the absence of any contested certification, or that no class has ever recovered anything. He does not deny the hundreds of pre-suit demand letters issued in his name—meaning the cases on this District's dockets are a fraction of the operation. He says nothing about Freeway's documented evidence of manufactured claims across the Heidarpour Law Firm's ("HLF's") portfolio—including Plaintiff's—even though his counsel here was counsel in those very matters. Nor does he dispute making the abhorrent statements Freeway put in the record. Instead, he claims (at 5) this is all just "Rule 23 operating as designed" and that his statements are misunderstood "private" political views, disputed characterizations, and "trivial credibility problems."

Everything that has happened since Freeway moved has just deepened Plaintiff's inadequacy. Sixteen days before signing a declaration swearing he does "not defend" his violent statements and has "never threatened or intended to incite violence," Plaintiff urged his followers to "finish what f***in' Hitler was tryin' to do," having already instructed the world that "whatever I say is what I believe." Third Watstein Decl., Exs. 7, 8. Sworn representations contradicted by the

Page 1 -    **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION**

**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

declarant's own contemporaneous conduct are what Plaintiff's own authority calls evidence "so severely undermining" credibility that adequacy fails.

His counsel's conduct after Freeway's motion kept pace. Since the motion—and accelerating after Freeway subpoenaed HLF—they have settled or dismissed twelve more Wilson "class actions." Third Watstein Decl. ¶ 8. Even more telling, they abandoned out of the blue over a half dozen TCPA class actions on behalf of *other* plaintiffs against *other* clients represented by the undersigned, most right after this Court's consolidation order. *Id.* ¶ 10. Many of those dismissals were *with prejudice*, and came after previously demanding large individual settlements in excess of what the TCPA permits. *Id.* ¶¶ 10–11. That counsel would abandon their own clients' claims to avoid scrutiny of their business model confirms counsel's inadequacy too.

And so do the fee agreements produced after Freeway filed its motion, which reveals the machinery behind the pattern Freeway identified. The agreements HLF was forced to produce show that HLF, not Plaintiff, controls the portfolio: a blanket power of attorney to select, settle, release, and dismiss "any and all" of Plaintiff's claims "as though Client were personally doing so," sole discretion whether to pursue any claim at all, unilateral authority to accept "any settlement it deems practical and reasonable," and termination penalties that make leaving impossible. Another court in this District has held that an agreement conferring exactly this authority "violates the Oregon Rules of Professional Conduct." *Slevin v. AB Hollywood, LLC*, --- F. Supp. 3d ----, 2026 WL 892186, at *12, *19 (D. Or. Mar. 31, 2026).

The 2025 agreement then finishes the job: Plaintiff's recovery is capped at his statutory damages while every surplus dollar belongs to counsel by contract—so a $100,000 individual settlement over one text pays $500 to Plaintiff and $99,500 to counsel, a 99.5% contingency, collected under a statute Congress deliberately wrote to not permit recovery of attorney's fees

Page 2 -    **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION**

other than as a portion of statutory damages. Counsel nevertheless told this Court the agreement "allocates any fee among the appearing firms in the ordinary way," but it routes ninety percent of every fee dollar to lawyers who have never appeared in this case. ECF No. 26 at 4; ECF No. 26-1 ¶ 5. That is not class representation. It is a use of the auspices of this Court to abuse Rule 23.

In defense of his adequacy, Plaintiff principally invokes the class settlement awaiting preliminary approval in *PacifiCorp* as proof that he can put his own interests aside to benefit a class. But true to form, that proposed settlement puts Plaintiff's and his counsel's profit ahead of the class's recovery. It is a settlement of an otherwise uncertifiable "reassigned number" class in which half the $850,000 fund goes to fees, costs, administration, and Plaintiff's "service award"— leaving class members roughly $34.76 each. And it releases *all* TCPA and related state law claims—not just reassigned number claims—dating back five years, with leftover funds reverting to a charity that pays power bills, and thus directly back to the defendant, a power company. That reinforces Plaintiff's and his counsel's inadequacy.

The opposition's procedural gambit fares no better: it asks the Court to review this motion under a "Rule 12-like standard" that presumes Plaintiff's allegations are true. But Freeway did not move to strike under Rule 12 on the pleadings. It moved to deny under Rule 23 on the evidence, most of which is sworn testimony and public statements from Plaintiff himself. Rule 23 requires rigorous analysis of that evidence, not a presumption that erases it.

On predominance, Plaintiff's answer is that certification cannot be denied until he reviews Freeway's classwide data. But the frozen record is a posture he engineered when he moved to dismiss his own case, asked the Court to stay all discovery, and worked with HLF to tell another court that imminent dismissal would render Freeway's subpoena "automatically void." And his own predominance cases betray him anyway: he repeatedly cites *Berman* (at 2, 18, 21, 23, 27) as

Page 3 -    **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION**

the model for what Freeway's data "might show," but omits that *Berman* denied certification for the exact reasons Freeway argues. *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 987–88 (N.D. Cal. 2019). Plaintiff then concedes the same defect here (at 20), describing member-by-member denials of lead submissions as "the defining characteristic of the claim." A claim defined by individual denials is a claim tried through individual investigations—and Freeway's months-long hunt for "Dorianne Plageman" shows what just one costs.

The Court has taken oversight of all fourteen of Plaintiff's actions still pending in this District, holding each until it resolves the two motions pending here. ECF No. 30. Plaintiff's proposed sequence—dismiss first, decide nothing—would leave those dockets suspended around questions this motion presents and this record answers. No discovery will make Plaintiff or his counsel adequate, and no discovery will dissolve the individualized inquiries his own one-off claim proves. The Court should deny class certification now.

## II.    ARGUMENT

### A.    The Court Can and Should Decide This Motion Now

#### 1.    Freeway Filed a Rule 23 Motion on an Evidentiary Record, Not a Rule 12 Motion on the Pleadings

Freeway's motion established that the Ninth Circuit and courts across the country permit defendants to affirmatively seek denial of class certification, and that such motions "may be appropriately granted before discovery has been completed." *Ryan v. Jersey Mike's Franchise Sys.*, 2014 WL 1292930 (S.D. Cal. Mar. 28, 2014); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939 (9th Cir. 2009); *see also* ECF No. 19 at 18–20 (collecting cases). That rule follows from Rule 23 itself, which commands courts to determine certification "[a]t an early practicable time"—and where the existing record already establishes a defect no discovery can cure, the practicable time is now. Fed. R. Civ. P. 23(c)(1)(A).

Here, Freeway moved on an evidentiary record including: Plaintiff's sworn deposition testimony; a table documenting his nearly 100 class-action filings; his own public statements; declarations describing Freeway's intake process and counsel's lengthy experience with claims originated by HLF; and now, through the parties' subsequent filings, the fee agreements that govern Plaintiff's claims. *See* Watstein Decl. & Exs. A–K; Barboza Decl.; Supplemental Watstein Decl., ECF No. 23-1, Ex. 1; ECF No. 26-1. Where, as here, the motion is supported by evidence, Rule 23 requires the Court to conduct a "rigorous analysis" of that evidence, not ignore it and accept false allegations as true. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011).

Refusing to grapple with that authority, Plaintiff argues (at 7, 29) that this particular motion must be evaluated "under a Rule 12-like standard" that accepts his class allegations as true, asks only whether certification is "plausible," imposes a "more difficult and nuanced burden of proof" on Freeway, and resolves all "evidentiary disputes" "against the movant." That's wrong, because the standard Plaintiff invokes belongs to a motion decided on the pleadings. Freeway's motion, on the other hand, rests on a sworn evidentiary record that Plaintiff's presumptions cannot erase. Plaintiff cannot convert a fully supported Rule 23 motion into a motion to strike by mislabeling it.

To this end, each of Plaintiff's cases applied a Rule 12 standard to a non-evidentiary motion. *See Britton v. ServiceLink Field Servs., LLC*, 2018 WL 4259239, at *3–4 (E.D. Wash. Sept. 6, 2018) (denying preemptive motion as premature where the defendant relied on the pleadings, and the court could "only speculate" how many class members its asserted individualized defenses would affect); *Hunters Cap. LLC v. City of Seattle*, 499 F. Supp. 3d 888, 899, 906–07 (W.D. Wash. 2020) (similar); *Victorino v. FCA US LLC*, 322 F.R.D. 403, 410 (S.D. Cal. 2017) (denying preemptive motion resting solely on class counsel's alleged failure to communicate a settlement offer); *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125–

Page 5 -  **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION**

**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

26 (6th Cir. 2016) (vacating denial of certification where the defendant offered only "speculation and surmise"); *Davidson v. O'Reilly Auto Enters.*, 968 F.3d 955, 964–65 (9th Cir. 2020) (affirming **denial** of certification without further discovery where the plaintiff "didn't even attempt to pursue on-the-ground information" bearing on certification). Those cases only show that when a defendant asks a court to deny certification on the pleadings alone, courts borrow Rule 12's presumptions because the pleadings are all there is.

Plaintiff is right about one thing though: as the movant, Freeway bears the burden to establish the Court should deny class certification now. ECF No. 28 at 7–8 (citing *Bates v. Bankers Life & Cas. Co.*, 993 F. Supp. 2d 1318, 1341 (D. Or. 2014)). Freeway has carried that burden with evidence and sworn testimony, much of it directly from Plaintiff. The burden thus shifts to Plaintiff to make "a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985). His opposition confirms he cannot carry that burden.

### 2. No Amount of Discovery Will Make Plaintiff or His Counsel Adequate or Cure the Other Issues that Preclude Certification

Courts in this District and elsewhere deny certification before class discovery where "no amount of discovery" could cure the defect. *Mattson v. Rocket Mortg., LLC*, 2024 WL 4794710, at *2 (D. Or. Sept. 16, 2024), *R&R adopted*, 2024 WL 4794639 (D. Or. Nov. 14, 2024); *Mattson v. United Mortg. Corp.*, 2024 WL 4794711, at *1 (D. Or. Sept. 16, 2024), *R&R adopted*, 2024 WL 4794641 (D. Or. Nov. 14, 2024); *Payne v. Sieva Networks, Inc.*, 347 F.R.D. 224, 228 (N.D. Cal. 2024); *May v. Gladstone*, 562 F. Supp. 3d 709, 713–14 (C.D. Cal. 2021) (denying certification before class discovery because neither the plaintiff nor his counsel was adequate).

Plaintiff claims (at 29–32) that certification is premature without class discovery. But to justify a deferral, he must "identify what discovery [he] could obtain that would eliminate the

individual issues of fact and law raised by [his] claims." *Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1074, 1090 (E.D. Ark. 2013) (citing *Mantolete*, 767 F.2d at 1424); *Payne*, 347 F.R.D. at 228.  He identifies only Freeway's "classwide calling records and lead source and consent data." That information may bear on predominance. But it has nothing to do with whether Plaintiff can serve as a fiduciary for absent class members. That mismatch is dispositive under the prevailing standard: discovery that cannot "eliminate" the disqualifying issue does not justify deferring the ruling. *Jarrett*, 8 F. Supp. 3d at 1090; *see also In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 208 F.R.D. 625, 629–30 (W.D. Wash. 2002) (plaintiffs were "not entitled to discovery" because they "were previously afforded, but declined this opportunity," and because they otherwise "failed to demonstrate that discovery would be likely to yield persuasive information substantiating the class allegations").

As explained in detail below, adequacy turns on Plaintiff's own conduct and agreements, the core of which is already before the Court. *See infra* § II.B. None of that evidence resides in Freeway's files, and nothing Freeway could produce would change what Plaintiff has filed, said, and signed. And as to predominance, the requested data would merely present the individualized inquiries Freeway has already identified, not eliminate them, as explained below in Section II.C.

Plaintiff's remaining procedural move is to manufacture a contradiction. There is no inconsistency between Freeway's position that the existing record warrants denial of certification and its request for discovery into the extent of the misconduct and for the sanctions inquiry this Court retains jurisdiction to conduct even after dismissal. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–98 (1990); *Slevin*, 2026 WL 892186, at *19 (imposing sanctions after dismissal). They address different questions.

Plaintiff's procedural arguments are gamesmanship. He claims that the record is too undeveloped to rule, but the Court should stop it from developing. ECF No. 20; ECF No. 26 at 16–18. HLF took the same position in its motion to quash. ECF No. 26-2 at 23 (Motion to Quash, *In re Subpoena to Heidarpour Law Firm, PLLC*, No. 1:26-mc-99 (D.D.C. June 24, 2026)). A party cannot freeze the record, arrange for its extinguishment, and then argue the motion fails for want of a developed record. *Cf. Vinole*, 571 F.3d at 942 (inquiry turns on whether the plaintiff had "adequate time in which to conduct discovery").

The Court now administers all fourteen of Plaintiff's TCPA actions still pending in this District and has indicated it will take no action in those cases until it resolves the two motions pending here. ECF No. 30. These developments foreclose Plaintiff's fallback position (at 32–33) that dismissal would moot this motion, and his reliance on *Diaz v. Trust Terr. of Pac. Islands*, 876 F.2d 1401, 1407 (9th Cir. 1989). *Diaz* addressed the terms of a pre-certification dismissal; it does not require the Court to dismiss first and leave a fully briefed certification motion unresolved.

### 3. Plaintiff's Accusation that Freeway Has Withheld Class Data Lacks Merit

Plaintiff's opposition also falsely accuses Freeway (at 2, 4, 23) of "withholding" classwide calling and consent data, arguing that Freeway thus cannot "obtain the affirmative denial of certification" based on "the absence" of "evidence it possesses but has not produced."

Here is what actually happened: Freeway served timely and valid objections to Plaintiff's requests, explaining that it had no data that would resolve the pertinent issues classwide. *See generally* ECF No. 28-1. Plaintiff's counsel did nothing in response. He never sent an email claiming the responses were deficient. He never attempted to confer about them. Nor did he bother to respond to a protective order Freeway circulated that would govern the production of any confidential documents, as class data would be. Third Watstein Decl. ¶ 14.

Page 8 -  **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION**

WATSTEIN TEREPKA LLP
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

Instead, he moved to dismiss his own case with prejudice, asked the Court to stay all discovery, and stopped participating in discovery himself. ECF No. 20; ECF No. 23-1, Ex. C; ECF No. 26 at 16–18. He produced no documents, declined to sit for his deposition, and refused a device inspection, and HLF did the same—all based on a stay the Court never entered. ECF No. 23-1, Ex. C. That refusal matters more than most: Plaintiff doesn't dispute in his opposition that he gave his iCloud credentials to HLF, that the publicly available cases and settlements are only a fraction of the scheme, that evidence suggests some of his claims are manufactured, and so on.

In any event, the requested data cannot cure either certification defect. It has no bearing on adequacy, and Plaintiff doesn't even try to argue otherwise. And as to predominance, it would reflect consent for every contact in Freeway's systems, but only an individualized inquiry would determine who actually submitted each lead and whether a single other person like Wilson exists. *See infra* § II.C. That may explain why Plaintiff never actually pursued that information.

**B.** **The Record Establishes that Neither Plaintiff nor His Counsel Can Adequately Represent Any Class**

**1.** **Plaintiff's Response Ignores the Sue-and-Settle Mill at the Center of His Litigation History**

Freeway's motion established that in less than two years, Plaintiff filed nearly 100 TCPA class actions, settled or otherwise resolved more than half of them (now 70%) without obtaining any relief for any class, never sought or obtained a contested class certification, described his number as a "line of steady income," and admitted he did not understand what certification meant. ECF No. 19 at 21–23; ECF No. 19-1 ¶ 6; Third Watstein Decl. ¶ 8. That documented pattern of abuse of the class mechanism renders him inadequate to serve as a class representative. *See Wuest v. My Pillow, Inc.*, 2019 WL 3577176, at *3–4 (N.D. Cal. Aug. 6, 2019).

Plaintiff tries to minimize this history (at 9) by characterizing Freeway's challenge to his adequacy as merely taking issue with Plaintiff's status as a "professional litigant." That's wrong.

Page 9 -    **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION**

Freeway's counsel has defended more than 600 TCPA class actions, many brought by serial plaintiffs, and has never before (or now) asked a court to find a plaintiff inadequate on this ground. Third Watstein Decl. ¶ 4. Freeway's challenge is categorically different, and it is almost entirely undisputed by Plaintiff. He identifies no certification motion, certification order, or class recovery in any completed case. Nor does he explain why any of his 60 closed cases ended individually. His vague assertions that class treatment sometimes "did not make sense" and that unidentified defendants changed unidentified practices leave Freeway's central factual showing unrebutted.

That unrebutted pattern mirrors the one presented in *Wuest*. There, the court found the plaintiff inadequate after ten prior putative class actions had been resolved individually without certification. 2019 WL 3577176, at *1, *3–4. The operation Plaintiff and his counsel are running here is far more abusive. Plaintiff has filed nearly 100 putative class actions in less than two years; 70% have been resolved individually, and he has never sought or obtained certification. ECF No. 19-1 ¶¶ 5–7. Plaintiff even offers the same explanation rejected in *Wuest*: that case-specific facts repeatedly prevented class treatment. *Compare* ECF No. 26 at 5 (listing "many reasons," including offshore calling records and collectability), *and* Wilson Decl. ¶ 20 (vaguely noting that class treatment "did not make sense" "in some cases" "based on any number of reasons"), *with Wuest*, 2019 WL 3577176, at *3 (rejecting plaintiff's argument that "facts outside his control," like arbitration and collectability, prevented class treatment in each case).

Nor does Plaintiff successfully distinguish *Wuest* (at 12) as involving a self-inflicted injury. Wuest dialed businesses allegedly hoping to be recorded. Plaintiff paid $1,000 for a number that "[a]lmost instantly" drew dozens of unsolicited messages a day. He kept it anyway. He posts it publicly, runs three businesses on it, never replies "STOP," and describes the result as "a line of

**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

steady income." A plaintiff who cultivates the conditions for his claims and then declines the one step that would prevent them is not different from one who dials hoping to be recorded.

If the history of Plaintiff's and his counsel's litigation before Freeway filed its motion weren't enough to raise the alarm, the actions they've taken since should be. Twelve more of Plaintiff's putative class actions have settled individually or been dismissed since Freeway filed its motion—including several with pending, opposed merits motions. Third Watstein Decl. ¶ 8. Counsel's retreat is not limited to Plaintiff either. Since the motion, the same lawyers have dismissed out of the blue over a half dozen TCPA class actions—many *with prejudice*, forever extinguishing those clients' claims—against clients the undersigned firm represents, after previously demanding extra-statutory individual settlements. *Id.* ¶¶ 10–11.

And although Wilson declares that the dismissal here was his own decision, Wilson Decl. ¶ 26, he never explains why he sought to end this action just as Freeway exposed the sue-and-settle model, served discovery to investigate who controls the litigation, and subpoenaed HLF.[1] He also doesn't explain the inherent illogic of seeking to dismiss his claims for nothing after supposedly rejecting an offer five times his statutory damages. *See generally* ECF No. 29. Nor does Plaintiff deny the scale of the operation off the docket: HLF has issued hundreds of pre-suit demand letters threatening class actions and demanding payment in his name, meaning the cases before the federal courts are a fraction of the whole. ECF No. 19 at 10.

---

[1] Plaintiff's account of the parties' dismissal discussions (at 5) is also inaccurate. Freeway did not demand that Plaintiff dismiss his other cases in exchange for agreeing to permit dismissal here. It wanted to know, if the reason for the dismissal was really Wilson's bigotry, wouldn't counsel abandon all Wilson's cases? ECF No. 19-1 ¶ 58. The answer to that was no, and that told Freeway what it already knew: that wasn't the reason for the dismissal. It was avoiding exposure of the sue-and-settle model and the litigation fraud that often underlies it.

The model is also adapting to avoid this scrutiny. Since Freeway filed this motion, HLF and its referral counsel have begun a new practice: transmitting draft class-action complaints to prospective defendants paired with six-figure individual settlement demands. Third Watstein Decl. ¶ 12. Why? An unfiled "class action" generates no docket, no judicial oversight, and no public scrutiny. It generates only leverage. That is the sue-and-settle model driven underground. And the reflex this motion triggered is now counsel's playbook elsewhere. On June 11, 2026, in *Bronstin v. Southern California Edison Co.*, No. 8:25-cv-2334 (C.D. Cal.), Plaintiff's counsel here was advised that the defendant would move to deny certification and was serving a subpoena on HLF that day. Within hours, he dismissed that plaintiff's case with prejudice. ECF No. 23-1 ¶¶ 10–11 & Ex. B. HLF's outside counsel claimed that it had "no involvement in, or connection to" the Bronstin case. Exhibit 11 to Watstein Decl., *In re Subpoena to Heidarpour Law Firm, PLLC*, No. 1:26-mc-99 (D.D.C. July 8, 2026), Dkt. No. 17-11. Those words were chosen carefully—no role in the case is not no relationship with the plaintiff. And when Freeway asked, directly and twice, whether HLF contends it has no relationship with Bronstin, HLF's counsel never answered. Exhibit 12 to Watstein Decl., *In re Subpoena to Heidarpour Law Firm, PLLC*, No. 1:26-mc-99 (D.D.C. July 8, 2026), Dkt. No. 17-12. The silence is telling.

A court in this District held just months ago that an agreement conferring exactly this authority—"advanced blanket authority to litigate and, most importantly, settle claims without consulting [the] plaintiff"—"violates the Oregon Rules of Professional Conduct." *Slevin*, 2026 WL 892186, at *12. Plaintiff's counsel cannot be adequate under Rule 23(a)(4) while operating under an agreement that violates the rules of professional conduct in the forum state.

Plaintiff's agreements with his counsel, produced after Freeway filed this motion, illustrate how the HLF model works, further undermining both Plaintiff's and his counsel's adequacy. The

Page 12 -  **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION**

**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

2024 agreement grants HLF power of attorney over "any and all" of Plaintiff's TCPA claims, gives HLF discretion to select and pursue claims, and authorizes it to accept "any settlement it deems practical and reasonable." Third Watstein Decl., Ex. 3 ¶¶ 1–3, 7–9, 13. It also makes termination of the perpetual agreement prohibitively expensive, and also lets HLF resolve any cases for 30 days after termination on whatever terms it sees fit. *Id.* ¶ 9.

And even accepting Plaintiff's assertion that the 2025 agreement supplies the financial terms that govern this case, the 2024 Agreement governed this claim for the better part of a year. And HLF still wields enormous power over Wilson via the 2024 Agreement here because it controls the portfolio. A client economically beholden to a firm across hundreds of matters cannot serve as a legitimate check on the firm in any case. That's true as to this case, regardless of whether the 2024 or 2025 Agreement supplies the fee split here.

It's also not clear that Plaintiff executed the 2025 Agreement, further highlighting the control problem. As further explained in Freeway's surreply in opposition to Plaintiff's motion to dismiss, the 2024 Agreement carries a complete SignNow audit trail tied to Plaintiff's email. Third Watstein Decl., Ex. 3. That Agreement also confers upon HLF a power of attorney broad enough to execute contracts "as though Client were personally doing so." *Id.* ¶ 7. But the 2025 agreement bears only unverified signature images, with no certificate of completion for Plaintiff's mark, and even the DocuSign audit trail for referral counsel is omitted. ECF No. 26-1.

Freeway also asked HLF whether this is what happened, offering to pause its subpoena for an answer to that one question. Third Watstein Decl., Ex. 4. Rather than answer, HLF hired a former U.S. Solicitor General and a team of white-collar defense lawyers to file an emergency motion to quash. *Id*. Wilson's declarations are also artfully worded to avoid answering who signed the 2025 Agreement. Wilson Decl. ¶ 31. If HLF signed a fee agreement in Plaintiff's name and

allowed it to be filed as though Plaintiff had, that is a material misrepresentation to this Court, particularly given the Agreement purports to ground the class-representative duties that Wilson swears he knows and accepts because he "agreed to" them "in writing." Wilson Decl. ¶¶ 31–32.

Even if Wilson signed the 2025 Agreement, that changes nothing. The 2025 Agreement supplies the fee structure that complements the 2024 Agreement and enables them to carry out the sue-and-settle scheme for their sole financial benefit. HLF and its referral counsel file every claim, no matter how individualized and incapable of class resolution, as a class action. They then cap the client's recovery at his "statutory damages," use the *in terrorem* leverage of Rule 23 to obtain payment of many multiples of that despite no statutory mechanism, and then take all that for themselves. The 2025 Agreement's cap is what makes this possible. ECF No. 26-1 ¶¶ 7–8. Because every settlement dollar above it belongs to counsel by contract, once an offer covers a client's fixed number, the client is indifferent. Every decision thereafter—like every decision under the 2024 Agreement's power of attorney—is the lawyers setting their own compensation.

That has already played out in this case: Before discovery opened, Freeway offered to resolve this case for "5 times Mr. Wilson's recovery on his best day in court." ECF No. 26 at 8 n.2. Presumably unsatisfied with the number, which was below their typical demands, counsel never responded. But months later, the same counsel moved to dismiss Wilson's case with prejudice, leaving him nothing. No client chooses nothing over five times his maximum recovery. This proves the obvious: Wilson didn't make that choice. His counsel did. They rejected Freeway's offer because it wasn't enough fees, and when Freeway threatened counsel's enterprise, counsel jettisoned Wilson's claim to protect its own economic interests. Wilson couldn't protect even his own claim from his lawyers, much less the interests of absent class members.

Page 14 -   **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION**

That arrangement defeats the TCPA's design. The statute has no fee-shifting provision because it was built for consumers, not lawyers: Congress set damages at $500 to $1,500 per violation—a lot of money for a single telephone call. It did that so an ordinary person could vindicate the claim himself in small claims court and keep all the money, or hire a lawyer who would keep part of it. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 384–85 (2012). This creates the right incentives: lawyers who want to earn outsized recoveries must bring genuine, well-researched class claims, press them through certification, and earn a court-awarded common-fund fee with a multiplier on their lodestar that offsets cases that fail.

Under statutes where Congress shifted fees (e.g., the FDCPA and FCRA), the parties can negotiate fees based on time incurred, or a prevailing plaintiff can ask the court to determine a reasonable fee. The HLF model does neither. There is no fee petition, no lodestar, no court ruling on reasonableness—only a number counsel names above Wilson's cap, backed by the threat of continued class litigation, reviewable by no one. Plaintiff's counsel has thus engineered a way to collect more in attorney's fees under a statute where Congress chose not to award them than under statutes that do shift fees, using the contingent fee agreements as the tool.

And look where that unreviewable fee goes. Plaintiff assures the Court that the 2025 Agreement "allocates any fee among the appearing firms in the ordinary way." ECF No. 26 at 4. That is not true. It routes 60% of any fee to Paronich Law—which has never appeared in this case—and 30% to HLF, which Plaintiff insists has no role here. ECF No. 26-1 ¶ 5. Ninety percent of every fee dollar flows to lawyers not even appearing before this Court. There is nothing "ordinary" about any of this.

Plaintiff's deposition confirms the handover is total. He couldn't say which lawyers hold his claims, on what terms, or who accesses his accounts on the firm's behalf—because HLF's

"tech guy" holds his iCloud credentials to "stay on top of it." Wilson Dep. 69:5–12. The arrangement leaves Plaintiff with little reason, or even practical ability, to monitor counsel, negotiate settlement terms, or insist that class claims continue after counsel obtains an acceptable individual payment.

*Roper* does not sanction that structure, as Plaintiff contends (at 10). *Roper* protects a representative's interest in pursuing certification so that litigation costs may be shared among those who would benefit from a class recovery. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338–39 (1980). Here, absent members receive no recovery and share no costs. Plaintiff receives his fixed statutory amount, while counsel contractually appropriates the entire premium generated by the class allegations. Plaintiff's own declaration confirms the problem while trying to refute it. He swears the cap is a feature: because his recovery is capped, he has "no financial or any other interest in any outcome that would favor [him] at the expense of the class." ECF No. 29 ¶ 33. That has *Roper* exactly backwards. A named plaintiff's stake in the recovery is not a threat the class needs protection from—it is the reason Rule 23 trusts him to police class counsel. Strip the stake and you do not get a purer representative; you get an absent one: a plaintiff with, in his own words, "no financial or any other interest" in what his lawyers do. His declaration is not a defense to inadequacy. It is a sworn confession of it.

And based on what Freeway has recently learned without discovery, every settlement requires him to execute a "settlement statement" releasing his own lawyers from all claims relating to the case. Third Watstein Decl. ¶ 13. That is a remarkable term. Lawyers practicing "ordinary Rule 23 economics" do not demand releases from their own client as part of every settlement. Whether Plaintiff signs those releases—or HLF signs them for him under its power of attorney— is one more question the discovery he refuses would answer.

Page 16 -  **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION**

**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

Plaintiff's other defense to his inadequacy (at 9–10, 12–13) is to point to a single pending motion for preliminary approval in *Wilson v. PacifiCorp*, which he says "alone refutes" Freeway's showing. It does no such thing. This Court hasn't approved that settlement, nor has it found Plaintiff to be adequate. In fact, PacifiCorp expressly "disputes that a class would be manageable or that common issues predominate," "denies that a litigation class properly could be certified," and agrees to certification solely for settlement purposes. Third Watstein Decl., Ex. 10 (Proposed Class Action Settlement Agreement §§ 2.2–2.3, *Wilson v. PacifiCorp*, No. 6:24-cv-1956 (D. Or. June 9, 2026), Dkt. No. 47-1) ("Proposed Settlement"). The agreement also provides that neither Plaintiff nor anyone else may use it to establish any certification element in another litigated proceeding. Proposed Settlement § 2.2. The single proposed settlement thus expressly disclaims the inference Plaintiff asks this Court to draw here.

The Proposed Settlement is especially problematic because it is presented as resolving "reassigned number" calls caused by the "transient nature" of cellular telephone numbers, i.e., calls to numbers no longer assigned to PacifiCorp's customers. *See* Pl.'s Unopposed Mot. & Incorporated Mem. in Supp. of Preliminary Approval of Class Action Settlement at 1, *Wilson v. PacifiCorp*, No. 6:24-cv-1956 (D. Or. June 9, 2026), Dkt. No. 47. But the complaint in that case is devoid of any allegation that Plaintiff was called because of a reassigned number. Second Am. Compl., *Wilson v. PacifiCorp*, No. 6:24-cv-1956 (D. Or. Oct. 1, 2025), Dkt. No. 30.

The Proposed Settlement's economics reinforce the concerns. Plaintiff and his counsel ask that, of the $850,000 settlement fund, the first one-third be awarded to attorneys' fees, plus counsel's additional costs, approximately $75,000 in administration expenses, and a requested $5,000 service award to Plaintiff. Proposed Settlement §§ 4.2, 5.1, 6.1; *id.*, Ex. B at 6. Those requested deductions eat up about half of the settlement fund before *any* other expenses. If the

Page 17 -  **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION**

**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

requests were granted, no further expenses were incurred, and all approximately 14,000 class members participated, each would receive only about $34.76. Thus, Plaintiff's prediction that claimants will receive "upwards of $150" necessarily assumes an approved-claim rate below 25%. And class members who do not opt out surrender far more than the narrow wrong-number claims that define the class sought to be certified. That's because the release encompasses all claims "that arise out of or relate in any way" to the TCPA, its regulations, or any related law for any calls or texts transmitted by or for PacifiCorp since November 21, 2020. *Id.* §§ 1.1.26, 1.1.34, 8.3.

Plaintiff's own authority identifies the problem. In *Murray v. GMAC Mortgage Corp.*, the Seventh Circuit warned that settlement terms disproportionately benefiting the representative and counsel may demonstrate that the representative is not a faithful champion for absent members. 434 F.3d 948, 951–53 (7th Cir. 2006). Measured against *Murray*, the Proposed Settlement's requested $5,000 representative award, its opaque references to fee- and cost-allocation, its cy-pres provision directing any residual funds to an energy-assistance organization that partners with PacifiCorp's own Pacific Power division, and a release materially broader than the alleged claims certainly do not establish Plaintiff's adequacy. At most, it is one proposed settlement whose own terms reinforce the incentive conflict Freeway identified.

Plaintiff's other cases are inapposite. *Skopos* and *Cunningham* rejected arguments that professional litigation defeats Article III standing, *Skopos*, 2026 WL 810636, at *2 n.4; *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187 (M.D. Tenn. 2017), *not* that a plaintiff who launches class actions to use "the class as bait to attract a better offer, then cash in by withdrawing the class claims" is an adequate "champion" of a putative class. *Murray*, 434 F.3d at 952, 954 (noting that "it would be unethical" to proceed as such); *see also Goetsch v. Shell Oil Co.*, 197 F.R.D. 574, 579 (W.D.N.C. 2000) (finding that a plaintiff who didn't timely

move for class certification in just two cases was disingenuous in representing that "his primary interest is consumer advocacy," especially where he "earns a good living by bringing these suits under the threat of a class action, leverage which is then used to attain a settlement").

And none of Plaintiff's remaining cases even remotely resembles the operation Plaintiff and his counsel are running here. *See Krzesniak v. Cendant Corp.*, 2007 WL 1795703, at *10 (N.D. Cal. June 20, 2007) (rejecting the defendant's argument that the plaintiff was inadequate solely because he could use his class action claims to leverage a larger settlement on individual claims he asserted in the same action); *Dougan v. Centerplate, Inc.*, 706 F. Supp. 3d 1025, 1030–31 (S.D. Cal. 2023) (allowing dismissal of an action under Rule 41(a)(1)(A)(ii) where the parties *stipulated* to the dismissal, and there was no indication of impropriety); *Hill v. Kaiser Found. Health Plan*, 2015 WL 5138561, at *1, *4 (N.D. Cal. Sept. 1, 2015) (finding nothing improper about a pre-certification settlement resolving the named plaintiffs' individual claims following more than five months of court-supervised negotiations); *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 667–68 (C.D. Cal. 2005) (finding the plaintiff preliminarily adequate to serve as a PSLRA lead plaintiff where he purchased the relevant securities during the class period, affirmatively accepted the responsibilities of representing the class, and there was no evidence of collusion). *Krzesniak*, in fact, supplies the standard Freeway meets: an inadequacy showing requires evidence that the plaintiff "failed to zealously pursue class actions in prior cases." 2007 WL 1795703, at *10. Plaintiff's dozens of abandoned classes are that evidence. And a declaration drafted after Freeway moved cannot supply the understanding Plaintiff's conduct disproves. Adequacy is measured by what a representative and his counsel do, and what Plaintiff and his counsel here do, is abandon classes to benefit themselves financially.

Page 19 -   **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION**

Rule 23 imposes no "amateurs only" rule, and Freeway never argued that. But it does require a real representative committed to prosecuting the class's claims, rather than a "representative" whose status is a "fictive concept." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 343 (N.D. Ill. 2010). Plaintiff's litigation history, his continuing dismissals, his failure to explain the outcomes of his prior cases, and the agreements that transfer practical control and the entire settlement premium to counsel establish that neither Plaintiff nor his lawyers can be trusted to fairly and vigorously represent the proposed class.

### 2. Plaintiff's Continued Hate Speech and Incitement of Violence Confirm He Is Unfit to Serve as a Fiduciary

Plaintiff contends (at 8) that his violent and hateful public social media posts are mere "trivial credibility problems" irrelevant to adequacy. Set aside the egregiousness of labeling Wilson's threats trivial—he said he wanted to "punch some motherf***ers [parents of transgender kids] in the head" and boasted of "holes f***ing dug already" for Jewish people. The label also misstates Freeway's argument. Freeway does not contend that every offensive statement, prior conviction, restraining order, or personal shortcoming renders a class representative inadequate. Freeway intentionally did not raise Plaintiff's prior convictions because it agrees that cocaine possession does not bar service as a class representative (though Freeway has since learned that he had numerous additional prior convictions and had several civil restraining orders entered against him). In any event, Freeway's point is narrower and more serious: Rule 23(a)(4) does not permit a plaintiff to act as a fiduciary for absent class members while publicly inciting violence against groups included in any class he seeks to represent.

Plaintiff's cases (at 15–16) involved ordinary misconduct or offensive views unaccompanied by threats, conflicting interests, or dishonesty concerning the litigation. *See Curry v. Kraft Foods Glob., Inc.*, 2011 WL 4036129, at *4 & n.1 (N.D. Ill. Sept. 12, 2011) (drug

purchases, false employment applications, and workplace discipline unrelated to class members); *Meyer v. Portfolio Recovery Assocs., LLC*, 2011 WL 11712610, at *4 (S.D. Cal. Sept. 14, 2011) (prior convictions creating no class conflict); *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) (plaintiff had not acted on his offensive views and remained financially aligned with the class); *Gaertner v. Commemorative Brands, Inc.*, 2026 WL 248292, at *12 (S.D. Ill. Jan. 30, 2026) (distinguishing moral shortcomings from conduct "directly indicative of dishonesty").

Plaintiff's posts are not merely offensive remarks. He publicly referred to Jewish people as "parasites" and stated that he has "holes f***ing dug already" for them, in a video captioned "Got some holes need filled boys & I need to know who's with me on this one." ECF No. 19-1 ¶ 15 & Ex. E. He said of parents of transgender children that he "would love to punch some motherf***ers in the head," that he avoids "stupid sh*t with witnesses," but that "the time will come." *Id.*, Ex. I.

And Plaintiff has made clear, even after Freeway filed its motion, that these were not empty threats. Twelve days after Freeway challenged his adequacy, he publicly declared in what appeared to be a missive about this motion that "whatever I say is what I believe" and that, even if speaking out cost him "a couple hundred thousand dollars," "when I have something to say, it's gonna be said." Third Watstein Decl., Ex. 8. Not even a month later, and just sixteen days before executing his declaration, Plaintiff praised Adolf Hitler as "the greatest protector of Christianity," announced that "we're gonna find them all," and stated that "we need to finish what f***in' Hitler was tryin' to do." Third Watstein Decl. ¶ 18 & Ex. 7.

Those contemporaneous incitements to violence cannot be reconciled with Plaintiff's self-serving declaration that he has never threatened anyone or intended to incite violence. Wilson Decl. ¶ 29. Nor is "violent" Freeway's characterization. By Plaintiff's own boasting, Facebook has removed his posts more than a dozen times for "incitement to violence," "hate speech," "bullying,"

Page 21 -  **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION**

and "harassment." ECF No. 19-1 ¶¶ 18–19. A neutral platform made that call long before Freeway did.

Plaintiff's related claim that his commentary was "intended to be private and not publicly accessible" (at 16–17; Wilson Decl. ¶¶ 30–32) is also contradicted by the record. When Freeway filed his statements on May 16, Plaintiff didn't apologize. He first declared that he would say what he wanted even if it cost him a couple hundred thousand. Third Watstein Decl. ¶ 19 & Ex. 8. He apparently thought better of it and took some of his posts private. Third Watstein Decl. ¶ 17. He then switched to code on the account that was still public—referring to Jewish people with a "juice box" emoji—and then resumed posting openly. *Id.* ¶ 17 & Exs. 5, 6.

Contradictions that bear directly on the candor and trustworthiness required of a fiduciary are not "trivial." Viewed alongside his description of his number as a source of "steady income," and a litigation model aimed at squeezing well-meaning defendants for more than the statute permits while producing nothing for others, the record confirms that his interests begin and end with himself.

### 3.    Plaintiff Fails to Rebut Freeway's Manufactured-Claim Evidence

Plaintiff reduces Freeway's showing of his abusive sue-and-settle operation to a chronology (at 17–18): the Freeway lead was submitted in June 2024, and Plaintiff first contacted HLF in October 2024. That only speaks to whether Plaintiff and HLF jointly manufactured this particular lead after forming an attorney-client relationship, which Freeway's motion didn't claim to know or depend on. Freeway expressly acknowledged that this and other claims might be legitimate given Wilson's 999-9999 number but explained that, for certification, "it does not matter who submitted the contact request form—Wilson, Heidarpour, or someone else." ECF No. 19 at 3–4, 17. That's because the need to carry out the inquiry is itself what precludes certification, as explained below in Section C.1.

More importantly for purposes of this section on adequacy, however, is that Plaintiff has no answer to what Freeway actually explained: that significant evidence points to litigation fraud in some of Wilson's cases and across HLF-generated cases more generally. The motion documents HLF-originated claims in which IP and other evidence connected lead submissions to the plaintiff or someone financially interested in the claim; outside counsel dismissed cases after receiving that evidence; HLF abandoned demands once Freeway's counsel raised suspected fraud; and another serial plaintiff's number appeared in hundreds of leads using VPNs and remote-access tools before her filings abruptly stopped after the evidence was disclosed—just like no new Wilson claims have been filed since Freeway filed this motion. ECF No. 19 at 13–15; Watstein Decl. ¶¶ 47–50.

Freeway also identified a claim by Wilson involving a request for stock alerts, where entering a false number would defeat the submission's only purpose, that outside counsel also abandoned when confronted. ECF No. 19 at 14. And in *Woodard*, an HLF-originated action filed by Perrong, the court sustained counterclaims alleging that the plaintiff solicited the calls to manufacture TCPA claims; the action was then dismissed with prejudice after HLF was subpoenaed. *Id.* at 14–15. HLF and counsel here were positioned to answer all this evidence. Neither did. Their silence on these serious matters speaks loudly.

And in yet another Wilson action prosecuted by the same counsel here, the defendant's in-house counsel declared that its internal records tied the January 1, 2025, opt-in for Wilson's number to IP address 73.240.49.37. Third Watstein Decl., Ex. 9, Birch Decl. ¶¶ 2–7. Wilson's counsel categorically denied that the address was associated with Wilson, but Wilson later admitted that the same IP address had been assigned to him on January 30, 2025. *Id.*, Shechter Decl. ¶ 4. That later admission undermines counsel's categorical denial of any wrongdoing and supplies yet another concrete basis to investigate the depth of the misconduct at play.

Page 23 -  **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION**

WATSTEIN TEREPKA LLP
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

Instead of addressing any of this evidence, Plaintiff offers a single citation to *Skopos* (at 18), where a third party testified that he entered Wilson's number believing it belonged to no one. Freeway has always agreed that this explains some of Wilson's calls and texts, given he has a 999-9999 number. ECF No. 19 at 1 n.1. But one identified submitter in one case out of hundreds does nothing to rebut the evidence above of highly suspicious submissions arising after the relationship between a plaintiff and HLF begins.

Finally, Plaintiff cannot distinguish *Human* on the ground that its fraud findings followed a developed record while he simultaneously prevents this record from developing. Plaintiff has frozen discovery in this case, *supra* § II.A.3; HLF moved to quash Freeway's subpoena. ECF No. 23-1, Ex. C; ECF No. 24 at 3; Third Watstein Decl., Ex. 4. Plaintiff cannot block the investigation and then invoke the absence of findings that investigation would produce. That is the suspect who refuses to stand in the lineup, then declares himself innocent because no witness identified him.

Freeway need not prove fraud to establish the adequacy defects already before the Court. But Plaintiff's failure to answer the serious evidence Freeway submitted on this point deepens his inadequacy, since these issues would hang over his head at trial, risking prejudice to absent class members' claims. And that's exactly what adequacy exists to prevent.

### C.     Plaintiff's Own Claim Proves the Individualized Inquiries That Defeat Predominance

Freeway's motion established (at 21–26) that individualized issues of consent, standing, arbitration, and residential status each require member-by-member adjudication that no common proof can supply. Plaintiff's answer is not to identify the common proof. It is to insist that certification cannot be denied until he examines millions of lead documents. But Plaintiff's own theory is that companies only contact him because someone inputs his area code followed by 999-9999. Freeway has already established that its records could not identify a single other person like

Page 24 -   **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION**

WATSTEIN TEREPKA LLP
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

Plaintiff—or the lack of consent with uniformity—so there's nothing relevant to produce, as it told Plaintiff long ago.

Liability to a single other person for a one-off mistake call—like the identification of a fraudulent lead submitted to generate a TCPA claim—would turn on "individual testimony," so a class trial would devolve into "a series of mini-trials." *Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 469–70 (9th Cir. 2023) (decertifying class where eight days of trial testimony resolved the claims of just eleven of 156 class members; here the inquiry would be far more laborious given what it has already taken to investigate Wilson's claim). Because Freeway has nothing to produce that would resolve the questions that matter, more discovery could not change the outcome. The Court should deny certification now.[2]

### 1.    Freeway Carried Its Consent Burden, and Plaintiff's Own Cases Confirm That Individualized Issues Predominate

To decide whether any class can be certified, the Court need not decide whether any putative class member consented to receive communications from Freeway (though everyone did, absent a mistyped digit or litigation fraud). The question is whether consent can be established as to each member with common proof at trial. It cannot, and Plaintiff's own authority shows why. Plaintiff reads *True Health* (at 22) to hold that a defendant cannot defeat predominance by invoking the mere "possibility" of consent. Of course that's right, but it's only half the holding. The part Plaintiff ignores is that where evidence shows consent was obtained in materially different ways

---

[2] Plaintiff also devotes two sentences (at 29) to superiority, contending that *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 723 (9th Cir. 2010), forecloses Freeway's "settlement-pressure refrain." It does not. Freeway has never argued what *Bateman* and *Wakefield* rejected—that certification should be denied merely because Plaintiff seeks substantial aggregate damages. Freeway argues that Rule 23's express prerequisites are unmet. *Bateman* says nothing about a representative who weaponizes the class device (a Rule 23(a)(4) problem) and nothing about individualized issues (a Rule 23(b)(3) problem). And superiority never comes into play: Rule 23(b)(3) requires predominance *and* superiority, so a class that fails predominance cannot be certified however "superior" the device might otherwise be.

Page 25 -  **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION**

across the class, individualized issues predominate. *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931–32 (9th Cir. 2018). Freeway made that showing here. Its sworn testimony—which Plaintiff did not even seek to rebut via deposition—establishes a consent-backed submission behind every lead, obtained through dozens of vendors, across different webforms with different consent language, over a period of years. Barboza Decl. ¶¶ 7–13, 16. That's exactly the ground on which the court in *True Health* found a subclass couldn't be certified. 896 F.3d at 932–33 (holding that variation in communications and relationships, as evidenced by declaration testimony, "is enough to support denial of class certification under Rule 23(b)(3)").

Plaintiff's lead case, *Berman*, likewise compels denial of class certification here. He cites *Berman* throughout his opposition (at 2, 18, 21, 23) as the template for what Freeway's data "might show": bot-generated leads, fictitious registrants, hundreds of thousands of nonsense entries. What he never tells the Court is how *Berman* ended. After the lead database was produced and analyzed, and after the record revealed precisely the defects Plaintiff hypothesizes here (mistyped numbers, leads entered by the wrong person, leads entered by bots), the court *denied class certification* because individualized defenses of express consent and arbitration would have overwhelmed issues common to the class. *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 987 (N.D. Cal. 2019). In other words, if class discovery revealed everything he predicts, *Berman* says what follows is still denial. And his reliance on the Ninth Circuit's *Berman* decision only multiplies his problem. Whether a webform's disclosures were conspicuous enough is a screen-by-screen, version-by-version inquiry. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856–58 (9th Cir. 2022). Dozens of vendors and form versions across years mean hundreds of thousands or more *Berman* analyses, which likewise precludes certification. ECF No. 19-2, Barboza Decl. ¶¶ 16, 25–29.

Page 26 - **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION**

**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

Plaintiff's refrain (at 24) that every question is "answerable in one stroke" from Freeway's "centralized databases" fails for a more basic reason. Evidence is common proof only if "each class member could have relied on [it] to establish liability if he or she had brought an individual action." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 668 (9th Cir. 2022) (en banc) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455 (2016)). No class member could rely on Freeway's CRM to prove a lack of consent, because it reflects consent for every lead. If someone disputes that proof, the parties must conduct the analysis that has taken hundreds of hours just for Wilson's lead in this case: cross-examine the call recipient, subpoena their phone records, test their credibility with third-party discovery, research whether there is a connection between the person in the lead and the call recipient, hire a private investigator, conduct a device inspection, etc. ECF No. 19-1 ¶ 53. That is the antithesis of common proof.

Plaintiff's own cases (at 24) draw the same line. Every decision involved either a single lead source or a defendant that never showed its consent evidence varied, and none of them involved a plaintiff whose own explanation was an error by a third party. *See Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376, 397 (D. Mass. 2024) (every consent form shared one alleged defect—failure to name QuoteWizard—so the defense rose or fell on a single issue that plaintiff experienced); *Aley v. Lightfire Partners, LLC*, 2024 WL 4007345, at *5 (N.D.N.Y. Aug. 30, 2024) (consent procedures of a single vendor website that the plaintiff experienced); *Anthony v. Fed. Sav. Bank*, 2025 WL 3101827, at *11 (N.D. Ill. Nov. 6, 2025) (all numbers from a single commercial source, and no evidence consent was sought from any class member); *Thrower v. Citizens Disability, LLC*, 2022 WL 3754737, at *5 (D. Mass. Aug. 30, 2022) (defendant admitted consent could be determined through "a simple analysis of [its] own internal data").

Page 27 -  **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION**

Plaintiff's reliance on *Williams* concedes the point: the class there was certified only after it was narrowed to exclude numbers from vendors whose records showed consent. *Williams v. PillPack LLC*, 343 F.R.D. 201, 207–10, 213 (W.D. Wash. 2022). That is an acknowledgment that where consent evidence exists and comes from different sources using different consent mechanisms, class treatment is not the answer. *See* ECF No. 19 at 25 n.6 (collecting cases). Here, Freeway's evidence establishes what those defendants never showed: dozens of vendors, differing consent language, and a submission behind every number. Barboza Decl. ¶¶ 7–13, 16. The variance those courts found missing is affirmatively established here. That ends the inquiry.

Plaintiff cites *Hossfeld* (at 23) for the proposition that Freeway cannot establish consent through third-party lead records for which no evidentiary foundation has been laid—and, from there, that Freeway's consent showing is inadmissible. That is wrong four times over. First, the Seventh Circuit reversed that decision last month. *Hossfeld v. Allstate Ins. Co.*, 2026 WL 1815908 (7th Cir. June 24, 2026). Second, even on its own terms, the district court in *Hossfeld* didn't hold what Plaintiff cites it for. It sustained a hearsay objection to one spreadsheet of unknown origin, sponsored by a witness who could not say where it came from. *Hossfeld*, 726 F. Supp. 3d 852, 873 (N.D. Ill. 2024). That says nothing about Barboza's sworn account of records Freeway requires, receives, and maintains from identified vendors in the ordinary course of its business. Third, and relatedly, the categorical rule Plaintiff relies on does not exist in this circuit: records from third parties are generally admissible business records of the receiving entity. *United States v. Childs*, 5 F.3d 1328, 1333 (9th Cir. 1993). Fourth, the hearsay rule is not applied strictly at the certification stage anyway. *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th Cir. 2018). And in all events, the objection concedes Freeway's point. If each lead must be authenticated and tested

before it counts, then each requires individualized inquiry that defeats predominance. Plaintiff cannot have it both ways.

Plaintiff's remaining consent discussion responds to an argument Freeway never made. He re-runs the fabrication chronology answered above. *Supra* § II.B.3. But the predominance point was never *who* submitted the form. It's what it took to try to find out: a private investigator, device-inspection requests, third-party subpoenas, months of effort, and still no resolution. Every disputed lead would demand the same investigation, and that inquiry dooms predominance. Plaintiff—who paid $1,000 for a 999-9999 number and who, by his own account, gets calls intended for other people who submitted his number—never had a good-faith basis to claim otherwise.[3] He did so only for individual settlement leverage, as explained above.

### 2. Individualized Issues of Arbitration Preclude Certification

Freeway's motion established (at 26–29) that individualized issues of arbitration likewise defeat predominance because they require member-by-member adjudication. That's because most of Freeway's vendor terms contain arbitration provisions designating arbitrability to the arbitrator, Barboza Decl. ¶¶ 27–29, so whether any given member assented to any given version must be litigated the same way. Those showings doom certification, because Freeway is entitled to litigate its individualized defenses as to each class member: foreclosing it "would violate due process," while permitting it "would render class certification inappropriate." *Ambrosio v. Progressive Preferred Ins. Co.*, 154 F.4th 1107, 1112 (9th Cir. 2025). And formation of any online agreement

---

[3] Freeway's motion established (at 26–27) that standing cannot be resolved classwide because consenting recipients suffered no injury, and separating them from genuine non-consenters requires individualized proof. Plaintiff responds (at 25–26) that *Skopos* settled the question: receipt of more than one unconsented text to a DNC-registered number is itself a concrete injury. That changes nothing. *Skopos* establishes that a third party's opt-in is not the recipient's consent, 2026 WL 810636, at *3; it does not establish who submitted any particular consent form. Freeway does not ask the Court to find any absent member uninjured now. It only asks it to recognize that, for each member who denies consenting despite a consent record, Freeway is entitled to test the denial.

Page 29 -   **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION**    **WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

is screen- and design-specific, so dozens of vendors and versions mean hundreds of thousands of inquiries. *Berman*, 30 F.4th at 856–58.

Plaintiff's response (at 27) fails twice over. He says the defense fails because Freeway produced no executed arbitration agreement and "has moved to compel arbitration against no one." The second point contradicts itself: absent class members are not parties before certification and Plaintiff denies submitting a lead, so there is no one to move against. *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011). Opposing certification is "precisely the stage" at which absent members' arbitration agreements belong before the court. *Maldini v. Marriott Int'l, Inc.*, 140 F.4th 123, 131 (4th Cir. 2025). And the first point ignores the record. Freeway established that the arbitration provisions with delegation clauses exist across most vendor terms, Barboza Decl. ¶¶ 27–29, compounding the predominance problem and alone precluding certification.

### 3.    Residential Status Cannot Be Resolved with Common Proof

Residential status also independently defeats predominance, and courts have denied certification even earlier for this exact reason. In *Payne*, the court granted a preemptive motion to deny certification at an even earlier stage because whether each number was residential or business could not be resolved with common proof, and the plaintiff failed to show that discovery would substantiate the class allegations on that question. 347 F.R.D. at 228. In *Rocket Mortgage*, this District did the same, holding that *Chennette*'s pleading-stage rebuttal presumption of residential status is exactly that: a rebuttable presumption that allocates a burden but does not provide classwide proof. 2024 WL 4794710, at *2–3. *Chennette* itself dictates that rebutting the presumption involves a multi-factor inquiry into how each subscriber uses the number, registers it, holds it out to the world, accounts for it for tax purposes, and so on. *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022). Those are facts about class members' lives that cannot be answered without written discovery, document productions, and cross-examination from each

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION**

WATSTEIN TEREPKA LLP
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

class member. Freeway is entitled to that rebuttal as to each class member. *Ambrosio*, 154 F.4th at 1112. That's why the business number defense alone is dispositive on predominance.

Unlike *Jackson*, where the defendant offered no evidence that any class number was mixed-use, *Jackson v. Athena Bitcoin, Inc.*, 2025 WL 2237453, at *6–7 (N.D. Fla. June 18, 2025), Wilson's own circumstances establish that this issue is dispositive here. In his lawyer-drafted declaration for this motion, Wilson declares his number is solely a personal-use line. ECF No. 29 ¶¶ 4–5. But his sworn *Skopos* testimony describes the holistic-health store, the military-equipment sales, and the TCPA "job" he runs on that number. *Supra* § II.B.1. That the named plaintiff operates three businesses on his number belies Plaintiff's claim that business numbers are unlikely to appear in a class of auto insurance purchasers. Logic does too, as people who use their numbers for business drive cars just like those who don't.

Plaintiff last argues that the Court should simply credit his declaration, as *TPH Paralegal* did at the pleading stage. ECF No. 28 at 28 (citing *Wilson v. TPH Paralegal Pro. Corp.*, 2026 WL 899930, at *7 (D. Or. Apr. 1, 2026)). That case does not help him. *TPH Paralegal* credited a declaration against a defendant's speculation that the number was a "dummy" line. Here, the contradiction is Wilson against Wilson: his declaration against his own prior sworn testimony. The Court need not decide which Wilson to believe. The contest's existence is the point—if residential status requires a credibility trial for the one number the parties know most about, it cannot be resolved "in one stroke" for thousands of numbers they know nothing about. *Payne*, 347 F.R.D. at 228. And DNC Registry status supplies no shortcut. Anyone, including a business, can register a number. *Worsham v. Disc. Power, Inc.*, 2021 WL 50922, at *4 (D. Md. Jan. 6, 2021).

**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

#### 4.    Plaintiff's Typicality Argument Refutes a Ground Freeway Never Raised and Concedes the One It Did

Plaintiff devotes three pages (at 19–22) to typicality, a ground Freeway's motion never raised as a discrete basis for denial. The pages are not wasted, though, because his own framing concedes the predominance problem. Plaintiff insists (at 20) that his denial of the lead submission is not a unique defense but "the defining characteristic of the claim, shared by every class member whose number was entered by a third party, a bot, or no one at all." That is the admission. A class defined by member-by-member denials requires a member-by-member investigation—the same investigation that months of discovery have not resolved for Plaintiff's own claim.

Plaintiff also misstates the argument he sets out to rebut. Freeway's point was never that a distinctive number is disqualifying. It is that both parties' accounts of how Plaintiff's number enters lead forms make his claim an atypical one-off for which duplicates, if any, cannot be identified absent individualized analyses. On Freeway's account, the number is entered by both strangers and someone (or several people) with a financial interest in generating a claim. On Plaintiff's, strangers enter it because they believe it belongs to no one, as "Brian"—the one person in hundreds of cases he points to as having done that—testified in *Skopos*. Either origin story separates Plaintiff from the ordinary lead. And his lone contrary theory (at 21)—that Freeway's data "might show" purported consent leads spanning the entire 541 exchange—is outlandish speculation that contradicts his own explanation for why his number draws calls. It is also contradicted by discovery: Plaintiff didn't ask for such records because he doesn't believe the outlandish theory he manufactured for this motion, and Freeway's responses confirmed no records exist that could answer consent classwide. The mismatch feeds the adequacy showing too: Plaintiff files claims that, on his own telling, are one-off misdials, labels them class actions anyway, and prices them accordingly.

His cases don't hold otherwise. *Aley* found typicality under the Second Circuit's "low" and flexible standard where every number came from a single lead generator, website, and marketing campaign. 2024 WL 4007345, at \*4–6. *Williams* deemed the plaintiff's denial immaterial because the disputed form did not identify PillPack as a marketing partner—leaving him subject to the same consent defect as everyone else. 343 F.R.D. at 213. And *TPH Paralegal* was not a certification decision at all. It denied a motion to strike where the defendant offered only speculation. 2026 WL 899930, at \*5, \*7. None of those decisions confronted this evidentiary record: consent submissions behind every number, from dozens of sources, with the named plaintiff's own submission already the subject of a months-long investigation.

But Plaintiff was right to raise typicality: whether viewed as a standing, adequacy, or typicality issue, Wilson cannot challenge the various lead forms other people encountered. Why? He claims he never experienced them. A named plaintiff who cannot testify about an alleged common experience cannot serve as the stand-in for others who did experience it. Any other conclusion would both deprive Freeway of the ability to cross-examine the named plaintiff on critical defenses and risk a ruling against the class because the named plaintiff doesn't have personal knowledge. The numerous unique defenses Wilson is subject to create the same risks: a jury would be distracted by his litigation history, evidence that he manufactures claims, and so on. *See Soutter v. Equifax Info. Servs., LLC*, 498 F. App'x 260, 265 (4th Cir. 2012) (plaintiff atypical because variations in claims would not "advance the claims of other class members"); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (affirming denial of certification where plaintiff's "unique background" required him to meet defenses not typical of the class).

III.    CONCLUSION

Page 33 -    **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION**

WATSTEIN TEREPKA LLP
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

Plaintiff cannot satisfy Rule 23, and his opposition confirms it. He does not dispute the history that makes him inadequate to represent any class, and the fee agreements now in the record guarantee he never could be. They, along with the numerous dismissals of their own clients' claims since Freeway filed this motion, also confirm that counsel is inadequate. Individualized issues of consent, standing, arbitration, and residential status each independently defeat predominance, as the months-long investigation into Plaintiff's own claim has already proven. The Court should grant Freeway's motion and deny class certification now, lest Plaintiff's counsel continue to use Wilson's admittedly one-off claims, unethical engagement agreements, and Rule 23 to extract *in terrorem*, unreviewable individual settlements that the statute doesn't permit.

Dated: July 20, 2026

/s/ Ryan D. Watstein
Ryan D. Watstein (*Pro Hac Vice*)
ryan@wtlaw.com
James M. Ruley (*Pro Hac Vice*)
jruley@wtlaw.com
**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

Timothy J. Fransen, OSB No. 073938
tfransen@cosgravelaw.com
**COSGRAVE VERGEER KESTER LLP**
900 SW Fifth Avenue, 24th Floor
Portland, Oregon 97204
Telephone: (503) 323-9000
Facsimile: (503) 323-9019

*Attorneys for Defendant Freeway Insurance
Services of America, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on July 20, 2026, I electronically filed the foregoing Defendant's Reply in Support of Its Motion to Deny Class Certification with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

DATED: July 20, 2026

/s/ Ryan D. Watstein
Ryan D. Watstein

WATSTEIN TEREPKA LLP
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695