Timothy J. Fransen, OSB No. 073938
tfransen@cosgravelaw.com
**COSGRAVE VERGEER KESTER LLP**
900 SW Fifth Avenue, 24th Floor
Portland, Oregon 97204
Telephone: (503) 323-9000
Facsimile: (503) 323-9019

Ryan D. Watstein (*Pro Hac Vice*)
ryan@wtlaw.com
James M. Ruley (*Pro Hac Vice*)
jruley@wtlaw.com
**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

*Attorneys for Defendant*
*Freeway Insurance Services of America, LLC*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF OREGON
### EUGENE DIVISION

| | |
|---|---|
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>FREEWAY INSURANCE SERVICES OF AMERICA, LLC,<br><br>    Defendant. | Case No. 6:25–cv–1869–MC<br><br>**DECLARATION OF RYAN D. WATSTEIN IN SUPPORT OF DEFENDANT FREEWAY INSURANCE SERVICES OF AMERICA, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION** |

**DECLARATION OF RYAN D. WATSTEIN**

**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

**DECLARATION OF RYAN D. WATSTEIN**

1.      My name is Ryan D. Watstein. I am an attorney and co-founder of Watstein Terepka LLP, an approximately 25-lawyer firm based at 75 14th Street NE, Suite 2600, Atlanta, Georgia 30309. I am over the age of 18, of sound mind, and competent to make this Declaration. I make this Declaration based on my personal knowledge.

2.      I am counsel of record for Defendant Freeway Insurance Services of America, LLC ("Freeway") in this action. Based on my active participation and supervision of all material aspects of the defense of this action and others, I have personal knowledge of the matters set forth herein.

3.      I submit this declaration in support of Freeway's reply in support of its motion to deny class certification, filed contemporaneously herewith.

4.      I have defended more than 600 TCPA class actions throughout my career. Many of those putative class actions were brought by serial litigants. I have never asked a court to find a plaintiff inadequate based on an argument that the plaintiff is a "professional litigant."

5.      Since October 2024, Plaintiff has been a named Plaintiff in 85 putative TCPA class actions. As of today, Plaintiff has settled or dismissed 60 of those cases on an individual basis. A true and correct copy of the PACER Case Locator search results for Chet Wilson is attached hereto as **Exhibit 1**.

6.      Most of these cases settled individually within months, sometimes weeks, after being filed, before the end of the discovery period, and presumably often before discovery opened, given the timing. *See* **Exhibit 1**.

7.      Based on my review of the dockets identified in Exhibit 1, I have not identified any case in which Wilson litigated a contested motion for class certification to a ruling. The only case

Page 2 -  **DECLARATION OF RYAN D. WATSTEIN**          **WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

I am aware of in which Wilson has sought certification is *Wilson v. PacifiCorp*, where the parties jointly seek certification solely for settlement purposes. No. 6:24-cv-1956 (D. Or.)

8.      Twelve[1] of those dismissals or settlements occurred after Freeway filed its Motion to Deny Class Certification on May 16, 2026, despite vigorously litigating several of them before Freeway's motion to deny certification:

a.  *Wilson v. Staples, Inc.*, No. 1:26-cv-11489 (D. Mass.): on May 19, 2026, the defendant filed a motion for extension of time to file its answer pending settlement (Dkt. No. 8), and Plaintiff subsequently filed a Notice of Voluntary Dismissal (Dkt. No. 10).

b.  *Wilson v. Mortg. One, Inc.*, No. 3:25-cv-03648 (S.D. Cal.): Plaintiff filed a Notice of Voluntary Dismissal on May 20, 2026 (Dkt. No. 16), despite having recently defended his claims against a Rule 12(b)(6) motion (Dkt. Nos. 11, 12, 13).

c.  *Wilson v. Dealmed Med. Supplies, LLC*, No. 1:26-cv-9 (E.D.N.Y.): Plaintiff filed a Notice of Voluntary Dismissal on May 20, 2026 (Dkt. No. 22), despite having recently defended his claims against a Rule 12(b)(6) motion (Dkt. Nos. 15, 18).

d.  *Wilson v. Yakima Valley Farm Workers Clinic,* No. 1:26-cv-3003 (E.D. Wash.): Plaintiff filed a Stipulation of Dismissal with Prejudice on May 22, 2026 (Dkt. No. 15).

e.  *Wilson v. AMS Moving Inc.*, No. 9:26-cv-80334 (S.D. Fla.): Plaintiff filed a Notice of Settlement on May 26, 2026 (Dkt. No. 10) and a Notice of Voluntary Dismissal on July 15, 2026 (Dkt. No. 14).

f.  *Wilson v. Easy Spirit, LLC*, No. 3:25-cv-112 (D. Conn.): Plaintiff filed a Stipulation of Dismissal with Prejudice on May 26, 2026 (Dkt. No. 99).

g.  *Wilson v. Vozzcom, Inc.*, No. 0:25-cv-61793 (S.D. Fla.): Plaintiff filed a Notice of Settlement on June 12, 2026 (Dkt. No. 43) and a Stipulation of Dismissal with Prejudice on July 12, 2026 (Dkt. No. 45).

h.  *Wilson v. Hard Eight Nutrition LLC*, No. 6:25-cv-144 (D. Or.): Plaintiff filed a Stipulation of Dismissal on June 30, 2026 (Doc. 31).

---

[1] Although a thirteenth case, *Wilson v. Better Mortgage Corp.* was also dismissed during this period, it appears that the parties initially sought a stipulated dismissal of that case on February 24, 2026, but that repeated filing deficiencies delayed formal dismissal until June 30, 2026. No. 1:25-cv-5503 (S.D.N.Y.), Dkt. Nos. 40, 41, 42.

Page 3 -   **DECLARATION OF RYAN D. WATSTEIN**

i. *Wilson v. Cirkul Inc.*, No. 6:25-cv-2036 (D. Or.): Plaintiff filed a Notice of Voluntary Dismissal on July 9, 2026 (Dkt. No. 35), despite recently receiving a favorable Report & Recommendation (Dkt. No. 29) on a contested motion to dismiss for which Plaintiff filed *several* notices of supplemental authorities and responding to the defendant's objections to that R&R (Dkt. Nos. 20, 24, 25, 26, 27, 34).

j. *Wilson v. Monarch Recovery Mgmt., Inc.*, No. 2:25-cv-4845 (E.D. Pa.): Plaintiff filed a Stipulation of Dismissal with Prejudice on July 13, 2026 (Dkt. No. 11).

k. *McGonigle & Wilson v. MRS BPO LLC*, No. 1:25-cv-15811 (D.N.J.): Plaintiff Wilson filed a stipulation of dismissal without prejudice of his claims only on July 14, 2026 (Dkt. No. 42).

l. *Wilson v. Nat'l General Ins. Co.*, No. 1:25-cv-719 (M.D.N.C.): Plaintiff filed a stipulation of dismissal on July 15, 2026 (Dkt. No. 23).

9. Since Freeway filed its motion to deny certification, Plaintiff's shadow counsel, the Heidarpour Law Firm, has abandoned every demand letter aimed at parties represented by Watstein Terepka.

10. Since Freeway filed its motion to deny certification, Plaintiff's counsel Andrew Perrong and/or Anthony Paronich have dismissed 7 cases where Watstein Terepka represents the defendants. Many dismissals or requests to stipulate to a dismissal occurred within hours of Judge McShane's Scheduling Order, ECF No. 30. *See, e.g.*, *Weingrad v. Business Capital LLC*, No. 2:25-cv-6344 (E.D. Pa. July 14, 2026) (filing a notice of voluntary dismissal despite recently traveling to argue against a pending motion to dismiss) Dkt. No. 28; *Weingrad v. Denny's, Inc.*, No. 3:26-cv-342 (D. Or. July 15, 2026), Dkt. No. 17; *Weingrad v. Fund Mate LLC*, No. 2:24-cv-4716 (E.D. Pa. July 15, 2026), Dkt. No. 45; *Bronstin v. S. Cal. Edison Co.*, No. 25-cv-2334 (C.D. Cal. June 18, 2026), Dkt. No. 35; *Nelson v. Cap. Vision Eye Servs.*, No. 5:26-cv-10275 (E.D. Mich. June 29, 2026), Dkt. No. 19; *Soboleski v. TerrAscend Corp.*, No. 4:25-cv-11763 (E.D. Mich. July 14, 2026), Dkt. No. 34; *Nelson v. OmahaSteaks.com, LLC*, No. 3:26-cv-10481 (E.D. Mich. July 20, 2026), Dkt. No. 13.

Page 4 -    **DECLARATION OF RYAN D. WATSTEIN**

11. In dismissing some of these cases, Plaintiff's counsel alluded to the Seventh Circuit's recent decision in *Steidinger v. Blackstone Medical Services*, --- F.4th ----, 2026 WL 2028517 (7th Cir. July 14, 2026), holding that text messages do not qualify as "calls" under the TCPA. But none of the dismissed actions was pending within the Seventh Circuit, and some involved phone calls, not text messages. And Plaintiff's counsel has continued litigating materially similar text-message claims outside the Seventh Circuit against defendants represented by other firms. *See, e.g.*, Proposed Case Management Plan, *Shelton v. JR Cap., LLC*, No. 2:26-cv-2878 (E.D. Pa. July 17, 2026), Dkt. No. 16. In many of these cases, counsel had previously tendered individual settlement demands for many multiples of the available statutory damages, sometimes nearing six figures.

12. Since Freeway filed its motion to deny certification, HLF and its referral counsel have also begun transmitting draft class-action complaints to prospective defendants, paired with individual settlement demands of approximately $100,000. Across hundreds of cases against these firms, I do not recall ever seeing a similar practice before Freeway filed its motion.

13. In connection with our firm's investigation in this case, I have recently seen examples of settlement statements prepared by HLF. Each of the statements I have seen incorporates a release by the plaintiff to his or her own counsel from claims arising out of the representation. The plaintiff's signature on the settlement statements I saw appeared as a bare electronic mark, without a DocuSign or SignNow verification log showing that the plaintiff opened, reviewed, or executed the document personally.

14. On April 22, 2026, counsel for Freeway produced documents responsive to Plaintiff's First Set of Discovery Requests. In that same email, counsel for Freeway provided a draft stipulated protective order and asked counsel for Plaintiff to provide proposed revisions.

Page 5 -    **DECLARATION OF RYAN D. WATSTEIN**

Plaintiff's counsel never responded to that email. A true and correct copy of that email is attached hereto as **Exhibit 2**.

15.    Attached hereto as **Exhibit 3** is a true and correct copy of the Contingent Fee Agreement signed by Plaintiff and HLF on October 4, 2024, which HLF produced to counsel for Defendant in response to a subpoena. No protective order was entered in this case, nor did Freeway and HLF agree to the confidentiality of any documents exchanged.

16.    Freeway offered to pause enforcement of its subpoena to HLF if HLF would confirm one item: who signed the Contingent Fee Agreement dated August 29, 2025 (ECF No. 26-1). HLF refused and, instead, filed an "emergency" motion to quash in the District of D.C. A true and correct copy of the relevant correspondence between counsel for Freeway and counsel for HLF is attached hereto as **Exhibit 4**.

17.    After Freeway filed its motion to deny certification, Plaintiff made his Instagram profile private. He began referring to Jewish people as "Juice" and with a "juice box" emoji. Screen recordings of two such social media posts, uploaded by Plaintiff on the social media platform Threads on June 12 and 17, 2026, are attached hereto as **Exhibits 5 and 6**.[2]

18.    On June 27, 2026, Plaintiff posted a video on the social media platform Threads, with a caption that read, "Was Hi Tler wrong to stand for what he believed was right? From my deep research, he seems to be the greatest protector of Christianity I've found in the last 500 years." In the video itself, Plaintiff stated as follows:

> So no matter how much blackmailin' and fuckin corrupting and fucking influencing with greed Israel has on our country, they're done. Those motherfuckers are exposed. Those fuckin' parasites are known to the world now. They can't hide under the fuckin' rock. These fuckin' weasel piece of shits can't fuckin' hide

---

[2] Exhibits 5–8 will be conventionally filed with the Court pursuant to Local Rule 5-6(a) and the CM/ECF User Manual § 12, and copies will also be sent to Plaintiff's counsel.

Page 6 -    **DECLARATION OF RYAN D. WATSTEIN**

anymore. We're gonna find them all. And I think we need to finish what fuckin' Hitler was tryin' to do.

A screen recording of that Threads post is attached hereto as **Exhibit 7**.

19.    On May 28, 2026, Plaintiff posted another video on the social media platform Threads, in which he stated that he "almost lost out on . . . a couple hundred thousand dollars this year" for "speaking the truth and being outspoken and not bending or wavering or silencing my voice." He also said that he "put [my] foot down" and said that "whatever I say is what I believe." He further stated that "when I have something to say, it's gonna be said," and that "there's no carrot you can dangle in front of my face that's gonna make me quiet down or, or, or quiet my voice." A screen recording of that Threads post is attached hereto as **Exhibit 8**.

20.    Attached hereto as **Exhibit 9** is a true and correct copy of the Declaration of Neal Shechter in Support of Defendant's Opposition to Plaintiff's Second Motion for Attorney's Fees and Other Sanctions, filed in *Wilson v. MAH Group, Inc.*, 6:25-cv-855 (D. Or.), on April 14, 2026.

21.    Attached hereto as **Exhibit 10** is a true and correct copy of the Proposed Class Action Settlement Agreement filed by the parties in *Wilson v. PacifiCorp*, No. 6:24-cv-1956 (D. Or. June 9, 2026), Dkt. No. 47-1.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 21, 2026 in Atlanta, Georgia.

/s/ Ryan D. Watstein
Ryan D. Watstein

Page 7 -    **DECLARATION OF RYAN D. WATSTEIN**

# Exhibit 1

## PACER Case Locator Search Results for Chet Wilson

*Wilson v. Freeway Insurance Services of America, LLC*
**Case No. 6:25-cv-1869-MC**

An official website of the United States government.   Here's how you know. ⌄      Log in to PACER Systems →]



Party Search Results

**Search Criteria:** Party Search; Last Name: [wilson]; First Name: [chet]; Party Role: [PLA]
**Result Count:** 85 (2 pages)
**Current Page:** 2

| Party Name | Case Number | Case Title | Court | Date Filed | Date Closed |
|---|---|---|---|---|---|
| WILSON, CHET (pla) | 1:2025cv00719 | WILSON v. NATIONAL GENERAL INSURANCE COMPANY | NORTH CAROLINA MIDDLE DISTRICT COURT | 08/07/2025 | 07/16/2026 |
| Wilson, Chet Michael (pla) | 6:2025cv02036 | Wilson v. Cirkul Inc. | OREGON DISTRICT COURT | 11/02/2025 | 07/14/2026 |
| WILSON, CHET (pla) | 2:2025cv04845 | WILSON v. MONARCH RECOVERY MANAGEMENT, INC. | PENNSYLVANIA EASTERN DISTRICT COURT | 08/24/2025 | 07/14/2026 |
| Wilson, Chet Michael (pla) | 3:2025cv00112 | Wilson v. Easy Spirit, LLC | CONNECTICUT DISTRICT COURT | 01/22/2025 | 07/02/2026 |
| Wilson, Chet Michael (pla) | 1:2025cv05503 | Wilson v. Better Mortgage Corp. | NEW YORK SOUTHERN DISTRICT COURT | 07/02/2025 | 07/01/2026 |
| Wilson, Chet Michael (pla) | 6:2025cv00144 | Wilson v. Hard Eight Nutrition LLC | OREGON DISTRICT COURT | 01/28/2025 | 06/30/2026 |
| Wilson, Chet Michael (pla) | 0:2025cv61793 | Wilson v. Vozzcom, Inc. | FLORIDA SOUTHERN DISTRICT COURT | 09/05/2025 | 06/15/2026 |
| Wilson, Chet Michael (pla) | 9:2026cv80334 | Wilson v. AMS Moving Inc. | FLORIDA SOUTHERN DISTRICT COURT | 03/25/2026 | 06/01/2026 |
| Wilson, Chet Michael (pla) | 1:2026cv11489 | Wilson v. Staples, Inc. | MASSACHUSETTS DISTRICT COURT | 03/29/2026 | 06/01/2026 |
| Wilson, Chet Michael (pla) | 1:2026cv03003 | Wilson v. Yakima Valley Farm Workers Clinic | WASHINGTON EASTERN DISTRICT COURT | 01/07/2026 | 05/27/2026 |
| Wilson, Chet Michael (pla) | 3:2025cv03648 | Wilson v. Mortgage One, Inc. | CALIFORNIA SOUTHERN DISTRICT COURT | 12/17/2025 | 05/22/2026 |
| Wilson, Chet Michael (pla) | 1:2026cv00009 | Wilson v. Dealmed Medical Supplies, LLC | NEW YORK EASTERN DISTRICT COURT | 01/02/2026 | 05/21/2026 |
| Wilson, Chet Michael (pla) | 1:2024cv02087 | Wilson v. Southern Oregon Credit Service, Inc. | OREGON DISTRICT COURT | 12/17/2024 | 05/15/2026 |
| Wilson, Chet Michael (pla) | 2:2025cv00745 | Wilson v. Consumer Cellular Incorporated | ARIZONA DISTRICT COURT | 03/04/2025 | 04/23/2026 |
| Wilson, Chet Michael (pla) | 1:2025cv24103 | Wilson v. MIA Aesthetics Holdings, LLC | FLORIDA SOUTHERN DISTRICT COURT | 09/09/2025 | 04/22/2026 |
| Wilson, Chet Michael (pla) | 4:2026cv00039 | Wilson v. Autoweb, Inc. | CALIFORNIA NORTHERN DISTRICT COURT | 01/04/2026 | 04/15/2026 |
| Wilson, Chet Michael (pla) | 6:2025cv00043 | Wilson v. Centennial Medical Group East, LLC | OREGON DISTRICT COURT | 01/09/2025 | 04/09/2026 |
| Wilson, Chet (pla) | 1:2025cv06357 | Wilson v. Coverright Insurance Services Inc. | NEW YORK EASTERN DISTRICT COURT | 11/17/2025 | 04/02/2026 |
| Wilson, Chet Michael (pla) | 5:2025cv03996 | Wilson v. MEDVIDI INC | CALIFORNIA NORTHERN DISTRICT COURT | 05/08/2025 | 03/06/2026 |

| Party Name | Case Number | Case Title | Court | Date Filed | Date Closed |
|---|---|---|---|---|---|
| Wilson, Chet Michael (pla) | 0:2024cv62319 | Wilson v. Disability Help Group LLC | FLORIDA SOUTHERN DISTRICT COURT | 12/07/2024 | 03/04/2026 |
| Wilson, Chet Michael (pla) | 6:2025cv02052 | Wilson v. Continental Tire the Americas, LLC | OREGON DISTRICT COURT | 11/04/2025 | 02/18/2026 |
| Wilson, Chet Michael (pla) | 1:2025cv00340 | Wilson v. Fleet Financial, Inc. | COLORADO DISTRICT COURT | 01/31/2025 | 02/10/2026 |
| Wilson, Chet Michael (pla) | 3:2025cv01417 | Wilson v. Inbox Health Corp. | CONNECTICUT DISTRICT COURT | 09/02/2025 | 02/04/2026 |
| Wilson, Chet Michael (pla) | 6:2025cv01331 | Wilson v. Home Warranty of America, Inc. | OREGON DISTRICT COURT | 07/29/2025 | 01/29/2026 |
| Wilson, Chet Michael (pla) | 3:2025cv00802 | Wilson v. Kaiser Foundation Health Plan, Inc. | CALIFORNIA NORTHERN DISTRICT COURT | 01/23/2025 | 01/27/2026 |
| Wilson, Chet (pla) | 3:2025cv01471 | Wilson v. Lumen Technologies Inc | LOUISIANA WESTERN DISTRICT COURT | 10/02/2025 | 01/27/2026 |
| Wilson, Chet Michael (pla) | 2:2025cv01810 | Wilson v. McNeil & Meyers Receivables Management Group, LLC | LOUISIANA EASTERN DISTRICT COURT | 09/04/2025 | 01/26/2026 |
| Wilson, Chet Michael (pla) | 6:2025cv00173 | Wilson v. Finmax Smart Capital LLC | OREGON DISTRICT COURT | 01/31/2025 | 01/26/2026 |
| Wilson, Chet Michael (pla) | 0:2025cv60212 | Wilson v. Pharmacenter LLC | FLORIDA SOUTHERN DISTRICT COURT | 02/06/2025 | 01/22/2026 |
| Wilson, Chet (pla) | 1:2025cv12393 | Taylor et al v. Savvy Insurance Solutions, LLC | MASSACHUSETTS DISTRICT COURT | 08/29/2025 | 01/21/2026 |
| Wilson, Chet Michael (pla) | 1:2025cv01075 | Wilson v. Liberty Home Guard LLC | NEW YORK NORTHERN DISTRICT COURT | 08/11/2025 | 01/14/2026 |
| Wilson, Chet Michael (pla) | 3:2025cv00157 | Wilson v. FuturHealth, Inc. | CALIFORNIA SOUTHERN DISTRICT COURT | 01/23/2025 | 01/12/2026 |
| Wilson, Chet Michael (pla) | 2:2025cv02347 | Johnson v. American Home Shield Corporation | TENNESSEE WESTERN DISTRICT COURT | 03/27/2025 | 12/23/2025 |
| Wilson, Chet Michael (pla) | 6:2025cv01168 | Wilson v. Inogen, Inc. | OREGON DISTRICT COURT | 07/06/2025 | 12/10/2025 |
| Wilson, Chet Michael (pla) | 1:2025cv10578 | Wilson v. Disability Services of America, LLC | ILLINOIS NORTHERN DISTRICT COURT | 09/03/2025 | 12/02/2025 |
| Wilson, Chet Michael (pla) | 2:2025cv00872 | Wilson v. Roof Max Technologies LLC | OHIO SOUTHERN DISTRICT COURT | 08/06/2025 | 11/05/2025 |
| Wilson, Chet Michael (pla) | 2:2025cv01197 | Wilson v. Tabak Law LLC | WISCONSIN EASTERN DISTRICT COURT | 08/11/2025 | 10/29/2025 |
| Wilson, Chet Michael (pla) | 6:2025cv01716 | Wilson v. Get Away Today, Inc. | OREGON DISTRICT COURT | 09/23/2025 | 10/22/2025 |
| Wilson, Chet Michael (pla) | 1:2025cv03479 | Wilson v. Roman Health Ventures Inc. | NEW YORK SOUTHERN DISTRICT COURT | 04/27/2025 | 10/06/2025 |
| Wilson, Chet Michael (pla) | 5:2025cv05656 | Wilson v. AMP FIT, INC. | CALIFORNIA NORTHERN DISTRICT COURT | 07/06/2025 | 09/25/2025 |
| Wilson, Chet Michael (pla) | 1:2024cv12950 | Wilson v. The Savings Bank Mutual Life Insurance Company of Massachusetts | MASSACHUSETTS DISTRICT COURT | 11/26/2024 | 09/12/2025 |
| Wilson, Chet Michael (pla) | 2:2025cv00212 | Wilson v. KUIU, LLC | CALIFORNIA EASTERN DISTRICT COURT | 01/15/2025 | 08/22/2025 |
| Wilson, Chet Michael (pla) | 3:2025cv00260 | Wilson v. AUM Insurance Services LLC | CALIFORNIA NORTHERN DISTRICT COURT | 01/07/2025 | 08/11/2025 |

| Party Name | Case Number | Case Title | Court | Date Filed | Date Closed |
|---|---|---|---|---|---|
| Wilson, Chet Michael (pla) | 3:2024cv00924 | Wilson, Chet v. Fairway Independent Mortgage Corp. | WISCONSIN WESTERN DISTRICT COURT | 12/27/2024 | 08/07/2025 |
| Wilson, Chet Michael (pla) | 6:2025cv00410 | Wilson v. Norco, Inc. | OREGON DISTRICT COURT | 03/09/2025 | 08/06/2025 |
| WILSON, CHET MICHAEL (pla) | 1:2025cv00023 | WILSON v. TRAJECTOR INC | FLORIDA NORTHERN DISTRICT COURT | 01/23/2025 | 07/30/2025 |
| Wilson, Chet Michael (pla) | 1:2025cv22069 | Wilson v. Craftie Fox, Inc. | FLORIDA SOUTHERN DISTRICT COURT | 05/05/2025 | 07/24/2025 |
| Wilson, Chet Michael (pla) | 8:2024cv02711 | Wilson v. Credit Suite Inc. | FLORIDA MIDDLE DISTRICT COURT | 11/21/2024 | 07/17/2025 |
| Wilson, Chet Michael (pla) | 2:2025cv00048 | Wilson v. Zillow Inc | WASHINGTON WESTERN DISTRICT COURT | 01/08/2025 | 07/08/2025 |
| Wilson, Chet Michael (pla) | 1:2024cv01917 | Wilson v. Altria Group Distribution Company | VIRGINIA EASTERN DISTRICT COURT | 10/29/2024 | 06/03/2025 |
| Wilson, Chet Michael (pla) | 3:2024cv00782 | Wilson, Chet v. Avid Ratings, Inc. | WISCONSIN WESTERN DISTRICT COURT | 11/04/2024 | 06/02/2025 |
| Wilson, Chet Michael (pla) | 1:2024cv03665 | Wilson v. Lower, LLC | MARYLAND DISTRICT COURT | 12/18/2024 | 05/15/2025 |
| Wilson, Chet Michael (pla) | 6:2025cv00333 | Wilson v. Blue Moon Fabrics, Inc. | OREGON DISTRICT COURT | 02/27/2025 | 04/28/2025 |
| Wilson, Chet Michael (pla) | 1:2025cv00003 | Wilson v. Club 1 Hotels, LLC | ILLINOIS NORTHERN DISTRICT COURT | 01/02/2025 | 04/23/2025 |

| **PACER Service Center** | 07/20/2026 11:07:25 |
|---|---|
| **User** | rebeccarhym |
| **Client Code** | |
| **Description** | All Court Types Party Search |
| | All Courts; Name wilson, chet; Role pla; All Courts; Date Filed on or after 07/22/2024; Jurisdiction CV; Page: 1; sort: Date Closed, DESC |
| **Billable Pages** | 1 ($0.10) |
| | **\*\*\* Previously Billed \*\*\*** |

PACER FAQ         Privacy & Security         Contact Us

**PACER Service Center**
(800) 676-6856
pacer@psc.uscourts.gov

This site is maintained by the Administrative Office of the U.S. Courts on behalf of the Federal Judiciary.

An official website of the United States government.   Here's how you know. ⌄            Log in to PACER Systems ➡



Party Search Results

**Search Criteria:** Party Search; Last Name: [wilson]; First Name: [chet]; Party Role: [PLA]
**Result Count:** 85 (2 pages)
**Current Page:** 1

| Party Name | Case Number | Case Title | Court | Date Filed | Date Closed |
|---|---|---|---|---|---|
| Wilson, Chet Michael (pla) | 1:2024cv02339 | Johnson v. American Home Shield Corporation | VIRGINIA EASTERN DISTRICT COURT | 12/20/2024 | 03/26/2025 |
| Wilson, Chet Michael (pla) | 2:2025cv00039 | Wilson et al v. LeafFilter North, LLC | OHIO SOUTHERN DISTRICT COURT | 01/16/2025 | 03/17/2025 |
| Wilson, Chet Michael (pla) | 2:2025cv00278 | Wilson v. BlendJet Inc. | CALIFORNIA EASTERN DISTRICT COURT | 01/23/2025 | 03/10/2025 |
| Wilson, Chet Michael (pla) | 1:2024cv25119 | Wilson v. Icon Creative Consulting, Inc. | FLORIDA SOUTHERN DISTRICT COURT | 12/30/2024 | 03/07/2025 |
| Wilson, Chet Michael (pla) | 6:2024cv01826 | Wilson v. Professional Credit Service | OREGON DISTRICT COURT | 10/31/2024 | 01/30/2025 |
| Wilson, Chet Michael (pla) | 1:2024cv25117 | Wilson v. Icon Creative Consulting, Inc. | FLORIDA SOUTHERN DISTRICT COURT | 12/30/2024 | 12/30/2024 |
| Wilson, Chet Michael (pla) | 6:2025cv01703 | Wilson v. TPH Paralegal Professional Corporation | OREGON DISTRICT COURT | 09/23/2025 | |
| Wilson, Chet Michael (pla) | 6:2024cv01855 | Wilson v. Nationstar Mortgage LLC | OREGON DISTRICT COURT | 11/07/2024 | |
| Wilson, Chet Michael (pla) | 3:2025cv01741 | Wilson v. AMP FIT, INC. | OREGON DISTRICT COURT | 09/25/2025 | |
| Wilson, Chet Michael (pla) | 6:2025cv01869 | Wilson v. Freeway Insurance Services of America, LLC | OREGON DISTRICT COURT | 10/12/2025 | |
| Wilson, Chet Michael (pla) | 6:2025cv01870 | Wilson v. GameChanger247, LLC | OREGON DISTRICT COURT | 10/12/2025 | |
| Wilson, Chet Michael (pla) | 6:2024cv01956 | Wilson v. PacifiCorp | OREGON DISTRICT COURT | 11/21/2024 | |
| Wilson, Chet Michael (pla) | 1:2025cv04023 | Wilson v. Atlanta Medical Day Spa and Surgery Center, LLC | GEORGIA NORTHERN DISTRICT COURT | 07/21/2025 | |
| Wilson, Chet Michael (pla) | 6:2026cv00019 | Wilson v. AnyTime Fitness Franchisor, LLC et al | OREGON DISTRICT COURT | 01/06/2026 | |
| Wilson, Chet Michael (pla) | 6:2026cv00344 | Wilson v. Pyxis Solutions | OREGON DISTRICT COURT | 02/22/2026 | |
| Wilson, Chet Michael (pla) | 6:2026cv00345 | Wilson v. HomeLand Insurance LLC | OREGON DISTRICT COURT | 02/22/2026 | |
| Wilson, Chet Michael (pla) | 6:2026cv00666 | Wilson v. Medical Air Services Associates, Inc. | OREGON DISTRICT COURT | 04/03/2026 | |
| Wilson, Chet Michael (pla) | 6:2026cv00667 | Wilson v. Cascades Insurance, LLC | OREGON DISTRICT COURT | 04/03/2026 | |
| Wilson, Chet Michael (pla) | 6:2026cv00668 | Wilson v. Umpqua Health Alliance, LLC | OREGON DISTRICT COURT | 04/03/2026 | |
| Wilson, Chet Michael (pla) | 1:2025cv07246 | Wilson v. Lifestation, Inc. | NEW YORK SOUTHERN DISTRICT COURT | 08/30/2025 | |
| Wilson, Chet Michael (pla) | 3:2025cv01042 | Wilson v. Nissan North America, Inc. | TENNESSEE MIDDLE DISTRICT COURT | 09/16/2025 | |

| Party Name | Case Number | Case Title | Court | Date Filed | Date Closed |
|---|---|---|---|---|---|
| Wilson, Chet Michael (pla) | 9:2025cv81268 | Wilson v. Salespromis, LLC | FLORIDA SOUTHERN DISTRICT COURT | 10/14/2025 | |
| Wilson, Chet Michael (pla) | 6:2025cv00152 | WILSON v. CMRE FINANCIAL SERVICES, INC. | OREGON DISTRICT COURT | 01/28/2025 | |
| Wilson, Chet Michael (pla) | 3:2026cv00207 | Wilson v. General Audit Corp. | OHIO NORTHERN DISTRICT COURT | 01/27/2026 | |
| Wilson, Chet Michael (pla) | 2:2025cv01481 | Wilson v. Mountainside Fitness Acquisition LLC | ARIZONA DISTRICT COURT | 05/01/2025 | |
| WILSON, CHET MICHAEL (pla) | 1:2025cv15811 | ALMONTE v. MRS BPO LLC | NEW JERSEY DISTRICT COURT | 09/19/2025 | |
| Wilson, Chet Michael (pla) | 3:2025cv05808 | Wilson v. TRA Medical Imaging Foundation | WASHINGTON WESTERN DISTRICT COURT | 09/10/2025 | |
| Wilson, Chet (pla) | 6:2025cv00376 | Wilson v. Skopos Financial, LLC | OREGON DISTRICT COURT | 03/04/2025 | |
| Wilson, Chet Michael (pla) | 6:2025cv00855 | Wilson v. MAH Group, Inc. | OREGON DISTRICT COURT | 05/19/2025 | |
| Wilson, Chet Michael (pla) | 8:2026cv00025 | Wilson v. The HELOC Company LLC | MARYLAND DISTRICT COURT | 01/05/2026 | |
| Wilson, Chet Michael (pla) | 1:2026cv11420 | Wilson v. Wayfair Inc. | MASSACHUSETTS DISTRICT COURT | 03/24/2026 | |

| **PACER Service Center** | | 07/20/2026 11:08:25 |
|---|---|---|
| **User** | rebeccarhym | |
| **Client Code** | | |
| **Description** | All Court Types Party Search | |
| | All Courts; Name wilson, chet; Role pla; All Courts; Date Filed on or after 07/22/2024; Jurisdiction CV; Page: 2; sort: Date Closed, DESC | |
| **Billable Pages** | 1 ($0.10) | |

PACER FAQ                    Privacy & Security                    Contact Us

**PACER Service Center**
(800) 676-6856
pacer@psc.uscourts.gov

This site is maintained by the Administrative Office of the U.S. Courts on behalf of the Federal Judiciary.

# Exhibit 2

## Email from Freeway's Counsel to Wilson's Counsel (Apr. 22, 2026)

*Wilson v. Freeway Insurance Services of America, LLC*
**Case No. 6:25-cv-1869-MC**

**Subject:**      Document Production and Draft Stipulated Protective Order

**Date:**         Wednesday, April 22, 2026 at 6:00:13 PM Eastern Daylight Time

**From:**         Rebecca Rhym <rrhym@wtlaw.com>

**To:**           Andrew Perrong <a@perronglaw.com>

**CC:**           Timothy J. Fransen <tfransen@cosgravelaw.com>, Shellice R. Batman <sbatman@cosgravelaw.com>, Ryan Watstein <Ryan@wtlaw.com>, James Ruley <jruley@wtlaw.com>, nharrison@cosgravelaw.com <nharrison@cosgravelaw.com>

**Attachments:** 2026-04-21 Document Production-20260421193625.zip, Wilson v. Freeway - Stipulated Protective Order [Draft].docx

Good evening,

Please see the attached document production containing materials responsive to Plaintiff's First Set of Discovery Requests.

Also attached is a draft stipulated protective order for your review. Please let us know if you have any questions, concerns, or proposed revisions.

Thank you,
Rebecca

**Rebecca Rhym** (bio)
WATSTEIN TEREPKA LLP
(404) 905-9830
rrhym@wtlaw.com
www.wtlaw.com

1 of 1

# Exhibit 3

## Contingent Fee Agreement
## (Oct. 4, 2024)

*Wilson v. Freeway Insurance Services of America, LLC*
**Case No. 6:25-cv-1869-MC**

Document ID: b39932f0a0154106b9467912ecb587e3b916f10d

1

# CONTINGENT FEE AGREEMENT

**Chet Michael Wilson, hereinafter referred to as "Client", and Heidarpour Law Firm, PLLC hereinafter referred to as "HLF", agree to the following contract for legal services.**

## EXPECTATION OF SERVICES

1. Client hereby retains HLF to represent them for any and all claims regarding Telephone Consumer Protection Act (TCPA) and Fair Debt Collection Practices Act (FDCPA) violations.

## SCOPE OF WORK AND INTENT

2. HLF will determine whether to pursue a claim on Client's behalf against the named parties. HLF has the right to refuse any claim without explanation. Client acknowledges that the initial intent in retaining HLF is to resolve their claim without litigation and to attempt to successfully negotiate a reasonable and amicable settlement between the alleged violator and the client. Client understands that if the alleged violator does not respond or settle, that litigation may be required.

## LITIGATION

3. **HLF MAY, AT ITS DISCRETION, CO-COUNSEL WITH A FIRM TO EFFECTIVELY AND FAITHFULLY RESOLVE CLIENT'S CLAIM. CLIENT AUTHORIZES HLF TO CO-COUNSEL ON ANY OR ALL OF CLIENT'S CLAIMS. CLIENT UNDERSTANDS THAT A PORTION OF THE FEES EARNED BY HLF MAY BE SHARED WITH CO-COUNSEL. CLIENT ALSO UNDERSTANDS, A NEW FEE AGREEMENT ACKNOWLEDGING CO-COUNSEL'S ROLE MAY NEED TO BE EXECUTED BY CLIENT. CLIENT UNDERSTANDS THE NEW FEE AGREEMENT SHALL SUPERSEED THIS AGREEMENT FOR THE SPECIFIC CLAIM IN WHICH THE NEW AGREEMENT WAS DRAFTED FOR.** *CMW*

## FEE AGREEMENT

4. Client understands that HLF will be paid on a contingency basis. HLF shall be compensated **40%** of the amount recovered if the case is settled before a lawsuit is filed, **45%** of the amount recovered after the filing of a lawsuit, unless the case is settled within **30 days** of filing of such suit, and **50%** of the amount recovered if there is a trial on the merits. The fees described above do not include any costs of litigation, including but not limited to, filing fees, mailing costs, witness expenses, or travel. The contingency fee shall be determined after a deduction of Costs. In the event there is no recovery on a claim, the Client will owe **NO FEES OR COSTS** to HLF.

## PAYMENTS

5. If successful, the settlement amount will either be deposited into HLF's IOLTA trust and the Client will be paid by check from HLF, or two checks will be written upon settlement, one of which will go directly to Client, the other to HLF.

## FEE SHARING

6. Client agrees that a portion of HLF's profits may be distributed to non-attorneys for services provided to HLF.

## POWER OF ATTORNEY

7. Client grants HLF power of attorney to act on their behalf and to execute all claims, contracts, settlements, checks, drafts, compromises, covenants, releases, verifications, dismissals and deposits, in every respect, as though Client were personally doing so.

HLF_Freeway_0000009

Document ID: b39932f0a0154106b9467912ecb587e3b916f10d

2

## SETTLEMENT AUTHORITY

8. Client acknowledges that based on HLF's expertise in TCPA claims, that it is best suited to negotiate and determine if any settlement offer received is reasonable based on the TCPA violation. Therefore, Client grants HLF settlement authority to authorize any settlement it deems practical and reasonable.

## TERMINATION

9. Client may terminate this Agreement by giving written notice to HLF at any time. Upon notice by Client, HLF has 30 days to settle or relinquish any claims that are in negotiation status at the time of the notice. HLF may terminate this Agreement by giving written notice to Client at any time. In the event the Client has outstanding claims in which HLF has incurred costs or fees, HLF will be reimbursed those costs by Client. HLF will also relinquish representation of all claims upon notice except those that are pending receipt of settlement.

## EXCLUSIVITY

10. Client agrees that upon retaining HLF, it will have no further contact with the alleged violator. This includes, but is not limited to: discussing settlements, discussing legality of violation, etc. If the Client receives any written, electronic or oral communication from the alleged violator or its representative, it will direct them to HLF immediately.

## JURISDICTION, VENUE AND CHOICE OF LAW

11. This Agreement shall be governed and construed in accordance with the laws of the District of Columbia, and the Parties agree to submit themselves to the exclusive jurisdiction of D.C. Courts in Washington, D.C. for any action arising out of or in connection with this Agreement.

## SEVERABILITY IN EVENT OF PARTIAL INVALIDITY.

12. If any provision of this Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

## ACKNOWLEDGEMENT

13. This Agreement is inclusive of all TCPA and FDCPA claims submitted by the Client to HLF.

Dated: _10/04/2024_____        HLF:_*Andrew Heidarpour*_____

Client Signature: _*Chief Michael Wilson*____        Dated: 10/04/2024_____

Client Name: _____        **Heidarpour Law Firm, PLLC**
                                            **By: Andrew W. Heidarpour**
                                            **D.C. Bar # 1022137**

Client Phone: _5419999999_____

Client Address: _____

Emergency Contact: Name:_Brad Wilson_____Telephone Number:_5419999820___



## Document History

SignNow E-Signature Audit Log                                    All dates expressed in MM/DD/YYYY (US)

| | |
|---|---|
| **Document name:** | Heidarpour Law Firm PLLC TCPA Retainer_Chet Michael Wilson |
| **Document created:** | 10/04/2024 16:30:13 |
| **Document pages:** | 2 |
| **Document ID:** | b39932f0a0154106b9467912ecb587e3b916f10d |
| **Document Sent:** | 10/04/2024 16:32:09 UTC |
| **Document Status:** | Signed |
| | 10/04/2024 16:40:33UTC |

| | |
|---|---|
| **Sender:** | info@hlfirm.com |
| **Signers:** | enzymaticathlete@gmail.com |
| **CC:** | |

| Client | Event | By | Server Time | Client Time | IP Address |
|---|---|---|---|---|---|
| SignNow Web Application | Uploaded the Document | info@hlfirm.com | 10/04/2024 16:30:13 pm UTC | 10/04/2024 16:30:09 pm UTC | |
| SignNow Web Application | Viewed the Document | info@hlfirm.com | 10/04/2024 16:30:20 pm UTC | 10/04/2024 16:30:19 pm UTC | |
| SignNow Web Application | Document Saved | info@hlfirm.com | 10/04/2024 16:31:19 pm UTC | 10/04/2024 16:31:17 pm UTC | |
| SignNow Web Application | Invite Sent to: enzymaticathlete@gmail.com | info@hlfirm.com | 10/04/2024 16:32:09 pm UTC | 10/04/2024 16:32:08 pm UTC | |
| SignNow Web Application | Viewed the Document | enzymaticathlete@gmail.com | 10/04/2024 16:33:05 pm UTC | 10/04/2024 16:33:04 pm UTC | |
| SignNow Web Application | Added a Text | enzymaticathlete@gmail.com | 10/04/2024 16:40:32 pm UTC | 10/04/2024 16:40:32 pm UTC | |
| SignNow Web Application | Added a Text | enzymaticathlete@gmail.com | 10/04/2024 16:40:32 pm UTC | 10/04/2024 16:40:32 pm UTC | |
| SignNow Web Application | Signed the Document | enzymaticathlete@gmail.com | 10/04/2024 16:40:32 pm UTC | 10/04/2024 16:40:32 pm UTC | **Redacted** |
| SignNow Web Application | Signed the Document | enzymaticathlete@gmail.com | 10/04/2024 16:40:32 pm UTC | 10/04/2024 16:40:32 pm UTC | |
| SignNow Web Application | Added a Text | enzymaticathlete@gmail.com | 10/04/2024 16:40:33 pm UTC | 10/04/2024 16:40:32 pm UTC | |
| SignNow Web Application | Document Saved | enzymaticathlete@gmail.com | 10/04/2024 16:40:33 pm UTC | 10/04/2024 16:40:32 pm UTC | |
| SignNow Web Application | Sender info@hlfirm.com received a signed document copy | info@hlfirm.com | 10/04/2024 16:40:40 pm UTC | 10/04/2024 16:40:32 pm UTC | |
| SignNow Web Application | Signer enzymaticathlete@gmail.com received a signed document copy | enzymaticathlete@gmail.com | 10/04/2024 16:40:40 pm UTC | 10/04/2024 16:40:32 pm UTC | |
| SignNow Web Application | Viewed the Document | info@hlfirm.com | 06/26/2025 18:37:55 pm UTC | 06/26/2025 18:37:53 pm UTC | |

# Exhibit 4

## Email Correspondence Between Freeway's and HLF's Counsel (June 24–25, 2026)

*Wilson v. Freeway Insurance Services of America, LLC*
**Case No. 6:25-cv-1869-MC**

| | |
|---|---|
| **Subject:** | RE: Heidarpour Law Firm R&Os to Freeway's Subpoena (6:25-cv-01869-MC) |
| **Date:** | Thursday, June 25, 2026 at 4:06:15 PM Eastern Daylight Time |
| **From:** | Farag, Peter <pfarag@milbank.com> |
| **To:** | Ryan Watstein <Ryan@wtlaw.com>, James Ruley <jruley@wtlaw.com>, Laroche, Matthew <MLaroche@milbank.com> |
| **CC:** | Rebecca Rhym <rrhym@wtlaw.com> |
| **Attachments:** | 2026-06-25 [--1] Docket Entry Text.pdf |

**[Warning – external]**

Ryan & James,

We just learned that the court granted our stay of the deposition.  The case number is 1:26-mc-00099-RJL.  In light of the stay let us know if you'd like to propose a briefing schedule that does not impact your trial preparation.

Peter Farag | Milbank | Associate
55 Hudson Yards | New York, NY 10001-2163
T: +1 212.530.5830
pfarag@milbank.com | milbank.com

---

**From:** Farag, Peter
**Sent:** Wednesday, June 24, 2026 4:13 PM
**To:** 'Ryan Watstein' <Ryan@wtlaw.com>; James Ruley <jruley@wtlaw.com>; Laroche, Matthew <MLaroche@milbank.com>
**Cc:** Rebecca Rhym <rrhym@wtlaw.com>
**Subject:** RE: Heidarpour Law Firm R&Os to Freeway's Subpoena (6:25-cv-01869-MC)

Ryan,

On our request for an emergency stay, James's email below was clear that you were conditioning the stay on us providing more information.  James's email also says you would extend our depo deadline if we continued to discuss the Subpoena to narrow requests, but we are at an impasse, so we are not getting more time.  Your email immediately below also appears to condition the stay on us providing additional information.  We needed to make the motion to protect our client's rights given the pending deadline.

If you do not oppose the stay of the deposition, without any further concession from HLF, then we're happy to so inform the Court and propose a briefing a schedule that does not impact your trial preparation.  Let us know if that is how you want to proceed.

Thanks,
Peter

Peter Farag | Milbank | Associate
55 Hudson Yards | New York, NY 10001-2163
T: +1 212.530.5830
pfarag@milbank.com | milbank.com

**From:** Ryan Watstein <Ryan@wtlaw.com>
**Sent:** Wednesday, June 24, 2026 3:09 PM
**To:** Farag, Peter <pfarag@milbank.com>; James Ruley <jruley@wtlaw.com>; Laroche, Matthew <MLaroche@milbank.com>
**Cc:** Rebecca Rhym <rrhym@wtlaw.com>
**Subject:** [EXT] Re: Heidarpour Law Firm R&Os to Freeway's Subpoena (6:25-cv-01869-MC)

Peter,

Thanks for your email. We want to make sure we aren't missing anything, as your email is quite different than what we were expecting based on our recent calls.

First, you mentioned a concern for judicial resources. But we told you we would move the deposition date out another week while we continued to talk. And you told James yesterday that you were talking with your client on several points below and would circle back. You didn't. You instead ignored your commitment in that regard and said you were filing an emergency motion.

Second, and even more importantly, we told you we are willing to hold the deposition entirely in abeyance while you get a ruling on your motion to quash, as a courtesy to avoid "emergency" briefing. We proposed that even though delaying the HLF deposition will result in us having less information to support our pending motions in the *Freeway* case. The only thing we asked for in return is for HLF to confirm who signed Wilson's initials to the class action engagement letter that you produced.

You mention you don't see the relevance of that. I find that hard to believe given our long conversations on what our pending motions are about, but I'll explain again so the record is clear: we have a pending motion to deny certification on adequacy grounds. The basis of that is the lawyers' use of Wilson as a figurehead tool to achieve better-than-the-statute payments, not a real class action plaintiff who makes decisions for the benefit of the class. We are also opposing Wilson's attempt to dismiss his own case on the ground that he is trying to avoid discovery into whether this (the figurehead point) is true. So, whether HLF signed the class action representation agreement himself is highly relevant to both pending motions. And given the extraordinary power of attorney Wilson granted to HLF in the underlying engagement agreement, we have real reasons to believe that HLF signed the second agreement for Wilson.

The bottom line is this: we have given you extension after extension. And you know I have a trial starting on Monday and am in heavy trial preparation right now. Filing an "emergency" motion under these circumstances—when there is no emergency—feels like gamesmanship, not concern for judicial resources. We gave you extensive time to prepare

the most elaborate possible motion, and you are now dropping it on us when you know it will be most difficult for us to respond.

Best,
-Ryan


**Ryan D. Watstein ([bio](bio))**

WATSTEIN TEREPKA LLP
P: 404-782-0695
[ryan@wtlaw.com](ryan@wtlaw.com)
[www.wtlaw.com](www.wtlaw.com)

**From:** Farag, Peter <[pfarag@milbank.com](pfarag@milbank.com)>
**Date:** Wednesday, June 24, 2026 at 2:38 PM
**To:** James Ruley <[jruley@wtlaw.com](jruley@wtlaw.com)>; Laroche, Matthew <[MLaroche@milbank.com](MLaroche@milbank.com)>; Ryan Watstein <[Ryan@wtlaw.com](Ryan@wtlaw.com)>
**Cc:** Rebecca Rhym <[rrhym@wtlaw.com](rrhym@wtlaw.com)>
**Subject:** RE: Heidarpour Law Firm R&Os to Freeway's Subpoena (6:25-cv-01869-MC)

[Warning – external]

Thanks James.

We're at impasse on several issues, and we're filing our motion today.  Here's a summary of where things stand:

**Document Requests**

We again confirm the points below about RFPs 1 and 2.  Based on that, we understand those document requests, as well as RFP 8 are satisfied.  As to the remaining RFPs, we continue to stand by our objections and are not prepared to undertake a search for additional information as you propose below.  Thus, we're at an impasse on those remaining requests.

**Deposition**

We understand your position is that regardless of the resolution of the document requests, you still intend to seek to depose an HLF representative on all deposition topics.  We do not believe that is appropriate and stand by our objections.  We also appreciate your representation about not seeking privileged information.  But we have serious concerns that a deposition of an HLF representative on the proposed topics will inevitably call for the disclosure of privileged information or attorney work product.  We're at an impasse on the deposition.

**Timing of Motion**

We do not believe it is appropriate to condition an agreement on whether we need to seek an immediate stay on HLF providing additional information.  We continue to believe that it is a waste of

judicial and party resources to force us to proceed in this manner, particularly given our agreement on the discovery deadline.  We also do not understand the basis for your request and do not see any relevance to it.  We will move for an emergency stay.

Regards,
Peter

Peter Farag | Milbank | Associate
55 Hudson Yards | New York, NY 10001-2163
T: +1 212.530.5830
pfarag@milbank.com | milbank.com

---

**From:** James Ruley <jruley@wtlaw.com>
**Sent:** Wednesday, June 24, 2026 10:09 AM
**To:** Farag, Peter <pfarag@milbank.com>; Laroche, Matthew <MLaroche@milbank.com>; Ryan Watstein <Ryan@wtlaw.com>
**Cc:** Rebecca Rhym <rrhym@wtlaw.com>
**Subject:** [EXT] Re: Heidarpour Law Firm R&Os to Freeway's Subpoena (6:25-cv-01869-MC)

Peter,

Thank you for your email and for our conversation yesterday. First, this email confirms the following information you provided on our call:

- Farideh Heidarpour is an employee at HLF who principally performs secretarial services like answering calls. Sometimes she also helps with client intake.
- HLF uses a third-party entity that created a backup of Wilson's device. That backup was available to at least Andrew Heidarpour.
  - HLF is willing to provide the name of that third party if Freeway agrees not to subpoena that third party.

We've discussed internally, and Freeway's positions on the outstanding subpoena items are below.

## RFPs 1 and 2

HLF represented on the call that it was not in communication with Wilson before the subject messages were sent, did not learn of the messages from Freeway before its engagement, and had no knowledge of them prior to October 2024. Please confirm these representations in writing. With them and the confirmations above, RFPs 1 and 2 should be resolved.

## RFP 3

We understand HLF has produced the co-counsel engagement letter and represents that, while it cannot confirm the letter reflects the date on which HLF first referred the matter, it is indicative of the general timing of the referral. Freeway is prepared

to deem RFP 3 satisfied, assuming you can provide the executed DocuSign signature page, which is part of that agreement.

**RFPs 4-7**

We understand HLF represents that a consultant, on one occasion, accessed Wilson's phone and made a backup. Please confirm in writing: (a) whether the backup was a single, point-in-time backup, or whether it was refreshed or updated on an ongoing basis; (b) that neither HLF nor any consultant acting on its behalf had access to Wilson's Apple account, iCloud credentials, or anything else that would give HLF real-time access to incoming calls/messages; and (c) the date on which the backup was created. With that information, we believe we may be able to narrow or forego these requests.

**RFP 8**

We understand HLF's position that Wilson was HLF's client and that HLF referred the matter out. On that basis, Freeway will deem RFP 8 satisfied.

**RFP 9**

HLF has produced the initial engagement letter and the co-counsel engagement letter applicable to the Wilson/Freeway action. But HLF has declined to produce co-counsel or fee-sharing agreements concerning other Wilson matters HLF has referred to or litigated with the same co-counsel or others. As you know, our position is that those agreements are relevant to the adequacy arguments in our pending motions, and we reserve our rights as to that category. If HLF maintains its refusal, we will add this to the items on which we are at impasse.

**RFPs 10–12**

These requests go to class-certification issues. Based on our call, we agree we are likely at an impasse, and Freeway anticipates these will be resolved through the briefing on HLF's anticipated motion. Freeway reserves its position and its right to seek this discovery through appropriate motion practice.

**Deposition Topics**

For the topics that track the document requests, our positions are as set out above, and resolution of the corresponding requests should likewise narrow or resolve the corresponding topics, although we're still entitled to ask about them at deposition because these email confirmations are not evidence. To the extent we haven't addressed any of the remaining topics, we consider them unresolved.

As to Topics 2 and 7: Freeway does not seek the substance of any communications conveying or asking for legal advice. We expect that narrowing resolves HLF's privilege objection to these topics. Please confirm whether, so narrowed, HLF maintains any objection.

**Scheduling**

HLF's current deadline to move to quash the deposition is this Friday, June 26. We are amenable to extending the subpoena compliance date through July 1, 2026, while we continue to work to find areas of agreement.

On the deposition, Freeway is willing to agree that HLF's filing of its motion to quash will obviate the need for a separate, affirmative motion to stay the deposition pending resolution of that motion, assuming your client can confirm one additional point:

- Whether Wilson or someone from HLF signed Wilson's name on the produced co-counsel agreement. (It appears to have been the latter, since HLF's and Wilson's signatures are manual and co-counsel signed by DocuSign, but we'd like to confirm.)

Best regards,

James

---

**From:** Farag, Peter <pfarag@milbank.com>
**Date:** Wednesday, June 24, 2026 at 8:33 AM
**To:** James Ruley <jruley@wtlaw.com>; Laroche, Matthew <MLaroche@milbank.com>; Ryan Watstein <Ryan@wtlaw.com>
**Cc:** Jennipher Borey <jborey@wtlaw.com>; Rebecca Rhym <rrhym@wtlaw.com>
**Subject:** Re: Heidarpour Law Firm R&Os to Freeway's Subpoena (6:25-cv-01869-MC)

[Warning – external]

James,

As we mentioned yesterday, given Friday's deadline, we need to get our motion to quash on file asap. We plan to file later this morning or early afternoon and will note that you are considering whether some of the requests are moot given our productions and discussions to date.

Peter Farag | Milbank
55 Hudson Yards | New York, NY 10001-2163
T: +1 212.530.5830
pfarag@milbank.com | milbank.com

---

**From:** Farag, Peter
**Sent:** Tuesday, 23 June 2026 11:58:01
**To:** James Ruley <jruley@wtlaw.com>; Laroche, Matthew <MLaroche@milbank.com>; Ryan Watstein <Ryan@wtlaw.com>

# Exhibit 5

## Screen Recording of
## June 12, 2026 Threads Post

*Wilson v. Freeway Insurance Services of America, LLC*
**Case No. 6:25-cv-1869-MC**

(Submitted to the Court on a USB flash drive)

# Exhibit 6

## Screen Recording of
## June 17, 2026 Threads Post

*Wilson v. Freeway Insurance Services of America, LLC*
**Case No. 6:25-cv-1869-MC**

(Submitted to the Court on a USB flash drive)

# Exhibit 7

## Screen Recording of
## June 27, 2026 Threads Post

*Wilson v. Freeway Insurance Services of America, LLC*
**Case No. 6:25-cv-1869-MC**

(Submitted to the Court on a USB flash drive)

# Exhibit 8

## Screen Recording of
## May 28, 2026 Threads Post

*Wilson v. Freeway Insurance Services of America, LLC*
**Case No. 6:25-cv-1869-MC**

(Submitted to the Court on a USB flash drive)

# Exhibit 9

## Declaration of Neal Shechter,
## *Wilson v. MAH Group, Inc.*, No. 6:25-cv-855
## (D. Or. Apr. 14, 2026).

*Wilson v. Freeway Insurance Services of America, LLC*
Case No. 6:25-cv-1869-MC

Kevin J. Jacoby, OSB No. 063783
Email: kevin@saltlawgroup.com
Neal S. Shechter, OSB No. 185119
Email: neal@saltlawgroup.com
SALT
100 SW Main St, Ste 1025
Portland, OR  97204
Phone: 503.417.7777

*Of Attorneys for Defendant*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **CHET MICHAEL WILSON**, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>**MAH GROUP, INC. D/B/A WOLFPAK**,<br><br>    Defendant, | Case No. 6:25-cv-00855-MTK<br><br>**DECLARATION OF NEAL SHECHTER IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR ATTORNEY'S FEES AND OTHER SANCTIONS** |

I, Neal Shechter, hereby declare and state as follows:

1.      I am one of the attorneys for Defendant MAH Group, Inc. d/b/a WolfPak ("Defendant") in this matter and I have personal knowledge of the information in this declaration. I am over 18 years of age and competent to testify to the information in this declaration. I make this declaration in support of Defendant's Opposition to Plaintiff's Second Motion for Attorneys' Fees and Other Sanctions.

2.      Since this law firm appeared as counsel for Defendant, Defendant has been

PAGE 1 – DECLARATION OF NEAL SHECHTER IN SUPPORT
OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR ATTORNEY'S FEES AND OTHER SANCTIONS



100 SW Main Street, Suite 1025
Portland, OR 97204
T: 503.417.7777  F: 503.214.8816

cooperative and diligent in responding to all requests and has provided significant discovery to Plaintiff including contacting nonparty vendors and producing at least 560 pages of discovery including evidence of how Defendant received consent from consumers and multiple lengthy spreadsheets of messages sent by nonparty marketing vendors, Yotpo and Klaviyo.

3.    Defendant provided Plaintiff with records that Plaintiff consented to receiving the text messages at issue in the Complaint and that Yotpo, Inc. does not use an ATDS system. A true and accurate copy of the record is attached as Exhibit A, MAH000001-MAH000002.

4.    Defendant provided Plaintiff with records that an individual at IP address 73.240.49.37 signed up for 541-XXX-9999 to receive marketing messages via Yotpo. Plaintiff's Counsel denied the IP address was Plaintiff's, however Plaintiff subsequently admitted it was. True and accurate copies are attached as Exhibit B, Email Conversation between Counsel and Exhibit C, Plaintiff's RFA Response.

5.    Defendant requested a stay to address the consent issue and the lack of veracity in the allegations in the Complaint and Plaintiff refused.

6.    Defendant's Counsel repeatedly requested that Plaintiff's Counsel identify with particularity what records from Yotpo were being requested, but Plaintiff refused. Plaintiff instead asserted that Defendant has control over all of Yotpo's records and that unspecified records in response to RFP 17 had not been produced. A true and accurate copy of the email discovery conversation between counsel is attached as Exhibit D, Counsel Discovery Emails.

7.    A true and accurate copy of the Declaration of Alan Birch, Yotpo's in-house counsel, is attached as Exhibit E, Birch Declaration.

8.    Since providing the Birch Declaration to Plaintiff's Counsel on April 2, 2026, Plaintiff has filed a Request to Supplement Plaintiff's First Motion for Sanctions, demanded

PAGE 2 – DECLARATION OF NEAL SHECHTER IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR ATTORNEY'S FEES AND OTHER SANCTIONS

**Salt**

100 SW Main Street, Suite 1025
Portland, OR 97204

T: 503.417.7777  F: 503.214.8816

privileged communications, and requested an additional Informal Discovery Conference with the presiding judge.

I declare under penalty of perjury that the foregoing is true and correct.

      EXECUTED ON: April 14, 2026

                                              Neal Shechter

PAGE 3 – DECLARATION OF NEAL SHECHTER IN SUPPORT
OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR ATTORNEY'S FEES AND OTHER SANCTIONS

**Salt**

100 SW Main Street, Suite 1025
Portland, OR 97204

T: 503.417.7777  F: 503.214.8816

## CERTIFICATE OF SERVICE

I hereby certify that I served the attached **DECLARATION OF NEAL SHECHTER IN**

**SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND MOTION**

**FOR ATTORNEY'S FEES AND OTHER SANCTIONS** on the following:

Anthony I. Paronich
Email: anthony@paronichlaw.com
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043

Andrew R Perrong
Email: a@perronglaw.com
Perrong Law LLC
2657 Mt. Carmel Ave.
Glenside, PA 19038

by the following indicated method(s):

☒    by **e-service** through filing the document with the Court's CM/ECF system.

☐    by **emailing** full, true, and correct copies thereof to said attorney to the email address noted above, which is the last known email address for said attorney, on the date set forth below.

☐    by causing full, true and correct copies thereof to be **mailed** to the attorney(s) at the attorney(s) last-known office address(es) listed above on the date set forth below.

DATED: April 14, 2026            **SALT**

By: */s/ Kevin J. Jacoby*
    Kevin J. Jacoby, OSB No. 063783
    Email: kevin@saltlawgroup.com
    Neal S. Shechter, OSB No. 185119
    Email: neal@saltlawgroup.com
    *Of Attorneys for Defendant*

PAGE 1 – CERTIFICATE OF SERVICE

**Salt**

100 SW Main Street, Suite 1025
Portland, OR 97204

T: 503.417.7777  F: 503.214.8816



Dear Mr. Michael Henderson
Founder & CEO
Mah Group, Inc. (DBA Wolfpak) ("**Company**").

RE: <u>**TCPA SMS CLAIM**</u>

We are following up with you regarding the claim from the holder of phone number +1-541-999-9999 (the "**Claimant**"), arguing that the Company violated the TCPA by sending SMS text messages.

We sincerely appreciate you bringing these concerns to our attention. Here at Yotpo, we take compliance very seriously and collaborate with our clients and partners to protect the rights of their customers and ensure the best possible consumer experience.

For a text message to violate the TCPA, it must have been initiated using an Automatic Telephone Dialing System ("**ATDS**") without the recipient's consent[1]. Systems that send text messages to existing lists of telephone numbers do not meet the definition of ATDS. Because Yotpo utilizes existing lists of telephone numbers provided by customers – and does not utilize a random or sequential number generator – Yotpo's system is not an ATDS as a matter of law. Accordingly, text messages initiated using Yotpo are not subject to the TCPA.

Furthermore, we confirm that Claimant subscribed to the Company's SMS campaign in a compliant manner in accordance with the TCPA requirements. As described in detail in **Exhibit A**, we have records of the logs and proof of Claimant's opt-in into your Company SMS campaign.

For the reasons set forth above and considering that (i) Yotpo's system is not an ATDS; and (ii) the Company has obtained the required opt-in consents in accordance with the TCPA, the current claim is baseless and any lawsuit based on such a claim would be frivolous.

If you have any questions or need additional information, please let us know.

DocuSigned by:

*Alan Birch*

81E0EA6AB1DD4BD...

Alan Birch
Director, Legal

---

[1] The United State Supreme Court addressed the definition of ATDS in a case called *Facebook v. Duguid* (592 U.S. ___ ) (2021). There, the Supreme Court found that only systems that utilize random or sequential number generators as part of the messaging process can constitute an ATDS.

**Exhibit A**

**Opt-in data**

The holder of phone number +1-541-999-9999 opted-in on 2025-01-01 at 23:09:56 New York Time through the subscription form.

**Form of subscription**

Screenshot of subscription form Claimant used to subscribe by phone number +1-513-497-8392 at the time stated above:



Highlight of the compliance language displayed in the form as can be seen in the screenshot:

*By signing up via text you agree to receive recurring automated marketing messages and shopping cart reminders at the phone number provided. Consent is not a condition of purchase. Reply STOP to unsubscribe. HELP for help. Msg & Data rates may apply. View Privacy Policy & ToS*

**Message history**

PFA attached doc with all the messages sent to Claimant from the moment they subscribed until 2025-05-12 (they are still subscribed), including the date and time of each message and its copy. The message timestamps are in UTC.

**Opt-out data**

Claimant is still subscribed (has not opted out).

 Outlook

---

**RE: Wilson v. MAH Group; Supplemental Production**

---

**From** Anthony Paronich <anthony@paronichlaw.com>

**Date** Tue 2/24/2026 10:44 AM

**To**    Neal Shechter <neal@saltlawgroup.com>; Andrew Perrong <a@perronglaw.com>; Kevin Jacoby <Kevin@saltlawgroup.com>

**Cc**    Andrew Shute <Andrew@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>

Counsel:

Of course, you should feel free to serve whatever discovery you think is appropriate and we will provide a response. However, there are a few things you are simply ignoring or should further consider.

First, we've already indicated, but allow us to be clear, that is not our client's IP address. Even though he did not need to, Andrew Perrong indicated that there's a process for a motion you can file to find out whose it is. Notably, as Andrew also pointed out, your basing your consent off of (a) someone else's name and (b) someone else's phone number. That's insufficient to be our client's consent.

Second, as Andrew also already pointed out, you're basing your consent on language that is insufficient under the TCPA.

Third, as you should know from a review of the production and your client's file (including multiple communications with your client's attorney), your client has continued to text our client after the filing of the lawsuit. While there is not consent in the first place, the filing of this lawsuit would clearly be a revocation of any purported consent and your client's continued contact of him is in violation of the statute.

In sum, if you want to file a motion seeking "every dollar" of whatever costs your client has incurred, we will respond appropriately and with our own request for relief as we have also indicted. However, since we have given you many reasons why your position is factually and legally insufficient, I hope that won't be necessary.

Finally, I've never had an attorney tell me that I need to "cut out this nonsense", and perhaps the Court will view that differently, but we don't believe that to be an appropriate course of conduct. This is especially true when it is your client that made the decision not to participate in discovery for months, then sent us AI generated discovery responses and did not meet the Court's (extended) deadline for production under the Court's Order and is facing a pending sanctions motion. It is our hope that you will able to litigate this case more professionally going forward.

----

Anthony Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[c] (508) 221-1510
[f] (508) 318-8100

This email message may contain legally privileged and/or confidential information.  If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

---

**From:** Neal Shechter <neal@saltlawgroup.com>
**Sent:** Tuesday, February 24, 2026 12:32 PM
**To:** Andrew Perrong <a@perronglaw.com>; Kevin Jacoby <Kevin@saltlawgroup.com>
**Cc:** Anthony Paronich <anthony@paronichlaw.com>; Andrew Shute <Andrew@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** RE: Wilson v. MAH Group; Supplemental Production

I've got an even better idea. Why don't we just serve the two of you an RFA today to admit that's an IP Address either previously or currently used by your client. If you deny it, you'll pay the entire fees and costs of this lawsuit, since consent is the entire crux of the matter, and although we'll still move for sanctions, cost-shifting will be required instead of optional.
When the two of you are ready to cut out this nonsense, we can talk about putting all of this on pause until we jointly determine whether there's any truth behind your client's lawsuit, which most Oregon judges will expect you to do. Whether that is by subpoena, or you simply asking your client, or otherwise.
If you're not ready to have that conversation, I have advised you of what we intend to inform the Court of and the relief we will be seeking. Feel free to give me a call on my cell if you'd like to discuss further 917-993-3878.



**Neal Shechter** | Attorney

---

T: 503.417.7777
C: 971.266.8027
E: Neal@SaltLawGroup.com

**SaltLawGroup.com**

**Confidentiality Notice:**
This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.

---

**From:** Andrew Perrong <a@perronglaw.com>
**Sent:** Tuesday, February 24, 2026 9:23 AM
**To:** Kevin Jacoby <Kevin@saltlawgroup.com>
**Cc:** Anthony Paronich <anthony@paronichlaw.com>; Neal Shechter <neal@saltlawgroup.com>; Andrew Shute <Andrew@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** Re: Wilson v. MAH Group; Supplemental Production

You're free to send us a discovery request, perhaps along with a 47 U.S.C. § 551 motion for leave to serve a subpoena on Comcast, which we won't object to.

On Tue, Feb 24, 2026 at 9:21 AM Kevin Jacoby <Kevin@saltlawgroup.com> wrote:

I guess we'll have to wait for the confirmation I asked for. How long can we expect to wait?

## Salt

**Kevin Jacoby** | Attorney

T: 503.417.7777
F: 503.214.8816
E: Kevin@SaltLawGroup.com

SaltLawGroup.com

**Confidentiality Notice:**
This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.

**From:** Andrew Perrong <a@perronglaw.com>
**Sent:** Tuesday, February 24, 2026 9:16 AM
**To:** Kevin Jacoby <Kevin@saltlawgroup.com>
**Cc:** Anthony Paronich <anthony@paronichlaw.com>; Neal Shechter <neal@saltlawgroup.com>; Andrew Shute <Andrew@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** Re: Wilson v. MAH Group; Supplemental Production

We would also draw your attention to the fact that MAH 00002 references another telephone number entirely, 513-497-8392, as well as to MAH000016, which seems to indicate that the subject sign up was completed in the name of "Taken Rosins" and the email of "no@gmail.com." That seems to be confirmed by the document you produced in this email thread as MAH000525, which shows a screenshot with the same information. That is not our client's information and is just junk information insufficient to establish TCPA-specific consent. *See Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 984 (N.D. Cal. 2019).

On Tue, Feb 24, 2026 at 9:05 AM Kevin Jacoby <Kevin@saltlawgroup.com> wrote:

See MAH000001-2. See also MAH000521, the message immediately preceding the email you referenced as the first day our client requested all the text logs from Yotpo.

Please let us know as soon as possible whether you're able to confirm that your client is not associated with IP address 73.240.49.37 in any way.

# Salt

**Kevin Jacoby** | Attorney

T: 503.417.7777
F: 503.214.8816
E: Kevin@SaltLawGroup.com

SaltLawGroup.com

**Confidentiality Notice:**
This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.

---

**From:** Anthony Paronich <anthony@paronichlaw.com>
**Sent:** Tuesday, February 24, 2026 4:03 AM
**To:** Neal Shechter <neal@saltlawgroup.com>; Kevin Jacoby <Kevin@saltlawgroup.com>
**Cc:** Andrew Shute <Andrew@saltlawgroup.com>; Andrew Perrong <a@perronglaw.com>; Christin Grieser <ChristinG@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** RE: Wilson v. MAH Group; Supplemental Production

Neal:

I will be on a flight on March 5, but can be available at 11:00 your time on March 11.

We'll review any properly served Rule 11 motion and for anything done in contravention of the rules, we will seek appropriate 28 U.S.C. § 1927 sanctions. I'm interested in seeing your case law in support of a "cross motion" for Rule 11 sanctions as our motion was required by a Court Order. Additionally, with your client's various violations of Court Orders, sporadic productions after the Court Ordered deadline and rotating attorneys, I have no idea what you mean by "the first two pages of the discovery".

----
Anthony Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[c] (508) 221-1510
[f] (508) 318-8100

This email message may contain legally privileged and/or confidential information.  If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are

**EXHIBIT B**
**Page 4 of 11**

hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

---

**From:** Neal Shechter <neal@saltlawgroup.com>
**Sent:** Monday, February 23, 2026 11:04 PM
**To:** Anthony Paronich <anthony@paronichlaw.com>; Kevin Jacoby <Kevin@saltlawgroup.com>
**Cc:** Andrew Shute <Andrew@saltlawgroup.com>; Andrew Perrong <a@perronglaw.com>; Christin Grieser <ChristinG@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** RE: Wilson v. MAH Group; Supplemental Production

Anthony:

I am available to confer next week on 3/5. Please advise a time that works for you.

However, we have reviewed this file in detail and are now prepared to cross-move for Rule 11 sanctions against your client in light of the first two pages of the discovery we have provided to you. It is now apparent that paragraphs 21, 23 and 24 of the Complaint are false and need to be withdrawn and the case dismissed. You need to review those pages we have produced to you and advise your client to withdraw this action immediately. We feel that it is inappropriate to accrue additional attorney fees in light of these issues. If you refuse to withdraw this action and force us to serve you with formal papers under Rule 11 and oppose your existing motion, we will be forced to advise the court that Plaintiff is hiding behind an FRCP 11 safe harbor period to cause us to accrue additional fees in discovery and motion practice, and we will cross-move for every dollar of those fees to be assessed against counsel. I urge you to withdraw this action promptly, before we begin to unwind this mess and seek all available remedies.

Neal

---

**From:** Anthony Paronich <anthony@paronichlaw.com>
**Sent:** Monday, February 23, 2026 4:53 PM
**To:** Kevin Jacoby <Kevin@saltlawgroup.com>
**Cc:** Andrew Shute <Andrew@saltlawgroup.com>; Andrew Perrong <a@perronglaw.com>; Neal Shechter <neal@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** Re: Wilson v. MAH Group; Supplemental Production

Counsel:

Our notes on these issues are below now that we've reviewed the supplement:

- For Interrogatory No. 2, the Defendant does not disclose where the numbers came from with respect to the texts sent through Klayvio. **We will amend our response to this interrogatory as soon as possible, but my understanding is that the numbers were imported from Yotpo.**
- For Interrogatory No. 9 and Document Request No. 18, we believe all communications with Klayvio and Yotpo should be identified. **We have produced all communications with Yotpo. Communications from Klayvio are being produced later today.**

- **It appears the first date your client requested all of the text logs from Yotpo was February 12, 2026 based on this production. Please advise if there are more documents forthcoming.**

- Documents responsive to Document Request No. 5 are relevant to damages and class ascertainability and should be produced. **The objection to this request was not overruled in the discovery order. Indeed, you did not move against this objection in your motion to compel. I'm happy to confer on this further, but I'd like to focus on what was ordered to be produced.**

  - **Please advise when you are available to confer next week.**

- Document Request No. 7 and 9 appear to be limited to the Plaintiff, which we do not agree is appropriate. **But that's specifically what those requests asked for. Request 7: "All internal communications at your company regarding any vendor that provided you with *the Plaintiff's* telephone number or information." Request 9: "All communications with any third party that dialed the calls to *the Plaintiff*."**

  - **No, it identifies the entity in terms of who interacted with the Plaintiff. It does not say "All communications <u>about the Plaintiff</u> with any third party that dialed the calls to *the Plaintiff*." So, please advise when you can confer next week.**

- Document Request No. 13 does not include a denial letter or other correspondence to allow us to understand the current claim status of the policies produced. **We will locate and produce the denial letter.**
- Document Request No. 17 relates to your client's affirmative defense of consent. It should be produced or withdrawn. **We did produce, however I believe there are additional documents that were discovered since we produced, which will be produced later today. This includes the IP address of the person who entered Plaintiff's phone number into the opt-in form, which I understand is located in the Eugene area.**

  - **This request is also not limited to the Plaintiff, so please advise when you are available to confer next week.**

----
Anthony Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[c] (508) 221-1510
[f] (508) 318-8100


This email message may contain legally privileged and/or confidential information.  If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.


On Fri, Feb 13, 2026 at 2:42 PM Kevin Jacoby <Kevin@saltlawgroup.com> wrote:

Responding in line below in red.

## Salt

**Kevin Jacoby** | Attorney

T: 503.417.7777
F: 503.214.8816
E: Kevin@SaltLawGroup.com

SaltLawGroup.com

**Confidentiality Notice:**
This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.

---

**From:** Anthony Paronich <anthony@paronichlaw.com>
**Sent:** Friday, February 13, 2026 8:02 AM
**To:** Kevin Jacoby <Kevin@saltlawgroup.com>; Andrew Shute <Andrew@saltlawgroup.com>; Andrew Perrong <a@perronglaw.com>
**Cc:** Neal Shechter <neal@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** Re: Wilson v. MAH Group; Supplemental Production

Counsel:

As we have been preparing our sanctions motions and have also further reviewed the discovery responses now that we are well beyond the extended deadline. Please provide us your position with respect to the failure to produce the following:

- For Interrogatory No. 2, the Defendant does not disclose where the numbers came from with respect to the texts sent through Klayvio. We will amend our response to this interrogatory as soon as possible, but my understanding is that the numbers were imported from Yotpo.
- For Interrogatory No. 9 and Document Request No. 18, we believe all communications with Klayvio and Yotpo should be identified. We have produced all communications with Yotpo. Communications from Klayvio are being produced later today.
- Documents responsive to Document Request No. 5 are relevant to damages and class ascertainability and should be produced. The objection to this request was not overruled in the discovery order. Indeed, you did not move against this objection in your motion to compel. I'm happy to confer on this further, but I'd like to focus on what was ordered to be produced.
- Document Request No. 7 and 9 appear to be limited to the Plaintiff, which we do not agree is appropriate. But that's specifically what those requests asked for. Request 7: "All internal communications at your company regarding any vendor that provided you with *the Plaintiff's* telephone number or information." Request 9: "All communications with any third party that dialed the calls to *the Plaintiff*."

- Document Request No. 13 does not include a denial letter or other correspondence to allow us to understand the current claim status of the policies produced. We will locate and produce the denial letter.
- Document Request No. 17 relates to your client's affirmative defense of consent. It should be produced or withdrawn. We did produce, however I believe there are additional documents that were discovered since we produced, which will be produced later today. This includes the IP address of the person who entered Plaintiff's phone number into the opt-in form, which I understand is located in the Eugene area.

----
Anthony Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[c] (508) 221-1510
[f] (508) 318-8100

This email message may contain legally privileged and/or confidential information.  If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

On Thu, Feb 12, 2026 at 2:25 PM Anthony Paronich <anthony@paronichlaw.com> wrote:

> How have you complied with the Court's Order by not producing documents? The Court Ordered you all to produce these text records, you simply haven't done it and I don't see the production of any correspondence about their efforts or a motion to extend the deadline to comply.

> **From:** Kevin Jacoby <Kevin@saltlawgroup.com>
> **Sent:** Thursday, February 12, 2026 2:24 PM
> **To:** Anthony Paronich <anthony@paronichlaw.com>; Andrew Shute <Andrew@saltlawgroup.com>; Andrew Perrong <a@perronglaw.com>
> **Cc:** Neal Shechter <neal@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
> **Subject:** RE: Wilson v. MAH Group; Supplemental Production

> We have complied with the court's order and are working on obtaining documents that are not currently in my client's possession. Mr. Cartee is the party that caused you to incur expenses associated with the motion to compel, and my client has been diligently working on complying with the court's order as soon as it became aware of it through local counsel on 12/31.



**Kevin Jacoby** | Attorney

T: 503.417.7777
F: 503.214.8816
E: Kevin@SaltLawGroup.com


**SaltLawGroup.com**


**Confidentiality Notice:**
This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.

---

**From:** Anthony Paronich <anthony@paronichlaw.com>
**Sent:** Thursday, February 12, 2026 11:16 AM
**To:** Kevin Jacoby <Kevin@saltlawgroup.com>; Andrew Shute <Andrew@saltlawgroup.com>; Andrew Perrong <a@perronglaw.com>
**Cc:** Neal Shechter <neal@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** RE: Wilson v. MAH Group; Supplemental Production

To make sure I understand, your client still has not complied with the Court's Order but thinks that their former attorney is the only individual or entity that should receive a sanction of any kind?

---

**From:** Kevin Jacoby <Kevin@saltlawgroup.com>
**Sent:** Thursday, February 12, 2026 2:09 PM
**To:** Anthony Paronich <anthony@paronichlaw.com>; Andrew Shute <Andrew@saltlawgroup.com>; Andrew Perrong <a@perronglaw.com>
**Cc:** Neal Shechter <neal@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** RE: Wilson v. MAH Group; Supplemental Production

Well, we produced the Yotpo texting records to Wilson, but I see now that the full universe of records requested has not yet been produced. My client is working with Yotpo to get those records as soon as possible.

On the request for expenses, my client will oppose the motion and argue that the court should award any reasonable expenses against Anthony Cartee.


**Salt**


**Kevin Jacoby** | Attorney


T: 503.417.7777
F: 503.214.8816
E: Kevin@SaltLawGroup.com

**SaltLawGroup.com**

**Confidentiality Notice:**
This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.

---

**From:** Anthony Paronich <anthony@paronichlaw.com>
**Sent:** Wednesday, February 11, 2026 4:40 AM
**To:** Andrew Shute <Andrew@saltlawgroup.com>; Andrew Perrong <a@perronglaw.com>
**Cc:** Kevin Jacoby <Kevin@saltlawgroup.com>; Neal Shechter <neal@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** RE: Wilson v. MAH Group; Supplemental Production

These were received, but we are beyond the deadline and we still do not have any of the Yotpo texting records. Please advise.


----
Anthony Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[c] (508) 221-1510
[f] (508) 318-8100

This email message may contain legally privileged and/or confidential information.  If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

---

**From:** Andrew Shute <Andrew@saltlawgroup.com>
**Sent:** Tuesday, February 10, 2026 6:53 PM
**To:** Anthony Paronich <anthony@paronichlaw.com>; Andrew Perrong <a@perronglaw.com>
**Cc:** Kevin Jacoby <Kevin@saltlawgroup.com>; Neal Shechter <neal@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** Wilson v. MAH Group; Supplemental Production

Good afternoon:

Please see the attached correspondence from Kevin regarding this supplemental production of documents from MAH Group. The referenced documents may be accessed using the Dropbox link below. Please let me know if you encounter any technical issues.

(CONFIDENTIAL) MAH Group Production 20260210

**EXHIBIT B**
**Page 10 of 11**

Thank you.

**Salt**

**Andrew Shute** | Litigation Specialist

T: 503.417.7777
F: 503.214.8816
E: Andrew@SaltLawGroup.com

**SaltLawGroup.com**

**Confidentiality Notice:**
This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.

Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Attorney for Plaintiff and the Proposed Class

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## EUGENE DIVISION

_____

CHET MICHAEL WILSON, individually and
on behalf of a class of all persons and entities
similarly situated,

      Plaintiff

vs.

MAH Group, Inc.

      Defendant.

     Case No. 6:25-cv-00855-MTK

RESPONSE TO
DEFENDANT'S FIRST REQUESTS
FOR ADMISSION
TCPA (47 U.S.C. § 227)

## RESPONSE TO
## DEFENDANT'S FIRST REQUESTS FOR ADMISSION

Plaintiff, by and through undersigned counsel, submits the following Response to

Defendant's First Request for Admission pursuant to Rule 36 of the Federal Rules of Civil

Procedure. Plaintiff expressly reserves all objections, including but not limited to relevance,

overbreadth, undue burden, vagueness, ambiguity, attorney–client privilege, and the attorney

work-product doctrine. Plaintiff further reserves the right to supplement, modify, or amend these

responses as discovery proceeds and additional facts are developed.

**EXHIBIT C**
**Page 1 of 3**

**<u>RESPONSES TO REQUESTS FOR ADMISSION</u>**

**REQUEST FOR ADMISSION NO. 1:** Admit that you have utilized IP address 73.240.49.37 on a device that you currently or previously owned or had in your possession.

**RESPONSE:** Plaintiff objects to the extent that the request is not relevant to any party's claim or defense or proportional to the needs of the case other than the telephone numbers or contacts at issue in this case. Plaintiff objects in that this request seeks information that is not relevant to any claim or defense, which cannot be proven through an admission, denial, or qualified denial, and which is further outside the scope of the discovery ordered by the Court. Plaintiff objects to this Request as vague and ambiguous as it does not specify a time frame for which it seeks an admission. Plaintiff further objects insofar as this request is technologically unsound, as IP addresses are associated with connections, not devices, and insofar as the request does not account for network address translation. The Plaintiff objects insofar as this request seeks disclosure of the contents of attorney-client communications, common interest privilege, communications with experts, and/or trial preparation materials. The Plaintiff further objects in that he is without sufficient information to provide a complete response to this Request, insofar as the Plaintiff does not maintain records of every IP address which he was assigned, nor the duration and time periods during which they were assigned. However, to the best of the Plaintiff's knowledge, and upon a review of records applicable to him, the Plaintiff Admits that this was an IP address assigned to Plaintiff on January 30, 2025, based on the documents available to him. Insofar as the Plaintiff lacks personal knowledge of the fact sought to be admitted for other dates or times as he has no record of the same, the Plaintiff cannot in good faith respond by admission, denial, or qualified denial.

Response to RFA                                    2

**EXHIBIT C**
**Page 2 of 3**

Dated: March 27, 2026

s/Andrew Roman Perrong
Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
*Lead Attorney for Plaintiff and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I certify that I emailed a copy of the foregoing to counsel for the Defendant at Andrew

Shute <Andrew@saltlawgroup.com>, Kevin Jacoby <Kevin@saltlawgroup.com>, Neal Shechter

<neal@saltlawgroup.com>, Christin Grieser <ChristinG@saltlawgroup.com>, LegalOps

<LegalOps@saltlawgroup.com>

I further certify that I mailed a copy of the foregoing to:


Neal Shechter
Salt Law Group
100 SW Main St, Ste 1025
Portland, OR 97204

Dated: March 27, 2026


<u>*/s/ Andrew Roman Perrong*</u>
Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Lead Attorney for Plaintiff and the Proposed Class

Response to RFA                3

**EXHIBIT C**
**Page 3 of 3**

 Outlook

---

## RE: Outstanding Discovery Deficiencies – Wilson v. MAH Group

**From** Neal Shechter <neal@saltlawgroup.com>
**Date** Tue 3/31/2026 10:21 AM
**To** Andrew Perrong <a@perronglaw.com>
**Cc** Anthony Paronich <anthony@paronichlaw.com>; anthony cartee <acartee@ac-legal.com>; Kevin Jacoby <Kevin@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>

You have deliberately misquoted me. Your threat to file a motion because we have not read your mind about what additional records you want from a third party is ridiculous and a waste of the Court's resources. Fortunately, because this action will be dismissed and because you continued to pursue it based on dishonest representations and continue to pursue it without a good faith basis, my client will recover significant pecuniary damages against your firm. And that is what was truthfully conveyed to you during our call. Whether additional disciplinary action should result is not for me to say.



**Neal Shechter** | Attorney

---

T: 503.417.7777
C: 971.266.8027
E: Neal@SaltLawGroup.com

**SaltLawGroup.com**

Confidentiality Notice:

This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.

**From:** Andrew Perrong <a@perronglaw.com>
**Sent:** Tuesday, March 31, 2026 10:16 AM
**To:** Neal Shechter <neal@saltlawgroup.com>
**Cc:** Anthony Paronich <anthony@paronichlaw.com>; anthony cartee <acartee@ac-legal.com>; Kevin Jacoby <Kevin@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>
**Subject:** Re: Outstanding Discovery Deficiencies - Wilson v. MAH Group

We are requesting that you obtain from Yotpo precisely what the Court ordered to be produced in Request 17.

We will also be addressing your use of profanity during our meet and confer call, including your contention that "[we're] fucked" and that our position that such records are within your

possession, care, custody and control because you have demonstrated an ability to obtain such records from Yotpo as "the stupidest fucking thing you've ever heard."

On Tue, Mar 31, 2026 at 1:12 PM Neal Shechter <neal@saltlawgroup.com> wrote:

Counsel, as discussed on our meet and confer call just now, please send me your exact request of Yotpo so that we can pass it along to Yotpo. Please also advise if you requested this information from Yotpo previously and what their response to the request was. Thank you.

Thank you.



**Neal Shechter | Attorney**

T: 503.417.7777
C: 971.266.8027
E: Neal@SaltLawGroup.com

**SaltLawGroup.com**

**Confidentiality Notice:**

This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.

**From:** Andrew Perrong <a@perronglaw.com>
**Sent:** Monday, March 30, 2026 10:10 AM
**To:** Neal Shechter <neal@saltlawgroup.com>
**Cc:** Anthony Paronich <anthony@paronichlaw.com>; anthony cartee <acartee@ac-legal.com>; Kevin Jacoby <Kevin@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>
**Subject:** Re: Outstanding Discovery Deficiencies - Wilson v. MAH Group

I am available then.
We can discuss further on the call, but we have not received, from any source, the metadata (i.e. the actual database record of what was submitted on the "pop up" on your client's webiste) associated with any Yotpo submission; as you indicate, the only information that you have for Type 1 consent is "The screenshots of the "opt-in" pop-up utilized by the Plaintiff were produced as MAH00001-2. Our client does not have further documents regarding consent in our client's possession and control and we do not have further documents upon which we intend to rely that have not been produced."

On Mon, Mar 30, 2026 at 1:00 PM Neal Shechter <neal@saltlawgroup.com> wrote:

I'm available tomorrow morning at 10AM PST / 1PM EST. Please advise what "metadata and underlying website submissions" you are talking about. Thanks.

## Salt

**Neal Shechter** | Attorney

T: 503.417.7777
C: 971.266.8027
E: Neal@SaltLawGroup.com

**SaltLawGroup.com**

Confidentiality Notice:

This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.

**From:** Andrew Perrong <a@perronglaw.com>
**Sent:** Monday, March 30, 2026 9:51 AM
**To:** Neal Shechter <neal@saltlawgroup.com>
**Cc:** Anthony Paronich <anthony@paronichlaw.com>; anthony cartee <acartee@ac-legal.com>; Kevin Jacoby <Kevin@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>
**Subject:** Re: Outstanding Discovery Deficiencies - Wilson v. MAH Group

Thanks, upon review, we still intend to move as to the Yotpo data, as the metadata and underlying website submissions for each of the class members, including Plaintiff, were not produced. Let me know what time you are free to finalize our meet and confer today.

On Mon, Mar 30, 2026 at 12:28 PM Neal Shechter <neal@saltlawgroup.com> wrote:

One additional note: we will be producing by end of day screenshots of WolfPak's current "opt-in" website pop-up.

## Salt

**Neal Shechter** | Attorney

T: 503.417.7777
C: 971.266.8027
E: Neal@SaltLawGroup.com

**SaltLawGroup.com**

**Confidentiality Notice:**

This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.

**From:** Neal Shechter
**Sent:** Monday, March 30, 2026 9:24 AM
**To:** 'Andrew Perrong' <a@perronglaw.com>
**Cc:** Anthony Paronich <anthony@paronichlaw.com>; anthony cartee <acartee@ac-legal.com>; Kevin Jacoby <Kevin@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** RE: Outstanding Discovery Deficiencies - Wilson v. MAH Group

Counsel,

Your recap of our conferral call stated that you would follow up last week. Instead you sent a sanctions threat and demanded immediate conferral. Please review the chain below.

That said, to the best of Defendant's knowledge, Yotpo and Klaviyo have produced directly to the Plaintiff information regarding when and how putative class members enrolled in the SMS marketing campaigns. The screenshots of the "opt-in" pop-up utilized by the Plaintiff were produced as MAH00001-2. Our client does not have further documents regarding consent in our client's possession and control and we do not have further documents upon which we intend to rely that have not been produced.

We did reach out to our client regarding the "website" information collected from customers that we discussed on our conferral call. However, after further review and investigation, we are informed that WolfPak does not utilize phone numbers provided at website checkout for marketing purposes, such numbers are only utilized to contact the customer if there is an issue or problem with their order. Thus, there are no further documents to collect/produce regarding consent from website checkouts and we have no further documents upon which we intend to rely that have not already been produced.

Please let me know if you would like to schedule a call.

Best,

Neal



**Neal Shechter** | Attorney

T: 503.417.7777
C: 971.266.8027
E: Neal@SaltLawGroup.com

**SaltLawGroup.com**

**Confidentiality Notice:**

This message and any accompanying attachments contains confidential communications and privileged information. If you

have received this communication in error, please notify me and delete the original and all copies from your system.

**From:** Andrew Perrong <a@perronglaw.com>
**Sent:** Saturday, March 28, 2026 1:39 PM
**To:** Neal Shechter <neal@saltlawgroup.com>
**Cc:** Anthony Paronich <anthony@paronichlaw.com>; anthony cartee <acartee@ac-legal.com>; Kevin Jacoby <Kevin@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** Re: Outstanding Discovery Deficiencies - Wilson v. MAH Group

Counsel,

We have not yet received any of the consent data. As such, we intend to file a second motion for sanctions with respect to the deficiencies in RFP 17. Although we contend that we have discharged our obligation under Local Rule 7-1, I am available on Monday to discuss if you feel that our prior conversation was inadequate.

On Tue, Mar 17, 2026 at 4:43 PM Andrew Perrong <a@perronglaw.com> wrote:

Thanks for the call.
To summarize our discussion, there exist two forms of consent data on which defendant intends to rely: information from website popup submissions (#1), and information related to customers who have purchased products on Defendant's website (#2).

Defendant contains that it does not maintain in its possession, care, custody, or control type #1 documents. Those are maintained by Yotpo.
Defendant is currently collecting documents responsive to type #2. We will reach out for an update next week as to the process of collecting and producing that information.

On Tue, Mar 17, 2026 at 4:16 PM Andrew Perrong <a@perronglaw.com> wrote:

That's fine. Thanks for the clarification. See you in 15

On Tue, Mar 17, 2026, 4:16 PM Neal Shechter <neal@saltlawgroup.com> wrote:

Apologies, I missed this. I will use your Zoom link.



**Neal Shechter | Attorney**

T: 503.417.7777
F: 503.214.8816
E: Neal@SaltLawGroup.com

**SaltLawGroup.com**

**EXHIBIT D**
**Page 5 of 8**

**Confidentiality Notice:**

This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.

---

**From:** Andrew Perrong <a@perronglaw.com>
**Sent:** Thursday, March 12, 2026 10:14:26 AM
**To:** Neal Shechter <neal@saltlawgroup.com>
**Cc:** Anthony Paronich <anthony@paronichlaw.com>; anthony cartee <acartee@ac-legal.com>; Kevin Jacoby <Kevin@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** Re: Outstanding Discovery Deficiencies - Wilson v. MAH Group

No, please see the below link:

https://zoom.us/j/96996923424?pwd=H9vZqTFkwwS741dAxuEabYc1n44cGD.1

On Thu, Mar 12, 2026 at 12:57 PM Neal Shechter <neal@saltlawgroup.com> wrote:

> Let's do 430PM EST if that works. Thanks. Do you want our office to send a call invite?
>
>
>
> **Neal Shechter** | Attorney
>
> ———————————————
>
> T: 503.417.7777
> C: 971.266.8027
> E: Neal@SaltLawGroup.com
>
> **SaltLawGroup.com**
>
> **Confidentiality Notice:**
>
> This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.

**From:** Andrew Perrong <a@perronglaw.com>
**Sent:** Wednesday, March 11, 2026 5:51 PM
**To:** Neal Shechter <neal@saltlawgroup.com>
**Cc:** Anthony Paronich <anthony@paronichlaw.com>; anthony cartee <acartee@ac-legal.com>;
Kevin Jacoby <Kevin@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** Re: Outstanding Discovery Deficiencies - Wilson v. MAH Group

Free for the most part any time Oregon afternoon (3:00 to 8:00 Eastern).

On Wed, Mar 11, 2026 at 7:51 PM Neal Shechter <neal@saltlawgroup.com> wrote:

> Counsel - what is your Tuesday 3/17 like? I'm open if you have any availability in the afternoon your time.



**Neal Shechter | Attorney**

T: 503.417.7777
F: 503.214.8816
E: Neal@SaltLawGroup.com

**SaltLawGroup.com**

**Confidentiality Notice:**
This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.

**From:** Andrew Perrong <a@perronglaw.com>
**Sent:** Wednesday, March 11, 2026 2:50:19 PM
**To:** Anthony Paronich <anthony@paronichlaw.com>; anthony cartee <acartee@ac-legal.com>; Kevin Jacoby <Kevin@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>; Neal Shechter <neal@saltlawgroup.com>
**Subject:** Outstanding Discovery Deficiencies - Wilson v. MAH Group

Counsel,

Now that our motion to compel is fully briefed, we wish to meet and confer with you regarding outstanding deficiencies in the Defendant's production that the Court compelled. Specifically, we seek all evidence of consent for all putative class members under Request for Production 17 (and the corresponding part of our RFP 15 concerning consent, for similar reasons). Please let us know if you have any availability the remainder of this week or next for a meet and confer regarding these matters. To date, Defendant has not produced any evidence of purported consent to contact class members, despite the Court ordering Defendant to do so.

--

Thank you kindly,

Andrew Perrong, Esq.

Perrong Law LLC

2657 Mount Carmel Avenue

Glenside, PA 19038

215-225-5529 (CALL-LAW)

**EXHIBIT D**
**Page 8 of 8**

Docusign Envelope ID: C3635BFE-8497-8257-8160-2C63C0D8518D

Kevin J. Jacoby, OSB No. 063783
Email: kevin@saltlawgroup.com
Neal S. Shechter, OSB No. 185119
Email: neal@saltlawgroup.com
SALT
100 SW Main St, Ste 1025
Portland, OR  97204
Phone: 503.417.7777

*Of Attorneys for Defendant*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **CHET MICHAEL WILSON**, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **MAH GROUP, INC. D/B/A WOLFPACK**, <br><br> Defendant, | Case No. 6:25-cv-00855-MTK <br><br> DECLARATION OF ALAN BIRCH IN SUPPORT OF DEFENDANT'S MOTION FOR RULE 11 SANCTIONS |

I, Alan Birch, hereby declare and state as follows:

1. I am the in-house counsel for Yotpo and I have personal knowledge of the information in this declaration. I am over 18 years of age and am competent to testify to the information in the declaration.

2. On January 20, 2026, a letter was sent to counsel for WolfPak stating that "the holder of phone number +1-541-999-999 opted-in" to marketing messages from Wolfpak on January 1, 2025, at 23:09:56. The letter includes a typo of an unassociated number.

PAGE 1 – DECLARATION OF ALAN BIRCH IN
SUPPORT OF DEFENDANT'S MOTION
FOR RULE 11 SANCTIONS



100 SW Main Street, Suite 1025
Portland, OR 97204
T: 503.417.7777  F: 503.214.8816 **EXHIBIT E**
**Page 1 of 6**

Docusign Envelope ID: C3635BFE-8407-8257-8160-2C63C0D8518D

3. Counsel for Wolkpak requested that I confirm that this opt-in record dated January 1, 2025, for the holder of phone number +1-541-999-999 is associated with the IP address of 73.240.49.37. We have confirmed that to be the case.

4. The screenshot included below is a query of Yotpo's internal Customer Data Platform (CDP). A CDP is an advanced customer data management solution consisting of a centralized customer database platform with the ability to ingest, integrate, manage, activate, orchestrate, and deliver customer data to other technology solutions to personalize the customer experience at scale.

```
[POST]  https://cdp-http-default.yotpo.xyz/cxs/yotpoProfiles/search

{
"offset": 0,
"limit": 100,
"condition": {
"type": "yotpoCondition",
"parameterValues": {
"storeId": "vCVHsroIklpsA0AqWFV3rIQzHP3atMuQ7MK70QLf",
"conditions": [
{
"type": "profilePropertyCondition",
"parameterValues": {
"propertyName": "properties.phone",
"comparisonOperator": "equals",
"propertyValue": " +15419999999 "
}
}
],
"operator": "and"
}
}
}
```

5. Yotpo's CDP can only be accessed internally. For the holder of phone number +15419999999, the data was queried by making the HTTP request in the screenshot

PAGE 2 – DECLARATION OF ALAN BIRCH IN
SUPPORT OF DEFENDANT'S MOTION
FOR RULE 11 SANCTIONS

**Salt**

100 SW Main Street, Suite 1025
Portland, OR 97204                    **EXHIBIT E**
T: 503.417.7777  F: 503.214.8816  **Page 2 of 6**

image above.

6.   The query that is described in the screenshot above produced the response attached hereto as **Exhibit A**, including metadata. Exhibit A includes a true and full copy of the results of this query.

7.   **Exhibit A** demonstrates that the phone number +15419999999's utilized the IP address of 73.240.49.37 at the opt-in event on January 1, 2025. Yotpo's collection of IP Address information occurs specifically at opt-in, and not at the time of subsequent outgoing SMS message delivery.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: April 1, 2026

DocuSigned by:

*Alan Birch*

81E0EA6AB1DD4BD...

Alan Birch

PAGE 3 – DECLARATION OF ALAN BIRCH IN
SUPPORT OF DEFENDANT'S MOTION
FOR RULE 11 SANCTIONS

**Salt**

100 SW Main Street, Suite 1025
Portland, OR 97204
T: 503.417.7777  F: 503.214.8816

**EXHIBIT E**
**Page 3 of 6**

{"list":[{"itemId":"225de67b8a0fe43f5f0ae328f938a974","itemType":"profile","version":54,"properties":{"lastName":"Rosins","lastKnownIp":"73.240.49.37","emailSubscriptionSources":[{"id":"signup","since":"2022-06-04T23:27:26.970Z"}],"emailMarketing":{"lastUnsubscribed":"2025-08-12T09:32:35.666000Z","subscriptionSources":[{"id":"form_298153","since":"2024-04-12T00:58:48.280000Z"}],"lastSubscribed":"2025-06-14T16:32:32.913000Z","lists":[{"id":"3657724","since":"2024-04-12T00:58:48.280Z"},{"id":"8952508","since":"2024-06-27T10:01:13Z"}],"acceptsMarketing":false},"hasVerifiedEmail":true,"platform":"6213258215671","externalCreatedAt":"2022-05-11T19:10:19Z","emailSuppressed":{"reason":"GLOBAL_SUPPRESSION: The email is rejected due to hard bounce global suppression.","source":"communication_campaigns","timestamp":"2023-11-25T02:26:04.543000Z"},"createdAt":"2022-06-04T23:27:28Z","defaultCurrency":"USD","sms":{"lastUnsubscribed":"2024-12-04T09:18:14.556000Z","subscriptionSources":[{"id":"form_298153","since":"2024-10-08T13:38:57.447000Z"}],"lastSubscribed":"2025-01-02T04:09:57.296000Z","campaigns":[{"converted":null,"id":"4955198","clicked":null},{"converted":null,"id":"4962598","clicked":null},{"converted":null,"id":"4965039","clicked":null},{"converted":null,"id":"4966448","clicked":null},{"converted":null,"id":"4966973","clicked":null},{"converted":null,"id":"4976314","clicked":null},{"converted":null,"id":"4977847","clicked":null},{"converted":null,"id":"4980182","clicked":null},{"converted":null,"id":"4981956","clicked":null},{"converted":null,"id":"4984103","clicked":null},{"converted":null,"id":"4985210","clicked":null},{"converted":null,"id":"4985887","clicked":null},{"converted":null,"id":"4988770","clicked":null},{"converted":null,"id":"4991071","clicked":null},{"converted":null,"id":"4992519","clicked":null},{"converted":null,"id":"4993905","clicked":null},{"converted":null,"id":"4995802","clicked":null},{"converted":null,"id":"4996373","clicked":null},{"converted":null,"id":"5000876","clicked":null},{"converted":null,"id":"5002676","clicked":null},{"converted":null,"id":"5004495","clicked":null},{"converted":null,"id":"5007217","clicked":null},{"converted":null,"id":"5008631","clicked":null},{"converted":null,"id":"5009472","clicked":null},{"converted":null,"id":"5012783","clicked":null},{"converted":null,"id":"5014606","clicked":null},{"converted":null,"id":"5016355","clicked":null},{"converted":null,"id":"5018505","clicked":null},{"converted":null,"id":"5243766","clicked":null},{"converted":null,"id":"5244163","clicked":null},{"converted":null,"id":"5246223","clicked":null},{"converted":null,"id":"5248269","clicked":null},{"converted":null,"id":"5251251","clicked":null},{"converted":null,"id":"5252623","clicked":null},{"converted":null,"id":"5253274","clicked":null},{"converted":null,"id":"5255335","clicked":null},{"converted":null,"id":"5256438","clicked":null},{"converted":null,"id":"5258853","clicked":null},{"converted":null,"id":"5259986","clicked":null},{"converted":null,"id":"5262002","clicked":null},{"converted":null,"id":"5262565","clicked":null},{"converted":null,"id":"5267480","clicked":null},{"converted":null,"id":"5269260","clicked":null},{"converted":null,"id":"5270613","clicked":null},{"converted":null,"id":"5272024","clicked":null},{"converted":null,"id":"5274095","clicked":null},{"converted":null,"id":"5275741","clicked":null},{"converted":null,"id":"5277422","clicked":null},{"converted":null,"id":"5278501","clicked":null},{"converted":null,"id":"5280521","clicked":null},{"converted":null,"id":"5280763","clicked":null},{"converted":null,"id":"5283780","clicked":null},{"converted":null,"id":"5284436","clicked":null},{"converted":null,"id":"5285563","clicked":null},{"converted":null,"id

":"5287708","clicked":null},{"converted":null,"id":"5288487","clicked":null},{"converted":null,"id":"5290362","clicked":null},{"converted":null,"id":"5290103","clicked":null},{"converted":null,"id":"5291633","clicked":null},{"converted":null,"id":"5293014","clicked":null},{"converted":null,"id":"5295021","clicked":null},{"converted":null,"id":"5296036","clicked":null},{"converted":null,"id":"5297475","clicked":null},{"converted":null,"id":"5297504","clicked":null},{"converted":null,"id":"5297589","clicked":null},{"converted":null,"id":"5302185","clicked":null},{"converted":null,"id":"5302990","clicked":null},{"converted":null,"id":"5304539","clicked":null},{"converted":null,"id":"5305534","clicked":null},{"converted":null,"id":"5306355","clicked":null},{"converted":null,"id":"5307431","clicked":null},{"converted":null,"id":"5309636","clicked":null},{"converted":null,"id":"5310486","clicked":null},{"converted":null,"id":"5310958","clicked":null},{"converted":null,"id":"5310871","clicked":null},{"converted":null,"id":"5310926","clicked":null},{"converted":null,"id":"5315477","clicked":null},{"converted":null,"id":"5317242","clicked":null},{"converted":null,"id":"5318510","clicked":null},{"converted":null,"id":"5319456","clicked":null},{"converted":null,"id":"5321362","clicked":null},{"converted":null,"id":"5322267","clicked":null},{"converted":null,"id":"5323253","clicked":null},{"converted":null,"id":"5324335","clicked":null},{"converted":null,"id":"5325833","clicked":null},{"converted":null,"id":"5327252","clicked":null},{"converted":null,"id":"5327811","clicked":null},{"converted":null,"id":"5330269","clicked":null},{"converted":null,"id":"5330294","clicked":null},{"converted":null,"id":"5331544","clicked":null},{"converted":null,"id":"5333321","clicked":null},{"converted":null,"id":"5333855","clicked":null},{"converted":null,"id":"5335010","clicked":null},{"converted":null,"id":"5335891","clicked":null},{"converted":null,"id":"5335973","clicked":null},{"converted":null,"id":"5336775","clicked":null},{"converted":null,"id":"5339514","clicked":null},{"converted":null,"id":"5340438","clicked":null},{"converted":null,"id":"5341724","clicked":null},{"converted":null,"id":"5342749","clicked":null},{"converted":null,"id":"5345677","clicked":true}],"flows":[{"converted":null,"id":"1642589","clicked":true},{"converted":null,"id":"1622619","clicked":null},{"converted":null,"id":"661049","clicked":true}],"lists":[{"id":"3657724","since":"2024-10-08T13:38:57.447000Z"}],"lastSent":"2025-08-19T22:03:01Z","lastEngaged":"2026-03-01T19:08:48Z","acceptsMarketing":true,"initialSource":{"id":"subscription_form","since":"2025-01-02T04:09:56.000000Z"}},"platformName":"Shopify","derived":{"emailDomain":"gmail.com","emailProvider":"Google","locationTags":[],"geoPointLocation":{"lon":-122.118,"lat":47.669}},"firstVisit":"2022-06-04T23:27:26Z","email":"no@gmail.com","acceptsEmailMarketing":true,"updatedAt":"2026-03-01T19:08:48Z","loyalty":{"vipLastChange":"EARNED","vipTierDescription":"$0","optInDate":"2024-10-08T13:39:07Z","pointsBalance":0,"nextPointsExpireOn":"2025-10-08","vipEntryDate":"2025-05-13T12:15:42Z","pointsExpireDate":"2025-10-08T00:00:00Z","vipStatsNeededNext":{"campaignsNeeded":[],"referralsNeeded":0,"amountCentsNeeded":25000,"amountCentsNeededInCustomerCurrency":25000,"purchasesNeeded":0,"pointsNeeded":0},"hasStoreAccount":false,"lastPointsChangedReason":"unknown","pointsEarned":50,"vipExpirationDate":"1970-01-28T12:38:10Z","lastSeen":"2024-10-08T13:39:08Z","campaigns":[{"campaignType":"Sign up for SMS","awarded":true,"statusUpdatedAt":"2024-10-

08T13:39:08Z","progressPercentage":100,"id":"2652277899","status":"COMPLE
TED","progressText":"1/1"}],"creditBalanceAmount":0,"referralLinkClicked"
:0,"isOptIn":true,"vipStatsNeededMaintain":{"campaignsNeeded":[],"referra
lsNeeded":0,"amountCentsNeeded":0,"purchasesNeeded":0,"amountCentsNeededI
nCustomerCurrency":0,"pointsNeeded":0},"vipTierRank":0,"creditBalanceCust
omerCurrency":"$0","nextPointsExpireAmount":50,"vipTierName":"RECRUIT","v
ipStats":{"pointsEarned":50,"amountSpentCentsInCustomerCurrency":0,"refer
ralsCompleted":0,"purchasesMade":0,"campaignsCompleted":[],"amountSpentCe
nts":0}},"custom":{"blackcrow_query_params":"eventId=019d289d3ce609616fec
8f762db8e83a7760d462e1fdc081a7a1ae0e3b6b9df4","blackcrow_eid":"019d289d3c
e609616fec8f762db8e83a7760d462e1fdc081a7a1ae0e3b6b9df4"},"externalId":"62
13258215671","storeId":"vCVHsroIklpsA0AqWFV3rIQzHP3atMuQ7MK70QLf","predic
tions":{"engagementWithMarketingMaterial":2,"learnableAudiences":{"emailG
eneralCampaignEngagementScore":0.03899593195434093},"churnRisk":{"score":
3,"value":"Insufficient
Data"},"likelyToPurchase":{"score":1,"value":"Insufficient
Data"}},"firstName":"Taken","phone":"+15419999999","orders":{"checkouts":
[{"createdAt":"2024-11-
28T15:29:52Z","landingSiteUrl":"/","abandonedCheckoutUrl":"https://wolfpa
k.com/50912329900/checkouts/ac/Z2NwLXVzLWVhc3QxOjAxSkRTUDk1Qk40V1NDRU42M1
Q0SEJOS1BO/recover?key=18ae99cc786faa68e7926429837860b1&locale=en-
US","id":"266e93741f042c99df75d6b914e198fc","abandoned":true},{"createdAt
":"2025-06-
15T13:47:36Z","landingSiteUrl":"/?tw_source=ig&tw_adid=120224463031670609
&utm_medium=paid&utm_id=120208464109160609_v2_s02_e109&utm_content=120224
463554590609&utm_term=120224189809450609&utm_campaign=120208464109160609&
fbclid=PAZXh0bgNhZW0BMABhZGlkAasfgz7zx1EBpyyq5wj0vQ4NMYyNazzms6hnmQUwmPdh
dOawmtHpgufj6J-J56I3ZhM26Cgz_aem_xEQ7kBm4QItW_9VMH-
g7_g&utm_source=facebook&campaign_id=120208464109160609&ad_id=12022446355
4590609","abandonedCheckoutUrl":"https://wolfpak.com/50912329900/checkout
s/ac/Z2NwLXVzLWNlbnRyYWwxOjAxSlhTWEdYVlJLTkMwOE5SSkNLNTVCODhC/recover?key
=c42d5e83f5b734dc814fda3eb690c481&locale=en-
US","id":"74c77ba06b910f350cfb4e56f85f6219","abandoned":true}]},"external
Status":"disabled","customerTags":[""],"defaultAddress":{"zip":"98052","c
ity":"Redmond
(Downtown)","countryCode":"US","state":"Washington"}},"systemProperties":
{"lastUpdated":"2026-03-
01T19:08:48Z","resolvingKeys":[{"name":"vCVHsroIklpsA0AqWFV3rIQzHP3atMuQ7
MK70QLf_platform_6213258215671","category":"primary"},{"name":"vCVHsroIkl
psA0AqWFV3rIQzHP3atMuQ7MK70QLf_phone_+15419999999","category":"current"},
{"name":"vCVHsroIklpsA0AqWFV3rIQzHP3atMuQ7MK70QLf_email_no@gmail.com","ca
tegory":"current"},{"name":"vCVHsroIklpsA0AqWFV3rIQzHP3atMuQ7MK70QLf_phon
e_+12066321453","category":"current"},{"name":"vCVHsroIklpsA0AqWFV3rIQzHP
3atMuQ7MK70QLf_phone_+13142583695","category":"current"},{"name":"vCVHsro
IklpsA0AqWFV3rIQzHP3atMuQ7MK70QLf_phone_+15238652439","category":"current
"},{"name":"vCVHsroIklpsA0AqWFV3rIQzHP3atMuQ7MK70QLf_phone_+16192368323",
"category":"current"},{"name":"vCVHsroIklpsA0AqWFV3rIQzHP3atMuQ7MK70QLf_p
hone_+15155615538","category":"other"},{"name":"vCVHsroIklpsA0AqWFV3rIQzH
P3atMuQ7MK70QLf_phone_+15143332246","category":"current"}]}],"segments":[]
,"lists":[],"scores":null,"mergedWith":null,"consents":{},"storeId":"vCVH
sroIklpsA0AqWFV3rIQzHP3atMuQ7MK70QLf"}],"offset":0,"pageSize":100,"totalS
ize":1,"totalSizeRelation":"EQUAL","scrollIdentifier":null,"scrollTimeVal
idity":null,"lastSortValues":null}

# Exhibit 10

## Proposed Class Action Settlement Agreement, *Wilson v. PacifiCorp*, No. 6:24-cv-1956 (D. Or. June 9, 2026), Dkt. No. 47-1

*Wilson v. Freeway Insurance Services of America, LLC*
Case No. 6:25-cv-1869-MC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

CHET MICHAEL WILSON, individually and : 
on behalf of all others similarly situated,    :     CASE NO. 6:24-cv-01956-AA
                                               :
        Plaintiff,                             :
                                               :
v.                                             :
                                               :
PACIFICORP,                                    :
                                               :
        Defendant.                             :
                                               :
_____ /

This Class Action Settlement Agreement ("Agreement") is made and entered into by and

between Representative Plaintiff Chet Michael Wilson ("Representative Plaintiff"), on behalf of

himself and the Settlement Class, and Defendant PacifiCorp ("PacifiCorp" or "Defendant").

Representative Plaintiff and PacifiCorp are collectively referred to as the "Parties," and each,

individually, as a "Party."  This Agreement is intended by the Parties to settle this action and

discharge the Released Claims, as defined below, according to the terms and conditions herein.

## RECITALS

**WHEREAS**, *Chet Michael Wilson v. Pacificorp*, No. 6:24-cv-01956-AA, was filed

November 21, 2024, and is currently pending before the Honorable Ann L. Aiken of the U.S.

District Court for the District of Oregon (the "Litigation"), alleging Defendant violated the

Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*;

**WHEREAS**, Defendant denies each and every one of Representative Plaintiff's

allegations of unlawful conduct, damages, or other injuries;

**WHEREAS**, based upon the investigation, and evaluation of the facts and law relating to

the matters alleged in the pleadings, motions practice to date, plus the risks and uncertainties of

1

continued litigation and all factors bearing on the merits of settlement, Representative Plaintiff, Defendant, and Class Counsel (as defined below) have agreed to settle the claims asserted in the Litigation pursuant to the provisions of this Settlement;

**WHEREAS**, in an effort to facilitate a resolution of the Litigation, on October 31, 2025, the Settling Parties (as defined below) participated in a mediation with Bradley Winters, Esq. of JAMS, Inc.;

**WHEREAS,** the Parties understand, acknowledge and agree that the execution of this Agreement constitutes the settlement and compromise of the claims that have or could have been asserted in this Litigation.  This Agreement is inadmissible as evidence except to enforce the terms of the Agreement and is not an admission of wrongdoing or liability on the part of any Party to this Agreement;

**NOW THEREFORE**, subject to the Final Approval Order of the Court as required herein and applicable law and rules, the Settling Parties hereby agree, in consideration of the mutual promises and covenants contained herein, that all Released Claims against any Released Parties shall be settled, compromised and forever released upon the following terms and conditions.

<u>**TERMS AND CONDITIONS OF THE SETTLEMENT**</u>

1.     **DEFINITIONS**

1.1     As used herein, the following terms have the meanings set forth below.

1.1.1    "Appeal" means a request for appellate review of any order or judgment of the Court entered in this Litigation, including but not limited to appeals as of right, discretionary appeals, interlocutory appeals, any order reinstating an appeal, and proceedings involving writs of certiorari and/or any proceedings thereon.

1.1.2   "Approved Claim" means a claim that: (a) is received by the Settlement Administrator or postmarked on or before the Claims Deadline; (b) is fully and truthfully completed by a Settlement Class Member with all information requested in the Claim Form, and in accordance with the directions on the Claim Form; (c) is signed by the Settlement Class Member, physically or electronically; and (d) is approved by the Settlement Administrator pursuant to the provisions of this Agreement as a valid claim eligible to receive payment from the Settlement Fund under the Agreement and the Final Approval Order and Judgment.

1.1.3   "CAFA Notice" means the notice of this Settlement to the appropriate federal and state officials, as provided by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and as further described in Paragraph 6.4.

1.1.4   "Claims Deadline" means the date that is approximately sixty (60) days after the Notice Date.

1.1.5   "Claim Form" means the document to be submitted by Settlement Class Members seeking payment pursuant to this Settlement, attached as Exhibit A.

1.1.6   "Class Counsel" means Anthony Paronich of Paronich Law and Avi R. Kaufman of Kaufman P.A.

1.1.7   "Class Settlement Website" means the following internet website that can be found at www.pacificorpTCPAsettlement.com or a substantially similar URL.

1.1.8   "Court" means the U.S. District Court for the District of Oregon.

1.1.9   "Complaint" means the operative complaint in this Litigation at the time the Court enters the Preliminary Approval Order.

1.1.10  "*Cy Pres* Distribution" means monies that may be distributed in connection with the Settlement pursuant to Paragraph 7.7 of this Agreement.  *Cy Pres* will only be distributed for uncashed or undeposited payments or checks and only then if a second

distribution to eligible Settlement Class Members is not feasible pursuant to Section 7.7 of this Agreement.

1.1.11 "Defendant" means PacifiCorp.

1.1.12 "Defense Counsel" means Defendant's counsel of record in the Litigation, Markowitz Herbold PC.

1.1.13 "Effective Date" means the first date by which any Judgment entered pursuant to the Agreement becomes Final.

1.1.14 "Fee Award" means the amount of attorneys' fees and reimbursement of expenses that may be awarded by the Court and that will be paid out of the Settlement Fund.

1.1.15 "Final" means one business day following the later of the following events: (i) the expiration of the time to file a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e) has passed without any such motion having been filed; (ii) the expiration of the time in which to file an Appeal of any judgment entered pursuant to this Agreement has passed without any Appeal having been taken; and (iii) the resolution of any such Appeal in a manner that does not reverse or vacate the Judgment and in a manner that permits the consummation of the Settlement substantially in accordance with the terms and conditions of this Agreement.  Any proceeding or order, or any Appeal pertaining solely to any request or order regarding the Fee Award will not in any way delay or preclude the Judgment from becoming Final.

1.1.16 "Final Approval Hearing" means the final hearing, held after the Preliminary Approval Order is issued and Settlement Class Members have been given reasonable notice and an opportunity to object or to exclude themselves from the Settlement, at which the Court will determine whether to finally approve the Settlement and to enter Judgment.

1.1.17 "Final Approval Order" means an order, providing for, among other things, final approval of the Settlement.

1.1.18  "Judgment" means the judgment to be entered by the Court in this Litigation pursuant to the Settlement that is consistent with this Agreement in all material respects.

1.1.19  "Litigation" means *Chet Michael Wilson v. Pacificorp*, No. 6:24-cv-01956-AA, which is currently pending before the Honorable Ann L. Aiken of the U.S. District Court for the District of Oregon.

1.1.20  "Notice Date" means the deadline by which to send notice by mail pursuant to the Notice Plan.

1.1.21  "Notice Plan" means the proposed plan of disseminating to Settlement Class Members notice of the proposed Settlement and of the Final Approval Hearing, as approved by the Court.

1.1.22  "Opt-Out Deadline" means the date that is approximately (60) days after the Notice Date.

1.1.23  "Parties" means, collectively, Representative Plaintiff and Defendant.

1.1.24  "Person" means, without limitation, any individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assigns.  "Person" is not intended to include any governmental agencies or governmental actors, including, without limitation, any state Attorney General office.

1.1.25  "Preliminary Approval Order" means an order, providing for, among other things, preliminary approval of the Settlement and dissemination of notice to the Settlement Class according to the Notice Plan.

1.1.26  "Released Claims" means any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever (including "Unknown Claims," as defined below), whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, of every nature and description whatsoever, as of the date of the Preliminary Approval Order, that arise out of or relate in any way to the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA"), the TCPA's implementing regulations, 47 C.F.R. § 64.1200, et seq., the Telemarketing Sales Rule, 16 C.F.R. § 310, et seq. (the "TSR"), any corollary or state laws similar to the TCPA and TSR, or enactment of any other statutory, regulatory or common law claim arising thereunder for calls or text messages transmitted by or on behalf of Defendant between November 21, 2020 and the date of the Preliminary Approval Order.

1.1.27  "Released Parties" means Defendant, as well as any and all of its respective present or past or future heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies, sister companies, subsidiaries, divisions, licensors, licensees, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, reinsurers, directors, managing directors, officers, partners, vendors, joint ventures, principals, members, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, and corporations.

1.1.28  "Releasing Parties" means Representative Plaintiff, those Settlement Class Members who do not timely opt out of the Settlement Class, and all of their respective present or past or future heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, and corporations.

1.1.29  "Representative Plaintiff" means Plaintiff Chet Michael Wilson.

1.1.30  "Service Award" means the amount paid to the Representative Plaintiff for service as class representative.

1.1.31  "Settlement" means the settlement set forth in this Agreement.

1.1.32  "Settlement Administration Expenses" means the expenses incurred by the Settlement Administrator in providing notice, processing claims, administering the Settlement, and issuing payments to Settlement Class Members. Settlement Administration Expenses shall be paid exclusively from the Settlement Fund.

1.1.33  "Settlement Administrator" means Simpluris Inc.

1.1.34  "Settlement Class" means all persons throughout the United States (1) to whom PacifiCorp placed, or caused to be placed, a call (i) to collect a debt or (ii) concerning returned mail or undeliverable email communications, (2) directed to a number assigned to a cellular telephone service, but not assigned to a person who was a customer of PacifiCorp or in collections with PacifiCorp, (3) in connection with which PacifiCorp used an artificial or prerecorded voice, (4) between November 21, 2020 and the date of the Preliminary Approval

7

Order.  Plaintiff estimates that there are approximately 14,000 identifiable unique telephone numbers associated with potential members of the Settlement Class.

1.1.35  "Settlement Class Member" means a person who falls within the definition of the Settlement Class and who does not opt out of the Settlement as set forth in Paragraph 9.4.

1.1.36  "Settlement Fund" means a segregated qualified settlement fund as defined and meeting the requirements of and administered in accordance with Section 468B of the Internal Revenue Code of 1986, as amended, and Treasury Regulation Section 1.468B-1, to which Defendant will contribute $850,000.  The Settlement Fund will be non-reversionary and represents Defendant's maximum possible payment.

1.1.37  "Settling Parties" means, collectively, Defendant, Representative Plaintiff, and all Settlement Class Members.

1.1.38  "Unknown Claims" means claims that could have been raised in the Litigation and that any or all of the Releasing Parties do not know or suspect to exist, which, if known by him or her, might affect his or her agreement to release the Released Parties or the Released Claims or might affect his or her decision to agree, object or not to object to the Settlement.  Upon the Effective Date, the Releasing Parties shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Upon the Effective Date, the Releasing Parties also shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state or territory

of the United States, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to § 1542 of the California Civil Code. The Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever settle and release the Released Claims, notwithstanding any Unknown Claims they may have, as that term is defined in this Paragraph.

1.1.39  The plural of any defined term includes the singular, and the singular of any defined term includes the plural.

## 2.    DENIAL OF WRONGDOING AND LIABILITY

2.1    Defendant denies all the material factual allegations and legal claims asserted by Representative Plaintiff in the Litigation, including any and all charges of wrongdoing or liability arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Litigation.  Further, Defendant maintains that it has strong, meritorious defenses to the claims alleged in the Litigation and that it was prepared to vigorously defend all aspects of the Litigation.

2.2    Defendant's Position on Conditional Certification of the Settlement Class. Defendant disputes that a class would be manageable or that common issues predominate over individual ones, and denies that a litigation class properly could be certified on the claims asserted in the Litigation.  However, solely for purposes of avoiding the expense and inconvenience of further litigation, Defendant does not oppose and hereby agrees to certification of the Settlement Class defined in Paragraph 1.1.34, for settlement purposes only, pursuant to Fed. R. Civ. P. 23(b)(3).  Certification of the Settlement Class for settlement purposes will not be deemed a concession that certification of any litigation class in the Litigation is, or was, appropriate, nor would Defendant be precluded from challenging class certification in further

proceedings in the Litigation or in any other action if the Settlement is not finalized or finally approved.  If the Settlement is not finally approved by the Court for any reason whatsoever, the certification of the Settlement Class resulting from this Agreement will be void, and no doctrine of waiver, estoppel or preclusion will be asserted in any proceedings involving Defendant.  No agreements made by or entered into by Defendant in connection with the Settlement may be used by Plaintiff, any person in the Settlement Class, or any other person to establish any of the elements of class certification in any litigated certification proceedings, whether in the Litigation, or any other judicial or administrative proceeding or other tribunal.

2.3    Admissibility.  Additionally, this Agreement, any negotiations or proceedings related to it, the implementation of it, and any papers submitted in support of the motions for approval of it (collectively, the "Settlement Proceedings") are not to be construed as or deemed to be evidence of any admission or concession by any of the Parties regarding liability, damages, or the appropriateness of class treatment, and are not to be offered or received in evidence in any action or proceeding for any purpose whatsoever; provided, however, that this Agreement and the Settlement Proceedings may be presented to the Court in connection with the implementation or enforcement of this Agreement, or as may be necessary or appropriate to further the purposes sought to be achieved by this Agreement.

**3.    THE BENEFITS OF SETTLEMENT**

3.1    Class Counsel and Representative Plaintiff recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the Litigation against Defendant through trial and appeals.  Class Counsel also has taken into account the strength of Defendant's defenses, difficulties in obtaining class certification and proving liability, and the uncertain outcome and risk of the litigation, especially in complex actions such as this one, and the inherent delays in such litigation.  Class Counsel believes that the proposed

Settlement confers substantial benefits upon the Settlement Class. Based on their evaluation of all of these factors, Representative Plaintiff and Class Counsel have determined that the Settlement is in the best interests of Representative Plaintiff and the Settlement Class.

**4.    SETTLEMENT TERMS**

4.1    Settlement Fund. Defendant will cause to be created a Settlement Fund in the amount of $850,000 for the purpose of making all required payments under this Settlement within fifteen (15) days following the entry of the Preliminary Approval Order. The Parties agree that Defendant's maximum monetary obligation under this Agreement shall not exceed $850,000. Upon payment of the full $850,000, Defendant's payment obligations under this Agreement shall be deemed to have been fully satisfied.

4.2    The Settlement Fund shall be a Qualified Settlement Fund (QSF) under Section 468B of the Internal Revenue Code and 26 C.F.R. § 1.468B-1, established pursuant to the Preliminary Approval Order. The Settlement Administrator shall be the Administrator of the QSF.

4.3    Except as required to pay the Settlement Administrator, no payments or withdrawals whatsoever from the Settlement Fund shall be made unless and until the Final Approval Order and Judgment are Final.

4.4    Payment to Settlement Class Members.

4.4.1    Each Settlement Class Member shall be entitled to submit one claim per telephone number they used or subscribed to for a payment. Adequate and customary procedures and standards will be used by the Settlement Administrator to prevent the payment of fraudulent claims and to pay only legitimate claims, including, but not limited to, verifying claims with information provided by Defendant where feasible and requiring a unique identifier in connection with all claims.

4.4.2    Each Settlement Class Member who submits an Approved Claim shall be entitled to payment in an amount equivalent to their *pro rata* share of the Settlement Fund on a per telephone number basis after any approved Service Award, Fee Award, and Settlement Administration Expenses are deducted.  Payments will be made directly to Settlement Class Members by the Settlement Administrator.

## 5.    ATTORNEYS' FEES, EXPENSES, AND COSTS AND SERVICE AWARD

5.1    Class Counsel shall apply to the Court for attorneys' fees and documented and reasonable expenses and costs and for a Service Award for Representative Plaintiff.  Class Counsel's application for fees, expenses, and costs and a Service Award for Representative Plaintiff shall be filed no later than thirty (30) days prior to the Opt-Out Deadline.  Any Fee Award and/or Service Award approved by the Court shall be paid solely out of the Settlement Fund and shall not increase Defendant's total financial liability with respect to this Agreement or Settlement.

5.2    In the event the Court approves the Settlement, but declines to award a Fee Award and/or Service Award in the amount requested by Class Counsel, the Settlement will nevertheless be binding on the Parties and the Settlement Class Members.

5.3    Defendant shall have no liability to Class Counsel or any other Person arising from any claim regarding the division of any award of attorneys' fees, expenses, and costs between and among Class Counsel or any other counsel who may claim entitlement to any portion of the Fee Award.

5.4    The Fee Award and Service Award, if approved by the Court, shall be paid by wire transfer from the Settlement Fund no later than sixty (60) days following the Effective Date, provided that the Person being paid has executed a Form W-9 to the Settlement Administrator.

The Fee Award shall be paid from the Settlement Fund, and Defendant shall have no additional obligation to pay for attorneys' fees, costs and/or expenses of any kind.

5.5     The Court shall retain jurisdiction of any dispute regarding the Fee Award and any repayment of any amount of the Fee Award.

**6.      ADMINISTRATION AND NOTICE**

6.1     All costs and expenses of administering the Settlement and providing reasonable notice in accordance with the Preliminary Approval Order shall be paid out of the Settlement Fund, including the cost of CAFA Notice.

6.2     The Settlement Administrator will facilitate the notice process by assisting the Parties in the implementation of the Notice Plan, as well as CAFA Notice.

6.3     Class Settlement Website.

6.3.1     The Settlement Administrator will create and maintain the Class Settlement Website, to be activated within thirty (30) days after Preliminary Approval.  The Settlement Administrator's responsibilities will also include securing an appropriate URL to be agreed upon by the Parties.  The Class Settlement Website will contain information about the Settlement and case-related documents such as the Agreement, the Long-Form Notice in the form attached hereto as Exhibit B, subject to Court modification and/or approval, the Claim Form, the Preliminary Approval Order, Class Counsel's application for a Fee Award and Service Award, and the Complaint.  Settlement Class Members shall have the option to file a claim electronically using the Class Settlement Website.

6.3.2     The Class Settlement Website will terminate (be removed from the internet) and no longer be maintained by the Settlement Administrator thirty (30) days after either (a) the Effective Date or (b) the date on which the Agreement is terminated or otherwise not approved in full, if the Settlement is terminated or otherwise not approved in full.

6.3.3    All costs and expenses related to the Class Settlement Website shall be paid out of the Settlement Fund and Defendant shall have no obligation to pay any additional money for expenses related to the Class Settlement Website.

6.4    CAFA Notice.

6.4.1    The Parties agree that the Settlement Administrator shall serve notice of the Settlement that meets the requirements of CAFA, 28 U.S.C. § 1715, on the appropriate federal and state officials no later than ten (10) days after the filing of this Agreement with the Court.

6.4.2    All costs and expenses related to the CAFA Notice shall be paid out of the Settlement Fund and Defendant shall otherwise have no obligation to pay any additional money for expenses related to the CAFA Notice.

6.4.3    The Settlement Administrator will file a certification with the Court stating the date(s) on which the CAFA Notices were sent.  Each Party will provide the other Party with any substantive responses received in response to any CAFA Notice.

6.5    Notice Plan.

6.5.1    The Notice Plan shall conform to all applicable requirements of the Federal Rules of Civil Procedure, the U.S. Constitution (including the Due Process Clauses), and any other applicable law, and shall otherwise be in the manner and form agreed upon by the Parties and approved by the Court.

6.5.2    The Settlement Administrator will use customary procedures, including third party services, to identify mailing addresses for Settlement Class Members.

6.5.3    Subject to Court approval, within thirty (30) days after the Court enters the Preliminary Approval Order, the Settlement Administrator shall send direct notice substantially in the form of the Summary Notice in Exhibit C, as modified and/or approved by the Court, via

14

U.S. Postal Service to any Settlement Class Member for which a mailing address is identified. The Settlement Administrator will use customary procedures, including third party services, to identify mailing addresses for Settlement Class Members, including alternate mailing addresses for any Settlement Class Members for whom a mailed notice is returned as undeliverable to promptly remail notice to them. The Settlement Administrator will also use customary procedures, including a search of the United States Postal Service's National Change of Address database, to update Settlement Class Members' addresses.

**7.      CLAIMS PROCESS**

7.1      Submission of Claims. To apply for a payment from the Settlement, Settlement Class Members must timely submit by mail or online via the Class Settlement Website a valid Claim Form substantially in the form attached as Exhibit A, as modified and/or approved by the Court, by the Claims Deadline. All Claim Forms must be submitted to the Settlement Administrator by the Claims Deadline. To be a valid Claim Form the Claim Form submitted must be fully and truthfully completed and contain all required information, including a unique claimant identifier, and which is signed under penalty of perjury by the claimant and is timely submitted. Any Claim Form which is not timely submitted shall be denied. In the event a Settlement Class Member submits a Claim Form by the Claims Deadline but the Claim Form is not complete, then the Settlement Administrator shall give such Settlement Class Member a reasonable opportunity to provide any requested missing information. For any Settlement Class Member who submits a Claim Form determined by the Settlement Administrator to be incomplete, the Settlement Administrator shall mail and/or email a notice directly to such Settlement Class Member, notifying him or her of the missing information and providing him or her with an opportunity to cure (the "Cure Notice"). Settlement Class Members must cure incomplete claims on or before the Effective Date.

15

7.2     Claims Processing.  The Settlement Administrator shall apply the terms of this Agreement and the requirements set forth in the Claim Form, and any Claim Form submitted that does not meet the requirements of this Agreement is not eligible to be an Approved Claim.  The Settlement Administrator also shall employ reasonable procedures to screen claims for abuse, fraud, or duplication, and shall deny Claim Forms where there is evidence of abuse, fraud, or duplication.  The Settlement Administrator's decisions regarding the Settlement Class Members' eligibility for a claims payment shall be final.  The Parties, the Released Parties, and their respective counsel shall have no responsibility or liability whatsoever for the Settlement Administrator's conduct, omissions, or actions.

7.3     Payment of Claims.  No later than sixty (60) days after the Effective Date, or such other date as the Court may set, the Settlement Administrator shall issue payment by check or electronic payment from the Settlement Fund to each Settlement Class Member who has submitted a valid Claim Form and the Claims Administrator has determined the claim is an Approved Claim.

7.4     All payments to Settlement Class Members will state on their face that they will expire and become null and void unless cashed or redeemed within ninety (90) days after the date of issuance.

7.5     To the extent that any payments to Settlement Class Members expire and become null and void, the Settlement Administrator shall distribute the funds associated with those payments on a *pro rata* basis per telephone number to Settlement Class Members who were issued and cashed or redeemed their initial payments, if doing so is administratively and economically feasible (i.e., those Settlement Class Members would receive a second distribution of more than $1 after costs of administration).

7.6     To the extent the amount due in payments to any Settlement Class Member in any single calendar year exceeds $1,999.99 (or as otherwise required by law), the Settlement Class Member will be issued payments totaling $1,999.99 (or as otherwise permitted by law) with a request to complete a Form W-9 electronically through the Settlement Website to receive any additional amounts due.  If the Settlement Class Member does not complete a Form W-9, they will not be issued any additional payment, and any amount associated with the unissued additional payment shall be distributed on a *pro rata* basis per telephone number to Settlement Class Members whose claim the Settlement Administrator has determined to be an Approved Claim and has submitted a completed Form W-9, if necessary.

7.7     Any remaining monies, including to the extent a second distribution is not administratively feasible, shall be paid as *cy pres* to the Oregon Energy Fund, subject to Court approval.  No money remaining in the Settlement Fund shall revert to or otherwise be paid to Defendant.

7.8     No decisions by the Settlement Administrator shall be deemed to constitute a finding, admission, or waiver by Defendant as to any matter of fact, law, or evidence having any collateral effect on any claim hereunder or in any other proceeding or before any other forum or authority.  Further, such decisions shall not be submitted to or admissible in any other proceeding or before any other forum or authority.

8.     **RELEASES**

8.1     Upon the Effective Date, the Releasing Parties will be deemed to have, and by operation of the Judgment will have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties.

8.2     After entering into this Agreement, Representative Plaintiff or Settlement Class Members may discover facts other than, different from, or in addition to, those that they know or

believe to be true with respect to the Released Claims.  Representative Plaintiff and Settlement

Class Members expressly waive and fully, finally, and forever settle and release any known or

unknown, suspected or unsuspected, contingent or noncontingent claim, whether or not

concealed or hidden, without regard to the subsequent discovery or existence of such other,

different, or additional facts.

8.3    Upon the Effective Date, Representative Plaintiff, and any Settlement Class

Member who does not opt out as set forth in Paragraph 9.4 is hereby barred against bringing any

action against any of the Released Parties for any of the Released Claims whether directly,

indirectly, representatively, or in any other capacity.  Additionally, Representative Plaintiff and

Settlement Class Members agree and covenant, and each Settlement Class member will be

deemed to have agreed and covenanted, not to sue any of the Released Parties with respect to any

of the Released Claims, and agree to be forever barred from doing so, in any court of law, equity,

or any other forum.  For the avoidance of doubt, Settlement Class Members are not precluded

from addressing, contacting, dealing with, or complying with requests or inquiries from any

governmental authorities relating to the issues raised in this Settlement or Litigation.

9.    **APPROVAL PROCESS**

9.1    Court Approval.

9.1.1    Class Counsel shall submit the Agreement together with its Exhibits to the

Court and request that the Court grant preliminary approval of the Settlement, issue a

Preliminary Approval Order, and schedule a hearing on whether the Settlement should be

granted final approval (collectively, "Motion for Preliminary Approval").

9.1.2    In the Motion for Preliminary Approval, Class Counsel shall request that

the Court schedule a Final Approval Hearing for a date approximately one hundred twenty (120)

days from entry of the Preliminary Approval Order.

9.1.3    The date the Motion for Preliminary Approval is filed is the date by which the Settlement shall be deemed "filed" within the meaning of 28 U.S.C. § 1715.

9.1.4    If the Motion for Preliminary Approval is granted, Class Counsel shall be responsible for asking the Court to grant final approval of the Settlement and to enter a Final Approval Order and Judgment, in accordance with the date set by the Court for the Final Approval Hearing.

9.1.5    If the Court does not enter a Preliminary Approval Order or a Final Approval Order and Judgment or if the Final Approval Order or Judgment is reversed or vacated, by any court, this Agreement shall terminate and be of no force or effect unless the Parties voluntarily agree to modify this Agreement in the manner necessary to obtain Court approval.  If this Agreement is terminated, any portion of the Settlement Fund remaining shall be returned to Defendant.  Notwithstanding any provision of this Agreement, the Parties agree that any decision by any court as to any Fee Award to Class Counsel or Service Award to Representative Plaintiff shall not prevent the Agreement from becoming effective, prevent Final Judgment from being entered, or provide any grounds for termination of the Agreement or the Settlement.

9.2    Procedures for Objecting to the Settlement.

9.2.1    Settlement Class Members shall have the right to appear and show cause if they have any reason why the terms of this Agreement should not be given final approval, subject to each of the sub-provisions contained in this section.  Any objection to this Agreement, including any of its terms or provisions, must be in writing, filed with the Court by mail to, or electronically or in person at, the Wayne L. Morse United States Courthouse 405 East Eighth Avenue, Room 5300, Eugene, Oregon  97401-2706 by no later than the Opt-Out Deadline.  Settlement Class Members may object either on their own or through an attorney hired at their own expense.

9.2.2    Any objection regarding or related to the Agreement shall contain a caption or title that identifies it as "Objection to Class Settlement in *Chet Michael Wilson v. Pacificorp*, No. 6:24-cv-01956-AA" and also shall contain the following information: (i) the objector's name, address, and telephone number; (ii) the phone number(s) at which he or she received calls or text messages covered by this Settlement; (iii) the factual basis and legal grounds for the objection; and (iv) a statement indicating whether the objector intends to appear at the Final Approval Hearing (either personally or through counsel who properly files an appearance with the Court in accordance with the Local Rules).

9.2.3    Any Settlement Class Member who fails to comply with the applicable provisions of the preceding paragraphs concerning their objection shall waive and forfeit any and all rights he or she may have to object, appear, present witness testimony, and/or submit evidence, shall be barred from appearing, speaking, or introducing any testimony or evidence at the Final Approval Hearing, shall be precluded from seeking review of this Agreement by appeal or other means, and shall be bound by all the terms of this Agreement and by all proceedings, orders and judgments in the Litigation.  By filing an objection, objectors and their counsel submit to the jurisdiction of the Court for all purposes, including but not limited to subpoenas and discovery.

9.3    Right to Respond to Objections.

9.3.1    The Parties shall have the right, but not the obligation, to respond to any objection no later than seven (7) days prior to the Final Approval Hearing.  The Party so responding shall file a copy of the response with the Court, and shall serve a copy, by email or overnight delivery, to the objector (or counsel for the objector).

9.4     Opt-Outs.

9.4.1    Any Settlement Class Member who does not wish to participate in this Settlement must write to the Settlement Administrator stating an intention to be "excluded" from this Settlement.  This written request for exclusion must be sent via mail to the Settlement Administrator at the address set forth in the Summary Notice and Long-Form Notice and postmarked no later than the Opt-Out Deadline.  A request for exclusion must be signed by the Settlement Class Member, include the Settlement Class Member's name, address, and the phone number(s) at which he or she received calls covered by this Settlement, and clearly state that the Person wishes to be excluded from the Litigation and the Settlement.  A request for exclusion that does not include all of this information, or that is sent to an address other than that designated in the notices, or that is not postmarked within the time specified, shall be invalid, and the Person serving such a request shall be a member of the Settlement Class and shall be bound as a Settlement Class Member by the Court's Orders in this Litigation and by this Agreement, if approved.  The request for exclusion must be personally signed by the Settlement Class Member.  So-called "mass" or "class" opt-outs shall not be allowed and such exclusions shall be deemed invalid.  The Settlement Administrator will make the determination of whether a Settlement Class Member's request for exclusion is valid.  The Settlement Administrator's decisions regarding the Settlement Class Member's request for exclusion shall be final.

9.4.2    The Settlement Administrator will retain a copy of all requests for exclusion and will provide copies of any such requests to counsel for the Parties on a weekly basis.  Class Counsel will keep any such opt-out information confidential and use it only for purposes of determining whether a person in the Settlement Class has properly opted out.  The names of those persons who have properly excluded themselves from the Settlement will be provided to the Court in connection with the motion for final approval of the Settlement.

9.4.3    All Settlement Class Members who did not submit a valid request for exclusion will be bound by all determinations and judgments in the Litigation.  In the event that the number of persons in the Settlement Class who validly and timely submit requests for exclusion exceeds 350, Defendant, following good faith discussions, may terminate the Settlement.

9.4.4    Any Person in the Settlement Class who submits a request for exclusion may not file an objection to the Settlement.  If a Settlement Class Member submits a written request for exclusion pursuant to Paragraph 9.4.1 above, he or she shall be deemed to have complied with the terms of the opt-out procedure and shall not be bound by the Agreement if the Agreement is approved by the Court.

9.4.5    After notice is disseminated and at least fifteen (15) days prior to the Final Approval Hearing, the Parties shall request and seek to obtain from the Court a Final Approval Order and Judgment, which will (among other things):

(i)    find that the Court has personal jurisdiction over all Settlement Class Members and that the Court has subject-matter jurisdiction to approve the Agreement, including all exhibits hereto;

(ii)    approve the Agreement and the proposed Settlement as fair, reasonable, and adequate as to, and in the best interests of, Settlement Class Members; direct the Parties and their counsel to implement and consummate the Agreement according to its terms and provisions; and declare the Agreement to be binding on, and have preclusive effect on all pending and future lawsuits or other proceedings maintained by or on behalf of Representative Plaintiff and the Releasing Parties;

(iii)   find that the notice and the Notice Plan implemented pursuant to the Agreement (1) constitute the best practicable notice under the circumstances; (2) constitute notice that is reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Litigation, their right to object to or exclude themselves from the proposed Settlement, and to appear at the Final Approval Hearing; (3) are reasonable and constitute due, adequate, and sufficient notice to all Persons entitled to receive notice; and (4) meet all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court;

(iv)   find that the Class Representatives and Class Counsel adequately represent the Settlement Class for purposes of entering into and implementing the Agreement;

(v)    dismiss the action (including all individual claims and Settlement Class Member claims asserted therein) on the merits and with prejudice, without fees or costs to any Party, except as provided in the Agreement;

(vi)   incorporate the releases set forth above and make those releases effective as of the date of the Final Approval Order and Judgment;

(vii)  forever discharge the Released Parties as set forth herein; permanently bar and enjoin all Settlement Class Members from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in, any lawsuit or other action in any jurisdiction related to the Released Claims; and

(viii)   without affecting the finality of the Final Judgment for purposes of appeal, retain jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of the Settlement Agreement and the Final Judgment, and for any other necessary purpose.

## 10.   WITHDRAWAL FROM SETTLEMENT

10.1   If any of the conditions set forth below occurs and either (a) Class Counsel, (b) Representative Plaintiff, or (c) Defendant gives notice that such Party wishes to withdraw from this Agreement (subject to the terms below and herein), then this Agreement shall terminate and be null and void, and the Parties will be returned to the *status quo ante* as if no settlement had been negotiated or entered into:

(i)   Any objections to the proposed settlement are sustained, which results in changes to the Settlement described in this Agreement that the withdrawing Party deems in good faith to be material (e.g., because it increases the cost of settlement or deprives the withdrawing Party of a benefit of the settlement);

(ii)   The Final Approval of the Settlement described in this Agreement results in changes that the withdrawing Party deems in good faith to be material (e.g., because it increases the cost of settlement or deprives the withdrawing Party of a benefit of the settlement);

(iii)   More than 350 of the Settlement Class Members exclude themselves from the Settlement as set out in Paragraph 9.4.3; or

(iv)   The Final Approval of the Settlement described in this Agreement is (i) substantially modified by an appellate court and the withdrawing Party deems any such modification in good faith to be material (e.g., because it

24

increases the cost of settlement or deprives the withdrawing Party of a benefit of the settlement) or (ii) reversed by an appellate court.

## 11.    TAXES

11.1    Settlement Class Members, Representative Plaintiff, and Class Counsel shall be responsible for paying any and all federal, state, and local taxes due on any payments made to them pursuant to the Agreement.

11.2    Qualified Settlement Fund.  The Parties agree that the Escrow Account into which the Settlement Fund is deposited is intended to be a separate taxable entity and is and will at all times constitute a "Qualified Settlement Fund" within the meaning of § 1.468B-1(c) of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended from time to time.  The Settlement Administrator will timely make such elections as necessary, including if necessary, the "relation back election" (as defined in Treas. Reg. § 1.468B-1(j)(2)) back to the earliest permitted date.  Such elections must be made in compliance with the procedures and requirements contained in such Treasury regulations promulgated under § 1.468B of the Internal Revenue Code of 1986, as amended (the "Code").  It is the responsibility of the Settlement Administrator to cause the timely and proper preparation and delivery of the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

11.3    Settlement Administrator is "Administrator."  For the purpose of § 1.468B of the Code and the Treasury regulations thereunder, the Settlement Administrator must be designated as the "administrator" of the Settlement Fund.  The Settlement Administrator must cause to be timely and properly filed all information and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)).  Such returns must reflect that all taxes (including any estimated taxes, interest

25

or penalties) on the income earned by the Settlement Fund will be paid out of the Settlement Fund.

11.4    Taxes Paid By Administrator.  All taxes arising in connection with income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Defendant or any of the other Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, will be paid by the Settlement Fund.

11.5    Expenses Paid from Fund.  Any expenses reasonably incurred by the Settlement Administrator in carrying out the duties, including fees of tax attorneys and accountants, will be paid from the Settlement Fund.

11.6    Responsibility for Taxes on Distribution.  Any person or entity that receives a distribution from the Settlement Fund will be solely responsible for any taxes or tax-related expenses owed or incurred by that person or entity by reason of that distribution.  Such taxes and tax-related expenses will not be paid from the Settlement Fund.

11.7    Defendant Is Not Responsible.  In no event will Defendant or any of the other Released Parties have any responsibility or liability for taxes or tax-related expenses arising in connection with the payment or distribution of the Settlement Fund to Representative Plaintiff, Settlement Class Members, Class Counsel or any other person or entity.  The Settlement Class Members shall indemnify and hold Defendant and other Released Parties harmless—through the Settlement Fund—for all such taxes and tax-related expenses.

11.8    Defendant shall timely deliver to the Settlement Administrator a "Section 1.468B-3 Statement" (as provided in Treas. Reg Section 1.468B-3(e)) with respect to any transfers made to the Settlement Fund.

26

11.9    The Settlement Administrator will report to the Internal Revenue Service and such other state and local taxing authorities as may be required by law.  The Parties acknowledge that the Settlement Administrator will comply with all withholding obligations as required under the applicable provisions of the Internal Revenue Code and such other state and local laws as may be applicable, and the regulations promulgated thereunder.  In addition, the Settlement Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any Settlement Class Member any funds necessary to pay such amounts including the establishment of adequate reserves for any taxes and tax-related expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)).  The Parties agree to cooperate with the Settlement Administrator, each other, and their attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section 11.

11.10   Defendant makes no representation to Representative Plaintiff, Settlement Class Members, Class Counsel or any other person or entity regarding the appropriate tax treatment of the Settlement Fund, income earned on the Settlement Fund, or any distribution taken from the Settlement Fund.

**12.    CONDITIONS FOR EFFECTIVE DATE; EFFECT OF TERMINATION**

12.1    The Effective Date of this Agreement shall be the date the Final Approval Order and Judgment has become Final, as defined in Paragraph 1.1.15.

12.2    Performance of the obligations set forth in this Agreement is subject to all of the following material conditions:

(A)    execution of this Agreement by Defendant, Representative Plaintiff, and Class Counsel;

(B)    the granting of preliminary approval by the Court;

(C)    sending of the notices described herein;

27

(D)    the granting of final approval of the Agreement by the Court;

(E)    execution and entry of Judgment by the Court consistent with this Agreement in all material respects; and

(F)    the occurrence of all other circumstances necessary for the Effective Date to arise.

12.3    The Parties hereby covenant and agree to cooperate reasonably and in good faith for the purpose of achieving occurrence of the conditions set forth above, including, without limitation, timely filing of all motions, papers and evidence necessary to do so.  Class Counsel represent and warrant that they have authority to take all such actions required of them pursuant to this Agreement, and that by doing so they are not in breach or violation of any agreement with Representative Plaintiff or any third party.

12.4    If this Agreement is not approved by the Court or the Settlement is terminated or fails to become effective in accordance with the terms of this Agreement, the Settling Parties will be restored to their respective positions in the Litigation as of February 24, 2026.  In such event, the terms and provisions of this Agreement will have no further force and effect with respect to the Settling Parties and will not be used in this Litigation or in any other proceeding for any purpose.

12.5    The Parties agree to request a stay of the Litigation pending preliminary approval of the Settlement.

13.    **MISCELLANEOUS PROVISIONS**

13.1    Cooperation of the Parties.  The Parties acknowledge that it is their intent to consummate this Agreement, and they agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of this Agreement.  The Parties agree that they will not solicit, facilitate, or assist in any way, requests for exclusions or objections by

28

putative or actual Settlement Class Members, and will refrain from causing or encouraging directly or indirectly any appeal or petition for writ proceedings by third parties seeking review of any order contemplated by this Agreement.  Class Counsel recognize that they have an obligation to support the Settlement and to seek the Court's approval of its terms.  Class Counsel will abide by all applicable and governing ethical rules, opinions, and obligations precluding their representation of Settlement Class Members who have filed valid requests for exclusion from the Settlement.  If the Court suggests any modifications to the Agreement or conditions entry of the Preliminary Approval Order, Final Approval Order, or Judgment on modifications to the Settlement, the Parties shall, working in good faith and consistent with the Settlement, endeavor to address any such concerns identified by the Court.

13.2     Resolution of Dispute without Admission.  The Parties intend the Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The Settlement covers claims that are contested and will not be deemed an admission by any Settling Party as to the merits of any claim or defense.

13.3     Use In Subsequent Proceedings.  Neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement, is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claims, or of any claim of wrongdoing or liability of Defendant; or is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of Defendant in any civil, criminal, or administrative proceeding in any court, administrative agency or other tribunal.  Any party to this Litigation may file this Agreement and/or the Judgment in any action that may be brought against it in order to support any defense or counterclaim, including without limitation those based on principles of *res judicata*, collateral

29

estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

13.4    Confidential Information.  All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information will survive this Agreement.

13.5    Incorporation of Exhibits.  Any and all Exhibits to this Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

13.6    Modification.  This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

13.7    Integration.  This Agreement and any Exhibits attached hereto constitute the entire agreement among the Parties, and no representations, warranties, or inducements have been made to any Party concerning this Agreement or its Exhibits other than the representations, warranties, and covenants covered and memorialized in such documents.  Except as otherwise provided herein, the Parties will bear their own respective costs.

13.8    Class Counsel's Authority.  Class Counsel, on behalf of the Settlement Class, are expressly authorized by Representative Plaintiff to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to this Agreement to effectuate its terms, and are expressly authorized to enter into any modifications or amendments to this Agreement on behalf of the Settlement Class.

13.9    Parties' Authority.  Each counsel or other Person executing this Agreement or any of its Exhibits on behalf of any Party hereby warrants that such Person has the full authority to do so.

13.10    Receipt of Advice of Counsel.  Each Party acknowledges, agrees, and specifically warrants that he, she, or it has fully read this Agreement and the Releases contained herein, received independent legal advice with respect to the advisability of entering this Agreement and

the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.  Each Party to this Agreement warrants that he, she, or it is acting upon his, her, or its independent judgment and upon the advice of his, her, or its own counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other party, other than the warranties and representations expressly made in this Agreement.

13.11   Counterparts.  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them will be deemed to be one and the same instrument.

13.12   No Prior Assignments.  Representative Plaintiff and Class Counsel represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein.

13.13   Binding on Assigns.  This Agreement will be binding upon, and inure to the benefit of, the successors and assigns of the Parties and the Settlement Class Members.

13.14   Interpretation.  None of the Parties, or their respective counsel, will be deemed the drafter of this Agreement or its Exhibits for purposes of construing the provisions thereof.  The language in all parts of this Agreement and its Exhibits will be interpreted according to its fair meaning, and will not be interpreted for or against any of the Parties as the drafter thereof.

13.15   Change of Time Periods.  The time periods and/or dates described in this Agreement with respect to the giving of notices and hearings are subject to approval and change by the Court or by written agreement of Class Counsel and Defense Counsel and as approved by the Court, without notice to Settlement Class Members.  The Parties reserve the right, by

agreement and subject to the Court's approval, to grant any reasonable extension of time that might be needed to carry out any of the provisions of this Agreement.

13.16    Governing Law.  This Agreement and any Exhibits hereto will be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Oregon without giving effect to that State's choice-of-law principles.

13.17    The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

13.18    No Waiver.  The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Agreement.

13.19    Publicity and Confidentiality.  Neither the Parties nor their counsel will initiate any public statement intended to be disseminated through the press, internet, television, radio, or other media that includes an opinion or editorial comment about the effect of the Settlement or the merits of any Parties' positions in the Litigation.  This provision does not apply to any communications between any Settlement Class member and Class Counsel or any communications with the Court.

13.20    Notices.  All notices to counsel provided for herein shall be sent by email with a hard copy sent by overnight mail to:

*As to Representative Plaintiff and the Settlement Class*:

*As to PacifiCorp*:

KAUFMAN P.A.
Avi R. Kaufman
kaufman@kaufmanpa.com
237 S Dixie Hwy, 4th Floor
Coral Gables, FL  33133

MARKOWITZ HERBOLD PC
Dallas DeLuca
dallasdeluca@markowitzherbold.com
1455 SW Broadway, Suite 1900
Portland, OR  97201

32

IN WITNESS WHEREOF, the Parties have executed this Agreement dated as of June 8, 2026.

_Karen Kruse_
Defendant PacifiCorp

_____
Representative Plaintiff Chet Michael Wilson

_____
Class Counsel

IN WITNESS WHEREOF, the Parties have executed this Agreement dated as of June 08 , 2026.


_____
Defendant PacifiCorp

_____
Representative Plaintiff Chet Michael Wilson

_____
Class Counsel

## EXHIBIT A

### CLAIM FORM

| Section I - Instructions |
|---|

**This Form must be received by the Settlement Administrator no later than [Month] [Day], [Year].**

This Claim Form may be submitted in one of two ways:

1.  Electronically through www.[xxx].com.

2.  Mail to: *PacifiCorp TCPA Settlement,* c/o ___, [Address], [City] [State], [Zip Code].

To be effective as a Claim under the proposed settlement, this form must be completed, signed, and submitted, as outlined above, **no later than [Month] [Day], [Year].** If this Form is not postmarked or submitted by this date, you will remain a member of the Class but will not receive any payment from the Settlement.

If you received a notice regarding the Settlement by mail, the notice includes your Claimant Identification Number, which is required to make a Claim. If you do not have a Claimant Identification Number, you can request one by contacting the Settlement Administrator via email to [xxx]@[xxx].com or by calling ###-###-####.

| Section II - Class Member Information |
|---|

**Claimant Name (Required):**

**Claimant Identification Number (Required):**

**Current Contact Information**

**Street Address (Required):**

**City (Required):**            **State (Required):**     **Zip Code (Required)**

**Email (Optional):**

1

**Preferred Phone Number (Required):**

☐☐☐   ☐☐☐   ☐☐☐☐

*Your contact information will be used by the Settlement Administrator to contact you, if necessary, about your Claim. Provision of your email address is optional. By providing contact information, you agree that the Settlement Administrator may contact you about your Claim.*

## Section III – Confirmation of Class Membership

Cellular telephone number(s) you are associated with to determine if it is within the unique telephone numbers related to the Settlement Class Members:

☐☐☐   ☐☐☐   ☐☐☐☐

☐☐☐   ☐☐☐   ☐☐☐☐

## Section IV – Election of Payment

Please select your preferred method of payment for any approved Claim:

_____ Check mailed to the address identified above in Section II

Alternatively, to elect an electronic payment, you must submit your claim electronically through www.[xxx].com.

## Section V – Required Affirmations

IF SUBMITTED ELECTRONICALLY:

☐ **I agree that, by submitting this Claim Form, the information in this Claim Form is true and correct to the best of my knowledge. I understand that my Claim Form may be subject to audit, verification, and Court review. I am aware that I can obtain a copy of the full notice and Settlement Agreement at www.[xxxx].com or by writing the Settlement Administrator at the email address [xxxx]@[xxxx].com or the postal address [Address], [City], [State] [Zip Code]. Checking this box constitutes my electronic signature on the date of its submission.**

IF SUBMITTED BY U.S. MAIL:

**I agree that, by submitting this Claim Form, the information in this Claim Form is true and correct to the best of my knowledge. I understand that my Claim Form may be subject to audit, verification, and Court review. I am aware that I can obtain a copy of the full notice and Settlement Agreement at www.[xxxx].com or by writing the Settlement Administrator at the email address [xxxx]@[xxxx].com or the postal address [Address], [City], [State] [Zip Code].**

Dated:_____          Signature: _____

## EXHIBIT B

United States District Court for the District of Oregon

**If You Received a Prerecorded Debt Collection or Returned Mail / Email Call from PacifiCorp to Your Cellular Phone Number and Were Not a Pacific Power or Rocky Mountain Accountholder You May Be Entitled to a Payment from a Class Action Settlement.**

*A FEDERAL COURT AUTHORIZED THIS NOTICE. THIS IS NOT A SOLICITATION FROM A LAWYER.*

- A Settlement with a $850,000 cash fund has been reached in a class action lawsuit claiming that PacifiCorp ("Defendant") made prerecorded debt collection calls to the cellular telephone numbers of persons who were not PacifiCorp accountholders in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227. Defendant denies the allegations in the lawsuit and the Court has not decided who is right.

- If you are a Settlement Class Member, your legal rights are affected whether you act or do not act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| DO NOTHING | If you do nothing, you will not receive a payment from the Settlement Fund and will give up your right to bring your own lawsuit against Defendant about the claims in this case. |
| MAKE A CLAIM | You may make a claim to receive a payment from the Settlement Fund. |
| EXCLUDE YOURSELF | You may request to be excluded from the Settlement. If you do, you will not receive a payment from the Settlement Fund but will not give up your right to bring your own lawsuit against Defendant about the claims in this case. |
| OBJECT | Write to the Court if you do not like the Settlement. |
| GO TO A HEARING | Ask to speak in Court about the fairness of the Settlement. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still must decide whether to approve the Settlement. If it does, and after any appeals are resolved, payments will be distributed as specified. Please be patient.

2

## WHAT THIS NOTICE CONTAINS

BASIC INFORMATION.................................................................................................PAGE 3
     1. Why is there a notice?
     2. What is this litigation about?
     3. What is the Telephone Consumer Protection Act?
     4. Why is this a class action?
     5. Why is there a settlement?

WHO IS PART OF THE SETTLEMENT.......................................................................PAGE 4
     6. Who is included in the Settlement?
     7. What if I am not sure whether I am included in the Settlement?

THE SETTLEMENT BENEFITS.....................................................................................PAGE 4
     8. What does the Settlement provide?
     9. When will I receive my payment?

EXCLUDING YOURSELF FROM THE SETTLEMENT................................................PAGE 5
     10. How do I get out of the Settlement?
     11. If I do not exclude myself, can I sue Defendant for the same thing later?
     12. What am I giving up to stay in the Settlement Class?
     13. If I exclude myself, can I still get a payment?

THE LAWYERS REPRESENTING YOU.........................................................................PAGE 6
     14. Do I have a lawyer in the case?
     15. How will the lawyers be paid?

OBJECTING TO THE SETTLEMENT............................................................................PAGE 6
     16. How do I tell the Court I do not like the Settlement?
     17. What is the difference between objecting and asking to be excluded?

THE FINAL APPROVAL HEARING...............................................................................PAGE 7
     18. When and where will the Court decide whether to approve the Settlement?
     19. Do I have to attend the hearing?
     20. May I speak at the hearing?

IF YOU DO NOTHING...................................................................................................PAGE 8
     21. What happens if I do nothing at all?

GETTING MORE INFORMATION.................................................................................PAGE 8
     22. How do I get more information?

## BASIC INFORMATION

### 1.  Why is there a notice?

A Court authorized this notice because you have a right to know about a proposed Settlement of a class action lawsuit known as *Chet Michael Wilson v. Pacificorp*, No. 6:24-cv-01956-AA, and about all of your options before the Court decides whether to give Final Approval to the Settlement. This notice explains the lawsuit, the Settlement, and your legal rights.

Judge Ann Aiken of the U.S. District Court for the District of Oregon is overseeing this case. The person who sued, Chet Michael Wilson, is called the "Plaintiff." PacifiCorp, which does business as Pacific Power and Rocky Mountain Power, is called the "Defendant".

### 2.  What is this litigation about?

The lawsuit alleges that Defendant made prerecorded debt collection calls to cellular telephone numbers of persons who were not PacifiCorp accountholders in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227("TCPA"); and seeks statutory damages under the TCPA on behalf of the named Plaintiff and a class of individuals in the United States.

Defendant denies each and every allegation of wrongdoing, liability and damages that were or could have been asserted in the litigation, and that the claims in the litigation would be appropriate for class treatment if the litigation were to proceed through trial.

The Plaintiff's Complaint, Settlement Agreement and other case-related documents are posted on the website, www.XXX.com. The Settlement resolves the lawsuit. The Court has not decided who is right.

### 3.  What is the Telephone Consumer Protection Act?

The Telephone Consumer Protection Act (commonly referred to as the "TCPA") is a federal law that restricts, among other things, unsolicited prerecorded calls to cellular telephone numbers. The Plaintiff here alleged that Defendant made prerecorded calls to his cellular telephone number without consent in violation of the TCPA.

### 4.  Why is this a class action?

In a class action, one person called the "Class Representative" (in this case, Chet Michael Wilson) sues on behalf of itself and other entities and people with similar claims.

All of the people who have claims similar to the Plaintiff's claims and are associated with the unique telephone numbers identified are members of the Settlement Class, except for those which exclude themselves.

### 5.  Why is there a settlement?

The Court has not found in favor of either Plaintiff or Defendant. Instead, both sides have agreed to a Settlement. By agreeing to the Settlement, the parties avoid the costs and uncertainty of a trial, and if the Settlement is approved by the Court, Settlement Class Members who submit valid claims will receive the Settlement's benefits described in this notice. Defendant denies all legal claims in this case. Plaintiff and its lawyers think the proposed Settlement is best for everyone who is affected.

## WHO IS PART OF THE SETTLEMENT

**6.  Who is included in the Settlement?**

The Settlement includes: all persons throughout the United States (1) to whom PacifiCorp placed, or caused to be placed, a call (i) to collect a debt or (ii) concerning returned mail or undeliverable email communications, (2) directed to a number assigned to a cellular telephone service, but not assigned to a person who was a customer of PacifiCorp or in collections with PacifiCorp, (3) in connection with which PacifiCorp used an artificial or prerecorded voice, (4) between November 21, 2020 and the date of the Preliminary Approval Order.

Excluded from the Settlement Class are (1) the Judges presiding over this action and members of their families; (2) the Defendant, Defendant's respective agents, subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded person(s).

**7.  What if I am not sure whether I am included in the Settlement?**

If you are not sure whether you are in the Settlement Class, or have any other questions about the Settlement, you may (1) visit the Settlement Website at www.XXX.com, (2) contact the Settlement Administrator at PO Box XXXX, City, State XXXXX-XXXX, email address, or telephone number, or (3) contact Class Counsel at info@kaufmanpa.com or 305-469-5881.

## THE SETTLEMENT BENEFITS

**8.  What does the Settlement provide?**

Defendant has agreed to pay $850,000.00 to create a cash Settlement Fund. The Settlement Fund will be used to pay all Settlement Administration Expenses, a Fee Award, and a Service Award. The remaining funds will be distributed on a pro rata basis to Settlement Class Members who timely submit a valid claim.

**9.  When will I receive my payment?**

Payments to Settlement Class Members will be made only after the Court grants Final Approval to the Settlement and after any appeals are resolved (*see* "Final Approval Hearing" below).  If there are appeals, resolving them can take time. Please be patient.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want benefits from the Settlement, and you want to keep the right to sue or continue to sue Defendant on your own about the legal issues in this case, you must take steps to get out of the Settlement. This is called excluding yourself – or it is sometimes referred to as "opting-out" of the Settlement Class.

**10. How do I get out of the Settlement?**

To exclude yourself from the Settlement, you must send a timely letter by mail to:

Settlement Administrator

PO Box XXXX City, State
XXXXX-XXXX

Your request to be excluded from the Settlement must be personally signed by you, include your name, address, and the telephone number at which you received calls covered by the Settlement, and contain a statement that indicates your desire to be "excluded from the Settlement Class." Absent excluding yourself or "opting-out" you are otherwise a member of the Settlement Class.

Your exclusion request must be postmarked no later than **Month Day, 2026** ("the Opt-Out Deadline"). You cannot ask to be excluded by phone, by email, or at the website.

You may opt-out of the Settlement Class only for yourself.

| 11. If I do not exclude myself, can I sue the Defendant for the same thing later? |

No. Unless you exclude yourself, you give up the right to sue Defendant for the claims that the Settlement resolves. You must exclude yourself from this Settlement Class in order to pursue your own lawsuit.

| 12. What am I giving up to stay in the Settlement Class? |

Unless you opt-out of the Settlement, you cannot sue or be part of any other lawsuit against Defendant about the issues in this case, including any existing litigation, arbitration, or proceeding. Unless you exclude yourself, all of the decisions and judgments by the Court will bind you.

The Settlement Agreement is available at www.XXX.com. The Settlement Agreement provides more detail regarding the release and describes the Released Claims with specific descriptions in necessary, accurate legal terminology, so read it carefully. You can talk to the law firms representing the Class listed in Question 14 for free or you can, at your own expense, talk to your own lawyer if you have any questions about the Released Claims or what they mean.

| 13. If I exclude myself, can I still get a payment? |

No.  You will not get a payment from the Settlement Fund if you exclude yourself from the Settlement.

## THE LAWYERS REPRESENTING YOU

| 14. Do I have a lawyer in the case? |

The Court has appointed the following lawyers as "Class Counsel" to represent all members of the Settlement Class.

> Anthony Paronich
> PARONICH LAW
>
> Avi R. Kaufman
> KAUFMAN P.A.

You will not be charged for these lawyers. If you want to be represented by another lawyer, you may hire one to appear in Court for you at your own expense.

| 15. How will the lawyers be paid? |

Class Counsel intend to request up to one-third of the value of the Settlement for attorneys' fees, plus reimbursement of reasonable, actual out-of-pocket costs and expenses incurred in the litigation. The fees and expenses awarded by the Court will be paid out of the Settlement Fund. The Court will decide the amount of fees and expenses to award.

Class Counsel also will request that a service award not to exceed $5,000 be paid from the Settlement Fund to the Class Representative for his service as representative on behalf of the whole Settlement Class.

## OBJECTING TO THE SETTLEMENT

**16. How do I tell the Court if I do not like the Settlement?**

If you are a Settlement Class Member (and do not exclude yourself from the Settlement Class), you can object to any part of the Settlement. To object, you must timely submit a letter containing a caption or title that identifies it as "Objection to Class Settlement in *Chet Michael Wilson v. Pacificorp*, No. 6:24-cv-01956-AA," and also contain the following information: (i) your name, address, and telephone number; (ii) the phone number(s) at which you received calls covered by this Settlement; (iii) the factual basis and legal grounds for the objection; and (iv) a statement indicating whether the objector intends to appear at the Final Approval Hearing (either personally or through counsel who properly files an appearance with the Court in accordance with the Local Rules).

If you wish to object, you must file your objection with the Court by mail to, or electronically or in person at, Wayne L. Morse United States Courthouse 405 East Eighth Avenue, Room 5300, Eugene, Oregon 97401-2706 by no later than the Opt-Out Deadline. Settlement Class Members may object either on their own or through an attorney hired at their own expense.

**17. What is the difference between objecting and asking to be excluded?**

Objecting is telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you do not exclude yourself. Excluding yourself is telling the Court that you do not want to be part of the Settlement. If you exclude yourself, you have no basis to object to the Settlement because it no longer affects you.

## THE FINAL APPROVAL HEARING

The Court will hold a hearing to decide whether to approve the Settlement and any requests for fees and expenses ("Final Approval Hearing").

**18. When and where will the Court decide whether to approve the settlement?**

The Court has scheduled a Final Approval Hearing on **[DATE] at [TIME]**, at the _____ [LOCATION]. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.XXX.com for updates. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider the requests by Class Counsel for attorneys' fees, costs, and expenses. If there are objections, the Court will consider them at that time. After the hearing, the Court will decide whether to approve the Settlement. It is unknown how long these decisions will take.

**19. Do I have to attend the hearing?**

No. Class Counsel will answer any questions the Court may have. But, you are welcome to attend the hearing at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you submitted your written objection on time, to the proper addresses, and it complies with all the other requirements set forth above, the Court will consider it. You also may pay your own lawyer to attend the hearing, but it is not necessary.

**20. May I speak at the hearing?**

You may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must submit a timely objection and include a statement of whether you intend to appear at the Final Approval Hearing.

You cannot speak at the hearing if you exclude yourself from the Settlement

## IF YOU DO NOTHING

**21. What happens if I do nothing at all?**

If you do nothing, you will not receive a payment from the Settlement Fund and will give up your right to bring your own lawsuit against Defendant about the claims in this case.

## GETTING MORE INFORMATION

**22. How do I get more information?**

This notice summarizes the proposed Settlement. You are urged to review more details in the Settlement Agreement. For a complete, definitive statement of the Settlement terms, refer to the Settlement Agreement at www.XXX.com. If you have any questions, you also may contact the Settlement Administrator at PO Box XXXX, City, State XXXXX-XXXX, email address, or telephone number, or contact Class Counsel at info@kaufmanpa.com or 305-469-5881.

# EXHIBIT C

United States District Court for the District of Oregon

**If You Received a Prerecorded Debt Collection or Returned Mail / Email Call from PacifiCorp
to Your Cellular Phone Number and Were Not a Pacific Power or Rocky Mountain
Accountholder You May Be Entitled to a Payment from a Class Action Settlement.**

*A FEDERAL COURT AUTHORIZED THIS NOTICE. THIS IS NOT A SOLICITATION FROM A LAWYER.*

A Settlement with a $850,000 cash fund has been reached in a class action lawsuit claiming that PacifiCorp, which does business as Pacific Power and Rocky Mountain Power ("Defendant") made prerecorded calls to cellular telephone numbers of persons who were not PacifiCorp accountholders in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227. Defendant denies the allegations in the lawsuit and the Court has not decided who is right.

**Who's Included?** You received this notice because records produced in the Litigation show that you may be a Settlement Class Member. The Settlement includes all persons throughout the United States (1) to whom PacifiCorp placed, or caused to be placed, a call (i) to collect a debt or (ii) concerning returned mail or undeliverable email communications, (2) directed to a number assigned to a cellular telephone service, but not assigned to a person who was a customer of PacifiCorp or in collections with PacifiCorp, (3) in connection with which PacifiCorp used an artificial or prerecorded voice, (4) between November 21, 2020 and the date of the Preliminary Approval Order.

**What Are the Settlement Terms?** Defendant has agreed to pay $850,000 to create a fund that will be used to (1) pay persons who submit valid claims, (3) pay the costs of providing notice and administering the settlement, (3) pay a service award to the Representative Plaintiff for the Settlement Class for its service on behalf of the Settlement Class, and (4) pay Class Counsel's attorneys' fees, costs, and expenses incurred in the litigation.

**How can I get a Payment?** By completing the Claim Form available online on the Class Settlement Website, www.xxxxxTCPAsettlement.com, or by downloading a Claim Form from the Class Settlement Website and submitting it by U.S. Mail to the Settlement Administrator at **[address]**. If you send in a Claim Form by regular mail, it must be postmarked on or before **DATE**. If you file a Claim Form online it must be completed and submitted by **11:59 p.m. PST on DATE**.

**What are my other Options?** If you do not want to be legally bound by the Settlement, you must exclude yourself by **Month DD, 2026**. If you do not exclude yourself, you will release any claims you may have, as more fully described in the Settlement Agreement, available at the Settlement website. You may object to the Settlement by **Month DD, 2026** by timely complying with the objection procedures detailed in the Preliminary Approval Order. The Long Form Notice available on the Settlement Class Website explains how to exclude yourself or object. The Court will hold a Final Approval Hearing on **Month DD, 2026 at [location]** to consider whether to approve the Settlement, a request for a service award of up to $5,000 for the Representative Plaintiff, and a request for attorneys' fees of up to one-third of the Settlement Fund as well as reasonable costs and expenses incurred in the litigation. You may appear at the hearing, either yourself or through an attorney hired by you, but you don't have to. For more information, call or visit the website.

www.XXX.com // The Settlement Administrator, [TELEPHONE NUMBER], [ADDRESS]

2452283.5

**QUESTIONS? VISIT www.XXX.com**