Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
1669 Edgewood Road, Suite 218
Yardley, PA 19067
Telephone: 215-225-5529

*Attorney for Plaintiff and the Proposed Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated, | Case No. 6:25-cv-01869-MC |
| Plaintiff, | **PLAINTIFF'S [PROPOSED] SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION** |
| v. | |
| FREEWAY INSURANCE SERVICES OF AMERICA, LLC, | TCPA (47 U.S.C. § 227) |
| Defendant. | DEMAND FOR JURY TRIAL |

**PLAINTIFF'S [PROPOSED] SUR-REPLY IN OPPOSITION TO DEFENDANT'S
MOTION TO DENY CLASS CERTIFICATION**

## I.   INTRODUCTION

Plaintiff submits this sur-reply for a narrow purpose, to respond to arguments and evidence that Freeway raised for the first time in its reply, ECF No. 32. Freeway's reply, for the first time, submits a third declaration from Freeway's counsel attaching a dozen new exhibits regarding the Plaintiff's alleged inadequacy, insinuates that the Heidarpour Law Firm placed an unauthenticated client signature on the operative fee agreement, which it incorrectly characterizes, and invokes *Slevin v. AB Hollywood, LLC*, --- F. Supp. 3d ---, 2026 WL 892186 (D. Or. Mar. 31, 2026), a decision whose facts bear no resemblance to this record. This sur-reply responds only to what is new.

One observation frames that inquiry. Across three briefs, Freeway's theory of inadequacy has been a moving target. First, Defendant took issue with Plaintiff's out-of-court political statements. Next, Freeway insinuated that the Plaintiff "manufactured" his claims and that the reply now concedes Freeway "didn't claim to know" applied to this case, Reply at 22. Now, Freeway advances an indictment of Mr. Wilson's TCPA class litigation generally. But that characterization is belied by Mr. Wilson's demonstrated record of consumer advocacy. Rule 23(a)(4) exists to protect absent class members, and Mr. Wilson's record does not establish that he will fail to do so. The Motion to Deny Certification should be denied.

## II.   ARGUMENT

### A.   Mr. Wilson's interests do not conflict with the class, so there is no inadequacy.

Rule 23(a)(4) asks a narrow question, and it is a legal one. A representative is adequate if he has no conflicts of interest with other class members and will prosecute the action vigorously on behalf of the class. *Staton v. Boeing Co.*, 327 F.3d 938, 957-58 (9th Cir. 2003); *accord Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985-86 (9th Cir. 2011). The purpose of the inquiry is

equally specific. Adequacy "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). It is not a roving license to audit a plaintiff's filing history or his opinions. It asks whether this representative's interests diverge from the class's, such that he might be tempted to advance his own at the class's expense.

When a named plaintiff, in consultation with counsel, concludes on the evidence that a class cannot be certified and the defendant elects to resolve the named plaintiff's claim individually, no absent class member loses anything. No absent class member is prejudiced. No class claim is released, and every putative member remains free to pursue relief. That sequence is a product of the statute Congress wrote, which provides for $500 to $1,500 in statutory damages per violation and no fee-shifting provision in an individual case, and of Rule 23's design. If Freeway believes too many TCPA class actions resolve individually, its complaint is with the statute, and its remedy lies with Congress. Indeed, as Plaintiff and the Supreme Court in *Roper* have observed, resolution of putative class claims on an individual basis, while still providing for a recovery of attorneys' fees, compensates class counsel for their efforts prior to certification and eliminates a free-rider problem. *Roper*, 445 U.S. at 336, 338 n.9; *see also* David Rosenberg & Kathryn E. Spier, *Incentives to Invest in Litigation and the Superiority of the Class Action*, 6 J. Legal Analysis 305, 305, 345-357 (2014) (addressing free-rider problem). It is not a basis to declare a plaintiff inadequate under Rule 23(a)(4), and it shows that Freeway's "sue and settle" framing is an epithet, not an argument.[1]

---

[1]Many of the individual resolutions Freeway attacks were reached in mediations conducted by neutral third parties, including former judicial officers. Freeway's theory, that each of these resolutions was an improper contingency fee extraction rather than an arm's-length compromise, would require the Court to conclude that seasoned neutrals, including former members of the

[Proposed] Sur-Reply                    2

Mr. Wilson's cap on statutory damages does not create a conflict with the class, it eliminates one. Freeway's inversion of *Roper*, that a capped recovery renders Plaintiff an "absent" representative, Reply at 16, mistakes alignment for apathy. Mr. Wilson holds precisely the stake every class member holds: full statutory damages, recoverable only if the case is well prosecuted. What the cap removes is the incentive Rule 23(a)(4) actually polices, that *Roper* explicitly addresses, and the one the Court found problematic in *Wuest*: the temptation to trade the class's claims for a personal premium at the class's expense. *Roper* protects a representative's legitimate individual interests in class litigation, 445 U.S. at 338-39. It nowhere holds that a representative whose recovery, including in any individual settlement, matches the class's is disabled from serving it.

Freeway never identifies a conflict between Mr. Wilson and the Class. It identifies a plaintiff it dislikes and asks the Court to infer disloyalty from it. But Mr. Wilson's commitment to class certification for those cases where class treatment is appropriate is in the record, and whether Mr. Wilson has set his interests against absent class members' interests is a pure question of law the Court can answer now, on these papers, without discovery into anything. Answering it resolves Freeway's adequacy theory. Mr. Wilson recovers what the class recovers or, at most, his maximum statutory damages, and only if the case is prosecuted well. Nowhere is that more evident than in Plaintiff's current negotiated class settlement in *Wilson v. PacifiCorp*, No. 6:24-cv-1956 (D. Or.), where a class settlement awaits preliminary approval.

---

federal judiciary, repeatedly presided over and assisted in negotiating allegedly improper individual settlements in putative class action cases.

[Proposed] Sur-Reply                                    3

**B.    *PacifiCorp* proves Plaintiff pursues classwide relief when the circumstances warrant it.**

Freeway's motion asserted that Plaintiff never seeks anything for a class and files class actions that he never intends to certify, a theme it develops extensively in its reply. *PacifiCorp* is the direct refutation to that argument. Indeed, Defendant's own evidence establishes that *PacifiCorp* was Mr. Wilson's sixth case. If the model were as Freeway describes it, *PacifiCorp* is precisely where it should have occurred, at the outset, before any court or adversary had raised a question about it. Instead, Plaintiff litigated the case for well over a year, amended his complaint twice, and reached a classwide resolution. And the timing forecloses the suggestion that *PacifiCorp* was negotiated in response to this motion. The *PacifiCorp* class settlement was negotiated and noticed three months before Freeway filed the motion now before this Court. Nothing about it was manufactured in response to Freeway's accusations, because it preceded them. And, apropos of *Krzesniak v. Cendant Corp.*, 2007 WL 1795703, at *10 (N.D. Cal. June 20, 2007), *PacifiCorp* shows that the Plaintiff is "zealously pursu[ing]" class resolution in cases where appropriate. Without a showing Plaintiff has failed to do so, there is no inadequacy. *Id.*

Freeway's lead authority collapses for the same reason. The *Wuest* court noted that, of the plaintiff's eleven prior actions, none of those actions reached the class certification stage. 2019 WL 3577176 at *3. Here one has.

Plaintiff did not withdraw the class claims in *PacifiCorp*. He pressed them to a classwide recovery. Freeway's answer is to attack the settlement's terms. That response is telling in itself, and it fails for three reasons. *First*, it renders Freeway's theory unfalsifiable. On Freeway's account, when Plaintiff's cases resolve individually, that is a settlement scheme. But when a case resolves classwide, the class was (at least in Freeway's assessment) uncertifiable and the terms inadequate. If that is so, it concedes the point. On Freeway's account, Mr. Wilson and his

counsel obtained classwide relief in a case Freeway itself regards as uncertifiable, which is the opposite of Freeway's theory that he pursues only easy class recoveries and abandons the rest. More to the point, it shows that, on Freeway's account, there is no outcome, none, that could count as evidence of adequacy. A standard that no conduct can satisfy is not a Rule 23 standard. Rather, it is a conclusion in search of facts.

*Second*, whatever one thinks of a proposed settlement's terms, including allocations, release terms, or projected claims rate, those are Rule 23(e) questions committed to an independent review of that settlement, on full notice to a class whose members may object or opt out. Freeway attacks the one case in which the oversight Rule 23 actually demands is actually occurring. It cannot have it both ways. A defendant in a different case is not the guardian of the *PacifiCorp* class. *Finally*, the specifics are wrong. The *cy pres* recipient, the Oregon Energy Fund, is an independent 501(c)(3) charity that helps low-income households pay their energy bills, including oil, propane, and gas, and residual funds would go to that charity's beneficiaries, not to PacifiCorp. Describing charitable energy assistance for the poor as a payment "directly back to the defendant," Reply at 3, is rhetoric. It's also simply wrong, as Pacificorp is not a direct beneficiary of the funds at all. And the recital in the settlement agreement that the agreed certification is for settlement purposes only is a standard clause found in virtually every negotiated class settlement, including multiple TCPA class settlements approved by multiple courts, including the undersigned counsel. It cannot erase the fact, fatal to Freeway's narrative, that Plaintiff prosecuted and obtained classwide relief where the case supported it.

**C.    Plaintiff's litigation history mirrors TCPA class litigation generally. Measured against any actual baseline, it is unremarkable.**

Faced with this pending class resolution in *PacifiCorp*, the centerpiece of Freeway's reply pivots to arithmetic, Wilson's "nearly 100" filings, "no contested certification," and a large

[Proposed] Sur-Reply                              5

share of cases "resolved individually." Reply at 9-10. But raw counts prove nothing without a denominator. The question Rule 23(a)(4) asks is *not* how many cases a plaintiff has filed, it is whether there is evidence that he "failed to zealously pursue class actions in prior cases." *Krzesniak*, 2007 WL 1795703, at *10. Measured against how TCPA class litigation actually proceeds in federal courts, Plaintiff's history is not an outlier. It is the norm.

According to the Federal Judicial Center, 2,097 TCPA actions were terminated in calendar year 2025, and 1,163 of them, roughly 55 percent, were putative class actions. *IDB Civil 1988-present*, FED. JUDICIAL CTR., https://www.fjc.gov/research/idb/interactive/24/IDB-civil-since-1988. The 2024 figures are comparable, with 1,395 TCPA terminations, of which 563, roughly 40 percent, were putative class actions. *Id.* And looking at a five-year average reveals the same trends. *Id.* The federal courts do not track how class actions terminate, but Westlaw's Litigation Analytics records decisions on certification motions. In 2025, there were decisions on seventeen certification motions in TCPA class actions, approximately 1.4 percent of the class actions terminated that year, of which five were granted, nine were denied, and three were denied as moot. In 2024, there were eighteen such decisions, approximately 3.1 percent, of which nine were granted and nine denied.[2]

The import of these figures is that in TCPA litigation, where half or more of all cases are filed as class actions, only on the order of one to three percent of putative class actions ever produce a certification decision at all. The overwhelming majority resolve earlier, most individually, for the ordinary reasons Plaintiff has already catalogued. Opp. at 5. If a history in

---

[2] Plaintiff acknowledges the limits of this data. Some certification decisions may be unreported, and there is no one-to-one correspondence between cases terminated in a given year and certification motions decided in that year. However, the figures are offered as directional context, and the direction is unmistakable. However measured, only a small fraction of TCPA class actions ever reach a decision on certification.

[Proposed] Sur-Reply                         6

which most of a plaintiff's putative class actions resolved individually were disqualifying, virtually no TCPA plaintiff in the country could satisfy Rule 23(a)(4). No court has ever so held.

Nor does Plaintiff fall below that baseline. Freeway's own exhibit identifies 85 cases filed in Plaintiff's name. Fourteen remain pending in this District alone under the Court's consolidation order, ECF No. 30, and Plaintiff is at this moment pursuing classwide relief in *PacifiCorp*, where a class settlement awaits preliminary approval. A portfolio of that size with one case, one of the earliest ones Plaintiff has filed, presently at the certification stage places Plaintiff at or above the rate observed across TCPA litigation generally. The empirical premise of Freeway's motion, that Plaintiff's numbers are aberrant, is simply false.

*Wuest v. My Pillow, Inc.*, 2019 WL 3577176 (N.D. Cal. Aug. 6, 2019), does not close that gap. Wuest manufactured his own claim. He repeatedly dialed businesses hoping his calls would be recorded, then sued over recordings he solicited. *Id.* at *1-*4. And he did so in order to extract damages for himself, on at least one occasion, *in excess of* those which would otherwise be statutorily permissible, thus engaging in impermissible fee splitting. *Id.* at *3. Plaintiff's circumstances are the inverse. Admittedly, at least partially because of the nature of his telephone number, companies text and call him hundreds of times a day, but critically, *through no act of his own*. And, as Freeway correctly recognizes, the federal courts have uniformly rejected the perverse notion that someone whose rights have been violated by hundreds of telemarketers may only sue a subset of the offenders. Reply at 18-19 (citing *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187 (M.D. Tenn. 2017)).

Critically, Plaintiff obtained his telephone number from a friend in 2018 or 2019 and started using it as his sole cell phone number since that time, years before he filed his first TCPA case in 2024. ECF 19-1, Wilson Dep. 13:18-22, 23:16-24:4; ECF 33, p. 9-13. But merely

because Plaintiff obtained a neat telephone number, without any intent to bring a TCPA claim on it, does not mean he invites telemarketing calls or render him inadequate any more than a purchase of a burglar alarm would indicate a homeowner wanted their house to be broken into. *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D.W. Va. 2017); *accord Fitzhenry v. ADT Corp.*, No. 14-80180, 2014 WL 6663379, at *5 (S.D. Fla. Nov. 3, 2014) ("Although Plaintiff may have created a home environment that allows him to document telemarketing calls better than most consumers, the Court is not convinced that Plaintiff is outside of the TCPA's zone of interest."). It certainly does not mean that the Plaintiff has manufactured his claims, so as to render the plaintiff inadequate, as in *Wuest*.

Freeway is comparing apples, oranges, and potatoes. There are approximately 330 active area codes in the United States, most of which have at least nine "repeater" numbers, to say nothing of other curious numerical combinations, such as shorter repeating combinations. Predictably, although courts have held that collecting multiple telephone numbers for the purpose of bringing TCPA claims deprived plaintiffs of standing, *cf. Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 798 (W.D. Pa. 2016) (plaintiff who carried around over 40 cell phones in a shoebox was held to lack standing), *no court has ever held* that possessing a telephone number that happens to receive more telemarketing calls than the average number somehow renders a plaintiff inadequate, let alone deprive them of standing, particularly not when they use the number as their sole cell phone number. To the contrary, this Court has held the opposite, precisely with respect to Mr. Wilson:

> Although Plaintiff may be uniquely situated based on his particular phone number, that does not mean that his claim—that he was called using an artificial or prerecorded voice without his consent—is not typical of the class. Defendant cites no case where an individual's number being unique or posted online equated to consent to being called under the TCPA or otherwise created such distinct legal questions that the individual's claims were not typical of a class.

[Proposed] Sur-Reply                                    8

*Wilson v. TPH Paralegal Pro. Corp.*, No. 6:25-CV-01703-MTK, 2026 WL 899930, at *7 (D. Or. Apr. 1, 2026) (Kasubhai, J.).

What's more, the only sworn testimony in any Wilson case about how his number enters a lead form came from an unrelated third party who entered it, believing it belonged to no one. *See Wilson v. Skopos Fin., LLC*, 2026 WL 810636, at *1 (D. Or. Mar. 24, 2026). And *Wuest*'s broader *dicta* observations about individual settlements rest on district court decisions from the 1960s and 1970s that predate both the modern Rule 23 and *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326 (1980), in which the Supreme Court recognized that a named plaintiff's interest in individual recovery, including his attorneys' fees, and the cost-spreading function of the class device, are legitimate features of class litigation, not an abuse of it. *Id.* at 338-39.

Nor does Mr. Wilson settle cases at the class's expense. Freeway's headline arithmetic assumes its own conclusion. The contingency fee figure it advertises is not a rate anyone negotiated or agreed to. Freeway manufactures it by positing a settlement number of its own choosing and measuring it against a cap that exists to protect the class and that limits individual recovery by law. Run the same exercise on any contingent fee case with a court-awarded common fund recovery and it produces equally misleading percentages.

What the Contingent Fee Agreement actually provides is that, in the event of an individual resolution, Mr. Wilson recovers, at most, his full statutory damages, the maximum Congress permits any TCPA claimant on their best individual day in court, and therefore the most any absent class member could recover at trial, and that amounts a defendant agrees to pay above that figure compensate counsel for their work. That is not a contingency rate applied to the client's recovery. Rather, it is the only lawful architecture for attorney compensation under a statute with no independent fee provision.

[Proposed] Sur-Reply                                    9

The alternative Freeway's framing implies, routing an attorney fee component to the client, would raise genuine ethical problems of its own of unethical fee splitting, in addition to creating a free-rider problem. *Cf. Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *accord U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 403 (1980) (class actions facilitate spreading litigation costs among numerous litigants with similar claims). And, as under every fee-shifting scheme–whether fees are shifted both in individual and class litigation or only in class litigation– compensation follows resolution. No lawyer is entitled to fees merely for filing a case. That fees are quantified at the end, through settlement or judgment, is how attorney compensation works, not evidence of a scheme.

Even indulging Freeway's characterization of these arrangements as suspect, and they are not, the adequacy question at certification is narrower than Freeway supposes. As the Seventh Circuit has held, "unless the violation prejudices one of the parties or undermines the court's ability to resolve the case justly, state bar authorities—not a court—should enforce the rules." *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 498-99 (7th Cir. 2013) (cautioning that the rules of professional conduct "can be subverted when they are invoked by opposing parties as procedural weapons"). In *Reliable*, the Seventh Circuit declined to reverse a grant of class certification, even though counsel allegedly acted unethically by using discovery obtained in another TCPA case to solicit the named plaintiff, because that conduct neither prejudiced the class nor compromised the court's ability to decide the case. Thus, even a "serious" or "major" ethical violation warrants denial of certification only where "the misconduct jeopardizes the court's ability to reach a just and proper outcome in the case," while a "slight" or "harmless" breach "will not impugn the adequacy of class counsel." *Id.* at 498-99.

None of what Freeway describes comes close to the level of impropriety that still resulted in certification in *McKnight*. An individual settlement releases no absent class member's claim. To the contrary, it incentivizes Wilson and his counsel to invest in bringing more class cases and prosecute them appropriately on the basis of what the evidence shows, secure in the knowledge that their efforts in investigating the propriety of class treatment will still be compensated in the event of an individual resolution. A fee allocation among the client's own affiliated co-counsel, Reply at 15, affects no class member's recovery by a penny. How referring and prosecuting firms divide a fee, with the client's written agreement, is a matter between them and their client. And debatable questions of professional responsibility are for bar authorities to police, not for litigation adversaries to wield "as procedural weapons." *McKnight*, 704 F.3d at 499. Freeway identifies no injury to any absent class member from anything it describes, because there is none.

**D.    The sworn record refutes the new claim that counsel settles Plaintiff's cases without his consent, and *Slevin* is inapposite.**

For the first time on reply, Freeway argues that Plaintiff's counsel "cannot be adequate under Rule 23(a)(4)" because the Heidarpour Law Firm supposedly operates under the kind of agreement condemned in *Slevin*. Reply at 12. They do not, and *Slevin* is nothing like this case. There, the court found, after evidentiary proceedings, that counsel had actually settled a client's case without consulting him, exercising advance blanket settlement authority the client had not knowingly conferred. 2026 WL 892186, at *12. Here, the sworn record establishes the opposite, from both sides of the attorney-client relationship. The Heidarpour Law Firm has attested that it does not resolve claims without appropriate client authorization. ECF No. 26 at 3 n.1 & Ex. B. And Mr. Wilson has attested that he personally reviewed the settlement offer made in this case, rejected it, and made the decision to seek dismissal himself. ECF No. 29 ¶¶ 25-26. No case of Mr. Wilson's has ever been settled without his prior consent. The difference between settlement

[Proposed] Sur-Reply                         11

authority actually exercised without the client's knowledge (*Slevin*) and a client who demonstrably reviews and rejects settlement offers (this record) is dispositive. An unexercised clause in a superseded engagement letter, in a case governed by a case-specific agreement containing no power of attorney at all, ECF No. 26, Ex. A, renders no one inadequate.

Relatedly, the reply's most serious new accusation, that Plaintiff may never have signed the operative agreement, Reply at 13-14, warrants a word, though it should not need one. Mr. Wilson swore under penalty of perjury that he undertook his class representative duties in a written agreement. ECF No. 29 ¶¶ 31-32. Against that testimony, Freeway offers only the observation that different electronic signature platforms generate different artifacts. An insinuation that the Heidarpour Law Firm fabricated a client's signature and caused a copy to be filed with a federal court is an accusation of fraud made on no evidence at all. If the Court has any question, Plaintiff will supply a confirming declaration forthwith; none should be required.

**E.    Even the Wilson-specific allegations, taken at their worst, do not support inadequacy.**

Freeway's reply now expressly contends that "neither Plaintiff nor his counsel" can represent any class. Reply at 9-16. Yet nearly all of its brief is about Mr. Wilson, including his political statements on social media, his telephone number, his decisions to settle cases, and his deposition. Freeway never connects any Wilson-specific allegation to counsel's ability to satisfy Rule 23. Even taking those allegations at their very worst, and Plaintiff disputes them, they say nothing about whether his lawyers possess the experience, resources, knowledge, and commitment that Rule 23(g) requires and that counsel's record demonstrates.[3]

---

[3] Because Freeway's challenge to counsel's adequacy appears for the first time in its reply, Plaintiff notes the record only briefly. Anthony Paronich of Paronich Law, P.C., who appears on the fee agreement, has been appointed class counsel in more than fifty certified classes, principally in TCPA cases, nationwide. The undersigned counsel has been appointed class counsel in two certified classes and one pending certification, in his first three years at the bar.

[Proposed] Sur-Reply                                12

As for Mr. Wilson's out-of-court statements, Plaintiff addressed them in his opposition and declaration, Opp. at 15-17; ECF No. 29 ¶¶ 29-32 and will not relitigate them here beyond restating the governing principle. Adequacy asks whether the representative has conflicts of interest with the class and will prosecute the class claims vigorously, not whether he holds personal views that the defendant, or anyone else, finds repugnant. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) (offensive personal views did not defeat adequacy where unconnected to the litigation and the representative remained aligned with the class); *Curry v. Kraft Foods Glob., Inc.*, 2011 WL 4036129, at *4 (N.D. Ill. Sept. 12, 2011) (personal shortcomings did not defeat adequacy); *Staton*, 327 F.3d at 957-59 (holding a finding of inadequacy requires a showing of a conflict of interest). Mr. Wilson's personal political views, however characterized, have no connection to whether Freeway sent telemarketing messages to numbers on the National Do Not Call Registry, and Freeway cites no case finding a representative, let alone his counsel, inadequate on the basis of a client's out-of-court speech.

The reply's "abandonment" narrative, Reply at 11-12, fares no better as proof of anything improper. The dismissals Freeway catalogues span cases having nothing to do with Freeway's counsel, and a number of them followed an intervening appellate decision which materially altered the landscape for text message claims. Dismissal decisions across dozens of unrelated dockets, each with its own facts and clients, cannot be adjudicated by inference from opposing

---

Courts have also certified classes in numerous additional cases brought by clients referred by the Heidarpour Law Firm. Counsel's rate of seeking and obtaining certification thus meets or exceeds the rate at which TCPA class actions generally reach and survive certification. *See supra* note 2. That record refutes any suggestion that these cases are filed without the intention or the ability to certify a class where the evidence supports one, and it reflects precisely the judgment Rule 23(g) values, knowing which classes are certifiable and declining to press those that are not, while still compensating attorneys for their efforts in putting in the work in making those determinations. The opposite world Freeway envisions would disserve absent class members, waste judicial resources, and invite Rule 11 scrutiny.

[Proposed] Sur-Reply                    13

counsel's declaration in this one. The invitation to try is precisely the sprawling collateral litigation Plaintiff's pending dismissal motion would avoid. Finally, insinuations of "manufactured" claims add nothing to this case, as Plaintiff has already addressed at length. Freeway concedes it "didn't claim to know" whether the lead here was manufactured, Reply at 22, and the undisputed chronology remains that the lead predates Plaintiff's first contact with the Heidarpour Law Firm by months. Opp. at 17-18; ECF No. 26 at 2.

Freeway asks the Court to make a finding of inadequacy unmoored to the appropriate standard of a clear conflict of interest, based on distasteful statements made by the Plaintiff, statistics offered without any baseline, and mischaracterizations of agreements the client has authenticated, while insisting no further record development is needed. Rule 23's rigorous analysis runs on evidence, and the evidence here, the classwide relief pending in *PacifiCorp*, the national case management data, and the sworn testimony of the client and his counsel, all refute the inadequacy Freeway posits, because they all show that the interests here are entirely in alignment with the class's interests.

### III.   CONCLUSION

For the foregoing reasons and those stated in Plaintiff's opposition, the Court should deny Defendant's motion to deny class certification, or, at a minimum, deny it as moot upon granting Plaintiff's pending motion to voluntarily dismiss his claims with prejudice.

RESPECTFULLY SUBMITTED AND DATED this 3rd day of August, 2026.

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.
> OSB No. 243320
> Perrong Law LLC
> 1669 Edgewood Road, Suite 218
> Yardley, PA 19067
> Telephone: 215-225-5529
> a@perronglaw.com

Lead Attorney for Plaintiff and the Proposed Class

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong

## CERTIFICATE OF PAGE COUNT

This brief complies with the applicable page-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains exactly 14 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Dated: August 3, 2026

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.

[Proposed] Sur-Reply                    15