Timothy J. Fransen, OSB No. 073938
tfransen@cosgravelaw.com
**COSGRAVE VERGEER KESTER LLP**
900 SW Fifth Avenue, 24th Floor
Portland, Oregon 97204
Telephone: (503) 323-9000
Facsimile: (503) 323-9019

Ryan D. Watstein (*Pro Hac Vice*)
ryan@wtlaw.com
James M. Ruley (*Pro Hac Vice*)
jruley@wtlaw.com
Rebecca Rhym (*Pro Hac Vice* pending)
rrhym@wtlaw.com
**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

*Attorneys for Defendant*
*Freeway Insurance Services of America, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**EUGENE DIVISION**

| | |
|---|---|
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FREEWAY INSURANCE SERVICES OF AMERICA, LLC,<br><br>Defendant. | Case No. 6:25-cv-01869-MC<br><br>**DEFENDANT FREEWAY INSURANCE SERVICES OF AMERICA, LLC'S RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY** |

Freeway agreed that Plaintiff could file a sur-reply on the condition that it be "limited to matters Plaintiff has not previously had an opportunity to address," and that Freeway could seek relief, "including leave to file a response," if it went further. ECF No. 41 at 3. Plaintiff separately assured the Court (at 2) that his "proposed sur-reply does not attach any additional documents or evidence beyond that which is already in the record." The proposed sur-reply keeps neither commitment. Its centerpiece is an unsworn, cherry-picked statistical showing drawn from sources that appear nowhere in the record. And much of the balance re-argues points Plaintiff already briefed at length or previously had opportunity to respond to. *See* ECF No. 28 at 8–19.

Freeway does not ask the Court to deny leave. It asks that leave be granted on the terms to which the parties agreed, and that the Court either disregard anything outside that scope or permit Freeway to address the new assertions at the August 19 hearing. In the meantime, a few points warrant correction now.

**Plaintiff's sur-reply relies on new evidence that is cherry-picked, inaccurate, and proves Freeway's point.** Plaintiff defends his sue-and-settle model by relying (at 6–7) on termination data from the Federal Judicial Center ("FJC") and certification rulings from Westlaw Litigation Analytics to show that his record is "the norm." These assertions, which he could and should have made in his opposition brief, are unsupported by a declaration or any other evidence in the record. And Plaintiff's own footnote concedes (at 7 n.2) that the data is unreliable because there is "no one-to-one correspondence" between the two data sets his comparison depends on.

Besides that, the data doesn't support Plaintiff's argument. To start, the termination data is skewed because it doesn't include class settlements, by far the more common class disposition, even though Plaintiff relies on his single proposed settlement to support his claim that he is in line with the norm. Plaintiff also omits that his counsel here have dismissed TCPA cases and re-filed



WATSTEIN TEREPKA LLP
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

them in state court to extract enormous fees with almost no class recovery—settlements that would never be approved in federal court. For example, after Perrong filed a federal class action, separate counsel filed the same claims in Florida state court. *See Ryan v. Wilshire Law Firm, P.L.C.*, No. 2:24-cv-08816 (C.D. Cal.); No. 2025-022621-CA-01 (Fla. 11th Cir. Ct. Nov. 14, 2025). Perrong then dismissed the federal action once preliminary approval issued. Counsel then collectively took nearly $2 million—one-third of a nominal "$5,975,000" fund—from a reversionary, claims-made structure under which the defendant funded only the claims actually submitted, escrowed nothing, and kept every unclaimed dollar as "the property of the Defendant." *See also Miller v. Zale Del., Inc.*, No. 25-CA-004088 (Fla. 13th Cir. Ct. Nov. 23, 2025) (awarding Paronich and Kaufman $2,516,100 in fees on a "$7,548,300" figure that was simply class size multiplied by the $100 per-claim cap, with every unclaimed dollar reverting to the defendant). Considering such outcomes, of course, increases the percentage of TCPA cases that result in certification proceedings. But Plaintiff's counsel excludes all of them.

But the bigger problems with Plaintiff's inaccurate statistics are twofold. First, Plaintiff's counsel cannot normalize abuse of the class mechanism by pointing to recent statistics they shaped themselves with the 1,500+ TCPA class actions they have filed in recent years.[1] Indeed, the model is the *cause* of the very statistics they rely on: the historic data shows a much more normal rate of class resolution, followed by an explosion in recent years of TCPA cases filed as class actions and a rapidly decreasing rate of class dispositions.[2]

---

[1] An underinclusive Law360 search of the federal dockets for "Paronich TCPA" and "Perrong TCPA" alone produces approximately 1,500 class actions.

[2] An example of the new sue-and-settle model is the Hindi firm. Judge Stanley Blumenfeld, Jr. recently observed that a single attorney at that firm had "filed more than 700 cases in this district in the last two years." *Juarez v. Golf Wearhouse, LLC*, No. 26-cv-03947, ECF No. 15 (C.D. Cal. July 21, 2026). The proliferation of that model significantly skews statistics.



**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

Second, and most importantly, most TCPA cases are brought by a plaintiff who files one or a handful of cases. One or two cases cannot show whether someone is abusing the class mechanism. But Wilson has 85 cases and no certifications. Plaintiff offers no data to normalize that pattern, because there is none.

***PacifiCorp* proves settlement is driven by money, not evidence.** Wilson claims (at 4, 12) that he pursued class relief in cases "where class treatment is appropriate" and that his outcomes follow "what the evidence shows." The PacifiCorp settlement flatly disproves that representation. Every company that calls consumers at scale calls reassigned numbers because number churn is a universal feature of telephony. If Wilson's decision to pursue certification was truly evidence-driven, he would have certified more cases because the reassigned-number theory he purports to have settled classwide in *PacifiCorp* was available in substantially every case in his portfolio.

Despite that, the reassigned number theory only led to one putative class settlement, and that case didn't even plead reassigned number allegations. *Wilson v. PacifiCorp*, No. 24-cv-01956, ECF No. 1, ¶ 32 (D. Or. Nov. 21, 2024). The theory surfaced for the first time in the settlement agreement, which was reverse-engineered to define a class Wilson does not belong to and to package a five-year global release at $34.76 a head. So the variable that separates PacifiCorp from the other 84 cases is not what the "evidence shows." It is what the defendant was willing to pay.

Of course, class settlements occasionally emerge from this model. Most defendants refuse to fund them, but when the price is low enough and the release broad enough, buying classwide peace at a discount makes commercial sense for a defendant, whatever the class's interests. PacifiCorp struck that bargain, and the reason it could is the reason Plaintiff is inadequate: he never



**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

alleges he received a reassigned-number call, so he held no claim under the class's own theory, had nothing of his own to value, and had no incentive to negotiate anything for the people who do.

The terms Plaintiff fails to respond to show what a representative with no stake accepts. Roughly half of the $850,000 fund goes to fees, costs, administration, and Plaintiff's requested $5,000 service award—roughly 140 times the $34.76 a class member would receive assuming full participation—and the release runs five years across all TCPA and related state-law claims, far beyond the reassigned-number theory that defines the class. ECF No. 33, Third Watstein Decl., Ex. 10 §§ 1.1.26, 1.1.34, 4.2, 5.1, 6.1, 8.3. The claims process compounds the problem: nothing in it meaningfully verifies that a claimant actually held a reassigned number, so the fund will pay people with no claim at all, while the members the settlement supposedly serves—those who never notice the forms sent by mail only—are released of every such claim and receive nothing. And on cy pres, Plaintiff denies only that PacifiCorp is a "direct beneficiary" of residual funds. He does not deny Freeway's actual point: the Oregon Energy Fund partners with PacifiCorp's own Pacific Power division, so leftover money flows back toward the defendant's customers' power bills.

Plaintiff's omission runs deeper than the economics. Under the 2024 agreement, the Heidarpour Law Firm holds a contractual interest in "any and all" of Plaintiff's TCPA claims—PacifiCorp included—and under the fee structure reflected in this case and in the Robertson production, thirty percent of every fee flows to it. Yet that firm appears nowhere in the PacifiCorp settlement papers. Rule 23(e)(3) requires the parties to identify every agreement made in connection with a proposed settlement, Rule 23(h) requires fee requests on notice the class can evaluate, and this Circuit makes the approving court a fiduciary charged with scrutinizing where every fee dollar goes. *See Staton v. Boeing Co.*, 327 F.3d 938, 959–60 (9th Cir. 2003); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The Court is thus being



WATSTEIN TEREPKA LLP
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

asked to approve a one-third fee without being told that a non-appearing firm—one with power of attorney over the named plaintiff—takes a share of it. That is the same serial nondisclosure of HLF that Freeway documented across Plaintiff's portfolio, now operating inside the one proceeding where court supervision is supposed to protect the class. Plaintiff's lone class settlement thus supports Freeway's motion: the lawyers take a third of the fund plus costs, an undisclosed firm takes its cut, the representative takes his multiple, the defendant buys sweeping peace cheaply, and a handful of people with claims unlike Plaintiff's receive $34.76.

**Plaintiff's counsel improperly tries to bolster his adequacy.** Plaintiff objects that Freeway challenged his counsel's adequacy for the first time on reply. But the fee agreements showing counsel's inadequacy were produced only after the motion was filed, and Plaintiff himself placed them before the Court. *See* ECF Nos. 26, 26-1. A party who injects documents into the record cannot object that the movant addressed them, and Plaintiff has now had a full opportunity to respond across the dismissal briefing, his opposition, and a fourteen-page sur-reply devoted substantially to defending his lawyers.

And again, Plaintiff's arguments prove Freeway's points. Instead of defending his adequacy to represent Wilson in this case, Mr. Perrong lists his and Mr. Paronich's alleged records in other cases. Setting aside that Mr. Paronich has not even appeared in this case despite owning sixty percent of any fee, experience in other cases is irrelevant. Rule 23 asks about the case before the Court. Counsel who have proven they cannot be trusted to act in the interests of the class in the case before the Court cannot be rehabilitated by classes they certified in others. That's what the District of Utah held when it denied certification in *Perrong v. Vivint*, notwithstanding counsel's other experience. 2022 WL 2291669, at *9–12 (D. Utah June 23, 2022) (holding that plaintiffs and their counsel, including Paronich, failed to carry their Rule 23(a)(4) burden because they blew the



**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

local rule's certification deadline by more than two years, answered some fifty pages of briefing with "dismissive, cookie-cutter" oppositions that "did not discuss the Rule 23(a) factors at all," and then filed a "parsimonious" motion devoting roughly one page of argument per requirement for three nationwide no-opt-out classes—"leisurely and limited efforts" that were not the "vigorous" representation Rule 23 demands)

Plaintiff's own newly cited authority makes that point. *Reliable Money Order, Inc. v. McKnight Sales Co.* affirmed a certification order after reviewing for abuse of discretion because "McKnight does not identify any conflict of interest or prejudice to the class arising from the misconduct," and because the alleged misconduct ran to a third party holding data about potential defendants rather than to a client or to any member of the class. 704 F.3d 489, 499–500 (7th Cir. 2013). The court was explicit about what does require denial: "misconduct that prejudices the class or creates a direct conflict between counsel and the class," including a "fee arrangement [that] created [a] conflict of interest between attorney and class." *Id.* at 498–99. The governing question is whether counsel's conduct "creates a serious doubt that counsel will represent the class loyally." *Id.* at 495.

HLF's arrangement creates such a conflict here. Above every individual case sits the 2024 Agreement, which gives HLF control of Plaintiff's entire portfolio: sole discretion whether to pursue any claim, authority to select, settle, release, and dismiss "as though Client were personally doing so," termination penalties Plaintiff cannot afford, and a 30-day window to liquidate pending claims on any terms if he ever tries to leave. A client whose livelihood across hundreds of matters depends on never displeasing his lawyers cannot police them in any one matter. Plaintiff fails to address that this portfolio-wide control persists whichever agreement supplies this case's fee terms.



**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

Then, within each case, the fee structure finishes the job: the client's recovery is capped at statutory damages and every settlement dollar above the cap belongs to counsel by contract, so counsel negotiates for itself and is generally paid most when the class recovers nothing. Nor is the "serious doubt" about loyalty hypothetical on this record. Counsel rejected an offer five times their client's maximum recovery, then dismissed his claims for nothing the moment scrutiny reached their own conduct. And they abandoned a dozen other clients' cases, several with prejudice, along the way. *McKnight* asks whether counsel will represent the class loyally. Counsel here could not even remain loyal to their named plaintiffs.

**Nor is a fee cap "the only lawful architecture" for compensating counsel. The arrangement here is unlawful several times over.** As Freeway explained and Plaintiff failed to rebut, the TCPA does not permit recovery of fees. *Holtzman v. Turza*, 828 F.3d 606, 608–9 (7th Cir. 2016). So, counsel may share the client's statutory damages under an ordinary contingency fee agreement, or they may litigate to a class judgment or common fund and ask a court to award a fee. *Id.* at 609–10 (TCPA class members pay their lawyers from their own recoveries); *Strawn v. Farmers Ins. Co. of Or.*, 353 Or. 210, 229 n.19 (2013) (class fee awards "are always subject to the control of the court," whatever the fee agreement says). What counsel may not do is contract for a right to collect fees from the defendant in an individual TCPA settlement, where no statute confers that right and no common fund exists. *Baker Botts L.L.P. v. ASARCO*, 576 U.S. 121, 126 (2015).

But that's exactly what they have done, and then some. ECF No. 42-1 at HLF00002–00003. First, they contractually created fee-shifting under a statute that doesn't permit it. *Id.* at HLF00002–00004. The class allegations supply the leverage, and no court reviews the number. Second, they built in a multiplier for themselves. Their Agreement states that counsel "may request



WATSTEIN TEREPKA LLP
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

the defendant apply a multiplier based on certain risk factors." *Id.* at HLF00003. This is remarkable, since contingency multipliers are generally disfavored even under statutes where Congress *did* shift fees. *See City of Burlington v. Dague*, 505 U.S. 557, 565–67 (1992). Counsel demand under the TCPA what a prevailing civil rights lawyer cannot obtain under § 1988.

Third, they stripped their client of the one decision the law reserves to him alone, binding him not to "waive in whole or in part the right to recover attorneys' fees and/or costs as a condition of settlement," even though there is no such right under the statute. *Id.* at HLF00003, HLF00006. In other words, the client's counsel wrote themselves a veto over their client's settlement of his own case, and the subject of that veto was their own pay. OSB Formal Ethics Op. 2005-54 (fee agreement that interferes with the client's unfettered settlement decision violates Or. RPC 1.2(a) and 1.5(a)). And fourth, they conditioned payment on their own clients releasing them from claims arising out of the representation. *Id.* at HLF00228–00259.

In addition to stripping their clients of any meaningful ability to control their own cases, each step violates a separate ethical rule. A contingent fee is excepted from the ban on acquiring a proprietary interest in the client's claim only if it is *reasonable*, Or. RPC 1.8(i), and reasonableness is measured against the work actually performed at the time the fee is collected—not against the contract signed at the outset. *In re Conduct of Gastineau*, 317 Or. 545, 550–51 (1993). Counsel collected premium individual settlements here on unanswered complaints. The settlement veto subordinates the client's decision to counsel's fee. Or. RPC 1.7(a)(2). And the releases were obtained from an unrepresented client with no written advice to consult independent counsel, Or. RPC 1.8(h)(2)—precisely the "blanket release" solicited as "a routine incident of concluding a representation" that the rule forbids, D.C. R. Prof'l Conduct 1.8 cmt. 14.



**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

**Plaintiff still won't say who signed the 2025 agreement.** Instead of simply stating whether he did or did not sign the 2025 fee agreement in this case, he calls (at 12) the question an accusation "made on no evidence at all" and offers a "confirming declaration forthwith." But despite that offer—and four opportunities to clarify the record on this point—he has failed to do so. Plaintiff's continued refusal to answer simple questions despite the suspicious written record, *see* ECF No. 26-1, indicates the answer isn't favorable to him.

One last development deserves a note in closing. Plaintiff's opposition devoted four pages to arguing that Freeway's motion is premature and cannot be decided without class discovery. ECF No. 28 at 29–32. The proposed sur-reply abandons that position. Plaintiff now concedes (at 3) that adequacy is "a pure question of law the Court can answer now, on these papers, without discovery into anything." Freeway agrees.

Freeway will address the remainder of Plaintiff's arguments at oral argument.

Dated: August 17, 2026

*/s/ Ryan D. Watstein*
Ryan D. Watstein (*Pro Hac Vice*)
ryan@wtlaw.com
James M. Ruley (*Pro Hac Vice*)
jruley@wtlaw.com
Rebecca Rhym (*Pro Hac Vice pending*)
rrhym@wtlaw.com
**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

Timothy J. Fransen, OSB No. 073938
tfransen@cosgravelaw.com
**COSGRAVE VERGEER KESTER LLP**
900 SW Fifth Avenue, 24th Floor
Portland, Oregon 97204
Telephone: (503) 323-9000
Facsimile: (503) 323-9019

*Attorneys for Defendant Freeway Insurance Services of America, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 17, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Ryan D. Watstein*
Ryan D. Watstein



**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695