# *Wilson v. Freeway Insurance*

## Hearing on Freeway's Motion to Deny Class Certification

*August 19, 2026*

WATSTEIN TEREPKA LLP

# HOW WE GOT HERE

- ➢2019: Wilson barters for **999-9999 number**—one that "[a]lmost instantly" draws dozens of calls a day. He keeps it anyway.
- ➢Signs up with HLF: **all TCPA claims, in perpetuity** with a power of attorney and a termination penalty
- ➢Files **83 TCPA "class actions" in under two years**
- ➢Extracts **millions** in individual settlements
- ➢**90–95% went to the lawyers.** Nothing to any class.
- ➢All the while: **violent, racist public rants;** removed by Facebook 12+ times for "incitement to violence" and "hate speech

# FREEWAY MOVES TO DENY CLASS CERTIFICATION

- ➢Wilson sues Freeway, which only contacts **consumers who consent**
- ➢Freeway tells counsel what the record shows: **this is not a class action**
- ➢Per LRs, Freeway conferred on April 8 and was **rebuffed**
- ➢So Freeway did exactly what the Ninth Circuit said is appropriate:

> **"If a plaintiff appends class claims to increase leverage for an individual settlement, the defendant can draw any attempts at individual settlement to the court's attention. Such maneuvering would make the plaintiff an inadequate class representative, and a motion for denial of class certification would be in order."**

*Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1409 (9th Cir. 1989)

# PLAINTIFF'S RESPONSE? HIS LAWYERS ATTEMPT TO DISMISS THE CASE

- ➢The day Freeway prepared to file its motion, counsel threatened **new claims and a new defendant**
- ➢Later that same day, **counsel moved to dismiss Wilson's case with prejudice—for nothing**
- ➢Wilson had previously rejected a settlement offer for 5x his best day in court. **His lawyers made the choice to dismiss for him.**
- ➢The stated reason (Wilson's rhetoric) collapsed on its own terms: they refused to dismiss **any other Wilson case**
- ➢Counsel later dismissed **seven more class actions** against WT's clients—many **with prejudice**
- ➢Then some HLF referral counsel went underground and began sending **draft class actions with $100,000+ demands**

## WHY DISMISS YOUR OWN CASE AND A DOZEN OTHERS?

**Because Freeway’s motion proves Wilson and his counsel are abusing the class mechanism.**

# THE COURT SHOULD DENY CLASS CERTIFICATION

- Wilson is **atypical**.
- Individual issues **predominate**.
- Wilson and his counsel are **inadequate**.

**Each is independently dispositive under Rule 23.**

# TYPICALITY: THE STANDARD

➢ **The representative must be able to prosecute the class's claims AND do so free of unique defenses that would take over the case:**

A named plaintiff is atypical and inadequate where the named plaintiff is not subject to certain defenses applicable to absent class members and thus "would be unable to argue on their behalf."

*Avilez v. Pinkerton Gov't Servs., Inc.*, 596 F. App'x 579, 579 (9th Cir. 2015) (unpublished)

"[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."

*Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)

➢ **And Freeway must be able to assert its defenses through the named plaintiff:**

"Allowing [Freeway] to mount this defense . . . would render class certification inappropriate," but "denying [Freeway] this defense altogether would . . . violate due process."

*Ambrosio v. Progressive Preferred Ins. Co.*, 154 F.4th 1107, 1112 (9th Cir. 2025)

# WILSON IS ATYPICAL: EVIDENCE OF FRAUD

- In *Wilson v. MAH Group*, the vendor's records tied the opt-in for Wilson's number to **IP address 73.240.49.37**. His counsel denied it was Wilson's. **Wilson then admitted it was.**

> 4. Defendant provided Plaintiff with records that an individual at IP address 73.240.49.37 signed up for 541-XXX-9999 to receive marketing messages via Yotpo. Plaintiff's Counsel denied the IP address was Plaintiff's, however Plaintiff subsequently admitted it was. True and accurate copies are attached as Exhibit B, Email Conversation between Counsel and Exhibit C, Plaintiff's RFA Response.

Shechter Decl. ¶ 4, *Wilson v. MAH Group, Inc.*, No. 6:25-cv-855 (D. Or.)—ECF 33 at 33

- Our firm has also seen examples of lead fraud from Wilson's number. *See* ECF 19 at 21.

- **The same pattern runs across HLF's portfolio:** leads traced to the plaintiff's own IP (*Johnson*); VPN-masked lead campaigns (Taylor); fraud counterclaims sustained (*Woodard*); and **dismissal every time the scheme is scrutinized.**

# WILSON IS ATYPICAL: THE CONSEQUENCES

- **All of this jeopardizes any class action trial**. A jury trying Wilson's fraud evidence, litigation history, and rhetoric could rule against the class on those bases and eliminate the class's claims.

- **And Freeway cannot assert its defenses through him.** Consent, standing, and arbitration turn on lead forms Wilson swears he never saw or agreed to.

- **He cannot stand in for a class.** His 999-9999 number makes his experience **different from everyone else's**. He has no motivation to pursue claims arising out of circumstances different from his—reassigned number claims, for example.

# INDIVIDUAL QUESTIONS OVERWHELM

- ➢**Residential vs. business number**—no classwide proof exists

  - ➢Plaintiff uses his number as a "**holistic healer**,"for an "**online health food [] store**,"for **trading military equipment**, and for **filing TCPA lawsuits** as "a job"consuming 5 to 20 hours per week.

    *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022) (multi-factor, subscriber-by-subscriber inquiry into actual use)

    *Payne v. Sieva Networks, Inc.*, 347 F.R.D. 224, 228 (N.D. Cal. 2024) (denying certification before discovery because residential status cannot be shown "in one stroke")

- ➢**Consent—and arbitration, and standing**—identifying even one other person like Wilson is a person-by-person investigation

- ➢Finding out who submitted Wilson's lead in this case took **months, subpoenas, and a former FBI** agent, and it's still is not resolved

# WILSON IS INADEQUATE FOR NUMEROUS INDEPENDENT REASONS

- ➢**No ability to control counsel**—the 2024 and 2025 agreements strip him of his **ability or will** to check counsel
- ➢**Abuse of the class mechanism**—83 filings, no contested certification, extortionate individual settlements
- ➢**Violent threats** against members of any class
- ➢**Attempts to lie about it in this litigation**—sworn denials contradicted by his own contemporaneous posts
- ➢**Total absence of involvement or knowledge**—"I don't know what that means" (certification). Skopos Dep. 61:10–11

# COUNSEL IS INADEQUATE TOO

- **Abuse of the class mechanism**—class allegations as leverage for unreviewable individual fees under a non-fee-shifting statute, followed by abandonment of their clients' claims when scrutinized

- **Ethical violations that strike at their fiduciary duties**
  - Power of attorney conferring ability to bring claims and settle without client input, ability to sign documents
  - 95% contingent attorneys' fees
  - Ownership interest in clients' claims above statutory cap;
  - Hundreds of releases extracted from their own clients;

- ***Slevin v. AB Hollywood, LLC:*** blanket settlement authority alone "violates the Oregon Rules of Professional Conduct." 2026 WL 892186, at *12 (D. Or. Mar. 31, 2026) (awarding all fees incurred in abusive litigation scheme)

# ADEQUACY: THE STANDARD

## Can this representative and this counsel be trusted as fiduciaries for absent class members?

Adequacy asks whether "the named plaintiffs and their counsel have any **conflicts** of interest with other class members" and whether they will "prosecute the action **vigorously on behalf of the class**."

*Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023)

Certification denied for misconduct that "creates a **serious doubt** that counsel will **represent the class loyally**"—including a "**fee arrangement** [that] create[s] [a] conflict [] between attorney and class."

*Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 495, 498–99 (7th Cir. 2013)

"The premium was something [] due to the 'class,' but **no [] class member ever got anything**. Wuest and his counsel got it all."

*Wuest v. My Pillow, Inc.*, 2019 WL 3577176, at *4 (N.D. Cal. Aug. 6, 2019)

# ABUSE OF THE CLASS MECHANISM: THE OCTOBER 4, 2024 AGREEMENT

## EXPECTATION OF SERVICES

1. Client hereby retains HLF to represent them for **any and all claims** regarding Telephone Consumer Protection Act (TCPA) . . . violations.

* * *

## POWER OF ATTORNEY

7. **Client grants HLF power of attorney** to act on their behalf and **to execute all claims, contracts, settlements,** . . . releases, verifications, dismissals and deposits, in every respect, **as though Client were personally doing so**."

*ECF 33 at 17*

# ABUSE OF THE CLASS MECHANISM: THE OCTOBER 4, 2024 AGREEMENT

"**SETTLEMENT AUTHORITY**

8. Client acknowledges that based on HLF's experience in TCPA claims, that it is best suited to negotiate and determine if any settlement offer received is reasonable based on the TCPA violation. Therefore, **Client grants HLF settlement authority to authorize any settlement it deems practical and reasonable**.

**TERMINATION**

9. Client may terminate this Agreement by giving written notice to HLF at any time. Upon notice by Client, **HLF has 30 days to settle or relinquish any claims that are in negotiation status at the time of the notice**. . . . In the event the Client has outstanding claims in which HLF has incurred costs or fees, **HLF will be reimbursed those costs by Client.** HLF will also relinquish representation of all claims upon notice **except those that are pending receipt of settlement**."

*ECF 33 at 18*

# ABUSE OF THE CLASS MECHANISM: THE AUGUST 29, 2025 AGREEMENT

"In the event that this case is settled on an individual basis and not settled on a class action basis we will attempt to negotiate settlement/s . . . ; however, **a negotiated settlement may range anywhere up to $1,500 per violation, which is the maximum amount you may be entitled to recover under the statute**. In the event we negotiate an individual settlement, that settlement may include payment of attorney's fees directly to us based on the amount of time spent on the matter multiplied at our hourly rates. **At times, we may request the defendant apply a multiplier based on certain risk factors in bringing this action.** The amount of payment of attorney's fees (with or without a multiplier) may be greater than the amount of statutory damages you recover. You further agree that **any amount obtained in excess of your statutory damages are either costs or attorney's fees that belong to us**."

*ECF 26-1 ¶ 7*

# ABUSE OF THE CLASS MECHANISM: THE AUGUST 29, 2025 AGREEMENT

"I understand that the Attorneys will divide any attorney's fees recovered for their services rendered in prosecution of the claim as follows:"

"**30% Heidarpour Law Firm PLLC**, **60% Paronich Law P.C**, and **10% Perrong Law**."

*ECF 26-1 ¶ 7*

# WHAT THE AGREEMENTS ACCOMPLISH

- **Complete counsel control across the portfolio**—power of attorney (power to sue, settle, execute, dismiss); sole discretion over every claim

- **Client indifference by design**—the entire point of a class representative is to act as a check on counsel.
  - But once an offer covers Wilson's cap, nothing matters to him.
  - Every decision after that is the lawyers setting their own pay.

- **No policing possible**—coercive termination penalties across portfolio of hundreds of cases and the 30-day liquidation window make leaving or questioning counsel impossible.

# ABUSE OF THE CLASS MECHANISM: "ETHICAL VIOLATIONS"

- "A lawyer shall not enter into an agreement for, charge or collect an illegal or clearly excessive fee." *Or. RPC 1.5(a); Or. RPC 1.8(i); In re Gastineau, 317 Or. 545 (1993)*
  - Plaintiff's counsel routinely obtained fees far in excess of what the statute permits or the work performed in the matter.
- "It is up to the clients—and not the lawyers—to decide whether to settle a matter." *OSB Formal Op. 2005-54 at *1.*
  - Plaintiff's counsel has the power to sue, settle, and dismiss cases without his client's approval. And he has coercive authority to do so even after representation is terminated.
  - That's the exact arrangement Slevin held "violates the Oregon Rules of Professional Conduct." *Slevin v. AB Hollywood, LLC, 2026 WL 892186, at *12 (D. Or. 2026)*
- "A lawyer shall not settle a claim or potential claim for such liability with an unrepresented client or former client unless that person is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel in connection therewith; *Or. RPC 1.8(h)(2)*

*See ECF 43 at 7–9; ECF 19 at 11 n.3.*

# ABUSE OF THE CLASS MECHANISM: "EXTORTION PREMIUM"

- **The TCPA permits no attorney's fees.** *Holtzman v. Turza*, 828 F.3d 606, 608–09 (7th Cir. 2016)
- **Even genuine fee-shifting statutes bar contingency multipliers.** *City of Burlington v. Dague*, 505 U.S. 557 (1992)
- Their invention: cap the client's recovery, take every excess dollar **by contract**, demand a "multiplier," and bar the client from waiving attorneys' fees.

Attorneys will receive the greater of (a) one-third (33 and 1/3%) of the total settlement proceeds, award or judgment, if any; or (b) the greater of the amount of any attorneys' fees incurred relating to the Claim. The Client also understands that the Attorneys will have the ability to negotiate an award for attorneys' fees separately from any recovery for the Client. Client understands that this fee is not set by law and was negotiable between Attorneys and Client. Client understands that no settlement of Client's individual claims will be made without Client's approval. Client agrees not to waive in whole or in part the right to recover attorneys' fees and/or costs as a condition of settlement.

*ECF 42-1 at HLF00002—the settlement veto, written into every HLF client agreement*

# THE "EXTORTION PREMIUM" IN ACTION

**$633,500** in settlements,

**$566,000 (90%+)** to counsel

**SETTLEMENT STATEMENT**

| | |
|---|---|
| Settlement Amount | $40,000.00 |
| Less Attorneys' Fees and Costs | $35,500.00 |
| **AMOUNT to Erin Robertson** EER | **$4,500.000** |

**(3) I, ERIN ROBERTSON, RELEASE, ACQUIT, AND FOREVER DISCHARGE RELEASE PARONICH LAW, P.C., ANTHONY PARONICH, HEIDARPOUR LAW FIRM, PLLC, ANDREW HEIDARPOUR, KAUFMAN PA, AVI KAUFMAN, AND RACHEL KAUFMAN FROM ANY AND ALL MANNER OF ACTIONS, CAUSES OF ACTION, SUITS, JUDGMENTS, DEMANDS, CLAIMS, RIGHTS, INTERESTS, REMEDIES OF ANY NATURE, KIND OR DESCRIPTION WHATSOEVER IN LAW OR IN EQUITY THAT I HAD, NOW HAVE, OR MAY HAVE AGAINST THEM, WHETHER KNOWN OR UNKNOWN, UP TO AND INCLUDING THE DATE OF MY SIGNATURE, INCLUDING BUT NOT LIMITED TO IN RELATION TO LITIGATION AGAINST CHOICE FINANCIAL MANAGEMENT, INC.**

*Settlement statement, ECF 42-1 at HLF00228*

# HOW MUCH WORSE IS WILSON'S ABUSE OF THE CLASS MECHANISM?

**That's what we know. But there's so much more we don't know, because Wilson:**

- ➢Refused to respond to discovery
- ➢Refused his deposition and device inspection by relying on a stay this Court never entered

HLF moved to quash Freeway's subpoena **even though** HLF has produced these same categories in other cases:

- ➢pre-suit class-threat demands
- ➢every engagement letter
- ➢every settlement statement

# THE RESULT

# **Millions** for counsel

## **Hundreds of thousands** for Wilson

**Nothing** for any class

**Enormous** costs for defendants

**Substantial** strain on the courts

**Delegitimization** of the class mechanism

# *WUEST* WAS ONE-TENTH OF THIS—AND CERTIFICATION WAS DENIED

| | Wuest v. My Pillow | Wilson |
|---|---|---|
| Class actions filed | 10 | **83, plus hundreds of threatened class actions** |
| Contested certification sought | Never | **Never** |
| Resolutions | Individual settlements | **64 individual resolutions with nothing for any class** |
| The premium | Shared | **90–95% to counsel by contract** |
| Violent threats against class members | — | **Yes** |
| Sworn denials contradicted by his own posts | — | **Yes** |
| Manufactured-claim evidence | — | **Yes** |
| Client's damages capped · fee veto · releases of counsel | — | **Yes** |

*Accord Backus v. ConAgra Foods; Yaffe v. Detroit Steel; Goetsch v. Shell Oil; May v. Gladstone; Perrong v. Vivint.*

# WILSON"S ANIMUS AGAINST PUTATIVE CLASS MEMBERS ALSO RENDERS HIM INADEQUATE


Chet Tank Wilson
May 6 at 11:06 AM ·
Got some holes need filled boys & I need to know who's with me on this one! 🇺🇸👊😎

*ECF 19-1, Ex. E (May 6, 2026)*

**"I got holes f***ing dug already, motherf***ers."**

*— on "Bolshevik f***ing Jews" · ECF 19-1, Ex. E*

**"I would love to punch some motherf***ers in the head. . . . But, the time will come."**

*— on parents of transgender children · ECF 19-1, Ex. I*

# WILSON'S HATE SPEECH: IT'S NOT LIKE OTHER CASES

## The "offensive" speech in *Gaertner*:




Gaertner v. Commemorative Brands, Inc., 2026 WL 248292 (S.D. Ill. Jan. 30, 2026).

## Plaintiff's violent rhetoric:




ECF 33, Ex. 7 (June 27, 2026)

# HIS ATTEMPT TO LIE ABOUT IT IS DISQUALIFYING

**The declaration (July 13):** Wilson avers he does "not defend" the statements and has "never threatened or intended to incite violence."
*ECF 29 ¶ 29*

**Wilson has been banned 12+ times by Facebook** for "incitement to violence," "hate speech," "bullying," and "harassment"—removals he bragged about and never disputes.
*ECF 19-1 ¶¶ 18–19 & Ex. F*

**And after this motion was filed,** he publicly stated,"whatever I say is what I believe"—even if it costs "a couple hundred thousand dollars."
*ECF 33, Ex. 8*

And he confirmed this is what he believes, 16 days before executing his declaration, he publicy stated, **Hitler was "the greatest protector of Christianity"; "we're gonna find them all"; "we need to finish what f***in' Hitler was tryin' to do."**
*ECF 33, Ex. 7*

**Conduct "directly indicative of dishonesty" defeats adequacy.**

*Gaertner v. Commemorative Brands, Inc.*, 2026 WL 248292, at *12 (S.D. Ill. Jan. 30, 2026)

**For all these reasons, the Court should deny class certification.**

# WHAT SHOULD THE COURT DO AFTER DENYING CERTIFICATION?

**Let Freeway finish discovery, so (a) Freeway can move for sanctions on a full record, and (b) Court can fulfill its obligation to police integrity of its processes.**

- The Court can hold the dismissal motion until the discovery already served is complete, then dismiss.

- Or the Court can dismiss now and give Freeway sixty days of post-dismissal discovery. It keeps jurisdiction to sanction, and to investigate a fraud on the court, either way.

**Either path permits a full record for sanctions. Neither asks the Court to decide anything about sanctions today.**

# THE COURT CAN WAIT TO DISMISS UNTIL DISCOVERY CLOSES

Rule 41(a)(2) provides that an action "may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."

> "The decision as to the terms and conditions that should be imposed, if any, is within the discretion of the trial court."
>
> *Cerciello v. Blackburn Truck Lines*, 1990 WL 161724, at *2 (9th Cir. 1990)

"After balancing the equities," deciding to rule on (and grant) the defendant's motion to strike class allegations before granting the plaintiff's motion for voluntary dismissal because "[a] deferred dismissal will do nothing to prejudice [the plaintiff], who desires to forgo her claims in any event," while at the same time protecting the defendant "from any unfair delay in the resolution of its already-filed motion to strike class allegations."

*In re Old Kent Mortg. Co. Yield Spread Premium Litig.*, 191 F.R.D. 155, 158 (D. Minn. 2000)

*Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3 941, 951 (8th Cir. 1999) (affirming the district court's denial of the plaintiff's Rule 41(a)(2) motion where the plaintiffs "provided no legitimate justification for their request to dismissed" and the court appropriately "inferred that [the plaintiffs] were seeking to avoid an adverse decision on their civil RICO claims").

# THE COURT CAN DISMISS NOW AND STILL PERMIT DISCOVERY

"It would be a further abuse of the judicial process to allow a party who has committed egregious litigation misconduct to avoid sanctions by voluntarily dismissing his case or similar gamesmanship."

Yu v. ByteDance, Inc. 758 F. Supp. 3d 992, 1002 (2024).

"[A] court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud."

Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991)

# WHAT DISCOVERY DO WE WANT?

- A handful of documents from Wilson or HLF.

HLF has **already assembled and produced** many of these exact categories: fee agreements, referral agreements and fee splits, disbursement statements, demand letters.

Notice of New Evidence at 3 (ECF 42); Watstein Decl. ¶¶ 4–11 (ECF 42-1)

- Two depositions: Wilson, and HLF

HLF and Wilson have made **enormous sums** from abusing the class action mechanism. The least they can do is sit for a deposition.

## WHY SHOULD THE COURT PERMIT THAT DISCOVERY?

- Doing so will protect the integrity of the Court and allow it to fulfill its obligation to police abuse

- Doing so will let the Court decide Freeway's forthcoming sanctions motion on a full record

# DISCOVERY PRESERVES THE COURT'S INTEGRITY

"Whenever an allegation is made that an attorney has violated his moral and ethical responsibility, an important question of professional ethics is raised" and "it is the duty of the district court to examine the charge, since it is that court which is authorized to supervise the conduct of the members of its bar."

*Gas-A-Tron of Ariz. v. Union Oil Co. of Cal.*, 534 F.2d 1322, 1324 (9th Cir. 1976), quoted in *Slevin v. AB Hollywood, LLC*, 2026 WL 892186, at *18 (D. Or. Mar. 31, 2026) (decided by Judge You and affirmed by Judge Hernandez in May).

**If nothing happens here, this scheme will continue happening, undermining the authority of the Court and the value of the class action mechanism.**

# HERE IS WHAT WE KNOW AND WHAT WE WANT TO CONFIRM

| What the record already shows | What the discovery would confirm |
|---|---|
| Freeway offered five times his statutory maximum. Counsel never responded. Months later they dismissed his case for nothing. | Whether Wilson ever saw that offer — or whether his lawyers made both decisions to protect their own practice. |
| The 2025 agreement bears an unverified mark for the client and DocuSign certificates for counsel. | Who actually signed it — and whether a document was filed with this Court as though Wilson had. |
| Wilson's fee agreement in this case shows a disproportionate percentage of recovered fees go to counsel | Whether that pattern persists across each of his cases and how much Wilson and his counsel have recovered across them. |
| HLF holds a contractual interest in "any and all" of Wilson's TCPA claims — and appears nowhere in the PacifiCorp settlement papers. | Whether class settlements have been presented to courts (including this Court) without disclosing every financially interested firm, including HLF |
| Wilson could not say which lawyers hold his claims, or who accesses his accounts. | His actual involvement in this litigation. What devices he used, his iCloud access history, and how these cases come to be brought in his name. |
| Settlement statements from other HLF cases show they required their client's to release claims against them | Whether Wilson was required to release claims against his counsel |

**Every one of these bears on the extent to which the class mechanism has been abused and what measure of sanctions are proper.**

# THE COURT SHOULD DECIDE SANCTIONS ON A FULL RECORD

*Slevin*, recent authority from this District, awarded sanctions—**the full cost of the entire litigation**—for far less egregious conduct:

**"[Plaintiff's counsel] brought this case without any meaningful investigation into the facts, using an unethical representation arrangement that was designed to allow her to use plaintiff . . . as a vehicle to facilitate obtaining attorney fees. . . . Molligan's misconduct and bad faith infected this case from its inception, and thus 'every cost of defense is attributable only to sanctioned behavior.'"**

"[D]efendant is awarded the entire amount of reasonable fees incurred in defending it."

Slevin v. AB Hollywood, LLC, 2026 WL 892186, at *18–*19 (D. Or. Mar. 31, 2026) (You, M.J.), aff'd, No. 3:23-cv-01404-YY (D. Or. May 25, 2026), ECF No. 88 (Hernández, J.)

# THIS CASE IS SLEVIN ON STEROIDS

| | Slevin | This case |
|---|---|---|
| The claim | One individual claim under the ADA — a fee-shifting statute | A putative class action under the TCPA — no fee shifting at all |
| Scale | One case | 83 filed cases; hundreds more pre-suit |
| The class device | Never used | Class allegations in every case, never litigated to certification |
| The agreement | One clause: blanket settlement authority | Portfolio-wide power of attorney; a client recovery cap; a fee-waiver ban |
| Multiplier | None | "we may request the defendant apply a multiplier based on certain risk factors" |
| Release of counsel | None | Every settlement statement conditions payment on releasing counsel |
| The money | $8,000 initial settlement demand | Ignored an offer at five times the statutory maximum, then dismissed for nothing |

**Slevin's counsel at least had a statute that shifts fees. These lawyers have none — and built the fee anyway.**

# ADDITIONAL DISCOVERY WOULD BE FAIR

- Freeway conferred under the local rule and gave Wilson the chance to dismiss. He refused.
- Freeway spent enormous resources building the record. Then Wilson and his counsel moved to dismiss their own case rather than let the Court rule on it.

"It would be a further abuse of the judicial process to allow a party who has committed egregious litigation misconduct to avoid sanctions by voluntarily dismissing his case or similar gamesmanship."

Yu v. ByteDance Inc., 759 F. Supp. 3d 992, 1002 (N.D. Cal. 2024)

**Even if they paid every dollar of Freeway's fees, it would still be a tiny fraction of what this scheme has produced.**

**Deny class certification.**

**Let Freeway finish discovery.**

**Dismiss the case.**

**And rule on Freeway's forthcoming sanctions motion on a full record.**

WATSTEIN TEREPKA LLP

# Wilson v. MAH Group, No. 6:25-cv-855 (D. Or. May 19, 2025)

